**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

T. S. *et al.*,

Plaintiffs,

v.

Twentieth Century Fox Television, a division
of Twentieth Century Fox Film Corporation
*et al.*,

Defendants.

Case No. 1:16-cv-08303

Judge Amy J. St. Eve

## PLAINTIFFS' MOTION TO PERMIT SERVING OF DOCUMENT PRESERVATION SUBPOENAS

Plaintiffs, by and through their attorneys, bring this motion pursuant to Federal Rule of Civil Procedure 26(d)(1) to serve a limited number of document preservation subpoenas on certain non-parties, including certain non-parties to be identified by the Defendants, while the Defendants' motions to dismiss this case are pending.

There are multiple non-parties who are likely to possess discoverable evidence in this case, either because they were authorized or hired to provide services at the Cook County Juvenile Temporary Detention Center (the "JTDC") and were impacted by the filming or *Empire* there, or because the Fox Defendants hired them to produce and film the *Empire* episodes that were shot at the JTDC. A sizable portion of this evidence, however, may be lost before it can be discovered. The anticipated motions to dismiss this case are not likely to be resolved until well into 2017. During the interim there is a substantial likelihood that these non-parties, without any

preservation obligations, will destroy discoverable information pursuant to their normal document retention practices or for other reasons.

To prevent that from occurring, Plaintiffs seek a court order to identify these non-parties, and to authorize the Plaintiffs to serve them with document preservation subpoenas that would require preservation of discoverable information for a limited time.

In support of their motion, Plaintiffs state as follows:

1.      Plaintiffs filed their original Complaint on August 24, 2016. (Doc # 1.)  They then filed a First Amended Complaint on October 5, to add a defendant.  (Doc. # 23.)  The Defendants have informed Plaintiffs' counsel that they all will move to dismiss Plaintiffs' case, and they have asked for an extension until December to file their motions.  Plaintiffs have accommodated this request, and the parties have agreed to a briefing schedule for the Defendants' motions to dismiss.  This schedule, which Plaintiffs have submitted to the Court on behalf of all the parties, runs through January 31, 2017. (Doc. # 31.)  The Court has permitted the Defendants to file their motions to dismiss in December, and has otherwise taken the proposed schedule under advisement.  (Doc. # 33.)

2.      The proposed briefing schedule will likely push back the beginning of discovery in this case several months into 2017.  After briefing on the motions is complete, the Court will likely require some time to consider and rule on the arguments raised by the parties.  And the parties will need to negotiate a discovery plan pursuant to Rules 16(b) and 26(f) before discovery begins.  This delay would not pose a problem if the evidence was all in the hands of the Defendants, who are obligated to preserve discoverable information.  It appears, however, that the Defendants authorized or hired numerous non-parties to perform activities that are connected with the events in this case.  As a result, there are multiple non-parties who are likely to possess

discoverable evidence, but whom the Defendants do not control for purposes of document preservation. Unless these non-parties are obligated to preserve this evidence, it may very well be lost before any discovery begins.

      3.      On the government side, these non-parties begin with Chicago Public Schools ("CPS"). CPS operates the Nancy B. Jefferson school within the JTDC. The school figures prominently in the events giving rise to this action, as its classrooms were taken over by *Empire*'s cast and crew, forcing teachers to go up to the JTDC's pods instead. CPS almost certainly has substantial evidence that would provide valuable insight into what happened during the filming. Like most organizations, however, CPS has document retention practices under which it deletes information after a relatively short period.[1] Unless CPS is instructed to preserve discoverable evidence, valuable information that would shed light on this case will likely be lost.

      4.      Other non-parties were authorized or hired to perform functions at the JTDC as well. These include providers of structured programming[2] and G4S Secure Solutions, a private company under contract to provide security at the JTDC.[3] These organizations were almost certainly affected by the *Empire* filming, and thus are likely to have discoverable evidence as well. As with CPS, though, there is a substantial likelihood that some or all of this evidence will be lost unless such non-parties are required to preserve it.

---

[1]  *See, e.g.*, CPS Policy Manual, E-Mail Retention (http://policy.cps.edu/download.aspx?ID=46) (providing a one-year retention period for some emails).

[2]  *See, e.g.*, Arts Infusion Initiative, (http://www.artsinfusioninitiative.org/) (discussing organization's provision of programming for children at the JTDC); Free Write Jail Arts & Literacy Program (http://getdrive.org/organizations/freewrite-jailarts.html) ("Free Write Jail Arts and Literacy Program leads formal creative writing and poetry workshops every day at the school inside the JTDC . . . .").

[3]  *See* Board of Commissioners of Cook County, Board Agenda for the Meeting of the Board of Commissioners at 34-35 (Nov. 18, 2015) (https://cook-county.legistar.com/View.ashx?M=A&ID=367901&GUID=23371A76-20AB-4F75-9DC7-464202250749) ("G4S [Security Solutions] provides security services to ensure the safety of residents and employees of the [JTDC].").

5.      On the film side, the Fox Defendants appear to have hired non-parties for much of the production and filming of the *Empire* episodes set at the JTDC.  The Internet Movie Database ("IMDB"), for example, lists four independent companies as producers of these episodes, as well as other parties involved in the filming.[4]  Such non-parties are likely to have discoverable information that may not otherwise be preserved.

6.      By this Motion, Plaintiffs seek a means to prevent evidence in the hands of these non-parties from being lost or destroyed while the parties await resolution of Defendants' motions to dismiss.  To be clear, Plaintiffs do not seek to *take* discovery from these non-parties now.  Rather, Plaintiffs propose that Defendants identify non-parties who likely possess discoverable information, but whose document retention practices the Defendants do not control, so Plaintiffs may serve preservation subpoenas that instruct the non-parties to preserve discoverable evidence for a specified period that gives enough time for formal discovery in the case to begin.

7.      Additionally, Plaintiffs seek leave to serve a document preservation subpoena on CPS now.  Plaintiffs do not need the Defendants to identify CPS as a responsive third party.  For the reasons set forth above, CPS is likely to have discoverable information that will be lost unless it is instructed to preserve discoverable evidence soon.  As with other non-parties, this document preservation subpoena would instruct CPS to preserve documents for a limited period, providing enough time for formal discovery in the case to begin.

---

[4]  IMDB credits for the two *Empire* episodes shot at the JTDC list as production companies Imagine Television, Lee Daniels Entertainment, Danny Strong Productions, and Little Chicken Productions, and notes the involvement of numerous other entities.  *See* (http://www.imdb.com/title/tt4365972/companycredits?ref_=tt_dt_co) and (http://www.imdb.com/title/tt4522990/companycredits?ref_=tt_dt_co).

8.      Permitting preservation discovery before a Rule 26(f) conference is appropriate where "evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation." *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). *Accord Monsanto Prod. Supply LLC v. Rosentreter*, No. 3:16-CV-3038, 2016 WL 4197573, at *1 (C.D. Ill. Aug. 9, 2016) (court ordered pre-conference discovery where there was concern defendant would destroy physical evidence). And courts look favorably on requests for pre-conference discovery that is limited in scope to addressing the need at issue. *In re Websecure, Inc. Sec. Litig.*, No. 97-cv-10662, 1997 WL 770414, *4 (D. Mass. Nov. 26, 1997) (approving expedited discovery that was limited to the scope "necessary to prevent undue prejudice" to the requesting party).

9.      Applying these principles, the court in *Caston v. Hoaglin*, No. 2:08-cv-200, 2009 WL 1687927 (S.D. Ohio June 12, 2009), permitted precisely the discovery sought here. Plaintiff sought to issue document preservation subpoenas in advance of the parties' Rule 26(f) conference to the defendant's current and former employees, on the grounds that these employees might destroy evidence before discovery could begin. The court denied Plaintiffs' request to subpoena current employees, reasoning that they were still controlled by the defendant. *Id.* at *3. But it allowed the plaintiff to subpoena *former* employees, since they were no longer under the defendant's control and thus had no legal obligation to preserve evidence, creating a risk that it would be destroyed. *Id.* at *4.

10.      Plaintiffs seek the discovery approved in *Caston*—the court's authority to serve document preservation subpoenas on non-parties, identified by the defendants, who, because they are not controlled by the Defendants, would not otherwise be under legal obligation to preserve evidence relevant to this case.

5

11.     This limited "discovery" will impose minimal burdens on the Defendants and the recipients of the preservation subpoenas. Defendants are being asked only to identify non-parties who are likely to have relevant information—something the Defendants would have been required to do under their own preservation obligations if the activities performed by these non-parties had instead been done in-house. As for the recipients of the subpoenas, they would not be required to assemble or collect any documents at this time. And the scope of the evidence to be preserved in this case, which concerns discrete production and filming events, is relatively narrow. On the other hand, preserving this evidence will likely be important for the resolution of this case. Plaintiffs therefore have good cause for seeking the limited expedited discovery they request here.

WHEREFORE, Plaintiffs request that the Court provide the following relief:

a.     Authorize Plaintiffs to serve a subpoena on CPS instructing it to preserve discoverable evidence for a limited period;

b.     Order the Defendants to identify non-parties whom the Defendants do not control for purposes of document preservation, and who are likely to possess discoverable information because:

  i.   the third party was authorized or hired to perform services at the JTDC that were impacted by the filming of *Empire* there; or

  ii.  the third party was hired by or otherwise contracted with the Fox Defendants (directly or indirectly) for the production and filming of the *Empire* episodes shot at the JTDC, or the provision of services to those involved;

       c.       Authorize the Plaintiffs to serve subpoenas on the non-parties identified by the Defendants, instructing the parties to preserve discoverable evidence for a limited period.

*      *      *

Pursuant to Local Rule 37.2 Plaintiffs represent that counsel for Plaintiffs and Defendants consulted with each other in good faith on multiple occasions regarding this discovery. Specifically, counsel for both sides met in person on October 21, 2016. During that meeting Plaintiffs' counsel described the nature of this proposed discovery. Following up on the October 21 meeting, Plaintiff counsel emailed Defendants' counsel on October 27, describing the proposed discovery in detail, inviting defense counsel to contact Plaintiffs' counsel with any questions, and requesting that defense counsel inform Plaintiffs' counsel whether or not they opposed the proposed discovery by the close of business on Friday, October 28.

Counsel for the Office of the Chief Judge of the Circuit Court of Cook County informed Plaintiffs' counsel that the Chief Judge's Office does not object to the requested discovery.

Plaintiffs' counsel spoke with counsel for the Fox Defendants on October 31 by telephone, and was informed that the Fox Defendants oppose the requested discovery.

Counsel for Cook County and Leonard Dixon informed Plaintiffs' counsel via email on October 31 that the "County defendants take no position on the issuance of subpoenas to third parties not under [their] control." Plaintiffs' counsel responded the same day via email and voice message, asking counsel for the County defendants to clarify whether they opposed Plaintiffs' request that the Defendants identify the non-parties to be subpoenaed. As of the filing of this Motion, Plaintiffs' counsel has not received a response from counsel for the County defendants.

7

November 2, 2016                                      Respectfully Submitted,

 /s/ Stephen H. Weil

Stephen H. Weil
sweil@eimerstahl.com

Pamela R. Hanebutt
phanebutt@eimerstahl.com

Susan M. Razzano
srazzano@eimerstahl.com

Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel:  (312) 660-7600

*Attorneys for Named Plaintiffs T. S. and Q. B.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2016, a true and correct copy of the foregoing was filed electronically.  Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

/s/ Stephen H. Weil  