**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| T.S. *et al.,*<br><br>Plaintiffs.<br><br>v.<br><br>Twentieth Century Fox Television, a division of<br>Twentieth Century Fox Film Corporation et al.,<br><br>Defendants. | Case No. 1:16-cv-08303<br><br>Honorable Judge Amy J. St. Eve |

**RESPONSE TO PLAINTIFFS' MOTION TO PERMIT SERVING OF DOCUMENT
PRESERVATION SUBPOENAS**

Defendants Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation ("TCFTV"), Fox Broadcasting Company, Fox Entertainment Group, LLC, Fox Networks Group, Inc., and Twenty-First Century Fox, Inc. (collectively the "Fox Defendants"), by and through their undersigned attorneys, hereby submit this Response in Opposition to Plaintiffs' Motion to Permit Serving of Document Preservation Subpoenas, and in support thereof state as follows:

1.      On six days in July and August 2015, at the Cook County Juvenile Temporary Detention Center (the "JTDC"), TCFTV filmed scenes for two episodes of the television show *Empire*. Cook County granted TCFTV limited access to the JTDC pursuant to a "Location Agreement" — a public document — executed by those parties on June 18, 2015, and attached hereto as Exhibit 1. *See* Amended Complaint at ¶ 29 (alleging existence of Agreement). Pursuant to the Location Agreement, TCFTV "acknowledge[d] that the [JTDC] is a functioning Municipal Building" and agreed to "cooperate with the County, JTDC Administration, and Security . . . so

that normal operations of the [JTDC] and its occupants, and access by the public, are not disrupted in any manner whatsoever." Ex. A ¶ 1(D). The Location Agreement further prohibited TCFTV from "filming any residents or staff of the JTDC." Plaintiffs' Complaint in this matter neither alleges nor could allege that TCFTV personnel had any contact whatsoever during filming with any of the juvenile residents of the JTDC.

2. The Fox Defendants,[1] along with the governmental co-defendants in this case, will demonstrate in their forthcoming motions to dismiss that Plaintiffs do not allege any cognizable deprivation of their rights. All of plaintiffs' claims against *all* defendants, including the governmental parties, should be dismissed for that reason. Further, in the unlikely event that the Court permits any of Plaintiffs' claims to proceed against the government, the Fox Defendants will demonstrate that Plaintiffs have no valid claim against TCFTV or its affiliated companies. Beyond Plaintiffs' inability to plead that the Fox Defendants ever had *contact* with a single detainee at the JTDC, Plaintiffs also have not pleaded and cannot plead that the Fox Defendants had any *control* over the conditions of any detainee's confinement. Plaintiffs therefore have no valid legal basis to contend that the Fox Defendants, or any of them, share responsibility for allegedly violative conditions. The Fox Defendants submit that their motion to dismiss has substantial merit and that they should not be put to any discovery burdens until the Court decides that motion.

3. Plaintiff's motion, moreover, is unnecessary. Only a limited number of TCFTV personnel had written communications with or about the JTDC. After Plaintiffs filed this lawsuit,

---

[1] TCFTV is the only Fox entity that contracted with Cook County and was present during filming at the JTDC. Plaintiffs' stated justification for having named other Fox entities as defendants in this case is that these other entities broadcast the relevant episodes of *Empire* or profited from advertising aired during broadcast. No precedent exists for Plaintiffs' theories of liability against these entities, and the Fox Defendants will be seeking their dismissal on that basis, in addition to the defenses they will be asserting on behalf of TCFTV.

the Fox Defendants took appropriate steps not just to preserve but to gain custody of those relevant documents. The Fox Defendants are not aware of any other former employees who had written communications with or about the JTDC, beyond those they have contacted.

4. That non-parties were "involved in the filming," as Plaintiff's motion (at 4 ¶ 5) notes, is irrelevant. During the pre-motion meet-and-confer between the parties, Plaintiff's counsel used the example of the catering contractor that TCFTV engaged to provide meals for the cast and crew. The Fox Defendants certainly do not dispute that TCFTV engaged a caterer and that the catering staff and many other non-parties to the case were on location at the JTDC. These non-parties, however, had no reason to communicate, and the Fox Defendants do not believe they communicated, with JTDC personnel, beyond incidental communications at the proverbial water-cooler. The Fox Defendants certainly have no reason to believe that such non-parties ever communicated with JTDC personnel about matters having to do with juvenile detainees, and certainly they had no control over the treatment of detainees. Neither Plaintiffs' Complaint nor their motion suggests otherwise.

5. Plaintiffs do not appear seriously to contend that these non-parties possess evidence of any importance to the case. They profess only that "multiple non-parties" are "likely to possess discoverable evidence," and that this evidence "may be lost" unless they can take the extraordinary step of serving preservation subpoenas. Left unstated, however, are the facts that Plaintiffs delayed filing this case until more than a year after the *Empire* filming ended at the JTDC, and that they delayed filing this motion for more than two additional months after they sued. Their conduct belies any assertion of urgency, and any materials subject to one-year retention policies would have been purged in June, July, or August of this year.

3

6. As the principal case relied upon by Plaintiff makes clear, in determining whether to grant expedited discovery prior to a Rule 26(f) conference, courts have applied a good cause standard that Plaintiffs do not come close to satisfying. *See Caston v. Hoaglin,* No. 2:08-CV-200, 2009 WL 1687927, at * 3 (S.D. Ohio June 12, 2009). That court noted that "[t]he scope of the discovery request is . . . relevant to whether or not good cause exists." *Id.* at *2. In *Caston,* a shareholder derivative case, the court found that good cause existed only because the proposed subpoenas were narrowly tailored to seven categories of specific documents that sought to capture "critical evidence," and because the subpoenas would be served on just eight former employees who had been directors or senior officers of the defendant company. *Id.* at *4.

7. Unlike the plaintiff in *Caston,* Plaintiffs here seek to issue broad preservation subpoenas to potentially hundreds of individuals who did not hold positions of importance, but merely were present during filming at the JTDC. They seek to do this without any showing that a single one of these people possesses any evidence, much less "critical evidence." Indeed, in a case in this Circuit applying the "good cause" standard, the plaintiff was allowed to take limited discovery only because an indispensable party had defaulted and the plaintiff "cannot [have] pursued his claims in th[e] action" but for the limited discovery he sought prior to the Rule 26(f) conference. *See Sheridan v. Oak St. Mortgage, LLC,* 244 F.R.D. 520, 522 (E.D. Wisc. 2007). Under that entirely appropriate standard, Plaintiffs have not approached establishing good cause for the issuance of these subpoenas, and their Motion should be denied. *See, e.g., Sky Angel U.S. LLC v. National Cable Satellite Corp.,* 296 F.R.D. 1 (D.D.C. 2013) (denying early discovery where plaintiff asserted only speculative theories regarding usefulness of discovery).

8. Also unlike the plaintiff in *Caston,* Plaintiffs here are not merely seeking to serve discovery on non-parties. They are seeking discovery *from the Fox Defendants,* in advance of the

Rule 26(f) conference, demanding that they identify any person not currently employed by them who was present during filming, whether that person was employed by the Fox Defendants or was a direct or even an indirect contractor, ostensibly so that they all can be sent subpoenas. *See* Amended Complaint at ¶ 31 (alleging that Empire employed a film crew of approximately 250). In no way can this inquiry be described as "narrowly tailored."

WHEREFORE, Defendants Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation, Fox Broadcasting Company, Fox Entertainment Group, LLC, Fox Network's Group, Inc., and Twenty-First Century Fox, Inc., respectfully request that the Court deny Plaintiffs' Motion to Permit Serving of Document Preservation Subpoenas, and grant such other and further relief as the Court deems just.

Date: November 4, 2016      Respectfully Submitted,

             /s/ Jeffrey S. Jacobson

             Jeffrey S. Jacobson
             Kelley Drye & Warren LLP
             101 Park Ave
             New York, NY 10178
             212-808-5145
             jjacobson@kelleydrye.com

             Matthew C. Luzadder
             Catherine E. James
             Kelley Drye & Warren LLP
             333 West Wacker Drive
             Suite 2600
             Chicago, IL 60606
             (312) 857-7070
             mluzadder@kelleydrye.com
             cjames@kelleydrye.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing ***Response to Plaintiffs' Motion to Permit Serving of Document Preservation Subpoenas*** was served on all counsel of record pursuant to the Court's ECF system on this 4th day of November, 2016.


/s/ Jeffrey S. Jacobson
Jeffrey S. Jacobson