IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.S, et al. | ) |
| | ) |
| Plaintiffs, | ) No. 16 CV 8303 |
| | ) |
| v. | ) The Honorable Amy J. St. Eve |
| | ) |
| Twentieth Century Fox Television, et al. | ) |
| | ) |
| Defendants. | ) |

**THE CHIEF JUDGE OF COOK COUNTY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant, the Chief Judge of the Circuit Court of Cook County ("Chief Judge" or "Defendant"), by and through his attorney, Illinois Attorney General Lisa Madigan, pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Plaintiffs' First Amended Class Action Complaint. In support thereof, Defendant asserts as follows:

**STATEMENT OF RELEVANT FACTS**

The named Plaintiffs are the legal guardians of T.S. and Q.B., minors formerly housed at the Cook County Juvenile Temporary Detention Center ("JTDC") during the Summer of 2015. Pls.' Compl. at ¶¶ 2-3, ECF No. 23. It is alleged that from June 21st through June 26th, July 13th through July 16th and August 23rd through August 26th of 2015, *Id*. at ¶ 30, the JTDC was placed on "lockdown" so that the "Fox Defendants" could use the facility as a film set to shoot *Empire*, a popular Fox television show." *Id*. at p. 1-2 ("Introduction"). Plaintiffs allege that during the shooting of *Empire*, many areas necessary to their minors' education and rehabilitation were off limits due to the filming. *Id*. Because of these restrictions, Plaintiffs allege that the JTDC's

1

mission of educating and rehabilitating the minors was frustrated as the minors were required to spend excessive time in the common areas adjacent to their cells ("pods"). *Id.* at ¶¶ 13, 34.

As for the specific injuries alleged, it is claimed that during the filming periods the minors were not allowed to go their regular classrooms but instead were required to remain in their pods during class. *Id.* at ¶ 35. It is alleged that this arrangement was deficient as there was "no whiteboard or other teaching equipment" in the pods. *Id*. This arrangement, and the fact that the minors were going "stir crazy," caused a "markedly less effective and often chaotic" teaching environment. *Id*. Furthermore, Plaintiffs allege that recreation was "drastically reduced" or otherwise eliminated because as the JTDC primary recreation facility, the recreation yard, was being used for filming. *Id.* ¶ at 36. In an attempt to compensate for the lack of yard time, exercise instructors were brought to the pods and the minors were given access to the less spacious gymnasium, both of which it is alleged failed to provide the recreational benefits of the yard. *Id.* at ¶¶ 36-37. In addition to deficient teaching and recreation, Plaintiff's also allege that the minor's visitation hours were restricted and/or cancelled, *Id.* at ¶ 38, requests for medical attention were sometimes ignored, *Id.* at ¶ 39, and many of the after-school recreational programs such as music and dance were cancelled. *Id.* at ¶ 40. With the exception of the denial of medical attention, S.S. and V.P., the only named Plaintiffs, allege that their minors, T.S. and Q.B., suffered from these deprivations as well. *Id.* at ¶¶ 41-42.

As for the specific allegations against the Chief Judge, it is alleged that, pursuant to the district court's order in *Doe v. Cook County*, 99-cv-3945 (N.D. Ill. June 15, 1999), the administration of the JTDC was transferred back to "local control" on May 20, 2015, four weeks prior to the start of filming at the JTDC. *Id.* at ¶¶ 58, 60, 62. In preparation for this transfer of control, the Chief Judge appointed Defendant Leonard Dixon as the JTDC's new Superintendent.

2

*Id.* at ¶ 61. Plaintiffs claim that it is "exceedingly unlikely that Defendant Dixon would have allowed *Empire* to film there without Chief Judge Evans' approval." *Id.* at ¶ 63. In support thereof, it is alleged that on July 24, 2105, Defendant Dixon responded via a letter to a complaint regarding the filming of *Empire* at the JTDC. *Id.* at ¶ 64. Plaintiffs claim the letter's "courtesy copy" notation indicated that Dr. Beverly Butler, the Chief Judge's special assistant for the transfer of JTDC control, had been sent a copy. *Id.* It is alleged that "it is reasonable to infer that Superintendent Dixon's purpose in copying Dr. Butler on the letter was to imply that Chief Judge Evans was aware of, and had approved of, the *Empire* filming." *Id.*

On October 5, 2016, Plaintiffs, pursuant to 42 U.S.C. §1983, filed their "First Amended Class Action Complaint" ("complaint"). Pls.' Compl. In addition to various state law claims, Plaintiffs alleged that the Chief Judge: 1) violated their minors' rights to due process (Count I); 2) violated their minors' right to be free from the unlawful seizure (Count II); 3) violated the doctrine of *Monell* as the final decision maker for the filming of *Empire* at the JTDC (Count III); and 4) engaged in a conspiracy with the co-Defendants to violate the rights of Plaintiffs' minors (Count VI). *Id* at p. 28-31, 33. The Chief Judge has been sued in his official capacity only. *Id.* at ¶ 5. Plaintiffs seek "disgorgement of enrichment" allegedly gained as well as monetary damages. *Id.* at p. 37. No injunctive or declaratory relief is sought. *Id*.

## STANDARD OF REVIEW

In ruling on a motion under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Reger Development, LLC v. Nat'l City Bank,* 592 F.3d 759, 763-64 (7th Cir. 2010). The court must determine whether a plaintiff has alleged facts sufficient to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). The Seventh Circuit has interpreted this plausibility standard to mean that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010). Allegations that are "merely consistent with" the cause of action are insufficient to satisfy the plausibility standard. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Iqbal,* 566 U.S. at 555.

## ARGUMENT

Plaintiffs' complaint must be dismissed for the following reasons: A) Plaintiffs' claims against the Chief Judge violate the Eleventh Amendment, and B) even if the Chief Judge is not entitled to Eleventh Amendment immunity, Plaintiffs' complaint must be dismissed because Plaintiffs fail to state plausible causes of action.

### A) Plaintiffs' Claims Violate the Eleventh Amendment.

A suit against a state or one of its agencies is barred by the Eleventh Amendment unless: 1) the state consents to suit in federal court, or 2) Congress uses its powers under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1984); *see also Kroll v. Board of Trustees of the University of Illinois,* 934 F.2d 904, 907 (7th Cir.). An official-capacity suit against a state official is a suit against the state and is therefore barred by the Eleventh Amendment absent a state's waiver or congressional override. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Kroll,* 934 F.2d at 907–08.

Judges and non-judicial employees of the circuit courts are state officals. *Orenic v. Illinois State Labor Relations Bd.*, 537 N.E.2d 784, 795 (Ill. 1989). As a result, the official

capacity claims against the Chief Judge are claims against the state. *See, e.g., Jordan v. Evans*, 15 C 5907, 2016 WL 5030410, at * 2 (N.D. Ill. Sept. 20, 2016) (Ellis, S.) ("Because Plaintiffs bring suit against the Chief Judge in his official capacity, the State is the real, substantial party in interest."). Therefore, because no waiver or consent has occurred, all claims against the Chief Judge must be dismissed, with prejudice.

### B) Plaintiffs' Complaint fails to state a Plausible Causes of Action.

Even if the Chief Judge is not entitled to Eleventh Amendment immunity, Plaintiffs' complaint must be dismissed because Plaintiffs' complaint fails to state plausible causes of action based on violations of the Due Process Clause, the Fourth Amendment, the *Monell* doctrine or a §1983 conspiracy.

1. <u>Plaintiffs' Due Process claim fails to State a Plausible Cause of Action.</u>

Plaintiffs' due process claim must be dismissed at is fails to state a plausible cause of action for two independent reasons: a) the allegations fail to establish that the conditions imposed on Plaintiffs' minors amounted to punishment; and b) the allegations fail to establish that the conduct complained-of shocked the conscience.

*a) The Conditions Imposed on Plaintiffs did not Amount to Punishment.*

The Due Process Clause guides the determination of whether conditions of pretrial detention run afoul of the Constitution. *Bell v. Wolfish*, 441 U.S. 520, 534-36 (1979). The weight of recent authority suggests that the Due Process Clause is the proper Amendment by which the conditions of incarcerated juveniles are to be judged, particularly those awaiting adjudication. *See, e.g., A.J. v. Kierst*, 56 F.3d 849, 854 (8th Cir. 1995); *Gary H. v. Hergstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987); *Santana v. Collazo* (*Collazo I*), 714 F.2d 1172, 1179 (1st Cir. 1983). In evaluating the constitutionality of the restrictions of pretrial confinement, the proper inquiry is

whether the conditions amount to "punishment." *Bell*, 441 U.S. at 535; *see also Hart v. Sheahan*, 396 F.3d 887, 891 (7th Cir. 2005). However, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell,* 441 U.S. at 537. Therefore, a reviewing court must determine whether the condition "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose." *Id*. at 538. As a result, a particular condition or restriction amounts to punishment only when: 1) there is an express showing of an intent to punish; 2) when the restriction is not reasonably related to a non-punitive purpose such as maintaining security and order; or 3) when the restriction is excessive or otherwise an exaggerated response to the non-punitive purpose claimed. *Id*. at 539-40; *see also Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999) (citing *Bell*). In conducting this inquiry, a court is required to "heed the warning that 'such considerations are peculiarly within the province of professional expertise of correctional officers, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to the expert judgment in such matters." *Id*. at n.23 (citations omitted); *see also Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005) (citing *Bell*).

Turning to the allegations in the complaint, it is clear that the "lockdown"[1] alleged did not amount to punishment. Plaintiffs allege no facts to suggest that the restrictions stemmed from an express intent to punish. Instead, the complaint establishes that the restrictions were reasonably related to the non-punitive purpose of maintaining order and general security during a time when many "civilians" were in close proximity to the minors. This desire to maintain safety, security and order is without question a legitimate non-punitive purpose. *Bell*, 441 U.S. at

---

[1] It should be noted that Plaintiffs' claim that the facility was placed on "lockdown" is incorrect. As it is widely understood, lockdown is a term of art which denotes the restriction of inmates to their cells on a twenty-four basis. Plaintiffs' own allegations negate this claim.

535. Furthermore, the restrictions imposed were not excessive or exaggerated. Most importantly, there is no allegation that minors' sleep, nutrition or safety was compromised in any way. Nevertheless, in an attempt to compensate for these conditions, teachers and exercise instructors were brought to the pods and the minors were allowed to use the gymnasium as an alternative to the yard. Pls.' Compl. at ¶¶ 35-37. These temporary conditions which caused the minors to go "stir crazy," temporarily lose the benefits of a white board, *Id.* at ¶ 35, or, in the case of Q.B., miss a single visitation with family, *Id.* at ¶ 42, are not the type of exaggerated responses the Due Process clause was intended to protect. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."). Because Plaintiffs' allegations fail to suggest that the conditions of their confinement amounted to punishment, Plaintiffs due process claim contained in Count I must be dismissed.

   *b) The Conditions Imposed on Plaintiffs do not Shock the Conscience.*

  The substantive component of the Due Process Clause protects the individual against "the [government's] exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). If a fundamental right has been impaired by an act of legislation, the question is whether the governmental action can find "reasonable justification in the service of a legitimate governmental objective." *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 462 (7th Cir. 2007) (citing *Lewis*, 523 U.S. at 846–47). If, however, the harm alleged is the result of abusive executive action, as is the allegation here, the question is whether the actor's conduct was "arbitrary, or conscience shocking, in a constitutional sense." *Id.* The requirement that the

conduct "shock the conscience" is applicable to claims involving a pretrial detainee's conditions of confinement. *See, e.g.*, *Davis v. Wessel*, 792 F.3d 793, 801 (7th. Cir. 2015).

The Supreme Court has been adamant in holding that the Fourteenth Amendment is not a catalyst for state law tort claims. *County of Sacramento,* 523 U.S. at 848 (quoting *Paul v. Davis,* 424 U.S. 693, 701 (1976)) ("[T]he Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'"). To that end, behavior will only shock the conscience when it is so "so brutal and offensive that it does not comport with traditional ideas of fair play and decency." *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957). In other words, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento*, 523 U.S. at 846; *see also Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir.1994) ("every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation"). However, even the most deferential review of Plaintiffs' allegations fails to plausibly suggest the existence of conduct that was "so brutal and offensive that it does not comport with traditional ideas of fair play and decency." *Breithaupt*, 352 U.S. at 435. As a result, Plaintiffs' due process claim contained in Count I must be dismissed.

    2. <u>Plaintiffs' Fourth Amendment Claim fails to State a Plausible Cause of Action</u>.

Plaintiffs are pretrial detainees who, prior to the allegations, had already been seized. *Juvenile Temporary Detention Center*, https://www.cookcountyil.gov/agency/juvenile-temporary-detention-center (The JTDC "provides temporary secure housing for youth from the age of 10 through 16 years, who are awaiting adjudication of their cases by the Juvenile Division of the Cook County Courts."). Assuming, *arguendo*, that the movement restrictions alleged amounted to a "seizure" as contemplated by the Fourth Amendment, because the minors were

pretrial detainees who had already been seized and were awaiting adjudication, Plaintiffs' claims lay outside the temporal bounds of the Fourth Amendment, *See, e.g.*, *Wilkins v. May,* 872 F.2d 190, 192-94 (7th Cir.1989) (concluding that no Fourth Amendment right applied at the moment the plaintiff alleged excessive force in a pretrial prison setting because the plaintiff had been "seized" for purposes of the Fourth Amendment when he was arrested previously, and not when the excessive force incident occurred); *see also Stone-El v. Fairman*, 864 F. Supp. 807, 809 (N.D. Ill. 1994) (holding that pretrial detainee's claim regarding seized property was subject to a due process analysis and not the Fourth Amendment). As a result, the Fourth Amendment does not apply to Plaintiffs' claims.

In addition to being temporally inadequate, it is well established that if the complained-of conduct is covered by another constitutional provision, substantive due process should not be invoked. *United States v. Lanier,* 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). As a necessary consequence, if the conduct is covered by the substantive component of the Due Process Clause, then it cannot be covered by another constitutional provision. Plaintiffs' "unlawful seizure" claim is little more than a restatement of their conditions of confinement claims contained in Count I. However, as previously discussed, conditions of confinement claims brought by juvenile pretrial detainees are covered by the Due Process Clause. *See supra* Part B.1. Because the Due Process Clause is the appropriate constitutional provision, Count II fails to state a plausible Fourth Amendment claim and must be dismissed.

9

3. Plaintiffs' Monell Liability claim fails to State a Plausible Cause of Action.

The Supreme Court has held that "local governing bodies" can be sued directly under §1983 for monetary, declaratory, or injunctive relief when that body implements or executes an unconstitutional policy or decision which has been officially adopted by its officers. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978). However, the *Monell* Court was explicit in holding that its opinion applied only to *local* governmental bodies and was not applicable to *state* institutions such as the Office of the Chief Judge which remain immune from federal suit via the Eleventh Amendment. *Id.* at n.54 ("Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes."). Because Plaintiffs' misguided attempt to invoke *Monell* runs afoul of the Eleventh Amendment, Count III must be dismissed.

4. Plaintiffs' Conspiracy claim fails to State a Plausible Cause of Action.

To establish a prima facie civil conspiracy claim, a plaintiff must show: 1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights, and 2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir.1988). Plaintiffs' conspiracy claim is devoid of any facts evidencing an agreement to violate the minors' constitutional right. Nevertheless, even if Plaintiffs' conspiracy claim was supported with factual claims evidencing an agreement, because Plaintiffs have failed to adequately allege the existence of a constitutional deprivation, *see supra* Parts B.1-3, they have likewise failed to adequately allege the existence of a conspiracy. *See. e.g., Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir.1996) ("there is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution.").

Therefore, because Plaintiffs' conspiracy claim fails to state a plausible cause of action, Count VI must be dismissed.

WHEREFORE, Defendant respectfully requests this Court to dismiss the federal claims, decline jurisdiction over the remaining state law claims and award any other relief this Court deems just and equitable.

Respectfully submitted,

Lisa Madigan
Illinois Attorney General

By: /s/ *T. Andrew Horvat*
T. Andrew Horvat (6277684)
Assistant Attorney General
100 W. Randolph St., 13th Fl.
Chicago, IL 60601
(312) 814-5484
thorvat@atg.state.il.us

## CERTIFICATE OF SERVICE

      I, T. Andrew Horvat, hereby certify that on November 21, 2016, I have caused a true and correct copy of Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint Pursuant to Rule 12(b)(6) to be sent via e-filing to all counsel of record on the above-entitled date in accordance with the rules regarding the electronic filing of documents.

      /s/ *T. Andrew Horvat*
      T. Andrew Horvat
      Assistant Attorney General
      100 W. Randolph St., 13th Fl.
      Chicago, IL 60601
      (312) 814-5484
      THorvat@atg.state.il.us