IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| T.S., a minor by and through his parent and guardian, S.S., *et al.* | ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | 16 C 8303 |
| Twentieth Century Fox Television, Inc., *et al.*, | ) ) ) ) | Honorable Amy J. St. Eve |
| Defendants. | ) | |

**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants, Cook County and Leonard Dixon, by their attorney, Kimberly M. Foxx, State's Attorney of Cook County, and through her Assistant State's Attorney, Thomas E. Nowinski and Anthony E. Zecchin, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move this Honorable Court to dismiss Plaintiff's Amended complaint for failure to state a claim upon which relief can be granted. In support thereof, Defendants state as follows:

**INTRODUCTION**

On August 24, 2016, Plaintiffs filed their Complaint and alleged that the residents of the Juvenile Temporary Detention Center ("JTDC") were harmed by the filming of the television show, *Empire*, on various dates in 2015. On October 5, 2016, Plaintiffs filed a First Amended Complaint adding parties. ("Pltfs.' Compl."). Plaintiffs' First Amended Complaint fails to allege facts that establish any constitutional violation or state law tort claim caused by any of the Defendants. At best, Plaintiffs allege that the normal operations at the JTDC were modified on 14 days between June and August, 2015, but the residents still received constitutionally required necessities and rehabilitative services. Additionally, the complaint against Defendant Dixon must be dismissed because he is entitled to qualified immunity. Accordingly, Plaintiffs' First

Amended Complaint should be dismissed with prejudice.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint falls short of the plausibility standard where plaintiff "pleads facts that are 'merely consistent with' a defendant's liability . . ." *Twombly*, 550 U.S. at 557. A plaintiff is not required to make "detailed factual allegations," but there must be more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted)

In reviewing the sufficiency of a complaint, the court should take the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). However, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth," *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)(citing *Iqbal*, 556 U.S. at 678), nor should a court "strain to find inferences favorable to plaintiffs" or accept unreasonable inferences. *Caldwell v. City of Elwood, Ind.,* 959 F.2d 670, 673 (7th Cir. 1992). Iit is well-settled that "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Nevertheless, a "statute of limitations defense is properly considered in determining a Rule 12(b)(6) motion when the factual allegations in the complaint establish such a defense." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 974 (7th Cir. 2016).

**ARGUMENT**

I. **Plaintiffs Have Failed To Plead Plausible Constitutional Claims**

In this case, Plaintiffs have not stated claims upon which relief can be granted based on the alleged conditions and restrictions at the JTDC for the total of 14 days that *Empire* was on location. The violations being asserted are not unconditionally guaranteed and, in this case, do not rise to the level of plausibility required to defeat Defendants' motion to dismiss. Moreover, even if this Court does find that Plaintiffs' allegations set forth valid constitutional claims, they were, at best, temporary and were not of a sufficient duration to implicate constitutional concerns.

   A. **There are no constitutional violations in the instant complaint**

Plaintiffs have essentially advanced three claims in the First Amended Complaint: sub-par schooling/education; curtailed recreation and shortened visits for the residents at the JTDC. Pltfs.' Compl., generally. Although there is one paragraph which states, in a conclusory manner, that sick call requests were ignored, Plaintiffs do not set forth any facts to support that claim and do not incorporate that pleadings into any of the Counts alleged in the First Amended Complaint. To the extent that this Court may consider that pleading as more than mere surplusage, Defendants would respectfully incorporate the argument made by the Fox Defendants as to that claim. See Fox Defendant's Memorandum at Section I, A.

It is extremely important to note that the total number of days that *Empire* was on location at the JTDC was 14. Given that there is no claim that these alleged constitutional deprivations occurred wholesale and no dates to indicate on what dates school did not take place, recreation was not held or visits were shortened, the number of total days where these alleged

conditions took place is unknown, but reasonably could not have exceeded 10-12 days in total.

Under certain circumstances, states may create liberty interests which are protected by the Due Process Clause; however, these interests will be generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 222-23, (2005); *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The actual focus of the liberty interest inquiry is the nature of the deprivation that a prisoner suffers. *Sandin*, 515 U.S. at 481-83; *Williams v. Ramos*, 71 F.3d 1246, 1249 (7th Cir. 1995). In this case, none of these claims, as pled, rise to the level of an atypical and significant hardship. Therefore, Plaintiffs' complaint should be dismissed as to these claims.

      i.    *Schooling/Education*

Plaintiffs have alleged that they were not provided with as much access to education or schooling and that when they did, the quality was diminished. It is significant to note that Plaintiffs' complaint concedes that schooling did take place so the issue is not whether there was a complete denial of education opportunity (although it cannot be ascertained from the pleadings how often schooling did not take place). *See* Pltfs.' Compl., ¶ 41 (b); ¶ 42 (d); ¶ 43 (b); ¶ 45 (b). Moreover, even if schooling did not take place on a daily basis, there is no constitutional guarantee to daily classes for individuals who are in custody. Plaintiffs' specific claim is that teaching classes on the living units – versus in actual classrooms – led to a "chaotic teaching environment." Pltfs.' Compl., ¶ 41 (b). However, even assuming this to be true, an allegedly sub-par learning environment does not permit a reasonable inference that there has been a constitutional violation; indeed, there is no constitutionally-established minimums that must be met in order for schooling to be appropriate in a detention facility, Plaintiffs' subjective beliefs

notwithstanding.

The right to continued education for individuals in custody is not guaranteed and, in fact, the Seventh Circuit has held that "there is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that rise to a violation of the Eighth Amendment." *Garza v. Miller,* 688 F.2d 480, 485-86 (7th Cir. 1982), cert. denied, 459 U.S. 1150 (1983). In *Farley v. McCroy*, the Seventh Circuit affirmed dismissal of a claim brought by a prisoner whose application to take classes at a local community college was rejected, which resulted in the filing of a § 1983 action. 1995 U.S. App. LEXIS 19478, at * 2 (7th Cir. 1995) (unpublished opinion). The appellate court found that the plaintiff failed to "establish a protected liberty interest in continued access to educational opportunities while incarcerated." *Id.* at ** 3-4. Although the state could create such a liberty interest, *Sandin*, 515 U.S. at 483-84; *Smith v. Shettle,* 946 F.2d 1250, 1252 (7th Cir. 1990), these interests do not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Farley*, 1995 U.S. App. LEXIS 19478, at * 4 (citing *Sandin,* 515 U.S. at 484).

Although Plaintiffs mention "structured programming" in their complaint, the only reference to any actual claims that such programming was cancelled is by "N.T.", who references drum circle and dance class. Pltfs.' Compl. ¶ 43 (a). To the extent that a drum circle or dance class was scheduled and cancelled, such programming would not trigger any additional constitutional protections and, for the same reasons as stated above, no constitutional claim has been stated regarding access to schooling or education.

    ii.    *Recreation*

Plaintiffs' claim regarding recreation is similar to the one made about schooling during

the relevant time periods. There is no claim that residents were denied the opportunity to engage in recreation, but only that they had to remain on their living unit or were not taken off of their living unit for recreation.[1] This does not state a constitutional violation. There is no constitutional right to move about freely when one is in a detention facility and Plaintiffs concede that they had the opportunity to do basic exercises likes push-ups, sit-ups or jumping-jacks (which they apparently declined) while in their living units. Pltfs.' Compl., ¶ 41 (c). The implicit assertion that not being able to go to a gym on a daily basis constitutes a denial of recreation is far too narrow of a view to be accepted as reasonable.

Even if this Court concludes that the Constitution does require some specific sort or form of recreation, the time period for which such recreation was allegedly not provided was not sufficient as to constitute a constitutional deprivation. *See, e.g., Thomas v. Ramos*, 130 F.3d 764 (7th Cir. 1997) (70-day denial permissible); *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir. 1988) (28-day denial not deprivation); *Caldwell v. Miller,* 790 F.2d 589, 601 (7th Cir. 1986) (no deprivation where exercise was denied for 30 days, but then allowed one hour indoor exercise for next 6 months); *Coleman v. Baldwin*, 2016 U.S. Dist. LEXIS 17105, at \*\* 11-12 (N.D. Ill. Feb. 11, 2016) (Zagel, J.) (dismissing due process claims where the plaintiffs alleged decreased recreation time, even where considered in conjunction with a number of other alleged programs and amenities that were withheld).

In *Harris*, the plaintiff alleged a constitutional violation where he was deprived of yard or recreation time, not all exercise, during a 28-day period. During that period of time, however, the court noted that the plaintiff did have access to other parts of the unit and that if the plaintiff

---

[1] Notably, the allegations regarding N.T. contradict the blanket assertion that residents were not taken off of their living unit for recreation. N.T. states that N.T., and those on N.T.'s living unit, were taken to

wanted to exercise he could have improvised temporarily with jogging in place, aerobics, or pushups. 839 F.2d at 1236. In *Thomas*, the Seventh Circuit found that the plaintiff's allegation including that he could not *use the gym* (emphasis added) did not rise to the level of an atypical and significant hardship. 130 F.3d at 760. Here, Plaintiffs were not deprived of exercise for any length of time; instead, the issue is that they did not have access to recreation outside of their living unit. Moreover, and as the court noted in *Harris*, if Plaintiffs wanted to exercise, there were exercise options available to them, some of which were specifically noted in the instant pleadings (e.g., push-ups and sit-ups). *See* 839 F.3d at 1236. Because Plaintiffs did not get to go to the gym or outdoors, even if it was on several occasions over a total of 14 days, that does not translate to a plausible claim under § 1983.

      v.    *Visitation*

Plaintiffs have also failed to state a constitutional claim with regard to visitation during the relevant time periods. Notably, there are only two claims made by specific Plaintiffs: one (Q.B.) claims that visitation was cancelled whereas the other Plaintiff (T.S.) claims only that his visitation took longer to begin and that it was only for 20 minutes (versus an hour). Pltfs.' Compl. ¶ 41 (d); ¶ 42 (e). These allegations do not give rise to a cause of action under § 1983.

It is well-established that restrictions on visits for individuals in custody do not implicate liberty interests. *See, e.g., Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 461 (1989) (due process clause does not independently protect an inmate's access to a particular visitor); *Lekas v. Briley*, 405 F.3d 602, 605, 607-08, 613 (7th Cir. 2005) (no liberty interest deprived by denial of contact visits plus loss of other privileges); *Dunn v. Castro*, 621 F.3d 1196, 1202-03 (9th Cir. 2010); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gerber v. Hickman*, 291 F.3d 617,

---

gymnasium "occasionally." Pltfs.' Compl. ¶ 43 (c).

7

621 (9th Cir. 2002); *Ramos v. Lamm*, 639 F.2d 559, 580 n.26 (10th Cir. 1980); *see also Cherry v. McCaughtry*, 49 Fed. Appx. 78, at ** 2-3 (7th Cir. Oct. 25, 2003) (unpublished opinion) (a plaintiff's temporary inability to visit his fiancee does not implicate a liberty interest).

In this case, although a disciplinary issue or restriction is not at issue, even if Plaintiffs' allegations are to be believed, there was one instance in which a visitation was cancelled and another instance where the time for a visit was reduced. Neither of these rise to the level of a constitutional violation.

### B. Any alleged infringement of a constitutional right was temporary and does not rise to a constitutional violation

In determining whether there was an "atypical and significant hardship" on Plaintiffs' conditions of confinement, the duration of the alleged deprivation is a significant factor. *See Stephens v. Cottey*, 145 Fed. Appx. 179, (7th Cir. 2005) (unpublished opinion) (citing *Arce v. Walker,* 139 F.3d 329, 336 (2d Cir. 1998)) (noting that courts "place a premium on the duration of the deprivation")). Indeed, restrictions which have last several weeks or even months have not met this standard. *See, e.g.*, *Lekas,* 405 F.3d at 612 (90-day disciplinary segregation with severe restrictions on exercise, group worship, work, and educational opportunities not atypical or significant); *Thomas,* 130 F.3d at 760-62 (70-day confinement with another inmate in one-man cell for 24 hours a day does not implicate liberty interest).

In the instant case, at best, Plaintiffs have alleged short-term modifications or denials of the educational and recreations opportunities they were afforded, as well as shortened visitation periods.[2] See Pltfs.' Compl., generally. Even consideration of the claims in Plaintiffs' favor, there is simply no "extreme" deprivation, *see Delaney v. DeTella,* 256 F.3d 679, 683 (7th Cir. 2001),

---

2 The time frames at issue are six days (June 21-26); four days (July 13-16) and four days (August 23-26)

and the time period in which such conditions were allegedly imposed is not sufficiently lengthy to state a claim. *See Tesch v. County of Green Lake,* 157 F.3d 465, 476 (7th Cir. 1998) (a short-term deprivation is less serious for Eighth Amendment purposes than a long-term one); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996).

**II.     Plaintiffs Have Failed To Plead an Unlawful Seizure**

Plaintiffs claim that the residents of the JTDC were unlawfully seized in violation of the Fourth Amendment when the residents were on "lockdown" in their cells and living pods thereby restraining the residents and preventing them from partaking in activities they would otherwise be entitled to. However, Plaintiffs' claim is belied by their own allegations and does not rise to a constitutional violation.

Official action constitutes a seizure when it deprives a person of some meaningful measure of liberty to which he is entitled. *Leslie v. Doyle*, 125 F.3d 1132, 1135 (7th Cir. 1997). Prisoners have a freedom from restraint, but that restraint must at least impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 483. The analysis turns on the nature of the deprivation. *Sandin*, 515 U.S. at 493.

In this case, the inconveniences that Plaintiffs cite in support of their Fourth Amendment claim certainly are not atypical and significant hardships as related to the ordinary incidents of life at the JTDC. It appears that Plaintiffs' Fourth Amendment claim is premised on the allegation that the residents were confined to their living pods during filming and could not move freely. However, Plaintiffs point out that under normal operations, when the residents are on the pod, they are prohibited from moving freely to prevent altercations. Pltfs.' Compl., ¶ 26. In fact,

---

of 2015.

Plaintiffs acknowledge that unlike adults in most adult facilities, the residents of the JTDC must remain sitting in the same spot at all times while in the pod, must raise his/her hand and receive permission to use the bathroom, and only one resident is allowed to be out of his/her seat at a time. *Id*. ¶ 26 Plaintiffs do not allege that the residents were locked in their cells for days while filming took place. Rather, at best, Plaintiffs have claimed that the residents stayed in their pods and received education, programs, and exercise in those areas as opposed to other areas of the JTDC.

The "deprivations" that Plaintiffs complain of did not impose any atypical and significant hardships. Primarily, the filming of *Empire* only took place on 6 days in June, 2015, 4 days in July, 2015, and 4 days in August 2015. That means, of the 92 days in June, July, and August, the alleged conditions that Plaintiffs complain of totaled 14 days. Certainly those non-consecutive 14 days do not add up to an atypical or significant hardship.

Plaintiffs admit that the residents of the JTDC received school classes. Pltfs.' Compl., ¶ 35 Teachers from the Nancy B. Jefferson School taught their lessons in the pods instead of the classrooms during filming. While Plaintiffs may feel that the education in the pods was less effective, such does not rise to a deprivation that invokes the Fourth Amendment.

Similarly, Plaintiffs' complaints regarding recreation fail to rise to a constitutional deprivation. Plaintiffs admit that the residents were permitted to use gymnasium facilities and their pods for recreational activities and exercise. Pltfs.' Compl., ¶¶ 36, 37 Accepting all of Plaintiffs' allegations as true, the only difference in recreation during filming was that the residents could not use the outdoor recreation yard. However, not using the outdoor recreation yard is not out of the ordinary for prison life. Certainly the residents cannot use the outdoor

recreation yard when it is raining, snowing, or in other inclement conditions. Again, Plaintiffs admittedly received recreation and while it may not have been in the outdoor area, this does not establish an atypical and significant hardship.

Plaintiffs' complaints regarding visitation do not amount to a Fourth Amendment violation either. Again, Plaintiffs admit that visitation took place during filming. Pltfs.' Compl., ¶ 38. As discussed above, while visitations may have been modified, those modifications were not significant hardships and therefore did not violate the Constitution.

Taking all of Plaintiffs' claims, individually or collectively, Plaintiffs have failed to plead a cause of action under the Fourth Amendment. The residents of the JTDC did not suffer a constitutional deprivation because any modifications to "normal operation" did not amount to significant hardships that were atypical of life at the JTDC. Accordingly, Count II of Plaintiffs' First Amended Complaint must be dismissed with prejudice.

### III. Leonard Dixon Is Entitled to Qualified Immunity

Plaintiffs fail to state any violation of constitutionally protected rights of the residents at the JTDC, and as such, Defendant Dixon is entitled to qualified immunity. The Supreme Court has set forth a two-part inquiry to determine whether a government official is entitled to qualified immunity: (1) whether the facts alleged set forth a violation of a constitutional right and (2) whether the right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Akande v. Grounds*, 555 F.3d 586, 589-590 (7th Cir. 2009). Courts have discretion to decide which prong should be addressed first "in light of the circumstances in the particular case [ ]." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Plaintiffs' allegations are not violations of clearly established rights, but rather at best

minor modifications or inconveniences. Plaintiffs claim that Defendants unconstitutionally held education classes in their pods rather than in a classroom; held recreation in indoor gymnasiums or the pods rather than in an outdoor recreation area; canceled some after school extracurricular activities; and shortened some visits. However, none of those allegations amount to violations of clearly established rights. Indeed, even accepting Plaintiffs' claims as true, the residents of the JTDC did receive school classes, did receive recreational and rehabilitation activities, did receive visits, and had medical services available to them. The residents of the JTDC do not have clearly established constitutional rights to education classes in a classroom, to recreation time outside, to visits for a set length of time, or to after school programming such as dance and music. Accordingly, Defendant Dixon is entitled to qualified immunity and the claims against him should be dismissed with prejudice.

## IV. Plaintiffs Have Failed To Plead a Cause Of Action For Breach Of Fiduciary Duty

In Count VII, Plaintiffs bring a state law claim of breach of fiduciary duty against Defendant Dixon. In support of their claim, Plaintiffs make conclusory, and incorrect, allegations that the residents at the JTDC were wards of Defendant Dixon, and as such, Defendant Dixon had a fiduciary relationship with the residents at the JTDC. However, Plaintiffs are mistaken because none of the residents of the JTDC are wards of Defendant Dixon - or anyone else for that matter. The residents of the JTDC are individuals who are awaiting an adjudication proceeding where the court may adjudicate them as wards of the court and commit them to the Illinois Department of Juvenile Justice. Until that adjudication takes place, the parents or guardians maintain their status related to the residents of the JTDC. Accordingly, there is no fiduciary relationship between Defendant Dixon and Plaintiffs' claim must be dismissed with prejudice.

A claim for breach of fiduciary duty must allege two elements: a fiduciary relationship, and a breach of the duties imposed as a matter of law as a result of that relationship. *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1038 (Il. Sup. Ct. 2012). A fiduciary relationship may arise as a matter of law from the existence of a particular relationship, such as an attorney-client or principal-agent relationship, or come about when one party reposes trust and confidence in another, who thereby gains a resulting influence and superiority over the subservient party. *Miller v. Harris*, 985 N.E.2d 671, 679 (Ill. App. Ct., 2nd Dist. 2013).

As noted above, Plaintiffs rest their claim of breach of fiduciary duty on the unsupported conclusion that the residents are "wards" of the Defendant Dixon. In Illinois, "ward of the court" means a minor who is so adjudged under 705 ILCS 405/2-22, 705 ILCS 405/3-23, 705 ILCS 405/4-20 or 705 ILCS 405/5-705 after a finding of the requisite jurisdictional facts, and thus is subject to the dispositional powers of the court under the Juvenile Court Act. 705 ILCS 405/1-3(1) (2016). Plaintiffs have not pled, and indeed cannot plead, that any of the residents were adjudicated wards of the court or Defendant Dixon because none of the residents have been adjudicated as such by a court. Accordingly, there is no fiduciary relationship between the residents of the JTDC and Defendant Dixon and Plaintiffs' claim for breach of a fiduciary duty must be dismissed.

However, even if there was a fiduciary relationship between the residents of the JTDC and Defendant Dixon, Defendant Dixon did not breach any fiduciary duty to those residents. As discussed above, Plaintiffs concede in their complaint that even when filming took place, the residents received their education classes, exercise, recreation, visitations, and other services. Plaintiff has not sufficiently alleged any harm that any residents suffered as a result of the

13

filming. Therefore, even if there was a fiduciary relationship, Defendant Dixon did not breach any duties owed to the residents of the JTDC and Plaintiffs' complaint must be dismissed with prejudice.

### V. Plaintiffs' *Monell* Claim Must Fail As To Cook County

A local governmental entity is liable for damages only if a plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). However, a municipality may not be held vicariously liable under § 1983 for their employees' actions. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). A municipality can be said to have violated the rights of a person because of its policy in one of three ways: "(1) an express policy that, when enforced, causes a constitutional deprivation, (2) a wide-spread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008); *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). A plaintiff must also show that the "official policy or custom not only caused the constitutional violation, but was the 'moving force' behind it." *Estate of Sims v. Cnty. of Bureau*, 505 F.3d 509, 514 (7th Cir. 2007); *see Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997); *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

Ultimately, *Monell* is a case about responsibility, and under § 1983 municipal liability is limited to action for which the municipality is actually responsible. *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). In this case, Plaintiffs allege that Chief

Judge Timothy Evans was the person with final policymaking and decision-making authority regarding the administration and operation of the JTDC, including the decision of whether to allow the filming of *Empire*. Plaintiffs seek to hold Cook County responsible for the alleged decisions of Chief Judge Evans. However, Chief Judge Evans, and all judges of the Circuit Court of Cook County, is a state employee and not an employee of Cook County. Cook County cannot fairly or legally be considered responsible for Chief Judge Evans' actions or the alleged injuries resulting therefrom because Cook County does not have the ability to control any decisions of Chief Judge Evans. Accordingly, the *Monell* claim against Cook County must be dismissed with prejudice.

## VI. Plaintiffs' Claim Of Intentional Infliction Of Emotional Distress Fails

In the interest of brevity, Defendants adopt and incorporate the argument set forth by the Fox Defendants in their Motion to Dismiss Plaintiffs' complaint. Additionally, Plaintiffs' claim for Intentional Infliction of Emotional Distress ("IIED") is time barred as related to Defendant Dixon.

"The limitations period for tort claims, such as intentional infliction of emotional distress, against governmental entities and their employees...is only one year pursuant to 745 ILCS 10/8-101." *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006). The Seventh Circuit has held "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. Ill. 2009) (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75, 85 (Ill. Sup. Ct. 2003)). While it is unclear from Plaintiffs' complaint what conduct on behalf of the defendants was extreme and

outrageous, it can only be assumed that the IIED claim is premised on the same allegations regarding school classes, recreation, programs, and visits. Plaintiffs filed their first complaint on August 24, 2016. As such, the IIED claim cannot be based on actions that occurred prior to August 24, 2015. Plaintiffs fail to allege actions that occurred after August 24, 2015 and therefore the IIED claim should be dismissed with prejudice as it is barred by the statute of limitations.

**VII.    Plaintiffs' Claims of Conspiracy Must Fail**

In the interest of brevity, Defendants adopt and incorporate the argument set forth by the Fox Defendants in their Motion to Dismiss Plaintiffs' complaint. Additionally, as discussed above, Plaintiffs' state law conspiracy claim fails as to Defendant Dixon because it is barred by the one year statute of limitations.

                                      Respectfully submitted,

                                      KIMBERLY M. FOXX
                                      State's Attorney of Cook County

                                  By:  /s/ Thomas E. Nowinski
                                          Thomas E. Nowinski
                                          Assistant State's Attorney
                                          Cook County State's Attorney's Office
                                          500 Richard J. Daley Center
                                          Chicago, Illinois 60602
                                          (312) 603-4327