# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

## EASTERN DIVISION

T.S. *et al.,*

            Plaintiffs.

        v.

Twentieth Century Fox Television, a division of
Twentieth Century Fox Film Corporation *et al.*,

            Defendants.

Case No. 1:16-cv-08303

Honorable Judge Amy J. St. Eve

## MEMORANDUM IN SUPPORT OF THE FOX DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ..................................................................................................... 6

I. THE FEDERAL CLAIMS AGAINST THE FOX DEFENDANTS SHOULD BE DISMISSED ............. 6

    A. PLAINTIFFS' HAVE NOT ALLEGED A VIOLATION OF ANY PROTECTED RIGHT ........ 6

    B. PLAINTIFFS' § 1983 CLAIMS SHOULD BE DISMISSED BECAUSE THE FOX DEFENDANTS DID NOT ACT UNDER COLOR OF STATE LAW (COUNTS I, II, IV, V, VI) ................................................................................................. 7

        1. The Governing Law. ................................................................. 8

        2. Plaintiffs do not, and cannot, allege that the Fox Defendants shared a common, unconstitutional goal with Cook County................................. 9

        3. The few cases finding joint action by the media are inapposite here................................................................................................. 12

    C. PLAINTIFFS' CONSPIRACY CLAIM ALSO FAILS ..................................................... 15

    D. PLAINTIFFS' "RESPONDEAT SUPERIOR" CLAIM HAS NO CONCEIVABLE BASIS IN SEVENTH CIRCUIT JURISPRUDENCE....................................................... 17

II. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED................................................. 18

    A. PLAINTIFFS' CLAIM FOR INDUCEMENT TO BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED......................................................................... 18

    B. PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED ....................................................... 19

    C. PLAINTIFFS' CLAIM FOR CIVIL CONSPIRACY SHOULD BE DISMISSED ................... 21

    D. PLAINTIFFS' STATE LAW RESPONDEAT SURPERIOR CLAIM SHOULD BE DISMISSED ................................................................................................. 21

CONCLUSION...................................................................................................... 22

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. City of Indianapolis,*
742 F.3d 720 (7th Cir. 2014) ................................................................3

*Adcock v. Brakegate, Ltd.,*
164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888 (1994) ...........................21

*Alexander v. Wexford Institutional,*
No. 16-CV-949-SMY, 2016 WL 6582652 (S.D. Ill. Nov. 7, 2016) ................17

*American Manufacturers Mutual Insurance. Co. v. Sullivan,*
526 U.S. 40 (1999) .........................................................................8

*Anderson v. Blake,*
No. CIV-05-0739-H, 2005 WL 2716302 (W.D. Okla. Oct. 21, 2005) .............12, 15

*Arita v. Wexford Health Sources, Inc.,*
No. 15-CV-1173, 2016 WL 6432578 (N.D. Ill. Oct. 31, 2016) ....................17

*Arlotta v. Bradley Center,*
349 F.3d 517 (7th Cir. 2003) ...............................................................7

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ...................................................................6, 7

*Bell Atlantic Corp., v. Twombly,*
550 U.S. 544 (2007) ......................................................................6, 7

*Berger v. Hanlon,*
129 F.3d 505 (9th Cir. 1997) .........................................................12, 13, 14

*Borsellino v. Goldman Sachs Group, Inc.,*
477 F.3d 502 (7th Cir. 2007) .............................................................18

*Brokers' Choice of America, Inc. v. NBC Universal, Inc.,*
757 F.3d 1125 (10th Cir. 2014) ...........................................................11

*Brown v. JP Morgan Chase Bank,*
No. 08-1890, 2009 WL 1761101 (7th Cir. June 23, 2009) ...........................7

*Brunette v. Humane Society of Ventura County,*
294 F.3d 1205 (9th Cir. 2002) ..........................................................9, 11, 12, 13

*C.H. v. Grossman*,
No. 14 C. 8174, 2015 WL 4554774 (N.D. Ill. July 28, 2015) ..................................19

*Chatham v. Davis*,
839 F.3d 679 (7th Cir. 2016) .........................................................................................17

*Collins v. Womancare*,
878 F.2d 1145 (9th Cir. 1989) .........................................................................................9

*Conradt v. NBC Universal, Inc.*,
536 F. Supp. 2d 380 (S.D.N.Y. 2008)......................................................................13, 14

*Cunningham v. Southlake Center for Mental Health, Inc.*,
924 F.2d 106 (7th Cir. 1991) ...........................................................................9, 15, 17

*Dennis v. Sparks*,
449 U.S. 24 (1980)............................................................................................................8

*Frederick v. The Biography Channel*,
683 F. Supp. 2d 798 (N.D. Ill. 2010) ......................................................................13, 14

*Fries v. Helsper*,
146 F.3d 452 (7th Cir. 1998) ...........................................................................9, 10, 15

*Green v. Harrah's Illinois Corp.*,
No. 03 C 2203, 2004 WL 1102272 (N.D. Ill. Apr. 30, 2004)..................................16

*Hanania v. Loren-Maltese*,
212 F.3d 353 (7th Cir. 2000) ...................................................................................15, 16

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ...........................................................................................3

*Hill v. Shobe*,
93 F.3d 418 (7th Cir. 1996) ............................................................................................7

*Jackson v. E.J. Branch Corp.*,
176 F.3d 971 (7th Cir. 1999) ..........................................................................................6

*Jones v. UPS Ground Freight, Inc.*,
No. 15 C 7991, 2016 WL 826403 (N.D. Ill. March 3, 2016) ..................................21

*Laba v. Chicago Transit Authority*,
No. 14 C 4091, 2014 WL 5822336 (N.D. Ill. Nov. 10, 2014)............................21

*Lujano v. Town of Cicero*,
691 F. Supp. 2d 873 (N.D. Ill. 2010) ...........................................................................20

*McClure v. Owens Coming Fiberglas Corp.*,
    188 Ill. 2d 102, 720 N.E.2d 242 (1999) ........................................................................21

*Moore v. Marketplace Restaurant, Inc.*,
    754 F.2d 1336 (7th Cir. 1985) ........................................................................................8

*National Collegiate Athletic Ass'n v. Tarkanian*,
    488 U.S. 179 (1988) ........................................................................................................8

*Pappas v. Buck Consultants, Inc.*,
    923 F.2d 531 (7th Cir. 1991) ........................................................................................19

*Rosenblum v. Travelbyus.com, Ltd.*,
    299 F.3d 657 (7th Cir. 2002) ..........................................................................................3

*Rubloff Development. Group, Inc., v. SuperValu, Inc.*,
    863 F. Supp. 3d 732 (N.D. Ill. 2012) ...........................................................................18

*Serbalik v. Gray*,
    27 F. Supp. 2d 127 (N.D.N.Y. 1998) ...........................................................................14

*Shields v. Illinois Department of Corrections*,
    746 F.3d 782 (7th Cir. 2014) ........................................................................................17

*Smith v. Gomez*,
    550 F.3d 613 (7th Cir. 2008) ........................................................................................15

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .....................................................................................................7

*Starnes v. Capital Cities Media, Inc.*,
    39 F.3d 1394 (7th Cir. 1994) ....................................................................................9, 10

*Swearnigen-El v. Cook County Sheriff's Department*,
    602 F.3d 852 (7th Cir. 2010) ........................................................................................19

*Terra Foundation for the Arts v. Perkins*,
    151 F. Supp. 2d 931 (N.D. Ill. 2001) .........................................................................8, 10

*Tiwari v. NBC Universal, Inc.*,
    No. C-08-3988 EMC, 2011 WL 5079505 (N.D. Cal. Oct. 25, 2011) ...........................14

*Tom Beu Xiong v. Fischer*,
    787 F.3d 389 (7th Cir. 2015) ........................................................................................15

*Welsh v. Commonwealth Edison Co.*,
    306 Ill. App. 3d 148, 713 N.E.2d 679 (1999) ...............................................................20

*Young v. Suffolk County, et. al.,*
    922 F. Supp. 2d 368 (E.D.N.Y. 2013) ..................................................................................14

**Statutes**

5 ILCS 140/1.2 .............................................................................................................................4

5 ILCS 140/2.5 .............................................................................................................................4

42 U.S.C. § 1983 ................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .................................................................................................................6

Fed. R. Civ. P. 12(b)(6) ......................................................................................... *passim*

Defendants Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation ("TCFTV"), Fox Broadcasting Company, Fox Entertainment Group, LLC, Fox Networks Group, Inc., and Twenty-First Century Fox, Inc. (collectively the "Fox Defendants"), by and through their undersigned attorneys, hereby submit this Memorandum In Support of their Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support thereof state as follows:

## INTRODUCTION

*Empire* is a popular television show, produced by TCFTV, that airs on the Fox television network. Although this scripted show is set in New York City, it is filmed principally in and around Chicago. For two episodes that aired in Fall 2015, TCFTV needed to film scenes in a prison setting. TCFTV scouted the Cook County Juvenile Temporary Detention Center (the "JTDC") as a possible filming location. Ultimately, TCFTV signed a Location Agreement with Cook County that allowed TCFTV, and the cast and crew of *Empire*, to access specified areas of the JTDC for filming. Pursuant to the agreement, Cook County allowed TCFTV to access the JTDC *only* if "normal operations of the [JTDC] and its occupants, and access by the public, are not disrupted in any manner whatsoever." Declaration of Catherine E. James dated Dec. 5, 2016, (hereafter "James Decl.") Ex. A (hereafter "Location Agreement") ¶ 1(D). Filming occurred on a total of six days in June, July, and August 2015, with TCFTV having access for 12 days.

Plaintiffs here are two then-17 year-old temporary detainees at the JTDC who claim that the conditions of their detention deteriorated during the days that TCFTV was on location at the JTDC. They allege, in particular, that their schooling activities were less productive and their recreation options and visitation time were curtailed. Asserting that these changes to their routines violated their constitutional rights, they have sued both governmental defendants and the Fox Defendants under 42 U.S.C. § 1983, and for various state law violations.

1

Plaintiffs' Complaint against the Fox Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for two main reasons.

First, as detailed in the motions to dismiss filed by the governmental defendants, which the Fox Defendants join, any disruptions to the Plaintiffs' detention routines did not rise to the level of constitutional violations, and therefore cannot support claims against *any* defendant under 42 U.S.C. § 1983 or otherwise.

Second, even if the Court concludes that Plaintiffs have asserted valid § 1983 claims against the government, Plaintiffs' allegations do not support a "joint action" claim or any state law claim against the Fox Defendants. "Joint action" requires allegations that the government and a private party had a "common, unconstitutional goal" to deny plaintiffs their constitutional rights. These Plaintiffs do not, and cannot, make such a claim, because TCFTV only reached an agreement to access areas of the JTDC for filming, and nothing more. In fact, the Location Agreement's flat prohibition on TCFTV's presence causing disruptions to normal JTDC operations negates any argument that TCFTV had an unconstitutional goal. Plaintiffs' conclusory allegations that TCFTV "knew" its filming would result in a "lockdown"[1] is nothing more than baseless conjecture insufficient to survive a motion to dismiss.

Plaintiffs fare no better by restating essentially the same claims under the state law rubrics of "inducement to breach a fiduciary duty," "intentional infliction of emotional distress" ("IIED"), and "civil conspiracy." These state law claims all require the same type of active engagement by the Fox Defendants in decisions about Plaintiffs' conditions of confinement that Plaintiffs cannot allege. Plaintiffs' IIED claim then fails for the additional reason that this tort requires "extreme

---

[1] As explained in the Chief Judge's motion — Dkt. No. 44 at 6 n.1 — "lockdown" is a term of art in the parlance of corrections that describes prison inmates being restricted to their cells. That is not what Plaintiffs allege here, and their use of the term is just more inflammatory rhetoric.

and outrageous" conduct that Plaintiffs' allegations here of missed recreation time, disrupted classes, and missed or shortened visitations fail to satisfy.

By this motion, the Fox Defendants do not seek to denigrate Plaintiffs' perceptions of poor detention conditions. It is clear, however, that Plaintiffs' claims against the Fox Defendants are not supported by the facts or any cognizable legal theory, and cannot stand. For all these reasons, as explained further below, Plaintiffs' claims against the Fox Defendants should be dismissed.

## STATEMENT OF FACTS

The Complaint alleges that the Fox Defendants[2] needed "a realistic prison facility to use" in filming scenes from *Empire*, Compl. at "Introduction," and that "one or more of the Fox Defendants . . . entered into an agreement that *Empire*'s film crew would be permitted to film at the JTDC," *id.* ¶ 29. In fact, on June 18, 2015, TCFTV signed the Location Agreement permitting the cast and crew of *Empire* to access limited areas of the JTDC for filming. The original Location Agreement contemplated five days of access, from Monday, June 22 through Friday, June 26, 2015, with TCFTV agreeing to pay $1,500 per day for access, plus reimbursement of certain costs for janitorial and security personnel. *See generally* Location Agreement.[3] Cook County and

---

[2] Aside from TCFTV, none of the Fox Defendants had or are alleged to have had anything to do with filming at the JTDC. Plaintiffs' explanation for including all of the Fox Defendants in this case is that "[p]rofits from the episodes" of *Empire* that were partially filmed at the JTDC allegedly "flowed through Fox Networks Group, Inc. and Fox Entertainment Group LLC" to the ultimate parent company, defendant Twenty-First Century Fox, Inc. *Id.*

[3] Plaintiffs elected not to attach the Location Agreement and its addenda to their Complaint, but that does not preclude the Court from considering it on a motion to dismiss. It is well settled that courts may consider documents outside the complaint in adjudicating Rule 12(b)(6) motions where those documents are referenced in the complaint or publicly available and central to the plaintiffs' allegations. *See, e.g., Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to [plaintiff's] claim."); *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (district court properly considered over 900 pages of documents not attached to the complaint; "This court has been relatively liberal in its approach" to permitting consideration of materials "central" to a complaint.); *Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661-62

TCFTV subsequently entered into two addenda to the Location Agreement permitting access on additional days. The first, dated July 7, 2015, allowed access from July 13-16, 2015; the second, dated August 18, 2015, allowed access from August 23-25, 2015. *See* James Decl. Exs. B-C; Compl. ¶ 30 (alleging three periods of access). The addenda called for the same payment of $1,500 per day of access, plus reimbursement of janitorial and security costs.

Plaintiffs' Complaint alleges (at ¶ 29) that Cook County's agreement with TCFTV "contemplated that . . . [JTDC detainees] would be barred from [the locations to which TCFTV was granted access] so that the film crew would work without interruption." The Location Agreement, however, proves that statement to be false. Pursuant to the Location Agreement, in a provision left unchanged by the addenda, TCFTV "acknowledge[d] that the [JTDC] is a functioning Municipal Building" and agreed to "cooperate with the County, JTDC Administration, and Security . . . so that normal operations of the [JTDC] and its occupants, and access by the public, are not disrupted in any manner whatsoever." Ex. A ¶ 1(D). The Location Agreement further prohibited TCFTV from "filming any residents or staff of the JTDC or even from filming "signs, seals, insignias or other marks or symbols identifying the premises as a juvenile detention facility of the Circuit Court of Cook County." *Id.* ¶ 1(E).

Plaintiffs assert that JTDC officials made a number of changes to detainees' usual routines while TCFTV was on the JTDC premises.[4] For example, the Complaint alleges that Plaintiffs

---

(7th Cir. 2002) (affirming reliance on employment agreement attached to motion to dismiss even where document was not expressly referred to in complaint but where document was central to claims). Further, the Location Agreement and its addenda are public documents pursuant to 5 ILCS 140/1.2 (all "public records" are open to public access) and 5 ILCS 140/2.5 (records relating to "receipt of funds" by public agencies specifically are open to access).

[4] According to the Complaint, the JTDC houses between 250 and 400 detainees at any one time, ranging in ages from 10 to 18. Compl. ¶ 12. "The average stay for a child at the JTDC is three weeks." *Id.* The Complaint does not specify either of the two plaintiffs' time of detention or the number of days that they were present at the JTDC during *Empire*'s filming. Notably, the second

could not take recreation in the outdoor yard of the JTDC when TCFTV was filming in the yard, and that their other recreation options were limited. *See* Compl. ¶ 36. It also alleges that each plaintiff had a family visitation canceled or curtailed as a result of filming. *See id.* ¶ 38.

With regard to schooling activities, the Complaint contends that classes shifted on filming days from the JTDC's classroom spaces to the facility's residential "pods." Plaintiffs contend that when classes were conducted in the pods during filming days, detainees "all [had to] remain sitting in the same spot, at all times," and to raise their hands if they wished to visit the restroom "or otherwise leave [their] seat[s]." Compl. ¶ 26. Standing without permission "is punishable as a 'major rule violation.'" *Id.* Elsewhere, however, the Complaint alleges that the class environment during filming days was not one of enforced decorum, but instead was "chaotic" and "out of control." *Id.* ¶¶ 41(b), 42(d). Another allegation, made on behalf of an anonymized person who is not a plaintiff, was that classes taught in the pods were "ineffective," because there allegedly was no white board for writing and because "the teachers brought few materials." *Id.* ¶ 43(b). Another anonymized non-plaintiff describes the classes conducted in the pods only as "much less effective" than when classes were conducted in their normal locations, and that some teachers did not come to their scheduled lessons. *Id.* ¶ 45(b).

The most inflammatory charge in the Complaint is that TCFTV used the JTDC's infirmary during filming (it did not), and that because of the purported closing of the infirmary, "numerous sick calls were ignored." Compl. ¶ 39. *See also id.* ¶¶ 41(c); 42(d). Plaintiffs, however, do not allege that this happened to them personally; do not identify, even anonymously, any person who was treated for an illness any less promptly on a day that TCFTV was present than he would have

---

period of filming began 22 days after the first began, while the third period began 41 days after the second. S*ee id.* ¶ 30; Exs. A-C.

been on any other day; and do not say that they personally observed the infirmary being closed or, in the absence of personal observations, state their basis for believing it was closed.

Even taking all of Plaintiffs' claims as true, the Complaint does not allege any Fox Defendant's participation in decisions made by the government about detainee treatment. Plaintiffs allege in bare terms that "[all] Defendants knew that filming *Empire* at the JTDC would result in the lockdowns and attendant restrictions on the children housed there." Compl. ¶¶ 29, 75. Later, the Complaint lumps the Fox Defendants into an equally bare assertion that "the Defendants deliberately placed the children housed at the JTDC on lockdown in their cells and pods," *id.* ¶ 82, and contends that the Fox Defendants "willfully induced and participated" or even "encouraged" the poor conditions, *id.* ¶ 93. But the Complaint alleges no facts supporting their claim that the Fox Defendants had such knowledge, that they requested changes to the JTDC's normal operations, or that they agreed with the government that any changes should be imposed.

<u>**ARGUMENT**</u>[5]

## I. THE FEDERAL CLAIMS AGAINST THE FOX DEFENDANTS SHOULD BE DISMISSED

### A. PLAINTIFFS' HAVE NOT ALLEGED A VIOLATION OF ANY PROTECTED RIGHT

Cook County's and the Chief Judge's motions to dismiss both explain that Plaintiffs' claims of changes in their schooling, recreation, and visitation routines during the filming of

---

[5] In ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a court must assume as true all well-pleaded facts set forth in the complaint. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). At the commencement of litigation, a plaintiff is required put forth a "short plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). However, this requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements." *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, the plaintiff must include sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is plausible on its face where the alleged facts allow the court to draw a reasonable inference that the defendant is liable. *Id.* A complaint cannot survive based solely on the mere possibility that a plaintiff might, after discovery, establish some "set of undisclosed facts" which would support

*Empire* at the JTDC do not amount to constitutional deprivations cognizable under 42 U.S.C. § 1983. *See* Dkt. No. 44 at 5-11; Dkt. No. 48 at 3-10. The Fox Defendants join those motions. With regard to Plaintiffs' claims that unnamed other detainees at the JTDC allegedly had their sick calls ignored during filming, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016), *quoting Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (internal quotations omitted). Plaintiffs' attempt to bootstrap their personal claims to these undetailed harms allegedly suffered by unnamed others fails to satisfy § 1983.

The Court should dismiss Plaintiffs' claims against the government, and if it does, Plaintiffs' claims against the Fox Defendants must be dismissed, as well. *See, e.g., Arlotta v. Bradley Center*, 349 F.3d 517, 524 (7th Cir. 2003); *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996)

### B. PLAINTIFFS' § 1983 CLAIMS SHOULD BE DISMISSED BECAUSE THE FOX DEFENDANTS DID NOT ACT UNDER COLOR OF STATE LAW (COUNTS I, II, IV, V, VI)

Even if the Court finds that Plaintiffs have stated a claim against any of the governmental defendants, the Court still should dismiss their claims against the Fox Defendants. The Supreme Court and the Seventh Circuit have enacted a high bar that plaintiffs must clear to hold private parties liable alongside the government for constitutional violations: The private party and the government must have *shared the goal* to deprive the *plaintiffs in particular* of their constitutional rights. Here TCFTV sought only to gain access to a realistic prison setting to film scenes for

---

recovery. *Twombly*, 550 U.S. at 561. Where the complaint does not establish more than the mere possibility of liability, the plaintiff has failed to show that he is entitled to relief as required by the rules, and the complaint is properly dismissed. *Iqbal*, 129 S. Ct. at 1950; *see also Brown v. JP Morgan Chase Bank*, No. 08-1890, 2009 WL 1761101, at *1-2 (7th Cir. June 23, 2009).

*Empire*.[6]  Plaintiffs do not allege that the Fox Defendants sought to violate or approved the violation of their or anyone else's rights, and the Location Agreement's express ban on TCFTV's having any impact whatsoever on normal JTDC operations precludes any such claim.

1.  The Governing Law.

Claims under 42 U.S.C. § 1983 assert violations of rights "secured by the Constitution and laws of the United States" where the violations are committed "under color of" state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (internal quotation omitted).  Such claims only may be brought against defendants who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it."  *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal citations omitted).

Private parties can be found to have acted "under color of law" only if they were "willful participants in joint action with the State."  *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).[7]  The Seventh Circuit, in post-*Dennis* cases, has determined that private parties cannot be sued on a "joint action" theory unless "the state officials and the private party somehow reached an understanding to deny the plaintiffs their constitutional rights."  *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985).  In order to establish the requisite joint action, § 1983 plaintiffs must show

---

[6] Although Plaintiffs' Complaint lumps together TCFTV and the other Fox Defendants, it was only employees and contractors of TCFTV that scouted the JTDC as a possible filming location, made the decision to film at the JTDC, and were present for that filming.  As explained *infra* in Section 1.D., claims under 42 U.S.C. § 1983 cannot be brought against corporate entities under a theory of *respondeat superior*.  Even to the extent that Plaintiffs can be said to have stated a claim against any Fox corporate entity in this matter, TCFTV is the only conceivable corporate defendant. Plaintiffs' attempt to implicate parent companies in this matter, simply because profits related to the sale of advertising time slots during the airing of the episodes partially filmed at the JTDC, has no precedent and no support in governing law.

[7] The Supreme Court has set forth four tests for when private action is state action: the "public function" test, the "state compulsion" test, the "nexus" test, and the "joint action" test.  *Terra Foundation for the Arts v. Perkins,* 151 F. Supp. 2d 931, 935-36 (N.D. Ill. 2001), *citing Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982).  Plaintiffs here only assert a joint action theory.

"that both private and public actors share a common, unconstitutional goal." *Cunningham v. Southlake Center for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991). Absent a "common, unconstitutional goal," claims cannot stand.

The Seventh Circuit finds Rule 12(b)(6) dismissal appropriate where, as here, the plaintiffs made no viable allegation of a "common, unconstitutional goal." *See, e.g., Starnes v. Capital Cities Media, Inc.*, 39 F.3d 1394, 1397 (7th Cir. 1994) (affirming dismissal because the plaintiff alleged no improper agreement between state actors and the media who published unflattering information about the plaintiff). In *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998), the Court held again that "mere allegations of joint action or a conspiracy do not demonstrate that" private and public actors shared a common, unconstitutional goal, "and are not sufficient to survive a motion to dismiss." The *Fries* claims failed because "[n]othing in the complaint demonstrate[d] the existence of any joint action, concerted effort, or even a general understanding between" the private and public actors to violate the plaintiff's rights. *Id.* Accord *Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205 (9th Cir. 2002) (upholding dismissal of § 1983 claims because actions by members of the media were not "'inextricably intertwined' with those of the government") (citations omitted); *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) ("Joint action therefore requires a substantial degree of cooperative action.").

2. Plaintiffs do not, and cannot, allege that the Fox Defendants shared a common, unconstitutional goal with Cook County.

Plaintiffs' claims fail under the well-established law of this Circuit, because Plaintiffs have not alleged an actual agreement or understanding between any Fox Defendant and JTDC officials to violate Plaintiffs' constitutional rights. At most, Plaintiffs allege knowledge by TCFTV "that filming *Empire* at the JTDC would result in . . . restrictions on the children housed there." Compl. ¶ 83. But even were that true, and it is not, Plaintiffs do not and cannot allege that TCFTV or any

other Fox Defendant "reached an understanding" with JTDC officials "to deny the plaintiffs their constitutional rights." *Starnes*, 39 F.3d at 1397.

TCFTV's only goal in filming at the JTDC, as the Complaint acknowledges in its "Introduction" on page 1, was to gain access to "a realistic prison facility to use" as a film set. And the only "agreement" it reached with governmental officials was the Location Agreement, which specifically precluded TCFTV from having any impact at all on JTDC operations. The Complaint does not allege that TCFTV asked to disrupt detainees' routines, and in the Location Agreement, Cook County told TCFTV to expect that its filming activities must not cause any disruptions. TCFTV's modest payment of $1,500 per day, plus reimbursement of janitorial and security costs, hardly constituted a credible motive for JTDC officials to permit disruptions. And, most importantly, Plaintiffs allege no facts suggesting that even if JTDC officials did modify detainees' routines to accommodate TCFTV's filming, TCFTV (or any other Fox Defendants) knew about it, beyond the obvious inference that TCFTV knew detainees could not be where the cast and crew were. The Complaint contains only the bare and conclusory allegation that "Defendants knew that filming *Empire* at the JTDC would result in the . . . [claimed] restrictions on the children housed there," and "knew that [these alleged conditions] violated the children's rights." Compl. ¶¶ 75-76. Courts reject this sort of "hypothetically unconstitutional goal[]" at the pleading stage. *Terra Foundation for the Arts v. Perkins*, 151 F. Supp. 2d 931, 936 (N.D. Ill. 2001). *See also Fries*, 146 F.3d at 458.

This is not the first § 1983 case in which plaintiffs have tried to rope in private media defendants alongside governmental actors. Prior cases usually involved police and media working hand-in-hand to publicize law enforcement activities. Courts around the country have dismissed

"joint action" claims asserted against the media, even where government and the media cooperated in alleged deprivations of rights much more closely than Plaintiffs allege here.

The Tenth Circuit, in *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125 (10th Cir. 2014), rejected "joint action" claims even where state officials produced false identification documents allowing the crew of NBC's *Dateline* program to gain entry to a closed seminar offered by the plaintiff. *Dateline* ultimately aired a program portraying the plaintiff as having "t[aught] insurance agents how to employ misrepresentations and other questionable tactics in order to dupe senior citizens into purchasing inappropriate annuity products." *Id.* at 1131. *Dateline* sought "to film the training program with hidden cameras," but because "only licensed insurance agents" were eligible to attend, "Alabama officials agreed to provide false insurance licenses" to the *Dateline* producers. Although the Court let the plaintiff proceed with a defamation case against NBC for broadcasting a report it allegedly knew to be false, the court upheld the dismissal of the plaintiff's § 1983 claims because of the absence of any improper "agreement" to violate the plaintiffs' constitutional rights. The only agreement between the state and *Dateline* was to facilitate the show's undercover investigation, which was not unlawful. *See id.* at 1148-49.

In *Brunette*, 294 F.3d at 1208, the Ninth Circuit considered the involvement of a reporter in a quasi-governmental agency's execution of search warrant. Agency officials invited the reporter to attend the search, delayed the search for a time convenient to the reporter, and permitted the reporter to enter the private property with them to observe the search and to take photographs for publication in an article about the search. *See id.* The Ninth Circuit affirmed dismissal of the plaintiff's claims of joint liability against the reporter's employer because the plaintiff did not establish "any substantial cooperation or inextricably intertwined activity" between the newspaper and the agency or a conspiracy to violate the plaintiff's rights. *Id.* at 1212.

11

Those failed claims, in cases where media organizations and law enforcement agencies cooperated and jointly interacted with § 1983 plaintiffs, highlight why Plaintiffs' claims here — based on conditions imposed on Plaintiffs solely by government officials, with no participation by TCFTV, and where TCFTV signed an agreement precluding interference with facility operations — should be dismissed pursuant to Rule 12(b)(6).

3. The few cases finding joint action by the media are inapposite here.

In the small handful of cases where courts have let claims against media companies advance beyond the pleading stage, the media defendants had express understandings, absent here, that law enforcement personnel would deviate from normal procedures so that the media could better showcase law enforcement activities. Typical of these cases is *Berger v. Hanlon*, 129 F.3d 505 (9th Cir. 1997). There, the CNN network approached the U.S. Fish & Wildlife Service to discuss a deal whereby CNN would obtain "footage for [its] environmental programs" and the agency would "publicize its efforts combating environmental crime." *Id.* at 508. CNN and an Assistant United States Attorney "executed a letter agreement allowing CNN to accompany [special] agents as they attempt[ed] to execute a criminal search warrant." *Id.* The court found "joint action" in that case because the search, which allegedly violated the plaintiff's rights, "was jointly planned by law enforcement officials and CNN" and "was intended to serve a major purpose other than law enforcement." *Id.* at 509.

*Berger* is an outlying case. Its vitality outside the Ninth Circuit been questioned — *see, e.g., Anderson v. Blake*, No. CIV-05-0739-H, 2005 WL 2716302, at *3 (W.D. Okla. Oct. 21, 2005) (doubting that *Berger* accurately represents other Circuits' standards for joint liability) — and even the Ninth Circuit itself has limited *Berger* to its facts. In *Brunette*, decided five years later, a media organization participated in the execution of a search warrant but did not plan it. The Ninth Circuit distinguished *Berger*, because Brunette's claims, like Plaintiffs' here, involved no "substantial

cooperation or inextricably intertwined activity between the Media and the Humane Society" when reporters only were present during execution of the warrant and law enforcement officials decided for themselves how to carry out their responsibilities. There was no "agreement or . . . conspiracy to violate [the plaintiff's] rights in particular" in *Brunette*, 294 F.3d at 1212, and the facts described by Plaintiffs here do not even rise to the level held insufficient in *Brunette*.

*Frederick v. The Biography Channel*, 683 F. Supp. 2d 798 (N.D. Ill. 2010), and *Conradt v. NBC Universal, Inc.*, 536 F. Supp. 2d 380 (S.D.N.Y. 2008), are two other cases where courts found "joint action," and both, like *Berger*, are entirely distinguishable from Plaintiffs' case. *Frederick* involved a television show called "Female Forces" that "feature[d] [the City of Naperville's] female law enforcement officers." 683 F. Supp. At 799. A male officer, during a routine traffic stop, encountered a female suspect with an outstanding arrest warrant. "[T]he male officer could readily (and immediately) have arrested [the plaintiff] on the warrant," but instead "detained [her] . . . to await the arrival of a female Naperville officer and the camera crew." *Id.* The film crew then recorded the arrest, even though the suspect explicitly declined permission to be filmed, and later aired the arrest, portraying the plaintiff unflatteringly. See *id.* at 800. Judge Shadur held that those detailed facts alleged by the plaintiff showed that the police and the Biography Channel had a "symbiotic relationship" in which they agreed to disregard the rights of civilians, including the plaintiff. For that reason, he allowed the § 1983 claims to proceed. *Id.*

In *Conradt*, police suspected that an assistant district attorney in Texas had solicited sex online from a person he thought to be a minor. Under ordinary circumstances, the search of the suspect's home and potential arrest would have been routine, but the police were working with *Dateline* on an episode in the show's *To Catch a Predator* series. To "sensationalize and enhance the entertainment value" of the search, *id.* at 385, the police brought a SWAT team and more than

13

a dozen police officers to the suspect's home, with guns drawn. The suspect, knowing he was about to be filmed in that situation, killed himself. *See id.* at 386. *Dateline* aired the episode, and the suspect's family eventually sued NBC and the police under § 1983. The court found that the plaintiffs had plausibly alleged the existence of an agreement between NBC and the police "that transformed the execution of the warrants into television entertainment," including that NBC "pushed the police officers into dramatizing their actions for the benefit of the television cameras." *Id.* at 391. *See also Tiwari v. NBC Universal, Inc.*, No. C-08-3988 EMC, 2011 WL 5079505, at *1 (N.D. Cal. Oct. 25, 2011) (also allowing claims to proceed after *To Catch a Predator* crews allegedly instructed law enforcement "to give special intensity to arrests — including rushing targets, surrounding them, hollering at them, throwing them to the ground or against walls, roughly handcuffing them, and draw of weapons — so as to enhance the camera effect.")

In all four of *Berger*, *Frederick*, *Conradt*, and *Tiwari*, the media participants entered into agreements with law enforcement that specifically contemplated deviations from normal police procedures in order to promote "entertainment value" by filming law enforcement operations, all at the expense of persons being filmed. Those elements are missing from Plaintiffs' allegations.

Here, TCFTV signed an agreement that facially precluded any impact on normal JTDC operations. TCFTV did not film the JTDC's activities or JTDC detainees, and Plaintiffs do not allege any facts suggesting that TCFTV or any Fox Defendant condoned, much less had "an agreement" to bring about, any violations of detainees' rights. "[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority." *Serbalik v. Gray*, 27 F. Supp. 2d 127, 131-32 (N.D.N.Y. 1998). Where officials exercise independent judgment in determining their actions, rather than acting at the defendant's direction, the private actor is not a state actor. *See Young v. Suffolk County, et. al.,* 922 F. Supp.

2d 368, 386 (E.D.N.Y. 2013) (collecting cases). The absence of any agreement to violate Plaintiffs' rights is fatal to their claims.

### C. PLAINTIFFS' CONSPIRACY CLAIM ALSO FAILS

Plaintiffs' conspiracy claim fails for the same reasons. "[C]onspiracy is not an independent basis of liability in § 1983 actions . . . ." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). "[A]n actual denial of a civil right is necessary before a cause of action [for conspiracy] arises," *Goldschmidt*, 686 F.2d at 585. Not only does Plaintiffs' Complaint fail to state a claim for denial of a protected constitutional right, but Plaintiffs have not even alleged a meeting of the minds between the government and the Fox Defendants sufficient to state a claim for conspiracy.

To establish § 1983 conspiracy liability, a plaintiff must demonstrate that: (1) a state official and private individuals reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individuals were willful participants in joint activity with the State or its agents. *Fries*, 146 F.3d at 457 (internal citations omitted). "It is well established that 'a bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983.'" *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 398 (7th Cir. 2015), *quoting Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 281 (7th Cir. 1986); *see also Cunningham*, 924 F.2d at 107, *citing Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) ("To prove a conspiracy between private parties and the government under § 1983, an agreement or 'meeting of the minds' to violate constitutional rights must be shown.").

"The generalized allegation of a wink and a nod understanding," which is (at most) all that Plaintiffs allege here, "does not amount to an agreement or conspiracy to violate plaintiff's rights in particular." *Anderson*, 2005 WL 2716302, at *2, *quoting Brunette*, 294 F.3d at 1212. Instead, the plaintiff must allege an explicit agreement that was motivated, at least in part, by the goal of depriving the plaintiffs of their constitutional rights. *See Hanania v. Loren-Maltese*, 212 F.3d 353,

357 (7th Cir. 2000). Plaintiffs cannot allege that TCFTV sought to enter into the Location Agreement with the goal of depriving Plaintiffs of their constitutional rights, when the Agreement says the opposite. This is fatal to their claim of § 1983 conspiracy liability.

*Hanania* helps to illustrate how far short Plaintiffs' claims here fall from sufficiently alleging a "conspiracy" under § 1983. There, a lawyer for a plaintiff suing the City of Cicero desired to obtain legal business from Cicero and, to further that goal, allegedly colluded with Cicero to cause his client to sign an allegedly worthless settlement agreement. *See* 212 F.3d at 357. The plaintiff filed a § 1983 claim, alleging that her lawyer conspired with Cicero to extinguish her case. *See id.* at 355-56. The Seventh Circuit affirmed dismissal, finding that although "greed" may have caused the lawyer to act improperly, he did not set out to deprive his client of her constitutional rights. *Id.* Accordingly, the plaintiff had no § 1983 claim for conspiracy.

This Court, in *Green v. Harrah's Illinois Corp.*, No. 03 C 2203, 2004 WL 1102272, at *3 (N.D. Ill. Apr. 30, 2004), noted that "courts have found joint action, or a conspiracy, between private actors and police when 'the police allow [a] security guard's judgment about whether probable cause exists to be substituted for their own." The Court granted summary judgment to the defense in *Green* because the plaintiff had no evidence "that the police allowed such substitution of judgment." *Id.* Here, Plaintiffs do not even *allege* any substitution of judgment. The Fox Defendants, of course, had no authority whatsoever over JTDC detainees, and Plaintiffs do not allege that any Fox Defendant even asked for unusual restrictions to be placed on detainees. *See id.* at *4 (rejecting conspiracy theory where police did not even speak to the plaintiff). As this Court held in *Green*, "cobbl[ing] together a conspiracy theory" does not suffice. *Id.*

Plaintiffs here rely on nothing more than innuendo and surmise in cobbling together a conspiracy theory. Plaintiffs do not allege that the Fox Defendants had any improper motive, and

they acknowledge that TCFTV's only goal was to film scenes for a fictional television show in a realistic prison setting. Even if the result of TCFTV's presence at the JTDC was a violation of Plaintiffs' constitutional rights — and the Fox Defendants do not believe Plaintiffs have alleged such a violation — Plaintiffs do not and cannot allege that the Fox Defendants intended any violation or agreed to the conduct that purportedly caused it. *See, e.g., Cunningham*, 924 F.2d at 108 (plaintiff alleging a § 1983 conspiracy claim must allege that "each of the joint actors was in some part motivated by [a] unconstitutional purpose"). Thus, they have failed to allege § 1983 liability through a conspiracy theory.

### D. PLAINTIFFS' "RESPONDEAT SUPERIOR" CLAIM HAS NO CONCEIVABLE BASIS IN SEVENTH CIRCUIT JURISPRUDENCE

Plaintiffs purport to bring a "respondeat superior" claim against the Fox Defendants for violations of § 1983, but the Seventh Circuit has repeated time and again, as recently as October 2016, that respondeat superior claims cannot be asserted under § 1983 against governmental defendants *or* private corporations. *See, e.g., Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016).[8] A corporate entity can be sued under Section 1983 only if the plaintiffs allege that the unconstitutional deprivations occurred as the result of a "policy or custom of the corporation." *See, e.g., Alexander v. Wexford Institutional*, No. 16-CV-949-SMY, 2016 WL 6582652 (S.D. Ill. Nov. 7, 2016); *Arita v. Wexford Health Sources, Inc.*, No. 15-CV-1173, 2016 WL 6432578 (N.D. Ill. Oct. 31, 2016). Here, Plaintiffs do not allege any "custom or practice" of any Fox Defendant,

---

[8] In *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 795-96 (7th Cir. 2014), the Seventh Circuit suggested it might consider permitting a respondeat superior claim to proceed against the private operator of a prison, but the Court has never done so, and has instead repeatedly reaffirmed a total bar against respondeat superior claims under Section 1983. The Fox Defendants, moreover, who had no contact with or authority over detainees, cannot be analogized to the operators of a prison.

and could not do so, given the singular and transient nature of the filming at the JTDC. Plaintiffs'

claims against all the corporate entities in this case, therefore, should be dismissed.

## II.  PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED

### A.  PLAINTIFFS' CLAIM FOR INDUCEMENT TO BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED

Plaintiffs' claim for inducement to breach fiduciary duty is indistinguishable from their

claim of joint action. They assert that the governmental defendants in this case had fiduciary duties

to them and that one or more of the Fox Defendants "induced" the governmental defendants

(presumably, by means of the $1,500-per-day access fee paid to Cook County pursuant to the

Location Agreement) to breach that duty. But Plaintiffs have not alleged any facts to support this

claim under a state law theory any more than they have done so under § 1983.

In Illinois, to hold a third party liable for inducement to breach fiduciary duty, three

elements must be present: (1) a third party must have colluded with a fiduciary in committing a

breach of duty; (2) the third party must have induced or participated in such breach; and (3) the

third party must have obtained benefits therefrom. *See, e.g, Borsellino v. Goldman Sachs Group,*

*Inc*., 477 F.3d 502 (7th Cir. 2007), *citing Regnery v. Meyers,* 287 Ill. App. 3d 354, 679 N.E.2d 74,

80 (1997). The governmental defendants' motions explain why no breach of any fiduciary duty

occurred in this case, and if the Court dismisses Plaintiffs' claims on that basis, as it should,

Plaintiffs' claims against the Fox Defendants necessarily fail, too. *See Rubloff Devel. Group, Inc.,*

*v. SuperValu, Inc.,* 863 F. Supp. 3d 732, 749 (N.D. Ill. 2012) ("A predicate to any liability based

on a theory of an inducement of a breach of fiduciary duty is the existence of a fiduciary duty in

the first instance.") (internal citations omitted).

But, even if the Court does not dismiss Plaintiffs' breach claims against the government,

Plaintiffs' "inducement" claims against the Fox Defendants still fail, because Plaintiffs do not and

cannot allege any "participation" by the Fox Defendants in any decisions respecting the treatment of detainees. The Seventh Circuit has described the requisite level of involvement by the non-fiduciary as "knowingly participating with a fiduciary in a breach of fiduciary trust." *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531, 542 (7th Cir. 1991), *quoting Nieto v. Ecker¸* 845 F.2d 868, 874 (9th Cir. 1988). The absence of such allegations is fatal to Plaintiffs' claims. Finally, although Plaintiffs assert that the Fox Defendants benefited from TCFTV's having *access* to the JTDC to film scenes for *Empire*, Plaintiffs do not and cannot allege any benefit that flowed to any Fox Defendant specifically from the conditions the government allegedly imposed on Plaintiffs while TCFTV was present at the JTDC. Plaintiffs' claim therefore should be dismissed because they are missing all three elements necessary to support it — the existence of a fiduciary duty, participation by the Fox Defendants, and a benefit conferred upon the Fox Defendants.

### B. PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED

The hurdle a plaintiff must clear to allege cognizably a claim for intentional infliction of emotional distress ("IIED") is one of the highest in Illinois common law, and these Plaintiffs have not remotely surmounted it. An IIED plaintiff must allege facts sufficient to demonstrate that "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). Meeting this standard requires that "the defendants' conduct must be so extreme as to go beyond all bounds of decency, and to be regarded as intolerable in a civilized community." *Id.*, *quoting Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). *See, also, e.g., C.H. v. Grossman*, No. 14 C. 8174, 2015 WL 4554774, at *3 (N.D. Ill. July 28, 2015) (rejecting IIED claims that "d[id] not even approach the level of conduct required").

19

"Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances." *Lujano v. Town of Cicero*, 691 F. Supp. 2d 873 (N.D. Ill. 2010), *quoting Graham v. Commonwealth Edison Co*., 318 Ill.App.3d 736, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000). A plaintiff cannot premise a claim based on "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Id.* "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Welsh v. Commonwealth Edison Co*., 306 Ill. App. 3d 148, 155, 713 N.E.2d 679 (1999), *quoting Public Fin. Corp. v. Davis*, 66 Ill. 2d 85, 360 N.E.2d 765 (1976). That no Fox Defendant interacted with detainees makes this claim impossible to allege in the best of circumstances, and Plaintiffs' allegations fall far short of the type of activities that courts have found sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress.

Plaintiffs, in fact, do nothing more than recite these elements in rote fashion, citing no facts to support them. Plaintiff T.S. alleges that some of his classes were "chaotic" during filming days, that he missed some recreational activities, and that one of his visits with his mother was shorter than usual. *See* Compl. ¶ 41(a)-(e). Plaintiff Q.B. also alleges a "chaotic" teaching environment, claims that some classes were not taught and that he also missed some recreational activities, and asserts that his grandmother was not permitted to visit him on one occasion. *See id.* ¶ 42(a)-(c). Both boys were 17 at the time. These events, if they occurred, do not rise to the "extreme and outrageous, beyond all bounds of decency" level. Even if they did, moreover, neither Plaintiff claims to have experienced "severe emotional distress" as a result of these events, and Plaintiffs also do not allege knowledge on the part of any Fox Defendant that filming at the JTDC would give rise to a high probability of such distress. Accordingly, this claim must be dismissed.

### C.  PLAINTIFFS' CLAIM FOR CIVIL CONSPIRACY SHOULD BE DISMISSED

Under Illinois law, "[i]n order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement."  *McClure v. Owens Coming Fiberglas Corp.,* 188 Ill. 2d 102, 720 N.E.2d 242, 258 (1999).

> While the agreement is a necessary and important element of a cause of action for civil conspiracy, it does not assume the same importance as in a criminal action. An agreement to commit a wrongful act is not a tort, even if it might be a crime.  A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort.

*Adcock v. Brakegate, Ltd*., 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 894 (1994) (internal citations omitted).

Here, not only is there no allegation of an agreement to deprive Plaintiffs' of their constitutional rights, *see* Section 1.B., *supra,* there is no allegation sufficient to support a claim that the Fox Defendants committed an independent tort in furtherance of the alleged conspiracy.

### D.  PLAINTIFFS' STATE LAW RESPONDEAT SURPERIOR CLAIM SHOULD BE DISMISSED

"[R]espondeat superior is not by itself a cause of action."  *Jones v. UPS Ground Freight, Inc*., No. 15 C 7991, 2016 WL 826403, at *3 (N.D. Ill. March 3, 2016) (internal citations omitted). Accordingly, Plaintiffs' stand-alone claim for respondeat superior should be dismissed.  *See id.*  In addition, because Plaintiffs have not sufficiently asserted any state law claim sufficient to state a cause of action against the Fox Defendants, they have no basis for claiming that the Fox Defendants can be held liable for the actions of their employees or agents.  *See Laba v. Chicago Transit Authority,* No. 14 C 4091, 2014 WL 5822336, at *4 (N.D. Ill. Nov. 10, 2014) (noting that claims for respondeat superior are dependent on their underlying state law tort claims, and dismissing state law claim for respondeat superior where plaintiff failed to allege sufficient facts

to state any other state law claim against defendant). Plaintiffs' state law respondeat superior claim should be dismissed.

## **CONCLUSION**

WHEREFORE, Defendants Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation , Fox Broadcasting Company, Fox Entertainment Group, LLC, Fox Networks Group, Inc., and Twenty-First Century Fox, Inc., request that the Court dismiss Plaintiffs' Amended Complaint, and for such other and further relief as the Court deems just.

Date: December 5, 2016            Respectfully Submitted,

/s/  Jeffrey S. Jacobson

Jeffrey S. Jacobson
Kelley Drye & Warren LLP
101 Park Ave
New York, NY 10178
212-808-5145
jjacobson@kelleydrye.com

Matthew C. Luzadder
Catherine E. James
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 857-7070
mluzadder@kelleydrye.com
cjames@kelleydrye.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing *Memorandum In Support of the Fox Defendants' Motion to Dismiss* was served on all counsel of record pursuant to the Court's ECF system on this 5th day of December, 2016.


/s/ Jeffrey S. Jacobson _____
Jeffrey S. Jacobson