IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.S, et al. | ) |
|     Plaintiffs, | ) No. 16 CV 8303 |
| v. | ) The Honorable Amy J. St. Eve |
| Twentieth Century Fox Television, et al. | ) |
|     Defendants. | ) |

**THE CHIEF JUDGE'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant, the Chief Judge of the Circuit Court of Cook County ("Chief Judge" or "Defendant"), by and through his attorney, Illinois Attorney General Lisa Madigan, hereby submits his Reply in Support of his Motion to Dismiss Plaintiffs' First Amended Class Action Complaint. In support thereof, Defendant asserts as follows:

**A) Plaintiffs' Claims Violate the Eleventh Amendment.**

Plaintiffs claim that, pursuant to *McMillian v. Monroe City*, 520 U.S. 781 (1979), the Chief Judge is not entitled to Eleventh Immunity because, in "exercising authority over the JTDC", the Chief Judge was acting as a local official rather than a state official. Pls.' Resp. at p. 28, ECF No. 58. In support of this argument, Plaintiffs cite to the County Shelter Care and Detention Act ("Act"), 55 ILCS 75/1 *et seq*. (1988), a law Plaintiffs claim places the administration of the JTDC entirely within the authority of the county. Pls.' Resp. at p. 31. Specifically, Plaintiffs claim that the Chief Judge's authority to administer the JTDC stems entirely from section 75/3 of the Act. Pls.' Resp. at p. 32. As a result, Plaintiffs claim that, in administering the JTDC, the Chief Judge was acting as a county official and therefore is not

1

entitled to Eleventh Amendment Immunity. *Id*. at p. 30. However, in attempting to fashion an exception to the Chief Judge's immunity, Plaintiff's argument fundamentally misstates the scope and powers of the Act they rely upon.

*McMillian* and its progeny stand for the proposition that Eleventh Amendment immunity depends upon: 1) whether state law treats the officer as state or local official; and 2) whether the official acts in a state or a local capacity when performing the complained of conduct. *McMillian*, 520 U.S. at 785-93; *DeGenova v. Sheriff of DuPage Cnty.,* 209 F.3d 973, 975 (7th Cir. 2000). In *McMillian*, the Court held that the State's classification of the officer in question as a state officer was "critically" important to the issue of immunity. 520 U.S. at 789; *see also Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998) ("The Supreme Court noted that 'critically for [its] case' in *McMillian*, the Alabama Supreme Court had previously held that the state constitution considered sheriffs to be "executive officers of the state"). On this critical issue, there appears to be no debate. The Chief Judge is a state constitutional officer, Ill. Const. 1970, art. 6, § 7(c), who has long been held to be a state official. *Orenic v. Illinois State Labor Relations Bd.*, 537 N.E.2d 784, 795 (Ill. 1989). In an effort to elude this critical issue, Plaintiffs focus their analysis on the second prong: whether the Chief Judge, as the "administrator" of the JTDC, was acting as a state or local official. Here, Plaintiffs' analysis falters.

Essential to Plaintiff's claim that the Chief Judge acts as a county officer when administering the JTDC is Plaintiffs' reliance on section 75/3(b) of the Act. Pls.' Resp. at p. 31 ("Indeed, the Chief Judge's authority to administer the JTDC flows not from Article VI, but rather comes entirely from the Detention Home Act, see 55 ILCS § 75/3(b)"). However, unlike the county sheriff in *DeGenova* who had the statutorily imposed authority and responsibility for the management of the county jail and its inmates, *see* 209 F.3d at 976, the Act in question grants

the Chief Judge no such authority or obligation. Instead, *the only power* that section 75/3(b) grants to the Chief Judge is the power to "appoint an administrator to serve as Superintendent" as well as other "necessary personnel" to administer the JTDC. 55 ILCS § 75/3(b).[1] As a result, it is the Superintendent and "necessary personnel" who administer the JTDC, and not the Chief Judge, which is presumably why Leonard Dixon, Cook County and various "John Does" have been made defendants in this action. *See* Pls.' Compl. at ¶¶ 6-8, ECF No. 23. As such, although Eleventh Amendment immunity is, in part, "dependent on the definition of the officials functions under relevant state law", *see McMillian*, 520 U.S. at 785, section 75/3(b) is of no help to Plaintiffs as it does not grant the Chief Judge the "official functions" Plaintiffs complain of. In other words, the Chief Judge never acted as a county official because he never performed a function in accordance with section 75/3(b) that gave rise to Plaintiff's allegations. Indeed, Plaintiffs do not claim that the Chief Judge unlawfully or unconstitutionally appointed the Superintendent or any other necessary personnel. Therefore, the invocation of *McMillian*, and the corresponding reliance on section 75/3(b), fails to strip the Chief Judge of the Eleventh Amendment immunity that precedent establishes he is entitled to.

Finally, Plaintiffs claim that the Chief Judge "resembles" a county officer because, pursuant to *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003), the county will be required to indemnify the Chief Judge in the event of an adverse judgment. Pls.' Resp. at p. 34. First, it must

---

[1] In pertinent part, the section 75/3(b) states as follows: "Within 180 days after the effective date of this amendatory Act of the 95th General Assembly, the Chief Judge of the Cook County Circuit Court, or any Judge of that Circuit designated by the Chief Judge, shall appoint an administrator to serve as the Superintendent of the Cook County Temporary Juvenile Detention Center. The Chief Judge of the Cook County Circuit Court, or any Judge of that Circuit designated by the Chief Judge shall appoint all other necessary personnel of the Cook County Juvenile Temporary Detention Center and any other shelter care home or detention home in Cook County in accordance with subsections (a) and (d) of this Section." 55 ILCS § 75/3(b).

be noted that, although a factor, the status of an employees' potential indemnification pursuant to state law is not conclusive on the issue of immunity. *See*, *e.g*., *Scott v. Grady*, 975 F.2d 366, 372 (7th Cir. 1992); *Cervantes v. Metropolitan Enforcement Group*, 01 C 4433, 2001 WL 1329295, *1 (N.D. Ill. Oct. 29, 2001) (Zagel, J.) (citing *Nichol v. Stass,* 735 N.E.2d 582 (Ill. 2000)). Nevertheless, Plaintiffs' reliance on *Robinson* is misplaced.

In *Robinson*, the relevant issue was whether the county was a necessary party due to the plaintiff's claim that she was jointly employed by the State and county. *Id*. at 337-38. The Court, holding that the State was also liable, also held that the county was a necessary party because of their obligation to indemnify the defendant. *Id*. The Court reached this decision based on a certified question to the Illinois Supreme Court, who in turn answered the question by interpreting, not the State Employee Indemnification Act, but the Local Government Tort Immunity Act and the Counties Code. *Id*. at 339; *Carver v. Sheriff of LaSalle Cnty*., 787 N.E.2d 127, 133 (Ill. 2003) ("The resolution of this question involves the interpretation of statutes found within the Tort Immunity Act ….. and the Counties Code ….."). As a result, *Robinson* is inapposite as this Court is not being asked to decide whether the county is jointly liable for the alleged actions of the Chief Judge. With respect to the issue of indemnification, the only relevant question is whether the State is liable, jointly or not, and whether the State coffers will be used to satisfy a judgment, in whole or part. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11 (1984) ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the state treasury or domain ….:). Whether another entity could be held jointly liable is wholly irrelevant. The answer to this question is expressly found in the State Employee Indemnification Act, 5 ILCS 350/1 *et seq*. (2014), a statute Plaintiffs failed to address. The State Employee Immunity Act explicitly mandates that judgments against a judge, whether

4

stemming from a ruling or a judge's administrative duties, shall be indemnified by the State. 5 ILCS 350/2(c). This mandatory indemnification occurs regardless of whether the official is sued in his individual or official capacity. 5 ILCS 350/2(g). As a result, contrary to Plaintiffs' claim, the indemnification issue weighs in favor of immunity and not against it. Therefore, for the foregoing reasons, all claims against the Chief Judge must be dismissed, with prejudice.

### B) Plaintiffs fail to state a Plausible Substantive Due Process Violation.

The Plaintiffs' due process claim is a substantive due process claim based on the conditions of confinement at the JTDC. Pls.' Compl., ECF No. 23. As such, between the Plaintiffs and the Chief Judge, there does not appear to be any dispute as to the applicability of *Bell v. Wolfish*, 441 U.S. 520, 534-36 (1979). Pursuant to *Bell*, the proper inquiry is whether the conditions of confinement amount to "punishment." *Bell*, 441 U.S. at 535; *see also Hart v. Sheahan*, 396 F.3d 887, 891 (7th Cir. 2005). As a result, in determining whether a plausible constitutional violation has been stated, the inquiry is whether the facts alleged suggest that the conditions imposed amounted to punishment. *Id*.

The fallacy of Plaintiffs' initial argument is Plaintiffs' focus on whether the filming was a "legitimate" or otherwise a sound idea in Plaintiffs' estimation. *See* Pls.' Resp. at pgs. 5-7 ("The government, for no legitimate purpose, invited Fox's film crew to use the JTDC …"). To be certain, in addition to not being excessive, the condition imposed must be rationally related to a "legitimate" government purpose. *Bell*, 441 U.S. 538-39. But, contrary to Plaintiffs' assertion, "legitimate" does not mean wise or otherwise well-conceived. Instead, because the relative inquiry is punishment, pursuant to the *Bell* analysis legitimate means *non-punitive*. *Id*. at 561 ("Therefore, the determination whether these restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate

*nonpunitive* governmental purpose and whether they appear excessive in relation to that purpose.") (emphasis added); *see also Kingsley v,. Henderson*, 135 S. Ct. 2466, 2474 (2015) (quoting *Bell*). To that end, whether the purpose in imposing the restrictions was the filming of *Empire* or the corresponding security and safety concerns (two sides of the same coin), there are no facts to suggest that the *purpose* of the restrictions was punitive in nature. As a result, the only way Plaintiffs can assert a plausible substantive due process claim is to allege facts establishing that the restrictions imposed were excessive in relation to the non-punitive purpose. *Bell*, 441 U.S. at 538-39.

Turning to the allegations in the complaint, it is clear that the conditions alleged were not so excessive in relation to the non-punitive purpose that they amounted to punishment. Importantly, there is no allegation that the detainees' sleep, nutrition or safety was compromised in any way. In fact, with respect to education and exercise, the allegations establish that the JTDC employees compensated for the intrusion by bringing teachers and exercise instructors to the pods and allowing the detainees to use the gymnasium as an alternative to the yard. Pls.' Compl. at ¶¶ 35-37. The fact that some of the detainees may have gone "stir crazy", a condition likely attributable to all detainees nationwide, does not suffice to assert a substantive due process claim.

Finally, contrary to Plaintiffs' contention, in order to state a substantive due process claim a plaintiff must always alleged "conscience shocking behavior" when challenging executive action. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 462 (7th Cir. 2007) (holding that if a policy or rule is challenged the question is whether the governmental action can find reasonable justification in the service of a "legitimate governmental objective", but, if the harm alleged is the result of abusive executive action, the question is whether the actor's conduct

was "arbitrary, or conscience shocking, in a constitutional sense."). In an attempt to argue that this standard is inapplicable, Plaintiffs rely on *Titan* and *McDonald*. Pls.' Resp. at pgs. 11-12. However, both cases involved Fourth Amendment excessive force claim and, as both Courts noted, the "shocked the conscious" inquiry was therefore inapplicable. *Titan v. Ackman*, 893 F.2d 145, 147 (7th Cir. 1990); *McDonald v. Haskins*, 966 F.2d 292, 294 294 (7th Cir. 1992).[2] In an attempt to distinguish *David v. Wessel*, 792 F.3d 793, 801 (7th Cir. 2015), a case discussing the need for conscious shocking behavior in a pretrial detainee's conditions claim, Plaintiffs argue that the Court only mentioned the conscious shocking test in passing. Pls.' Resp. at n.5. However, as evidenced by the numerous citations to cases upholding the "shocks the conscious" standard, this reading of *Davis* is highly inaccurate as the crux of the opinion concerned the proper constitutional claim and corresponding level of egregious conduct required to state such a claim. *David*, 792 F.3d at 801. The import of the *Davis* Court's citations is obvious: unless the level of punishment is truly shocking, no claim has been made. *Id*. Otherwise, directing a juvenile detainee to sit in "time out" or taking away his arts and crafts, both unquestionably forms of punishment, would suffice to establish a substantive due process clause claim, despite the Supreme Court's admonitions to the contrary. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("only the most egregious official conduct can be said to be arbitrary in the

---

[2] In fact, Plaintiffs cite a litany of *Fourth Amendment* cases for the proposition that when the government alters its behavior to serve private ends it does so without a legitimate government purpose. Pls.' Resp. at pgs. 6-7. Despite being inapposite, Plaintiffs attempt to equate these cases by claiming that the "legitimate government purpose" analysis is the same for the Due Process Clause. *Id*. at n.3. However, Plaintiffs are relying on the wrong due process test. As previously stated, when the challenged government action is a rule or act of legislation, the question is whether the government has a "reasonable justification in the service of a legitimate governmental objective." *Christensen*, 483 F.3d at 462. Where, *as in the present action*, the challenged government action is the conduct of a particular government official, the question is whether the conduct "shocks the conscience." *Id*.

7

constitutional sense"). Because Plaintiffs have not alleged any conduct that amounts to punishment in a constitutional sense, Plaintiffs' due process claim must be dismissed.

### C) **Plaintiffs' Fail to state a Plausible Fourth Amendment Violation.**

Plaintiffs' claim that their Fourth Amendment claim should stand because it is an alternative cause of action. Pls.' Resp. at p. 13. However, this argument fails to address the fact that post-seizure pretrial detainees are not protected by the Fourth Amendment. In fact, the Seventh Circuit has explicitly rejected the concept of a "continuing seizure" in which the Fourth Amendment protects pretrial detainees beyond the initial seizure. *See, e.g., Bielanski v. County of Kane*, 550 F.3d 632, 638 (7th Cir. 2008) ("we have repeatedly rejected the concept of a continuing seizure in the Fourth Amendment context"); *Wilkins v. May,* 872 F.2d 190, 192-94 (7th Cir.1989) (holding the Fourth Amendment inapplicable to a post-seizure claim of excessive force by a pretrial detainee). Alternative or not, Plaintiffs must assert a plausible cause of cause of action. Plaintiffs have failed to do so as their claims fall outside the temporal bounds of the Fourth Amendment. As a result, Plaintiffs' Fourth Amendment claim must therefore be dismissed.

WHEREFORE, Defendant respectfully requests this Court to dismiss the federal claims, decline jurisdiction over the remaining state law claims and award any other relief this Court deems just and equitable.

Respectfully submitted,

Lisa Madigan
Illinois Attorney General

By: /s/ *T. Andrew Horvat*
T. Andrew Horvat (6277684)
Assistant Attorney General
100 W. Randolph St., 13th Fl.
Chicago, IL 60601
(312) 814-5484
thorvat@atg.state.il.us

**CERTIFICATE OF SERVICE**

  I, T. Andrew Horvat, hereby certify that on February 3, 2017, I have caused a true and correct copy of **The Chief Judge's Reply in Support of his Motion to Dismiss Plaintiffs' Class Action Complaint** to be sent via e-filing to all counsel of record on the above-entitled date in accordance with the rules regarding the electronic filing of documents.

              /s/ *T. Andrew Horvat*
              T. Andrew Horvat
              Assistant Attorney General
              100 W. Randolph St., 13th Fl.
              Chicago, IL 60601
              (312) 814-5484
              THorvat@atg.state.il.us