# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

## EASTERN DIVISION

| | |
|---|---|
| T.S. *et al.*, <br><br> Plaintiffs. <br><br> v. <br><br> Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation *et al.*, <br><br> Defendants. | Case No. 1:16-cv-08303 <br><br> Honorable Judge Amy J. St. Eve |

_____

**REPLY MEMORANDUM IN SUPPORT OF THE FOX DEFENDANTS' MOTION TO DISMISS**
_____

Defendants Twentieth Century Fox Television ("TCFTV"), a division of Twentieth Century Fox Film Corporation, Fox Broadcasting Company, Fox Entertainment Group, LLC, Fox Networks Group, Inc., and Twenty-First Century Fox, Inc. (collectively the "Fox Defendants"), hereby submit this Reply Memorandum In Support of their Motion to Dismiss Plaintiffs' Amended Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6):

## INTRODUCTION

Plaintiffs' opposition brief laid bare their twin problems: First, they have not alleged conduct by *any* defendant that deprived them of their constitutional rights or violated Illinois state law. Second, even had they pleaded a valid basis to challenge the conditions of their confinement, these conditions undisputedly were controlled entirely by the government. They have not alleged and cannot allege willful participation by any of the Fox Defendants in setting those conditions.

The two Plaintiffs claim they experienced instances of a "chaotic" teaching environment and, for each of them, a single missed or shortened visit with family. That is not "punishment" actionable under 42 U.S.C. § 1983. Plaintiffs also described problems they only contend *others* experienced — delayed responses to unspecified "sick calls" and a single detainee whom they allege had to spend one day restricted to his dormitory unit. This "hearsay" conduct would not be actionable as "punishment" even had Plaintiffs experienced it personally, and it certainly is not actionable as alleged. The Supreme Court has made clear that plaintiffs in a putative class action cannot bootstrap standing by complaining of conduct that affected other people, but not them.

Far from supporting Plaintiffs' claims of "punishment," the cases Plaintiffs cited in their opposition brief — involving detainees who allegedly were beaten, forcibly stripped naked, or stunned with electric shock devices — have no possible analogy to this case and clearly show that Plaintiffs' claims here do not rise to the level of constitutional violations. Indeed, Plaintiffs have

1

cited no case from any jurisdiction in which the types of issues they allege were deemed to constitute improper "punishment" that would be actionable under § 1983.

Even had Plaintiffs suffered actionable deprivations, which they did not, the Fox Defendants had no say in the conditions of their detention, and Plaintiffs' Complaint does not clear the high bar the Seventh Circuit has set for pleading § 1983 claims against private entities on a "joint action" or "conspiracy" theory. In this Circuit, a private party cannot be held liable under § 1983 unless the private party shared a "common, unconstitutional goal" with a state actor and then "willfully participated" in a "concerted effort" to violate the plaintiffs' rights. Plaintiffs' brief did not address this controlling authority at all, and Plaintiffs nowhere have alleged that the Fox Defendants had any relevant "goal" besides wanting to film in unoccupied areas of the JTDC.

Recognizing that their Complaint is fundamentally flawed as a matter of law, Plaintiffs' opposition brief set forth a new theory, different from their pleaded allegations. They now contend that simply signing an access agreement with Cook County, permitting them to occupy space as permitted by JTDC officials, was "***the act***" — Plaintiffs' words, Plaintiffs' emphasis — that makes the Fox Defendants allegedly liable. That is, Plaintiffs wish the Court to deny the Fox Defendants' dismissal motion regardless of whether the Fox Defendants intended, participated in, or even saw any alleged deprivation of rights, just because they were a link in an alleged chain of causation. No precedent supports this theory; to the contrary, this Circuit's controlling decisions preclude it.

Plaintiffs pin much of their hopes on superficial similarities between their allegations and a few cases where § 1983 claims against media companies survived motions to dismiss. But in *every* such case, the media defendant either (1) filmed the allegedly violative conduct after specifically agreeing with law enforcement that officers would deviate from normal procedures for the sake of more graphic video, such as by sending a heavily-armed SWAT team to arrest a nonviolent alleged offender; or (2) trespassed on private property to film law enforcement in

2

action.  No case has ever so much as intimated, much less held, that media defendants can be liable just for accessing government property, with government permission, for purposes other than filming law enforcement operations or those detained or targeted by law enforcement.

Plaintiffs' state law claims fail for the same reasons.  As in § 1983 cases, where the Seventh Circuit has required willful participation by the defendant before it can be liable on a joint action or conspiracy theory, the Seventh Circuit also has rejected claims of inducement to breach a fiduciary duty unless the alleged "inducer" *knowingly participated* in the breach.  Plaintiffs ignored that controlling case law, too, just as they ignored controlling § 1983 authority.  Plaintiffs also ignored controlling case law holding that claims for intentional infliction of emotional distress ("IIED") *always* require pleading of "*severe*" emotional distress, which these Plaintiffs have not alleged and cannot allege.  For all these reasons, the Court should dismiss Plaintiffs' complaint.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT ALLEGED A VIOLATION OF ANY PROTECTED RIGHT

The Fox Defendants join Cook County's and the Chief Judge's reply arguments demonstrating that none of the facts alleged by Plaintiffs T.S. and Q.B. — about themselves or any other former temporary detainees at the Cook County Juvenile Temporary Detention Center ("JTDC") — state constitutional deprivations cognizable under 42 U.S.C. § 1983 or violations of any other statute.  Plaintiffs' tortured analogies to cases such as *Davis v. Wessel*, 792 F.3d 793 (7th Cir. 2015) (police officers defied a court's order to remove the plaintiff's hand restraints when he had to urinate); *Wagner v. County of Maricopa*, 706 F.3d 942 (9th Cir. 2013) (corrections officers forcibly stripped the plaintiff naked and re-dressed him in pink underwear); *Robles v. Prince George's County*, 302 F.3d 262 (4th Cir. 2002) (officers tied the plaintiff to a light pole); *Titran v. Ackerman*, 893 F.2d 145 (7th Cir. 1990) (officers wrestled a minor to the ground, broke her wrist, and used an electric shock device on her); and *Thompson v. County of Cook*, 412 F. Supp.2d 881

3

(N.D. Ill. 2005) (body cavity searches and urethral swabbing), serve only to highlight how far short their claims fall, despite their false and hyperbolic assertion that "[t]he misconduct alleged in [their Complaint] is far more serious than that described in these decisions." Opp. Br. at 10.

The cases cited by Plaintiffs grow even more inapposite once the Court focuses only on what the two named Plaintiffs claim *personally* to have experienced, as opposed to what they aver that unnamed *other* detainees experienced. Contrary to Plaintiffs' argument, alleged problems had only by others cannot be considered at all on this motion to dismiss. The Supreme Court has stated repeatedly, most recently in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016), that the named plaintiffs in a putative class action "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." The Seventh Circuit, too, has stated that a putative named plaintiff "cannot predicate standing on injury which he does not share," and that "[s]tanding cannot be acquired through the back door of a class action." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). In detention cases, this means a named plaintiff "cannot use [a class action] lawsuit to right the wrongs, real or imagined, experienced by other prisoners when he himself has not" suffered those alleged wrongs. *Stile v. Cumberland County Jail*, No. 2:12-cv-260-JAW, 2013 WL 1881300, at *4 (D. Me. Mar. 26, 2013). *Cf. Doll v. Cooper*, No. 96 C 2395, 1997 WL 94723 (N.D. Ill. Mar. 3, 1997) (dismissing class action where inmate alleged no cognizable harm to himself).

Plaintiffs did not address *Spokeo* or any other class action case in arguing that this Court should consider claims other than those they personally experienced during *Empire* filming. They cited only a single non-class case, *Spearman v. Elizondo*, No. 15-cv-7029, 2016 WL 1730650 (N.D. Ill. May 2, 2016) to support the broad pleading standard they urge this Court to adopt. *See* Opp. Br. at 3. In *Spearman*, a mother and her children alleged misconduct against police officers who searched their home. Those plaintiffs alleged, and the court considered, acts of misconduct

4

by other Chicago police officers in other matters, but only to support a pattern-and-practice claim. Neither that case, nor any other the Fox Defendants have found, holds that a detainee can bring a class action and thereby complain about conditions he did not experience.

Here, Plaintiff T.S.'s personal allegations are that when classes were taught in his dormitory pod on an unspecified number of days, the "teaching environment" was "chaotic," and the teacher "had no whiteboard to instruct from." Compl. ¶ 41(b). He alleged that recreation occurred in the pod, not outside, *id.* ¶ 41(c), and that a single visit with his mother was shortened, *id.* ¶ 41(e). Plaintiff Q.B.'s personal allegations, similarly, were of a "chaotic" teaching environment," *id.* ¶ 42(d), and that his grandmother was unable to visit him on a single occasion, *id.* ¶ 42(e). Those are the only allegations relating to the Plaintiffs and, therefore, the only ones the Court may consider in determining whether they have a claim. They do not suffice. Like the "double-bunking" and other alleged violations in *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), none of this "amount[ed] to punishment of the detainee." Plaintiffs' belief that they were at a "heightened risk" of harm in their pods, when no harm actually occurred, Opp. Br. at 4, is not cognizable, either. *See, e.g., Whalen v. Michael Stores Inc.*, 153 F. Supp.3d 577, 583 (E.D.N.Y. Dec. 28, 2015), *citing Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1147, 1150 n.5 (2013). Plaintiffs have not pleaded any plausible account showing that a cognizable constitutional violation has occurred and, accordingly, their Complaint against *all* Defendants should be dismissed.

## II. THE FOX DEFENDANTS DID NOT ACT UNDER COLOR OF STATE LAW.

The Court should dismiss all of Plaintiffs' claims, but in the unlikely event that the Court believes Plaintiffs have stated a claim against the government, the Court still should dismiss Plaintiffs' claims against the Fox Defendants. Neither of Plaintiffs' remaining liability theories against the Fox Defendants — "joint action" or "conspiracy" — stands up to scrutiny. (Plaintiffs all but abandoned their untenable *respondeat superior* theory. *See* Opp. Br. at 25.)

5

**A.**     *The Fox Defendants were not "joint actors" in operating the JTDC.*

The Fox Defendants' opening brief extensively discussed the Seventh Circuit's multiple decisions holding that private parties must be dismissed from 42 U.S.C. § 1983 cases unless the plaintiffs plausibly alleged that those private parties "share[d] a common, ***unconstitutional*** goal" with the government and then ***willfully participated*** in ***joint action*** to violate the plaintiffs' rights. *Cunningham v. Southlake Center for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) (emphasis added). *See also Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998); *Starnes v. Capital Cities Media, Inc.*, 39 F.3d 1394, 1397 (7th Cir. 1994); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985). The linchpin in each of these cases is that the shared goal must have been unconstitutional, but no such allegation is pleaded or possible here.

Plaintiffs' brief largely ignored these controlling cases and relied instead on *Morfin v. City of E. Chicago*, 349 F.3d 989 (7th Cir. 2003), where a town's mayor (the putative "private" party) directly ordered police officers to arrest the plaintiff, and *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432 (7th Cir. 1986), where the Seventh Circuit held it was *not* enough for the plaintiffs simply to have alleged an understanding between police and private security guards that police would arrest anyone at the guards' direction. *See id.* at 436 ("A party may not cry 'conspiracy' and throw himself on the jury's mercy."). Here, the Fox Defendants did not have direct or indirect control over JTDC operations, and Plaintiffs cannot allege otherwise. Plaintiffs also do not and cannot allege that the Fox Defendants shared any unconstitutional common goal with the governmental defendants to impose "punishing" conditions or willfully participated in imposing such conditions.

Unable to allege a "common goal," shared by the Fox Defendants and the government, to deprive any detainee of rights, Plaintiffs' opposition brief pretended it suffices if any Fox Defendant merely knew that detainees could not occupy the areas that TCFTV was using. This claim fails for two reasons. First, "knowledge" is not the proper legal standard. Private actors

6

cannot be liable under § 1983 unless they were "willful participants in joint action with the State," *Dennis v. Sparks*, 449 U.S. 24, 27 (1980), and engaged in a "concerted effort . . . to violate the plaintiff's rights." *Fries*, 146 F.3d at 458. Merely asserting in conclusory fashion that the Fox Defendants "reached an understanding with the government that it would violate people's rights," Opp. Br. at 23, does not suffice. *See also* Opening Br. at 10, *quoting Terra Foundation for the Arts v. Perkins*, 151 F. Supp.2d 931, 936 (N.D. Ill. 2001). Second, Plaintiffs conflate knowledge that detainees could not be where the cast and crew were with purported knowledge that "[h]olding the children in their [residential] pods was the only way for [TCFTV] to film at the JTDC." Opp. Br. at 21-22. Plaintiffs' Complaint provides no support for this illogical and implausible leap.

The inadequacy of Plaintiffs' allegations becomes even clearer when they are compared to those in the *Fries* line of cases and to the out-of-circuit cases cited by both sides. Notably, in *every* government/media case that has been cited to this Court where claims against media defendants survived motions to dismiss, the alleged rights violations occurred literally in front of television cameras, usually after the government and the media agreed on sensationalized deviations from normal procedures in order to make for better television; or the media trespassed on private property to film law enforcement operations, with law enforcement permission, but allegedly in violation of the Fourth Amendment. *See, e.g., Conradt v. NBC Universal, Inc.*, 536 F. Supp.2d 380 (S.D.N.Y. 2008) ("for the sake of a more exciting television show," police sent a heavily-armed SWAT team to arrest a non-violent suspect); *Ayeni v. CBS, Inc.*, 848 F. Supp. 362 (E.D.N.Y. 1994) (media entered private property to observe the Secret Service executing a search warrant).

In all of these cases, the agreement between the media defendant and the government was that *both* would participate in conduct that itself violated a constitutional right. None of these cases found a private party to be liable where its only "act" was gaining access, with the government's permission, to government property. In *Lauro v. Charles*, 219 F.3d 202, 213 (2d

7

Cir. 2000) — where no media companies were defendants and the court was "not intimating" any possibility of media liability — police made the plaintiff an unwilling pawn in the "inherently fictionalized" reenactment of his arrest and subsequent entry into the police station, both of which actually "had transpired hours earlier," before media were present. The two other cases Plaintiffs cite, *Smart v. City of Miami*, 107 F. Supp.3d 1271 (S.D. Fla. 2015) (police permitted film crew to trespass and film murder scene and interrogation) and *Barrett v. Outlet Broad, Inc.*, 22 F. Supp.2d 726 (S.D. Ohio 1997) (police department assisted media defendant in trespassing onto crime scene for purposes of filming) involved agreements between the police and media companies to jointly violate the Fourth Amendment in order to obtain footage. These cases are similar to the ones both sides previously cited to this Court, where the media participants and the government together expressly contemplated the constitutional violations and then jointly executed them.

In this case, by contrast, no Fox Defendant took any action "under color of" state law. The *Empire* cast and crew entered into government property with valid permission, went only where the government permitted them to go, and did not film detainees or detention personnel. Plaintiffs do not allege and cannot allege that the Fox Defendants exercised any level of control over the conditions imposed on detainees. To accept Plaintiffs' claims, therefore, the Court must find not only that the mere act of temporarily curtailing detainees' access to the locations where filming occurred amounted to unconstitutional punishment, but that each of the Fox Defendants *knew* this and *intended* it as part of their agreement with Cook County. Plaintiffs' have cited no case that supports such a holding, and none exists. Their "joint action" theory, therefore, is not tenable.

### B. *The Fox Defendants are not liable on a "conspiracy" theory.*

Plaintiffs fare no better with their allegations of "conspiracy." Again ignoring the controlling law cited in the Fox Defendants' opening brief, Plaintiffs argue that TCFTV's agreement to film at the JTDC suffices to make all the Fox Defendants "co-conspirators," liable

8

for alleged rights violations committed by the government to facilitate TCFTV's ability to film. This is contrary to the Seventh Circuit decisions cited by the Fox Defendants, including *Fries*, 146 F.3d at 457, where the Court held that alleged co-conspirators in a § 1983 action must have "reached an understanding to deprive the plaintiff of his constitutional rights" and been "willful participants in joint activity" with the government to bring about those deprivations. Similarly, in *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 398 (7th Cir. 2015), the Seventh Circuit said "[i]t is well established that a bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983." Plaintiffs' brief did not address either case.

In the only case Plaintiffs cited in support of the Fox Defendants' supposed "conspiracy" liability, an African-American family accused police and their neighbors of conspiring to force them out of their home, with the neighbors allegedly having shouted at the family, harassed them, and thrown animal blood in their driveway. *See James v. Village of Willowbrook*, No. 11-cv-9126, 2012 WL 3017889 (N.D. Ill. July 19, 2012). There is no conceivable analogy between the reprehensible affirmative conduct in *James* and simply filming in unoccupied areas of a detention facility. Moreover, the *James* court found a conspiracy to have been alleged *not* under § 1983, but rather 42 U.S.C. § 1985(3), which provides a cause of action against two or more persons who engage in discriminatory conduct prohibited by law. As noted by the court in *James*, "the [private citizens] cannot be liable under § 1983 because they are not acting under color of state law." *Id.* at \*6, *citing Hernandez v. City of Goshen, IN*, 324 F.3d 535, 537 (7th Cir. 2003).

The most apt case here is *Hanania v. Loren-Maltese*, 212 F.3d 353 (7th Cir. 2000), discussed on pages 15-16 of the Fox Defendants' opening brief. There, the Seventh Circuit affirmed dismissal of claims against a private defendant even though the defendant, *unlike* the Fox Defendants here, had himself engaged in severe misconduct. Plaintiffs' brief tried to wave off *Hanania* as "unavailing," but it is on point and requires dismissal of Plaintiffs' Complaint.

9

### C. *The Court may consider the Location Agreement, but should dismiss Plaintiffs' claims against the Fox Defendants even if it declines to consider the Agreement.*

Despite referring multiple times in their Complaint to "an agreement" with Cook County allowing the filming of *Empire* at the JTDC, *see* Compl. ¶¶ 29, 93, 98, 101, 122, and although the *Empire* cast and crew could not have accessed that restricted government property absent such an agreement, Plaintiffs' opposition brief objects to the Fox Defendants having submitted with their motion to dismiss the actual Location Agreement between Cook County and TCFTV. But the Location Agreement at issue in this case is no less central to these Plaintiffs' claims than the employment agreements were to the claims in *Steigmann v. Democratic Party of Ill.*, 406 F. Supp. 975, 986 (N.D. Ill. 2005), which this Court considered on a motion to dismiss. Plaintiffs cite no case in which a court disregarded written agreements in circumstances like these, and their brief ignored the cases discussed in the Fox Defendants' opening brief (at 3 n.3), including *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009), where the Seventh Circuit advocated a "liberal . . . approach" to determining whether a document is central to claims.

The Location Agreement is a public record that Plaintiffs could have requested from Cook County before filing this case. It precluded TCFTV's filming from disrupting the "normal operations of the JTDC and its occupants." Plaintiffs' opposition brief called this document a "ploy" and an "evasion," Opp. Br. at 19, and basically suggested the parties crafted it to disguise a separate, "secret" agreement to violate detainees' rights. But there is only one agreement alleged in the Complaint — the one permitting access for filming —and the Fox Defendants attached it.

Neither case cited by Plaintiffs supports their request that this Court should disregard the Location Agreement. In *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001), the assertedly "private" actor previously had been adjudged to be a public body, but contended that a minor wording change to its charter eliminated its public character. Likening

10

that body to Amtrak, the Supreme Court disagreed. *Id.* at 300-01. In *Wickersham v. City of Columbia*, 481 F.3d 591 (8th Cir. 2007), police and the private operators of an air show entered into an agreement requiring the police to enforce air show rules that infringed on war protesters' free speech rights, and the police did so even after the written agreement was changed. Therefore, based on evidence of a history of cooperation between the police and private operators of the air show spanning years, and admissions by a police captain that the police department's conduct was unaltered by the amended written agreement, the court disregarded the amendments. It found that that the "customary plan" between the police and the private actors "knowingly and pervasively entangled" the government in the enforcement of the challenged speech restrictions. *Id.* at 599.[1]

Here, the Fox Defendants undisputedly are private entities. They entered into a temporary access agreement that gave them no control at all over JTDC operations and allowed facility officials to restrict TCFTV's access and movements at will to prevent any impact on those operations. There is no allegation of a "customary plan" or of any other "illicit understanding" the terms of which differ from those contained in the Location Agreement, as in *Wickersham*. *See* Opp. Br. at 19 n.9. Based on the reasoning of *Steigmann* and other cases cited in the Fox Defendants' opening brief, the Court can and should consider the Location Agreement entered into by TCFTV in determining whether Plaintiffs have alleged "joint action" or a "conspiracy."

---

[1] Judge Shadur's decision in *Frederick v. Biography Channel*, 683 F. Supp.2d 798 (N.D. Ill. 2010), is not to the contrary. There, the police and the television production company riding along with them entered into an agreement governing, among other things, what they could film. Judge Shadur's only reference to that written agreement was to discuss its bar on recording police personnel who did not explicitly sign releases. In light of the plaintiff's claim that the crew filmed her without permission and portrayed her on television in an unflattering light, Judge Shadur thought it relevant that while police sought to protect themselves in the agreement with the production company, "[n]o such solicitude was evidenced by City for its civilian populace." *Id.* at 800 n.5. Judge Shadur did not analyze the agreement's separate provision precluding the film crew from "interfer[ing]" with police in the performance of their duties. More to the point, he elected to consider the agreement on the motion to dismiss.

11

Even if the Court declines to consider the Location Agreement in ruling on this motion to dismiss, however, the Fox Defendants' arguments for dismissal hardly "fall[] apart." Opp. Br. at 22. Plaintiffs' claims against the Fox Defendants fail regardless because Plaintiffs cannot allege that the Fox Defendants controlled their treatment at the JTDC or accessed the JTDC with the aim of depriving Plaintiffs of any rights. The Location Agreement conclusively demonstrates the *absence* of control and the *absence* of intent by the Fox Defendants to interfere with JTDC operations, and therefore bolsters those arguments, but is in no way necessary to their success.

### III. PLAINTIFFS' STATE LAW CLAIMS AGAINST THE FOX DEFENDANTS ALSO FAIL.

#### A. *Plaintiffs have no claim for inducement to breach a fiduciary duty.*

Plaintiffs' brief did not dispute that if their joint action claim fails, their claim for inducement to breach a fiduciary duty also fails. That claim fails on its own terms, too. Plaintiffs' opposition brief seemed to argue that the government could not have given TCFTV access to the JTDC for filming without inevitably violating the detainees' rights. *See* Opp. Br. at 27 (arguing that "keeping the [detainees] off the second and third floors" of the JTDC was "*the act*" that supposedly implicates the Fox Defendants in Plaintiffs' claims against the government). No case, however, suggests that this suffices to state a claim for inducement to breach, where the Fox Defendants had no control at all over detention conditions at the JTDC.

Plaintiffs' opposition brief, on this claim as with others, ignored the controlling legal standard. As the Fox Defendants demonstrated in their opening brief, the Seventh Circuit requires the non-fiduciary to have "knowingly participat[ed] with a fiduciary in a breach of fiduciary trust." *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531, 542 (7th Cir. 1991). Plaintiffs' brief did not address *Pappas*, and their Complaint does not and cannot allege "knowing participation" in anything that happened outside the Fox Defendants' sight and beyond their control.

**B.      *Plaintiffs have no claim for intentional infliction of emotional distress.*[2]**

Of the many misstatements of law in Plaintiffs' opposition brief, perhaps the most egregious is their mis-portrayal of the legal standard for IIED claims. Citing *Bristow v. Drake St. Inc.*, 41 F.3d 345 (7th Cir. 1994), Plaintiffs' brief (at 16) argued that if they alleged sufficiently "extreme and outrageous" conduct, that excuses them from their total inability to claim that they suffered severe emotional distress. Leaving aside that their allegations are in no way "extreme and outrageous," *Bristow* actually held that "it is not enough that the defendant's conduct was outrageous; the emotional distress that it inflicted must be severe." *Id.* at 349. *See also id.* at 350 (reiterating that "severe distress must be proved"). *Honaker v. Smith*, 256 F.3d 477, 479 (7th Cir. 2001), similarly held that "the emotional distress must be *severe*." *Id.* at 495 (emphasis in original). Plaintiffs here, who were 17 while detained at the JTDC, do not and cannot allege that they were "severely" emotionally impacted by a single shortened or missed visit with family members or a few days of what they claim to have been a "chaotic" teaching environment.

Further, even if Plaintiffs had a potential IIED claim against the governmental parties that controlled the conditions of their detention, which they do not, they have no IIED claim against the Fox Defendants. One of the elements of an IIED claim is that the defendant must have "known that there was a high probability that their conduct would cause severe emotional distress." *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). Plaintiffs' brief does not even attempt to argue that they have satisfied this element against the Fox Defendants.

---

[2] Plaintiffs' Complaint includes two other Illinois state law claims against the Fox Defendants: civil conspiracy and *respondeat superior*. The Fox Defendants' opening brief (at 21) explained why the civil conspiracy claim should be dismissed, and Plaintiffs' opposition brief included no argument as to why it should survive. Plaintiffs' brief argued conspiracy only as a basis for liability under § 1983. The opening brief (at 21-22) also explained why Plaintiffs' *respondeat superior* claim fails, and Plaintiffs' brief did not respond to that argument at all.

**IV. PLAINTIFFS DIRECT NO ALLEGATIONS AGAINST FOUR OF THE FIVE FOX DEFENDANTS.**

Plaintiffs' complaint names five different Fox entities, including the publicly-traded ultimate parent company. It was TCFTV, however, that entered into the Location Agreement and filmed *Empire* at the JTDC. No other Fox entity was present at the JTDC, and as Plaintiffs' brief conceded, liability under § 1983 cannot be premised on a theory of *respondeat superior*. Plaintiffs' brief (at 28) suggests they can keep Fox Entertainment Group LLC in the case if it "secured the parking permits for filming at the JTDC." Compl. ¶ 54. But the alleged conduct inside the JTDC had nothing to do with parking outside it. As for other parent companies, Plaintiffs' brief (at 28) argues nothing more than a theory of "unjust enrichment." Plaintiffs' Complaint does not plead an unjust enrichment claim, however, and Plaintiffs could not allege the elements of such a claim if they tried. *See, e.g., Siegel v. Shell Oil Co.*, 656 F. Supp.2d 825, 834-35 (N.D. Ill. 2009) (St. Eve., J.) (setting forth elements of an unjust enrichment claim).

## CONCLUSION

WHEREFORE, the Fox Defendants request that the Court dismiss Plaintiffs' Amended Complaint, and for such other and further relief as the Court deems just.

Date: February 7, 2017     Respectfully Submitted,

/s/ Jeffrey S. Jacobson

Jeffrey S. Jacobson
Kelley Drye & Warren LLP
101 Park Ave
New York, NY 10178
212-808-5145
jjacobson@kelleydrye.com

        Matthew C. Luzadder
        Catherine E. James
        Kelley Drye & Warren LLP
        333 West Wacker Drive
        Suite 2600
        Chicago, IL 60606
        (312) 857-7070
        mluzadder@kelleydrye.com
        cjames@kelleydrye.com

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing *Reply Memorandum In Support of the Fox Defendants' Motion to Dismiss* was served on all counsel of record pursuant to the Court's ECF system on this 7th day of February, 2017.

/s/ Jeffrey S. Jacobson _____
Jeffrey S. Jacobson