# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| T.S. *et al.*, <br><br> Plaintiffs. <br><br> v. <br><br> Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation et al., <br><br> Defendants. | Case No. 1:16-cv-08303 <br><br> Honorable Judge Amy J. St. Eve |

### MEMORANDUM IN SUPPORT OF THE FOX DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation ("TCFTV"), Fox Broadcasting Company, and Twenty-First Century Fox, Inc. (collectively the "Fox Defendants"), by and through their undersigned attorneys, hereby submit this Memorandum in Support of their Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

Plaintiffs' SAC cures none of the fatal flaws that caused the Court to dismiss their First Amended Complaint. Indeed, the only new "fact" alleged in the SAC is that Superintendent Dixon took photographs with *Empire* cast members and displays them in his office—a matter that has no bearing on the defects the Court found in Plaintiffs' previous pleading. Now as before, simply alleging an agreement between a private party and the government that *results* in civil rights violations is not the same as alleging a "meeting of the minds" or "understanding" to *commit* those violations. Dkt. No. 73, at 12, *quoting Wilson v. Warren County, Ill.*, 830 F.3d 464, 468 (7th Cir. 2016). Plaintiffs still have not pleaded, and it is clear now that they cannot plead, any facts

1

supporting their claim that the Fox Defendants, while seeking access to unoccupied areas of the Cook County Juvenile Temporary Detention Center ("JTDC") to film scenes for a scripted television show, *agreed or intended* to violate Plaintiffs' civil rights. Merely speculating as to what the Fox Defendants knew or should have known about detainee treatment, which is all Plaintiffs continue to do in the SAC, suffices to state a "joint action" or conspiracy claim.

Plaintiffs' inclusion in the SAC of a new claim for "unjust enrichment" does not allow them to evade this "meeting of the minds" standard. Whether or not unjust enrichment even exists as a stand-alone cause of action in Illinois, the Seventh Circuit has made clear that such a claim cannot stand where a plaintiff has pleaded no unlawful or improper conduct against the defendant. For that reason, Plaintiffs' inability to plead an unlawful agreement between the Fox Defendants and the government precludes them from suing the Fox Defendants on an unjust enrichment theory. Plaintiffs' unjust enrichment claim also fails for the separate reason that any connection between the advertising revenues the Fox Defendants received from airing *Empire* episodes and the government's alleged deprivation of Plaintiffs' rights while they were detained at the JTDC is too attenuated to support a claim by Plaintiffs for those revenues.

As explained further below, therefore, the Court should dismiss all of Plaintiffs' claims against the Fox Defendants, without leave for further amendments.

### STATEMENT OF FACTS AND THE COURT'S PRIOR OPINION

The Court already is familiar with the facts of this case from the prior dismissal proceedings. Briefly, *Empire* is a popular scripted television show that airs on the Fox television network. Although the show is set in New York City, TCFTV films it principally in and around Chicago. In the show's second season opener, which aired in fall 2015, the plot saw the male lead incarcerated. To film the character's time in prison, TCFTV scouted the JTDC and, on June 28,

2

2015, it signed a Location Agreement with Cook County allowing TCFTV, and the cast and crew of *Empire*, to access limited areas of the facility for filming. See Dkt. No. 73, at 4; Declaration of Catherine E. James dated Dec. 5, 2016 (Dkt. No. 51-1) ("James Decl.") ¶ 2 & Ex A.

The Location Agreement contemplated five days of access, from Monday, June 22 through Friday, June 26, 2015, with TCFTV agreeing to pay $1,500 per day of access plus reimbursement of certain costs for janitorial and security personnel. Cook County and TCFTV subsequently entered into two addenda allowing access on July 13-16, 2015 and August 23-25, 2015, on the same cost-per-day payment terms. See James Decl. ¶¶ 2-4 & Exs. A-C. The SAC (at ¶ 12) alleges that "[t]he average stay for a child at the JTDC is three weeks," but does not specify when either Plaintiff was detained at the JTDC or during which of *Empire*'s three filming sessions.

According to the SAC (at ¶ 33), the Location Agreement "contemplated that . . . [JTDC detainees] would be barred from [the locations to which TCFTV was granted access] so that the film crew would work without interruption." In it, TCFTV also "acknowledge[d] that the [JTDC] is a functioning Municipal Building" and agreed to "cooperate with the County, JTDC Administration, and Security . . . so that normal operations of the [JTDC] and its occupants, and access by the public, are not disrupted in any manner whatsoever." James Decl. Ex. A ¶ 1(D).[1]

The Complaint alleges that TCFTV personnel accessed, at various times on filming days, the outdoor recreation yard, an unoccupied residential "pod," and a visiting room. SAC ¶¶ 36, 40. Other areas of the JTDC, including some classroom space, were made available to TCFTV

---

[1] As before, the Fox Defendants submit that the Court may consider the Location Agreement on a motion to dismiss because "the agreement" between the Fox Defendants and the government is central to Plaintiffs' claims. *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (advocating a "liberal . . . approach" to determining whether a document is central to claims). The Court's prior decision left Plaintiffs free to allege the existence of some other "agreement" between a Fox Defendant and the government, written or unwritten, but the SAC alleges none, and none exist.

3

personnel for use as storage or working areas. *See id.* The Complaint alleges that, as a result of TCFTV's presence at the JTDC, classes for detainees were held in their residential areas, and not in the JTDC's classrooms. *See* SAC at "Introduction." It alleges, too, that detainees could not use the JTDC's outdoor recreation area when *Empire* was filming there, and that visitations were canceled or curtailed for some detainees as a result of filming. *See, e.g., id.* ¶¶ 49(c), 80. Plaintiffs allege that "JTDC officials placed these areas off limits so the Fox Defendants' agents and employees could use these areas to stage and film the television show." Dkt. No. 73, at 4. "To that end, JTDC officials ordered that the juvenile detainees either remain in their cells or be placed in jail-style 'pod' areas, which significantly limited the juveniles' movement." *Id.* The SAC also alleges that "[t]he infirmary was used as a film set." *See* SAC ¶ 36.²

The Court found that Plaintiffs' prior complaint "failed to sufficiently allege that the Fox Defendants and any of the state actor/government Defendants *reached an understanding* to deny the juvenile detainees' constitutional rights." Dkt. No. 73, at 13 (emphasis added), *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court noted Plaintiffs' claims that the Fox Defendants "knew that filming *Empire* at the JTDC would result in lockdowns that placed unconstitutional restrictions on the juveniles housed there," and "deliberately encouraged the JTDC administrators to improperly place the JTDC on lockdown during the filming of *Empire*, and the contemplated

---

²     Although the Court must accept well-pleaded allegations as true for purposes of a motion to dismiss, it bears noting that Plaintiffs plead no personal knowledge of the infirmary allegedly being closed to facilitate TCFTV's filming. When Plaintiffs allege in passive voice that "[s]ick call requests by children on [their] pod[s] were also ignored during filming," SAC ¶¶ 47(c), 48(d), they clearly are not talking about themselves, and they plead no facts to explain the claim. No specific detainees or missed sick calls are identified. Neither T.S. nor Q.B. alleges that he personally witnessed a sick call being "ignored" or even that another detainee had relayed a story about a sick call being "ignored." The complaint also identifies by initials three other detainees who are not plaintiffs in this matter—N.T., G.M., and D.G.—none of whom claim to have had a sick call ignored or to have witnessed or even heard about a sick call being ignored. *See* SAC ¶¶ 49-51.

4

and obvious result of this agreement was restricting the juvenile detainees' movement," but found that these conclusory allegations did not suffice. *Id.* "Although Plaintiffs' allegations suggest an agreement between the private and state actors that *resulted in restricting* the juvenile detainees' movement and access to facilities, Plaintiffs have failed to allege sufficient facts raising a reasonable inference that the state and private actors had a 'meeting of minds' in relation to a *shared unconstitutional goal.*" *Id.* (emphasis added), *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *Wilson*, 830 F.3d at 468-69. Rejecting Plaintiffs' attempted analogy to cases where media and government "agreed to recreate or film criminal activity" because TCFTV here "filmed scripted episodes of *Empire* with actors," *id.* at 14, the Court dismissed Plaintiffs' claims against the Fox Defendants under 42 U.S.C. § 1983 for alleged "joint action" with the government.

For essentially the same reasons, the Court dismissed Plaintiffs' claims of tortious inducement of the government defendants to breach a fiduciary duty to Plaintiffs, conspiracy to violate § 1983, and conspiracy under state law. The Court found Plaintiffs' inability to allege an agreement to "depriv[e] the juvenile detainees' constitutional rights" doomed these claims. Dkt. No. 73, at 16 (dismissing Plaintiffs' § 1983 conspiracy claim). The absence of allegations that "the Fox Defendants 'knowingly participated in a breach of [JTDC officials'] duty'" precluded any claim that the Fox Defendants tortiously induced such a breach. *Id.* at 26, *quoting Village of Wheeling v. Stavros*, 89 Ill. App. 3d 450, 454 (1st Dist. 1980). And although the Court found Plaintiffs had adequately pleaded that *the government* breached its fiduciary duty, it also found that Plaintiffs "failed to adequately allege that the Fox Defendants had an agreement with [the government] *and committed tortious acts in furtherance of that agreement.*" *Id.* at 30 (emphasis added). To plead a valid conspiracy claim, the Court found, Plaintiffs "would need to plausibly

5

allege that the Fox Defendants planned, assisted, and encouraged the tortious conduct at issue." *Id.*, *citing McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 133 (1999).

The Court also dismissed Plaintiffs' prior claim against the Fox Defendants for intentional infliction of emotional distress ("IIED"). The Court found that Plaintiffs' prior complaint did "not allege sufficient facts to establish that the Fox Defendants were in a position of power over Plaintiffs and it is not reasonable to infer from the facts as alleged that the Fox Defendants knew of Plaintiffs' mental health care issues and the circumstances of their confinement." Dkt. No. 73, at 28-29. This meant Plaintiffs did not "adequately allege[] that the Fox Defendants knew that there was a high probability that their conduct would cause severe emotional distress." *Id.* at 29, *citing McGreal v. Village of Orchard Park*, 850 F.3d 308, 314 (7th Cir. 2017). *See also id.* at 30 (dismissing claim against Fox Defendants for conspiracy to commit IIED).

Granted leave by the Court to attempt to a cure these deficiencies, Plaintiffs filed their SAC on May 19, 2017. *See* Dkt. No. 80. The SAC alleges that "the Fox Defendants scouted the JTDC" prior to making the decision to film there and "decided that they wanted to use the facilities on the JTDC's second and third floors to stage and shoot scenes for *Empire*." SAC ¶ 29. Plaintiffs then speculate about what the employees who "scouted" the JTDC may have been thinking:

> [They] were confronted with the fact . . . that the facilities they wanted to use were *the* facilities that enabled JTDC administrators to let the children housed there off their pods, and were the facilities that provided a venue for the children housed at the JTDC to receive education and rehabilitative services. . . . The only way *Empire*'s crew could use the facilities on the JTDC's second and third floors was for the children to be prevented from using them, which meant confining hundreds of children to their pods during filming—both because that was the only place at the JTDC left for the children to go and because the presence of a large film crew would be massively disruptive to the JTDC's normal operations. [*Id.* (emphasis in original).]

6

Plaintiffs also newly plead the alleged fact "[t]hat the children at the JTDC had been placed on lockdown was made obvious to the Fox Defendants from the first day they arrived at the JTDC for filming." SAC ¶ 45. They do not explain why this was "obvious," other than by noting—as did the prior complaint—that TCFTV personnel and detainees could not occupy the same spaces at the same times. The SAC then alleges in conclusory form that "[t]he JTDC's administrators placed the JTDC on lockdown pursuant to an understanding with . . . the Fox Defendants, in order to achieve the Fox Defendants' goals." *Id.* ¶ 98. The SAC, like the prior complaint, pleads no details of this supposed "understanding." Indeed, the only specific "new" facts alleged in the SAC are that JTDC administrators met and took photographs with members of the *Empire* cast and that Superintendent Dixon allegedly displays some of those photographs in his office. *See id*. ¶ 46.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT SHOWN AND CANNOT SHOW THE NECESSARY "MEETING OF THE MINDS" TO CONFER "JOINT ACTOR" LIABILITY ON THE FOX DEFENDANTS.

It remains an undisputed fact that the governmental defendants in this case had full control over the conditions of Plaintiffs' detention, while the Fox Defendants had none.[3] Now as before,

---

[3] In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must assume as true all well-pleaded facts set forth in the complaint. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). Pleading a sufficient claim, however, requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements." *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, the plaintiff must include sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is plausible on its face where the facts included in the complaint allow the court to draw a reasonable inference that the defendant is liable. *Id.* A complaint cannot survive based solely on the mere possibility that a plaintiff might, after discovery, establish some "set of undisclosed facts" which would support recovery. *Twombly*, 550 U.S. at 561. Where the complaint does not establish more than the mere possibility of liability, the plaintiff has failed to show that he is entitled to relief as required by the rules, and the complaint is properly dismissed. *Iqbal*, 129 S. Ct. at 1950; *see also Brown v. JP Morgan Chase Bank*, No. 08-1890, 2009 WL 1761101, at *1-2 (7th Cir. June 23, 2009).

7

"Plaintiffs seek to establish that the Fox Defendants are liable for the alleged constitutional deprivations under the 'joint action' or 'joint participation' doctrine in relation to their Fourteenth Amendment due process claim," but such a claim requires the private party to be "a willful participant in joint activity with the State or its agents." Dkt. No. 73, at 12, *quoting Adickes,* 398 U.S. at 152 (1970); *L.P. v. Marian Catholic H.S.*, 852 F.3d 690 (7th Cir. 2017). "[F]or a private actor to act under color of state law he must have '**had a meeting of the minds and thus reached an understanding' with a state actor to deny plaintiffs a constitutional right**." *Id.* (emphasis added), *quoting Wilson v. Warren County, Ill.*, 830 F.3d 464, 468 (7th Cir. 2016).

This standard means "Plaintiff[s] must allege facts supporting a reasonable inference" that the Fox Defendants and State actors "shared a common goal **in relation to the deprivation of Plaintiffs' constitutional rights**." *Id.* (emphasis added), *citing Wilson*, 830 F.3d at 468. *See also, e.g., Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) ("[n]othing in the complaint demonstrates the existence of any joint action, concerted effort, or even a general understanding between" private and public actors to violate the plaintiff's rights); *Starnes v. Capital Cities Media, Inc.*, 39 F.3d 1394, 1397 (7th Cir. 1994) ("a requirement of the joint action charge therefore is that both private and public actions share a common, unconstitutional goal"); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985) (private parties cannot be sued on a "joint action" theory unless "the state officials and the private party somehow reached an understanding to deny the plaintiffs their constitutional rights"). *See also Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205 (9th Cir. 2002) (upholding dismissal of § 1983 claims because actions by members of the media were not "'inextricably intertwined' with those of the government" (citations omitted).

8

The Fox Defendants were present at the JTDC because they requested access to particular areas of the facility, the government set a price and established conditions for that access, and the Fox Defendants acceded to those terms. The SAC does *not* allege, because such allegations are impossible, that the Fox Defendants sought or intended unconstitutional restrictions on JTDC detainees. That absence of a "meeting of the minds" is fatal to Plaintiffs' claims against the Fox Defendants. *See, e.g., Fries*, 146 F.3d at 458; *Terra Foundation for the Arts v. Perkins*, 151 F. Supp. 2d 931, 936 (N.D. Ill. 2001) (rejecting § 1983 claims at the pleading stage because private parties in contact with a state officer were not alleged to have shared the officer's "hypothetically unconstitutional goals"). Plaintiffs cannot allege a "meeting of the minds," and so the SAC merely repeats a few more times that the Fox Defendants "must have known" that detainees were being subjected to unconstitutional deprivations.[4] The Court correctly found those allegations lacking because a private party having a shared goal with a governmental actor—here, permitting filming

---

[4] The Fox Defendants respectfully disagree with, but will not reargue at length, the Court's conclusion that Plaintiffs have sufficiently alleged conduct amounting to civil rights violations. The Fox Defendants do, however, request that the Court reconsider allowing Plaintiffs' to premise their standing to sue on false allegations that the Fox Defendants filmed in the JTDC's infirmary and that sick calls were missed as a result. Had Plaintiffs claimed that *their own* illnesses were not attended to, or perhaps even that they personally witnessed the alleged closing of the infirmary, the Court of course would have to credit such allegations. But Plaintiffs' false claims about the infirmary's being closed are not personal to them and are not even detailed enough to be called hearsay. As the Supreme Court stated in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016), like the Seventh Circuit in *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002), a named plaintiff in a class action must *himself* have suffered an injury that confers standing to sue, and cannot predicate standing on an injury suffered only by absent members of a putative class. *See also Town of Chester v. Laroe Estates, Inc.*, __ U.S. __, 2017 U.S. LEXIS 3555, at *9-*10 (June 5, 2017) ("standing is not dispensed in gross"; each plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought"). Without the infirmary claims, which the Court said sufficed on their own to confer standing, *see* Dkt. No. 73, at 9, Plaintiffs have nothing left but their personal claims of a single curtailed visitation each and a temporarily "chaotic" teaching environment. Those personal claims do not suffice to state a claim for civil rights violations.

9

at the JTDC—that allegedly *resulted in* civil rights violations is not the same as the private party *intending* those violations.

The Court correctly dismissed Plaintiffs' conspiracy and tortious inducement claims for the same absence of a "meeting of the minds," and should do so again. To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individuals reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individuals were willful participants in joint activity with the State or its agents. *Fries*, 146 F.3d at 457. "It is well established that 'a bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983.'" *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 398 (7th Cir. 2015). "The generalized allegation of a wink and a nod understanding . . . does not amount to an agreement or conspiracy to violate plaintiff's rights in particular." *Anderson v. Blake*, No. CIV-05-0739-H, 2005 WL 2716302, *2 (W.D. Okla. Oct. 21, 2005), *quoting Brunette v. Humane Soc'y*, 294 F.3d 1205, 1212 (9th Cir. 2002). Instead, the plaintiff must allege an explicit agreement that was motivated, at least in part, by the goal of depriving the plaintiffs of their constitutional rights. See *Hanania v. Loren–Maltese*, 212 F.3d 353, 357 (7th Cir. 2000). The same is true for tortious inducement, which requires the third party to have colluded with a fiduciary in committing a breach of duty. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007) (citation omitted). The Seventh Circuit has described the requisite level of involvement by the non-fiduciary as "knowingly participating with a fiduciary in a breach of fiduciary trust." *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 542 (7th Cir. 1991) (internal quotation omitted). Plaintiffs' SAC does not cure the failure to plead an improper motivation or culpable participation by the Fox Defendants.

10

## II. PLAINTIFFS CANNOT SKIRT THE "MEETING OF THE MINDS" PREREQUISITE FOR JOINT ACTOR LIABILITY BY PLEADING A CLAIM FOR "UNJUST ENRICHMENT."

By failing to plead in the SAC a "meeting of the minds" between the Fox Defendants and the government to deprive Plaintiffs of any civil rights, Plaintiffs have tacitly conceded their inability to do so. The SAC therefore pleads a new claim for "unjust enrichment," essentially alleging that the Fox Defendants should have to disgorge to Plaintiffs any profits they earned from airing *Empire* even though the Fox Defendants did not set the alleged conditions of their detention. This new count fails for two main reasons. First, Illinois law does not recognize claims for unjust enrichment untethered from some unlawful or improper conduct by the defendant. As a result, Plaintiffs inability to plead unlawful or improper conduct by the Fox Defendants mandates dismissal. Second, unjust enrichment requires a direct connection between the defendant's benefit and the plaintiffs' detriment. Here, the alleged connection between Plaintiffs' detention and the airing of two episodes of a long-running television series is too attenuated to support a claim.

Recent Illinois case law holds that "unjust enrichment is not an independent cause of action" at all. *Sheridan v. iHeartMedia, Inc.*, No. 15-CV-9229, 2017 U.S. Dist. LEXIS 85858, at *29 (N.D. Ill. June 5, 2017), *quoting Gagnon v. Schickel*, 983 N.E.2d 1044 (Ill. App. Ct. 2012). *See also, e.g., Tsitiridis v. Mahmoud*, No. 1-14-1599, 2015 Ill. App. Unpub. LEXIS 2841, at *P37 (1st Dist. Dec. 18, 2015). The Seventh Circuit's most recent decision on this issue, *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516-19 (7th Cir. 2011), did not resolve whether unjust enrichment exists as a separate cause of action in Illinois, and noted some contrary language from the Illinois Supreme Court on the question. The Seventh Circuit recognized, however, that whether or not the claim exists, it "cannot stand untethered from an underlying claim." *Id.* at 516-17. *See also, e.g., Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 137 Ill. App. 3d 84, 90–91, 484 N.E.2d 349, 354 (1985) ("The term 'unjust enrichment' is not descriptive of conduct that, standing

11

alone, will justify an action for recovery. . . [r]ather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence . . . ."), *aff'd*, 114 Ill. 2d 278, 499 N.E.2d 1319 (1986). Thus, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim . . . will stand or fall with the related claim." *Cleary*, 656 F.3d at 517 (citations omitted).

Here, it violated no law for TCFTV and the government to agree that TCFTV could film a television show at the JTDC. *See* SAC ¶¶ 32-33. Nor was it unlawful for the Fox Defendants to pay a rental fee to Cook County or to reimburse Cook County for wages and overtime for JTDC staff. *See id.* Absent *unlawful* conduct by the Fox Defendants, which this Court correctly held Plaintiffs have not alleged, Plaintiffs cannot sue the Fox Defendants on an unjust enrichment theory. *See, e.g., Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 884 (N.D. Ill. 2016) (an unjust enrichment claim must be based on unlawful conduct).

Even were it possible to plead unjust enrichment without unlawful conduct, Plaintiffs' claim against the Fox Defendants still would fail for the separate reason that the connection between the government's alleged deprivation of their civil rights and the airing of two episodes of *Empire* is too attenuated to support their claim. *See Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 855-56 (N.D. Ill. 2006). Plaintiffs argue that the Fox Defendants "profited as a proximate result of the JTDC lockdown." SAC ¶ 56. But although Plaintiffs allege what advertisers paid to air commercials during the *Empire*'s season opener, *id.* ¶ 57, they plead no facts suggesting that the Fox Defendants received these revenues *because* scenes from these episodes were filmed at the JTDC or *because* of any conditions the government imposed on Plaintiffs while TCFTV had access to the JTDC. *See Cleary*, 656 F.3d at 520. Nor do Plaintiffs claim that these advertising revenues should have been given to them instead or that they possess "a better claim"

12

to advertising dollars than the Fox Defendants. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Even where a plaintiff pursues an unjust enrichment claim on a theory of "wrongful conduct" by the defendant, he "must show some entitlement to the benefit at issue allegedly enjoyed by the defendant." *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 194 F. Supp.3d 706, 726 (N.D. Ill. 2016) (citing cases). Plaintiffs here cannot satisfy that standard, and as a result, the Court should dismiss their unjust enrichment claim.

### III. PLAINTIFFS ONCE AGAIN HAVE NOT ALLEGED A VALID IIED CLAIM.

The Court dismissed Plaintiffs' IIED claim against the Fox Defendants for failure to plead in sufficient terms that any Fox Defendant "intend[ed] that [its] conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress." Dkt. No. 73, at 26-27, *quoting Bailey v. City of Chicago*, 779 F.3d 689 (7th Cir. 2015). Plaintiffs' SAC has not cured this fatal flaw, either. The SAC contains new allegations about a 22 year-old New York man who, in Spring 2015, committed suicide in New York after his release from three years of pretrial confinement, including solitary confinement, in the adult jail on New York's Rikers Island. *See* SAC ¶ 126 & n.6. What relevance this story has to Plaintiffs' claim is a mystery. The JTDC, unlike Rikers Island, is not an adult jail. Plaintiffs here were detained for weeks, not years, and they do not claim to have been held in solitary confinement. Nor do Plaintiffs plead that any relevant decision-maker for the Fox Defendants with regard to filming at the JTDC knew about this tragic story from another city.

Plaintiffs' SAC also correctly notes that, in the *Empire* episodes for which some scenes were filmed at the JTDC, the cast members' dialogue—the cast is predominantly African-American—discussed the problem of mass incarceration of African-Americans. That the show

13

decried mass incarceration of African-Americans, however, is not relevant to Plaintiffs' claims, either. The Fox Defendants neither detained Plaintiffs nor prolonged their detention.

The other elements of an IIED claim, moreover, are that (1) the conduct involved must have been extreme and outrageous, and (2) the conduct must in fact have caused severe emotional distress. *See* Dkt. No. 73 at 26-27; *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). In order for conduct to be deemed "outrageous" enough to support a tort claim, that conduct must "go beyond all bounds of human decency." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). A plaintiff cannot premise an IIED claim based on "mere insults, indignities, threats, annoyances, petty oppressions or trivialities," but only for "conduct ... so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Lujano v. Town of Cicero,* 691 F. Supp. 2d 873 (N.D. Ill. 2010), *citing Graham v. Commonwealth Edison Co*., 318 Ill.App.3d 736, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000).

The kind of conduct that Illinois courts have found sufficient to merit an IIED claim is typified by cases such as *Briggs v. North Shores Sanitary Dist.,* 914 F. Supp. 245, 252 (N.D. Ill. 1996) (allegation that defendants intentionally subjected plaintiff to toxic fumes for eight hours, resulting in headaches and lung damage). The Fox Defendants respectfully submit that Plaintiffs have not satisfied this element of an IIED claim or sufficiently alleged that they suffered "severe" emotional distress resulting from the specific conditions they attribute to the Fox Defendants' temporary presence at the JTDC, as the tort requires. *See Honaker,* 256 F.3d at 495; *Bristow v. Drake St. Inc.*, 41 F.3d 345, 349-50 (7th Cir. 1994). That is a separate reason why the Court should dismiss Plaintiffs' IIED claim once again, this time with prejudice.

## C<small>ONCLUSION</small>

For the reasons stated above, the Fox Defendants request that the Court dismiss all claims stated against them in Plaintiffs' SAC. Because the Court previously allowed Plaintiffs a chance to amend, the dismissal should be with prejudice.

Date: June 19, 2017

Respectfully Submitted,

/s/Jeffrey S. Jacobson

Jeffrey S. Jacobson
Kelley Drye & Warren LLP
101 Park Ave
New York, NY 10178
212-808-5145
jjacobson@kelleydrye.com

Matthew C. Luzadder
Catherine E. James
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 857-7070
mluzadder@kelleydrye.com
cjames@kelleydrye.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that the foregoing Defendant Twentieth Century Fox Television's **MEMORANDUM IN SUPPORT OF THE FOX DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** were served on all counsel of record pursuant to the Court's ECF system on this 19th day of June, 2017.

/s/Jeffrey S. Jacobson

Jeffrey S. Jacobson
Kelley Drye & Warren LLP
101 Park Ave
New York, NY 10178
212-808-5145
jjacobson@kelleydrye.com

Matthew C. Luzadder
Catherine E. James
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 857-7070
mluzadder@kelleydrye.com
cjames@kelleydrye.com

*Attorneys for Defendants*