UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.S. *et al.*,<br><br>                  Plaintiffs.<br><br>v.<br><br>Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation et al.,<br><br>                  Defendants. | Case No. 1:16-cv-08303<br><br>Honorable Judge Amy J. St. Eve |

**REPLY MEMORANDUM IN SUPPORT OF THE FOX DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation ("TCFTV"), Fox Broadcasting Company, and Twenty-First Century Fox, Inc. (collectively the "Fox Defendants"), by and through their undersigned attorneys, hereby submit this Reply Memorandum in Support of their Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

As this Court stated in its Memorandum Opinion and Order ("Order," Dkt. No. 73), Plaintiffs "must allege facts supporting a reasonable inference that there was 'a meeting of the minds' between the private and public defendants and that they shared a common goal in relation to the deprivation of Plaintiffs' constitutional rights." *Id.* at p.12, *quoting Wilson v. Warren County, Ill.*, 830 F.3d 464, 468 (7th Cir. 2016). Plaintiffs' opposition brief ("Opp. Br.," Dkt. No. 97) points to no new facts alleged in the SAC that address the pleading deficiencies that led this Court to dismiss their First Amended Complaint ("FAC", Dkt. No. 23). Rather, an examination of the "details" Plaintiffs claim to have added to the SAC shows that they are simply a rehash of the allegations of the FAC.

1

Plaintiffs continue to ignore the critical difference between alleging an agreement that had the *result* of infringing a person's Constitutional rights, which states no claim, and alleging that an agreement had the *goal* of infringing those rights. Plaintiffs' brief appears to argue that the Court's prior decision misapprehended the Seventh Circuit's clear requirements for pleading "joint action" and "conspiracy" liability under 42 U.S.C. § 1983, and it mischaracterizes the distinctions this Court drew between the FAC's allegations and other cases involving the media. Plaintiffs then argue incorrectly that the Seventh Circuit itself misapplied Illinois common law requirements for an "inducement to breach a fiduciary duty," and that inducement claims may proceed even if the alleged inducement was not "knowing." These arguments are wrong, as is Plaintiffs' alternate theory that Illinois law allows them to sue the Fox Defendants for "unjust enrichment" even without plausible allegations that the Fox Defendants culpably participated in the conditions of Plaintiffs' detention. Because Plaintiffs' joint action and conspiracy claims fail, and because their unjust enrichment theory is untenable, the Court should dismiss their claims with prejudice.[1]

## ARGUMENT

**I. THIS COURT DID NOT MISUNDERSTAND THE SEVENTH CIRCUIT'S CLEAR "MEETING OF THE MINDS" REQUIREMENT FOR JOINT ACTION LIABILITY UNDER SECTION 1983.**

Plaintiffs' SAC alleges that the government constrained detainees' movements in order to facilitate TCFTV's authorized presence at the Cook County Juvenile Temporary Detention Center ("JTDC"). The SAC does *not* allege, nor could it, that any Fox Defendant came to the JTDC with the goal of violating any detainees' Constitutional rights. Plaintiffs' opposition brief contends it suffices for them to allege "a mutual understanding [between the government and the Fox

---

[1] Plaintiffs' opposition brief (at p.1 n.1) accused the Fox Defendants of "reargu[ing] parts of the Court's April 20 ruling." Where the Fox Defendants included an argument from the prior motion in their opening brief, this was made clear. *See, e.g.,* Dkt. No. 91 ("Opening Br.") at p.9 n.4. The Fox Defendants trust the Court will do with those arguments as it sees fit. For avoidance of doubt, however, *none* of the arguments in this Reply Memorandum ask or would require the Court to revisit any of its prior conclusions.

2

Defendants] that the government would *impinge on others*," *i.e.,* by keeping detainees out of specified areas of the JTDC, to facilitate TCFTV's filming of scenes in those areas. Opp. Br. at p.3 (emphasis added). "Impinge on others," however, is not remotely the applicable legal standard.

As this Court's Order recognized, the Seventh Circuit's "meeting of the minds" standard for joint action liability unambiguously requires the public and private defendants to have "shared a common goal in relation to the deprivation of Plaintiffs' constitutional rights." Order at p.12, *citing Wilson*, 830 F.3d at 468. *See also Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) ("[n]othing in the complaint demonstrates the existence of any joint action, concerted effort, or even a general understanding between" public and private actors to violate the plaintiff's rights); *Starnes v. Capital Cities Media, Inc.*, 39 F.3d 1394, 1397 (7th Cir. 1994) ("It is necessary to [a joint action] charge that the public and private actors share a common and unconstitutional goal."); *Cunningham v. Southlake Ctr. For Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) (same).

Plaintiffs' brief confirms that the SAC has not fixed their prior complaint's fatal flaw. As before, Plaintiffs (falsely) allege that "the Fox Defendants . . . knew that filming *Empire* at the JTDC would result in lockdowns that placed unconstitutional restrictions on the juveniles housed there," but they "fail[] to sufficiently allege that the Fox Defendants and any of the state actor/governmental defendants reached an understanding to deny [Plaintiffs'] constitutional rights." Order at p.13, *citing Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[2]

The Fox Defendants have no quarrel with the general idea that an agreement's existence can be "inferred from the surrounding circumstances." Opp. Br. at p.3, *citing Hampton v.*

---

[2] Plaintiffs' opposition brief argues that they need not make "detailed factual allegations." Opp. Br. at p.1, *quoting Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013). But, in *Alexander*, the plaintiff pleaded detailed facts respecting misconduct by federal agents and a prosecutor in framing him for bribery, including destruction of specific evidence, falsification of specific documents, and meetings to discuss the plot. *See generally id.* at 420-22. The Seventh Circuit held that because the plaintiff "provided numerous supporting details . . . , these allegations . . . are more than sufficient." *Id.* at 423. Plaintiffs' SAC, which lacks *any* evidence of an agreement between any Fox Defendant and the state to deprive them of their rights, cannot be analogized to *Alexander*.

3

*Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979). In *Hampton*, however, the Seventh Circuit held that claims may proceed *only* if the alleged conspirators "share[d] the general conspiratorial objective." 600 F.2d at 621. Every iteration of Plaintiffs' claims has lacked that critical element.

Recognizing that their SAC contains no facts from which the Court plausibly can infer that any Fox Defendant knew of or intended any violation of detainees' rights, Plaintiffs' opposition brief reargues the significance of the so-called "media cases" where "federal courts concluded that media defendants acted under color of state law because they and the public defendants had either collaborated in an arrest or agreed to film actual criminal activity." Order at p.14 (citing cases). Plaintiffs try to reargue that it suffices for them to allege merely that television producers "had a meeting of the minds with the government that it would do an act, which violated the plaintiff's rights, so that the private party could…capture entertaining law enforcement footage." Opp. Br. at p.2. That, however, is not an accurate portrayal of any of the "media cases."

In *Conradt v. NBC Universal, Inc.*, 536 F. Supp.2d 380 (S.D.N.Y. 2008), for example, the subject of an investigation committed suicide in his home after television producers and law enforcement officials agreed to use a heavily armed SWAT team unnecessarily to effect his routine arrest, specifically for the purpose of "enhanc[ing] the camera effect." *Id.* at 385. In *Frederick v. The Biography Channel*, 683 F. Supp.2d 798 (N.D. Ill. 2010), producers and police officers agreed to delay the plaintiff's routine arrest, and to subject her to unusual arrest procedures, which the producers then filmed and aired without her consent. *See id.* at 799-800. In those and all the other "media cases," the media actors knew of, intended, and agreed with the state actors to perform the specific rights infringements about which those plaintiffs later complained.

The facts alleged in the cited "media cases" are nothing like Plaintiffs' claims against the Fox Defendants in this case. No Fox Defendant controlled the conditions of Plaintiffs' detention, filmed those conditions, or even is alleged to have known of them. Because the law requires

4

allegations that the Fox Defendants were "willful participant[s] in joint action with the State," and of "a concerted effort between a state actor and [the Fox Defendants]," Plaintiffs' claims fell short before, and remain insufficient in the SAC. Order at p.12, *quoting L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017). *See also Fries*, 146 F.3d at 457.

Plaintiffs' inability to allege a "meeting of the minds" between any Fox Defendant and any State actor to deprive detainees of their Constitutional rights should cause the Court to dismiss Plaintiffs' Section 1983 "joint action" claim against the Fox Defendants again, and with prejudice.

## II. THE COURT DID NOT MISUNDERSTAND THE REQUIREMENTS FOR PLEADING CONSPIRACY LIABILITY UNDER SECTION 1983.

Plaintiffs' opposition brief contends that that their "conspiracy counts should survive for the same reasons as their joint action claim," without making any distinct arguments for these claims. Opp. Br. at p.4. The reality, however, is that both claims should *fail* for the same reasons. As this Court's Order held, conspiracy claims require that "the individuals reached an agreement to deprive a plaintiff of his constitutional rights." Order at p.15, *citing Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (additional citation omitted). Whether phrased as an "agreement," as needed for a conspiracy claim, or a "meeting of the minds," as needed for a joint action claim, Plaintiffs have not satisfied this requirement. *See id.* at p.16 ("Plaintiffs have not sufficiently alleged facts raising a reasonable inference that Defendants' agreement concerned depriving the juvenile detainees' constitutional rights."), *citing Tom Beu Xiong v. Fischer*, 787 F.3d 389, 398 (7th Cir. 2015) ("It is well established that a bare allegation of conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983."). *See also Hanania v. Loren-Maltese*, 212 F.3d 353, 357 (7th Cir. 2000) (private and public defendants must have had a "mutual goal of trampling upon [Plaintiffs'] constitutional rights"). Plaintiffs' conspiracy claims should again be dismissed.

5

**III.** **THE SEVENTH CIRCUIT AND THIS COURT CORRECTLY STATED THE ELEMENTS OF A CLAIM FOR INDUCEMENT TO BREACH A FIDUCIARY DUTY.**

When the Court dismissed Plaintiffs' prior claim against the Fox Defendants for allegedly "inducing" JTDC officials to breach their fiduciary duty to detainees, it did so because Plaintiffs did not and could not allege that "the Fox Defendants 'knowingly participated in a breach of duty.'" Order at p.26, *quoting Village of Wheeling v. Stavros*, 411 N.E.2d 1067, 1070 (Ill. App. Ct., 1st Dist. 1980). *See also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) (same). Plaintiffs argued that TCFTV's having occupied space at the JTDC constituted sufficient "participation," *see* Dkt. No. 58 at p.27, but this Court correctly disagreed. Now, in defense of a cause of action that they repleaded in the SAC without any substantive amendment, Plaintiffs appear to contend that knowing participation is not required, and that both this Court and the Seventh Circuit were wrong to believe otherwise. This is not so.

To begin, the Seventh Circuit's requirement for "knowing" inducement is clear. In *Borsellino*, the Seventh Circuit stated that one must have "(1) colluded with a fiduciary in committing a breach," and then "(2) knowingly participated in or induced the breach of duty." 477 F.3d at 508. The plaintiffs contended that Goldman Sachs knowingly caused their partners to mislead them, *see id.* at 506, but the Seventh Circuit upheld dismissal of the claim because "the plaintiffs have not alleged any active misbehavior on the part of Goldman Sachs," nor cited "any cases prohibiting activity of the sort described in the complaint." *Id.* at 509. Likewise, in *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 542 (7th Cir. 1991), the Seventh Circuit held that an inducement claim requires "knowing[] participat[ion] with a fiduciary in a breach of . . . trust."

The Seventh Circuit's holdings did not misinterpret Illinois state cases, as Plaintiffs argue. *See* Opp. Br. at p.5 ("[I]n Illinois a plaintiff can state an inducement-of-breach claim by alleging either that the defendant 'participated' in a fiduciary's breach *or* that it 'induced' the breach"). Plaintiffs cite *Stavros* and *Regnery v. Meyers*, 679 N.E.2d 74 (Ill. Ct. App., 1st Dist. 1997), for the

6

proposition that inducement need not be "knowing," but neither case suggests that is true. In both of those cases, the alleged inducer conceived the idea of the fiduciary breach, knew he was inducing it, encouraged it, and participated in it. *See Stavros*, 411 N.E.2d at 1069 (defendant took money to influence building permits and then exercised improper influence over the government employees who approved them); *Regnery*, 679 N.E.2d at 80 (defendant "initiated the idea" of the breach, proposed it, and "fully participated in all steps of the transaction"). There thus is no support at all for the claim that "either collusion or [unknowing] inducement can form the basis of an 'inducement' claim," or that *Stavros* or *Regnery* so held. Opp. Br. at p.7.³

Based solely on this incorrect argument, Plaintiffs ask the Court to hold that paragraphs 32-37 of the SAC suffice to state a claim. At best, however, these paragraphs allege only that Cook County contracted to give TCFTV and Empire's cast and crew access to specified areas of the JTDC in exchange for payment. Plaintiffs nowhere allege, nor could they, that the Fox Defendants knowingly caused JTDC officials to violate Plaintiffs' or any other detainees' rights. Paragraphs 120 and 121 of the SAC, on which Plaintiffs also rely (*see* Opp. Br. at p.5), are purely conclusory statements that the Fox Defendants "knowingly participated in this breach" and "knowingly induced [it]." Plaintiffs plead no facts in support of either conclusion.

The Court therefore should dismiss Plaintiffs' "inducement" claim with prejudice.

## IV. "UNJUST ENRICHMENT" IS NEITHER A VALID STAND-ALONE CLAIM NOR A METHOD FOR PLAINTIFFS TO EVADE THE "MEETING OF THE MINDS" REQUIREMENT.

Although Plaintiffs' brief attempts to confuse the issue, they cannot seriously dispute that multiple courts in this District recently have held that "[u]njust enrichment is not an independent cause of action", and dismissed unjust enrichment claims after finding no other legal violation had been pleaded. *See, e.g., Sheridan v. iHeartMedia, Inc.*, No. 15-CV-9229, 2017 WL 2424217, at

---

³ The other case Plaintiffs cite for this supposed premise, *In re Salem Mills, Inc.*, 881 F. Supp. 1109 (N.D. Ill. 1995), is equally unhelpful. In that case, the defendant charged with inducement to breach "admi[tted] . . . that he knowingly induced this breach." *Id.* at 1117.

7

\*11 (N.D. Ill. June 5, 2017) (Tharp, J.) ("Having found no substantive cause of action, the unjust enrichment count must also be dismissed."); *Soto v. Sky Union, LLC*, 159 F. Supp.3d 871, (N.D. Ill. 2016) (Kennelly, J.) (dismissing unjust enrichment claim because "none of the conduct alleged in plaintiffs' complaint is unlawful"). Accordingly, if the Court dismisses Plaintiffs' claims under Section 1983 and for inducement to breach, as it should, the Court also should dismiss Plaintiffs' unjust enrichment claim. Such a claim cannot stand without an underlying substantive legal violation, which none of the Fox Defendants have committed.

Indeed, Plaintiffs' brief does not advance any reason why their unjust enrichment claim can survive *without* a substantive violation. They begin their argument with a bare assertion that the Fox Defendants "knew or should have known that the JTDC's administrators were violating [Plaintiffs'] rights," Opp. Br. at pp.7, 9, and proceed to explain that one who has "notice" of a fiduciary's breach of duty can be sued for unjust enrichment, *id.* at pp.8, 10. As explained above, however, Plaintiffs do not sufficiently allege any such notice. Their similarly bare assertion that "Fox is being sued as a wrongdoer," *id.* at p.14, is equally unavailing and reliant on circular logic.

The Fox Defendants' opening brief points to recent holdings that a plaintiff may not sue for unjust enrichment unless he can claim that the monies at issue should have been given to him instead or that he otherwise possesses "a better claim" to the monies. Opening Br. at pp.12-13, *quoting HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). *See also Alarm Detection Sys. v. Orland Fire Prot. Dist.*, 194 F. Supp.3d 706, 726 (N.D. Ill. 2016) (unjust enrichment plaintiff "must show some entitlement to the benefit at issue allegedly enjoyed by the defendant") (citing cases). Plaintiffs' brief ignored these cases and failed, for obvious reasons, to argue that they possess any claim to advertising revenues from *Empire* episodes.

8

In both cases Plaintiffs cited as examples of valid unjust enrichment claims, the defendant likewise maneuvered to obtain monies *meant for the plaintiff*.[4] In *People ex rel. Daley v. Warren Motors, Inc.*, 500 N.E.2d 22 (Ill. 1986), a former Cook County official met with a property owner and told him that he had "entered the [taxation] board offices after hours and fraudulently altered records to show a reduction of the real estate tax assessment." *Id.* at 24. The owner then paid the former official $600. When Cook County sued for the proper tax amount on an unjust enrichment theory, the owner contended he had simply engaged a "lobbyist" to lower his taxes. The Illinois Supreme Court, however, held that he "would have to have been invincibly innocent not to know that the reductions were improper," especially where he had provided the former official with no "supporting evidence or argument to justify a reduction in the tax assessment." *Id.* at 28-29.

Similarly, in *Conant v. Karris*, 520 N.E.2d 757 (Ill. Ct. App. 1987), a real estate broker breached his duty to his client by telling his (the broker's) brother about the deal. The brother underbid the client, and the client sued the brother for an accounting. The court allowed that suit to proceed because the broker's brother undisputedly knew of the broker's breach of duty and positioned himself to earn profits meant for the client.

In both cases, the defendants knew that they possessed something—respectively, tax payments and brokerage profits—that should have been the plaintiffs'. Neither case suggests that Plaintiffs here can sue the Fox Defendants (1) for advertising revenues to which they have no claim, and (2) without sufficiently alleging that the Fox Defendants even had notice that JTDC officials were violating anyone's rights, much less that they participated in such violations.

---

[4] Plaintiffs' brief also included an odd citation to *Devco v. T10 Meltel, LLC*, No. 15 C 3558, 2017 WL 750603 (N.D. Ill. Feb. 27, 2017). There, a developer badly missed a contractual deadline and its counterparty retained a $300,000 holdback meant to ensure on-time performance. When the developer finally completed his work, he sued for the holdback on an unjust enrichment theory. Judge Cole granted summary judgment for the defendant for many reasons, including that the existence of a contract barred an unjust enrichment claim. *See id.* at *5-*7. Neither the facts of *Devco* nor its holding has any anology or application to Plaintiffs' claims.

"Unjust enrichment" is not a catch-all cause of action that plaintiffs can allege when they have no other basis to sue and no cognizable claim to the specific monies they seek. The Court therefore should dismiss Plaintiffs' unjust enrichment claim without leave for further amendments.

## V.  PLAINTIFFS CONCEDE THEIR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED") CLAIM HAD NO MERIT.

After pleading irrelevant facts regarding the suicide of a former inmate in an adult jail in New York City in order to salvage their IIED claim, Plaintiffs' opposition brief remarkably, though certainly correctly, admits this claim has no merit and should be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, and in the Fox Defendants' opening brief, the Fox Defendants request that the Court dismiss all claims stated against them in Plaintiffs' SAC. Because the Court previously allowed Plaintiffs a chance to amend, the dismissal should be with prejudice.

Date: July 28, 2017

        Respectfully Submitted,

        /s/ Jeffrey S. Jacobson
        Jeffrey S. Jacobson
        Kelley Drye & Warren LLP
        101 Park Ave
        New York, NY 10178
        212-808-5145
        jjacobson@kelleydrye.com

        Matthew C. Luzadder
        Kelley Drye & Warren LLP
        333 West Wacker Drive, Suite 2600
        Chicago, IL 60606
        (312) 857-7070
        mluzadder@kelleydrye.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing *Reply Memorandum In Support of the Fox Defendants' Motion to Dismiss* was served on all counsel of record pursuant to the Court's ECF system on this 28th day of July, 2017.

/s/ Jeffrey S. Jacobson
Jeffrey S. Jacobson