IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.S. *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>Twentieth Century Fox Television *et al.*,<br><br>     Defendants. | Case No. 1:16-cv-08303<br><br>Hon. Amy J. St. Eve |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO THE FOX DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

This Sur-Reply corrects the mischaracterization in Fox's Reply brief (ECF # 103 ("Fox Reply")) of facts in *People ex rel. Daley v. Warren Motors, Inc.*, 500 N.E.2d 22 (Ill. 1986).

In their Second Amended Complaint ("SAC"), Plaintiffs included Count XIII, which among other things asserted that Fox had been unjustly enriched because it profited from the lockdowns imposed on the children at the Cook County Temporary Juvenile Detention Center ("JTDC") even though it "knew or should have known" that the JTDC's administrators were placing the children on lockdown so that Fox could film *Empire*. (ECF # 88 (SAC) ¶¶ 145-47.)

Fox moved to dismiss Count XIII. In response Plaintiffs, relying in part on *Warren Motors*, argued that when one party violates a victim's rights, and a second party profits from that violation even though the second party knew or should have known about it, the victim can assert an unjust enrichment claim against the second party. (*See* ECF # 97 ("Plf. Response") at 9, 12-13 (citing and quoting *Warren Motors*).)

1

In its Reply, Fox does not treat *Warren Motors* as a case involving a knew-or-should-have-known standard, but rather one involving actual knowledge. Fox does this by explaining the facts in *Warren Motors* as follows:

> In *People ex rel. Daley v. Warren Motors, Inc.*, 500 N.E.2d 22 (Ill. 1986), a former Cook County official met with a property owner **and told him** that he had "entered the [taxation] board offices after hours and fraudulently altered records to show a reduction of the real estate tax assessment." *Id*. at 24. The owner then paid the former official $600.

(Fox Reply at 9 (emphasis added).) After claiming that the official in *Warren Motors* had **told** the auto dealer that he was accomplishing tax reductions (in this case, reducing taxes on a condominium) by breaking into the assessor's office, Fox goes on to suggest that *Warren Motors* articulates an ***actual*** knowledge standard, rather than a knew-or-should-have-known one. Fox argues that unjust enrichment applied in *Warren Motors* because "the [auto dealer] defendant[] ***knew*** that" he had received a benefit that belonged to the plaintiff. (*Id.* (emphasis added).)

Fox misstates the facts in *Warren Motors*, however. There is no support anywhere in that decision to suggest that the official told the auto dealer that he had reduced the dealer's taxes on the condominium by engaging in misconduct. The paragraph from which Fox draws its "told" quote reads in full, with the portion quoted by Fox in bold, as follows:

> Lavin [the official involved in the tax scheme] testified to the circumstances of the reduction of the condominium's assessment. He described a meeting with Ottinger [the auto dealer] in 1978 at the Warren Buick dealership, and his intention to purchase a car. He told Ottinger that he was starting a tax-consulting business, and he recalled that he asked if Ottinger wanted the real estate tax assessments reduced on his property. Ottinger replied that Kelly [another person involved in the scheme] had handled reductions for him in the past, but Lavin assured him that he now was arranging the reductions. Lavin testified that Ottinger was interested in a reduction for his condominium and that, though he was no longer employed at the board, **he entered the board offices after hours and fraudulently altered records to show a reduction of the real estate tax assessment** of the condominium. He received $600 in cash from Ottinger. He also testified that he completed a financial statement while at the dealership in order to obtain financing for the purchase of a car, and that in the statement he

2

> disclosed that until January 1978 he was employed as a deputy commissioner at the board.

*Warren Motors*, 500 N.E.2d at 24 (explanatory brackets added). Nothing in the paragraph suggests that Lavin (the official) told Ottinger (the auto dealer) that he was accomplishing the tax reduction on the dealer's condominium by breaking into the assessor's office. Nor does any other portion of the opinion support that notion. To the contrary, the opinion makes clear that the opposite is true:

> Ottinger corroborated Lavin's testimony that Lavin agreed to arrange a reduction in the assessment of the condominium and that he had paid Lavin $600 for the reduction. Ottinger testified too on his own behalf. He said that he understood Kelly's occupation to be that of an insurance adjuster, and that he did not know that Kelly was going to use "improper means" to obtain the reductions. He did not know Lavin at the time the deductions were obtained on the parcels leased to the dealership. He said that he met Lavin on three or four different occasions, but that Lavin was never introduced as a deputy commissioner at the board. ***Ottinger recalled that during a meeting at the dealership Lavin offered to reduce the assessment on Ottinger's condominium, but Ottinger did not know how this would be accomplished***. He became aware of an investigation into a corrupt scheme involving assessments at the board through media accounts in the latter part of 1979.

*Id.* at 25 (emphasis added). After discussing the "knew or should have known" standard, the court held that the dealer should be held liable under that rule:

> We must conclude that he [Ottinger, the auto dealer] also knew or should have known of the circumstances of the reduction of the assessment on his condominium. He did not provide Lavin any supporting evidence or argument to justify a reduction in the tax assessment despite being aware, through Lavin's financial statement, that Lavin had been a deputy commissioner of the board. Moreover, Ottinger testified at the trial of Kelly that he knew Lavin was involved in the reductions for the dealership and that Lavin had told him that Kelly had charged him too much for those reductions.

*Id.* at 28-29.

There is simply nothing in *Warren Motors* to suggest that Lavin told Ottinger that "he entered the board offices after hours and fraudulently altered records to show a reduction of the real estate tax assessment," as Fox claims in its Reply. Had Lavin done so, Ottinger would have

3

had actual knowledge of Lavin's misconduct, and there would have been no need for *Warren Motors* either to discuss the knew-or-should-have-known standard at all, or to dissect the circumstances surrounding the condominium tax reduction. Rather, *Warren Motors* makes plain that the auto dealer was liable in unjust enrichment because, given the circumstances of the condominium tax reduction he knew, or should have known, that the reduction was improper.

Fox's characterization of *Warren Motors* is thus based on a misstatement of the facts of that case, and the rule that Fox draws—requiring actual knowledge—is actually contradicted by the holding in that decision.

July 31, 2017                                                                 Respectfully Submitted,

/s/ Stephen H. Weil

Stephen H. Weil – steve@weilchardon.com
Alexis G. Chardon – ali@weilchardon.com
Weil & Chardon LLC
333 S. Wabash Avenue, Suite 2700
Chicago, IL 60604
(312) 585-7404

*Attorneys for Named Plaintiffs T.S. and Q.B.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 1, 2017, a true and correct copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                                          /s/ Stephen H. Weil