IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.S., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 16 C 8303 |
| v. ) | |
| ) | |
| TWENTIETH CENTURY FOX ) | |
| TELEVISION, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST EVE, District Court Judge:

On April 20, 2017, the Court granted the Twentieth Century Fox Defendants' Rule 12(b)(6) motion to dismiss certain claims set forth in Plaintiffs' First Amended Class Action Complaint.[1] Also, the Court granted Plaintiffs leave to amend their allegations in accordance with the April 20, 2017 ruling and consistent with counsel's Rule 11 obligations. The Court presumes familiarity with its April 20, 2017 Memorandum Opinion and Order. On May 23, 2017, Plaintiffs filed their Second Amended Class Action Complaint re-alleging certain claims against the Fox Defendants in Counts IV, VI, VIII, and X. Moreover, Plaintiffs added an unjust enrichment claim in Count XIII. Before the Court is the Fox Defendants' Rule 12(b)(6) motion to dismiss that the Court grants in part with prejudice and denies in part.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be

---

[1] The Fox Defendants include Twentieth Century Fox, a division of Twentieth Century Fox Film Corporation, Fox Broadcasting Company, and Twenty-First Century Fox, Inc.

granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union,* 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). When determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## BACKGROUND

On May 23, 2017, minor Plaintiffs – through their legal guardians – filed the present Second Amended Class Action Complaint alleging the following claims against the Fox Defendants: (1) a joint action liability claim in conjunction with an underlying Fourteenth Amendment due process claim (Count IV); (2) a constitutional conspiracy claim based on the due process claim (Count VI); (3) a claim based on the inducement of the County Defendants' breach of their fiduciary duties (Count VIII); (4) a state law tort conspiracy claim (Count X); and (5) an unjust enrichment and/or accounting claim (Count XIII).[2]

Turning to the general allegations, in the summer of 2015, officials placed the Cook County Juvenile Temporary Detention Center ("JTDC") on lockdown so that it could be used to

---

[2] Plaintiffs voluntarily withdraw their intentional infliction of emotional distress claim against the Fox Defendants as alleged in Count IX, and thus the Court dismisses Count IX against the Fox Defendants with prejudice.

2

film episodes for the Fox television show *Empire*. (R. 88, Second Am. Compl. Intro., ¶ 29.) Plaintiffs allege that prior to filming, the Fox Defendants scouted the JTCD and decided that they wanted to use the facilities of the JTDC's second and third floors to stage and shoot scenes for *Empire*. (*Id.* ¶ 29.) Thereafter, the filming of *Empire* occurred over three separate time periods in the summer of 2015, namely, June 21 through 26, July 13 through 16, and August 23 through 26. (*Id.* ¶ 34.) Plaintiffs, who were juvenile detainees during that time, allege that JTDC officials "placed off limits" certain areas that are essential to the JTDC's mission of educating and rehabilitating the juveniles housed there, including the JTDC's school, its facilities for family visits, the outdoor recreation yard, the library, the infirmary, and the chapel. (*Id.* Intro., ¶¶ 14, 21, 22.) Further, Plaintiffs allege that JTDC officials placed these areas off limits so the Fox Defendants' agents and employees could use the areas to stage and film the television show. (*Id.* Intro., ¶¶ 29-32.) To that end, JTDC officials ordered that the juvenile detainees either remain in their cells or be placed in jail-style "pod" areas, which significantly limited the juveniles' movement. (*Id.* Intro., ¶ 38.) As a result, the juvenile detainees sat for days on end, their schooling existed in name only, visits from their families were effectively eliminated, and sick-call requests were ignored. (*Id.* Intro., ¶¶ 39, 41-44.) According to Plaintiffs, these lockdowns effectively cancelled or interrupted the JTDC programs intended to help them. (*Id.* Intro. ¶ 2, ¶ 40.)

## ANALYSIS

### I. Joint Action Liability – Count IV

Plaintiffs seek to establish that the Fox Defendants – despite being private actors – acted under color of state law as required by § 1983, and thus are liable for the purported Fourteenth Amendment due process violations. "The Supreme Court has set forth various tests to use when

deciding whether someone is a governmental actor, including the 'symbiotic relationship test, the state command and encouragement test, the joint participation doctrine, and the public function test.'" *Listecki v. Official Comm. of Unsecured Creditors,* 780 F.3d 731, 738 (7th Cir. 2015) (citation omitted). Here, Plaintiffs seek to establish that the Fox Defendants were liable for the alleged due process deprivations under the "joint action" or "joint participation" doctrine in relation to their due process claim. "To act 'under color' of law does not require that the accused be an officer of the State," it "is enough that he is a willful participant in joint activity with the State or its agents." *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citation omitted). As the Seventh Circuit recently explained, a "private person acts under color of state law when she is a 'willful participant in joint action with the State or its agents,'" which requires "'evidence of a concerted effort between a state actor and that individual.'" *L.P. v. Marian Catholic High Sch.,* 852 F.3d 690, 696 (7th Cir. 2017) (citation omitted). More specifically, for "a private actor to act under color of state law he must have 'had a 'meeting of the minds' and thus reached an understanding' with a state actor to deny plaintiffs a constitutional right." *Wilson v. Warren Cnty., Ill.,* 830 F.3d 464, 468 (7th Cir. 2016) (quoting *Adickes*, 398 U.S. at 158); *see also Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) ("Private action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights"); *Steigmann v. Democratic Party of Ill.,* 406 F. Supp. 2d 975, 990 (N.D. Ill. 2005) ("a plaintiff must allege that a private party acted under color of state law by working in concert with the state officials to deprive them of their constitutional rights"). Under this standard, Plaintiffs must allege facts supporting a reasonable inference that there was "a meeting of the minds" between

the private and public defendants to deny Plaintiffs' constitutional rights. *See Wilson,* 830 F.3d at 468.

Viewing the well-pleaded allegations as true and drawing all reasonable inferences in Plaintiffs' favor, in the April 2017 ruling, the Court concluded that Plaintiffs had not sufficiently alleged that the Fox Defendants and any state actor had reached an understanding to deny the juvenile detainees' constitutional rights. Specifically, the Court noted that although Plaintiffs' allegations suggested an agreement between the private and state actors that resulted in restricting the juvenile detainees' movement and access to certain JTDC's facilities, Plaintiffs failed to plausibly allege that the state and private actors had an agreement in relation to a shared unconstitutional goal. *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

To remedy the deficiencies in their First Amended Complaint, Plaintiffs have added allegations to support their argument that the Fox Defendants and the state actors had an agreement to "impinge on others." In particular, Plaintiffs state that before filming, the Fox Defendants scouted the JTDC, after which a film crew of approximately 250 individuals took over the JTDC's second and third floors. (Second Am. Compl. ¶¶ 35-37.) Once the Fox Defendants became aware of the JTDC's needs for its detainees, Plaintiffs allege that the "Fox Defendants were thus confronted with the problem that the facilities they desired were also required for the education and rehabilitation of hundreds of children (and indeed provided the space needed for the children to be able to leave their pods), yet would be worthless to the Fox Defendants for filming unless the JTDC's administrators excluded those same children from the

facilities, which would be accomplished by confining them to their pods." (*Id.* ¶ 30.) In addition, Plaintiffs assert:

> When confronted with this problem, the Fox Defendants could have found another facility or built a set for the incarceration scenes they wanted to shoot. They did neither. Instead, they sought to enter an agreement with the JTDC's administrators that they knew or were substantially certain would induce the administrators to exclude the children from the JTDC's second and third floors so that *Empire's* film crew could use those areas for staging and filming.

(*Id.* ¶ 31.)

Further, Plaintiffs maintain that to "induce the JTDC's administrators to let *Empire's* crew use the education and rehabilitation facilities that were normally used by the children at the JTDC, the Fox Defendants offered to pay a rental fee for the use of the JTDC." (*Id.* ¶ 32.) Also, Plaintiffs allege that the Fox Defendants offered to pay wages and overtime for JTDC staff to leave their duties of facilitating the normal operation of the JTDC to work on the production of the television show. (*Id.*) Plaintiffs further assert that the Fox Defendants' offers were made on the condition that the JTDC's administrators would change the facility's normal operations to make the second and third floors available to television crew. (*Id.*) Based on these conditions, Plaintiffs allege that all Defendants knew or were substantially certain that these conditions "could only be accomplished by excluding from those areas the hundreds of children who normally used them, and which, in turn, the Defendants knew or were substantially certain could only be accomplished by confining the children to their pods." (*Id.*) Plaintiffs further add that the JTDC administrators accepted the Fox Defendants' inducements and by "reaching this agreement, the Defendants knew or were substantially certain that filming *Empire* at the JTDC would result in the lockdowns and attendant restrictions on the children housed there." (*Id.* ¶ 33.)

Based on these allegations, Plaintiffs argue that they have sufficiently alleged that the Fox Defendants and state actors had an "illicit" agreement. Assuming these allegations support the inference that an "illicit" agreement existed, to establish joint action liability under the law of the Circuit, the parties must have more than an "illicit" agreement, they must reach an understanding or agreement to deny a plaintiff's constitutional rights – or at the very least – they must share a common, unconstitutional goal. *See Wilson,* 830 F.3d at 468; *Hallinan*, 570 F.3d at 815; *Thurman v. Vill. of Homewood,* 446 F.3d 682, 687 (7th Cir. 2006); *Proffitt v. Ridgway,* 279 F.3d 503, 507 (7th Cir. 2002); *see also Starnes v. Capital Cities Media, Inc.,* 39 F.3d 1394, 1397 (7th Cir. 1994) ("It is necessary to this charge that the "public and private actors share a common and unconstitutional goal."); *Cunningham v. Southlake Ctr. for Mental Health, Inc.,* 924 F.2d 106, 107 (7th Cir. 1991) ("A requirement of the joint action charge ... is that both public and private actors share a common, unconstitutional goal.").

Construing Plaintiffs' allegations and all reasonable inferences in their favor, they have not plausibly alleged that the Fox Defendants and any state actor had an agreement to deny Plaintiffs' constitutional rights or that the Fox Defendants and a state actor had a common, unconstitutional goal. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Rather, Plaintiffs' allegations suggest that the Fox Defendants were aware that their desire to film *Empire* at the JTDC conflicted with the juvenile detainees' needs. At best, Plaintiffs have alleged that the Fox Defendants sought to enter into an agreement that would induce the administrators to exclude children from the JTDC's second and third floors and that all of the Defendants knew that filming *Empire* would result in restrictions on the children. Although the result of this alleged agreement may have deprived Plaintiffs of their constitutional

rights, Plaintiffs' allegations do not support the inference that the state and private actors shared an unconstitutional goal in the first instance. *See Stagman v. Ryan,* 176 F.3d 986, 1003 (7th Cir. 1999) ("We have held that to establish joint action, a plaintiff must demonstrate that the public and private actors shared a common, unconstitutional goal."). The Court therefore grants Defendants' motion to dismiss Plaintiffs' joint action liability claim as alleged in Count IV of the Second Amended Complaint. Because the Court previously granted Plaintiffs leave to amend this claim, the Court dismisses Count IV with prejudice.[3]

**II.     Constitutional Conspiracy Claim – Count VI**

Likewise, in Count VI, Plaintiffs seek to establish the Fox Defendants' liability for the alleged due process deprivations through a § 1983 conspiracy claim. The elements of a § 1983 conspiracy claim include that (1) the individuals reached an agreement to deprive a plaintiff of his constitutional rights; and (2) overt acts in furtherance of the agreement actually deprived the plaintiff of those constitutional rights. *See Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015); *see also Cooney v. Casady,* 735 F.3d 514, 518 (7th Cir. 2013) ("The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result.") (citation omitted).

As with joint action liability, § 1983 conspiracy claims require that "the private individual and a state official reached an understanding to deprive the plaintiff of her constitutional rights." *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000); *see also Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012) ("a plaintiff must demonstrate that … a state official and a private individual(s) reached an understanding to deprive the plaintiff of his

---

[3] The Court distinguished Plaintiffs' reliance on the "media cases" in the April 2017 ruling, and thus will not repeat that discussion here. (R. 73, 4/20/17 Mem. Op. & Order, at 14.)

constitutional rights") (citation omitted). Here, Plaintiffs rely on the same arguments and allegations that they made in support of their joint action liability claim. As with their joint action allegations, Plaintiffs have not sufficiently alleged that the public and private actors in this lawsuit reached an understanding or agreement to deny Plaintiffs' constitutional rights. Again, invoking the word "illicit" does not necessarily describe a shared, unconstitutional goal, and it is well-established that vague allegations of a conspiracy between private and state actors do not bring private actors within the scope of 42 U.S.C. § 1983. *See Tom Beu Xiong v. Fischer,* 787 F.3d 389, 398 (7th Cir. 2015). The Court therefore grants the Fox Defendants' motion to dismiss Count VI with prejudice.

### III. Tortious Inducement of Breach of Fiduciary Duty – Count VIII

In Count VIII, Plaintiffs allege that the Fox Defendants tortiously induced Defendant Dixon and the Doe Defendants – the warden and guardians of the juvenile detainees – to breach their fiduciary duty. "Under Illinois law, a party is liable for tortious inducement if a plaintiff demonstrates that the defendant (1) colluded with a fiduciary in committing a breach; (2) knowingly participated in or induced the breach of duty; and (3) knowingly accepted the benefits resulting from that breach." *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 508 (7th Cir. 2007) (citing *Regnery v. Meyers,* 287 Ill. App. 3d 354, 364 (1st Dist. 1997)); *see also Village of Wheeling v. Stavros,* 89 Ill. App. 3d 450, 454-55, (1st Dist. 1980).

As discussed in the Court's April 2017 ruling, Plaintiffs sufficiently allege the first element of their claim, namely, that the Fox Defendants "colluded" with the County Defendants by acting together and that the Fox Defendants obtained significant assistance from the Cook County Defendants in filming *Empire*. Further allegations supporting this element included that the Fox Defendants deliberately encouraged the JTDC's administrators and officials to

9

improperly place the JTDC on lockdown during the filming of *Empire*. Also, Plaintiffs have plausibly alleged the third element of their claim because the Fox Defendants received commercial and economic benefits from the alleged breach. Nonetheless, the Court concluded that Plaintiffs had failed to adequately allege the second element of their inducement claim requiring a "third party's inducement of, or knowing participation in a breach of duty[.]" *Wheeling,* 89 Ill. App. 3d at 454.

In the present motion, the Fox Defendants argue that Plaintiffs have once again failed to adequately allege that they knowingly participated with Defendant Dixon and the Doe Defendants in breaching their fiduciary duties or that they induced the County Defendants to breach their fiduciary duties. Despite the Fox Defendants' arguments to the contrary, in their new allegations, Plaintiffs add more factual details as to how the Fox Defendants induced the breach of fiduciary duty. Plaintiffs, for example, allege that the Fox Defendants induced the breach by offering to pay rent for the JTDC and wages and overtime for JTDC staff. (Second Am. Compl. ¶ 32.) Plaintiffs further allege that the Fox Defendants made their offers on the condition that the JTDC's administrators would change the facility's normal operations to make the second and third floors of the JTDC available for filming of the television show. (*Id*.) In addition, Plaintiffs state that the JTDC's administrators accepted the Fox Defendants' inducements, and the Fox Defendants reached an agreement with the County Defendants for *Empire's* film crew to film at the JTDC. (*Id*. ¶ 33.) Viewing these allegations and all reasonable inferences as true, Plaintiffs have plausibly alleged that the Fox Defendants induced the County Defendants to breach their fiduciary duty. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

10

inference that the defendant is liable for the misconduct alleged."). As such, the Court denies the Fox Defendants' motion to dismiss Count VIII of the Second Amended Complaint.

### IV. State Law Conspiracy Claim – Count X

In Count X, Plaintiffs bring a state law conspiracy claim, which the Fox Defendants move to dismiss. "Under Illinois tort law, a civil conspiracy requires '(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.'" *Turner v. Hirschbach Motor Lines,* 854 F.3d 926, 930 (7th Cir. 2017) (citation omitted); *see also McClure v. Owens Corning Fiberglas Corp.,* 188 Ill.2d 102, 133 (Ill. 1999) ("to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement."). Plaintiffs have voluntarily dismissed their intentional infliction of emotional distress claim against the Fox Defendants, therefore, their state law conspiracy claim against the Fox Defendants is based on their alleged inducement of the County Defendants' breach of fiduciary duties.[4]

In the April 2017 ruling, the Court concluded Plaintiffs had failed to adequately allege that Defendants had an unlawful agreement and that one of the co-conspirators had committed a tortious act in furtherance of that agreement. *See McClure,* 188 Ill. 2d at 133 ("Civil conspiracy is an intentional tort and requires proof that a defendant 'knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.'") (citation omitted). Under the facts as alleged in the Second Amended Complaint, Plaintiffs have

---

[4] Although a breach of fiduciary duty claim does not sound in tort, *see Kinzer on Behalf of City of Chicago v. City of Chicago,* 128 Ill. 2d 437, 445 (Ill. 1989), tortious inducement of a breach of fiduciary duty necessarily does. *See Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 508 (7th Cir. 2007).

11

sufficiently alleged the second element of their Illinois civil conspiracy claim, namely, that the Fox Defendants tortiously induced the County Defendants to breach their fiduciary duty. Nonetheless, Plaintiffs' allegations lack sufficient detail raising their right to relief above the speculative level that the Fox Defendants and the County Defendants had an agreement "for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means." Indeed, although Plaintiffs adequately allege that the Fox Defendants induced the County Defendants to breach their fiduciary duty, there are no allegations suggesting that the parties had an agreement to unlawfully restrict the juvenile detainees. *See id.* at 133-34 ("Accidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy."). The Court therefore grants the Fox Defendants' motion to dismiss Plaintiffs' Illinois civil conspiracy claim with prejudice.

**V.     Unjust Enrichment/Accounting Claim – Count XIII**

Plaintiffs' Second Amended Complaint also includes an unjust enrichment/accounting claim in Count XIII. In Illinois, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 160 (1989)). As the *Cleary* decision observed, "it appears that the Illinois Supreme Court recognizes unjust enrichment as an independent cause of action." *Id*. at 516. Nevertheless, the *Cleary* decision also noted that recent Illinois Appellate Court cases suggest the opposite. *See id*. at 516-17. In recognizing these differences, the Seventh Circuit suggested "one way to make sense of it" –

12

> Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute. So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim.

*Id*. at 517; *see also Reid v. Unilever U.S., Inc.,* 964 F. Supp. 2d 893, 923 (N.D. Ill. 2013).

Another panel of the Seventh Circuit concluded that "[u]nder Illinois law, unjust enrichment is not a separate cause of action," but "'[r]ather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d 436, 447 (7th Cir. 2011) (citation omitted). The *Pirelli* decision further explains, "[f]or example, a breach of a contract, or of a fiduciary duty, might create a situation in which someone has retained a benefit that ought to be disgorged based on principles of equity." *Id.*; *see also Devco v. T10 Meltel, LLC,* 237 F. Supp. 3d 804, 812 (N.D. Ill. 2017) ("a breach of a contract, or of a fiduciary duty, might create a situation in which someone has retained a benefit that ought to be disgorged based on principles of equity").

At this stage of the proceedings, whether a claim for unjust enrichment can stand alone as an independent claim or must have a predicate cause of action involving improper conduct does not make or break Plaintiffs' unjust enrichment claim. More specifically, as addressed above, Plaintiffs have plausibly alleged the Fox Defendants' conduct was improper, namely, that they tortiously induced the County Defendants to breach their fiduciary duties. Moreover, Plaintiffs have adequately alleged that the Fox Defendants economically benefitted from their improper conduct in connection to the filming of *Empire* at the JTDC. Plaintiffs specifically allege that

13

the "Fox Defendants profited from using the JTDC's incarceration facilities as the primary set for two highly profitable *Empire* episodes [because the] scenes shot at JTDC were featured prominently in the first two episodes of *Empire's* second season, in which advertisers paid $750,000 per 30-second advertising spot in Episode 1, and $600,000 per 30-second spot in Episode 2." (Second Am. Compl. ¶ 57.) Furthermore, Plaintiffs assert that "the Fox Defendants realized profits from *Empire* by broadcasting these episodes overseas, as well as licensing the episodes, streaming them over the internet, and selling them for download." (*Id*. ¶ 58.) Based on these allegations and all reasonable inferences, Plaintiffs have plausibly alleged that the Fox Defendants unjustly benefitted from their improper conduct to the detriment of Plaintiffs under *Iqbal* and *Twombly*. As such, the Court denies the Fox Defendants' motion to dismiss Count XIII.

**Dated:** October 16, 2017

_____
**AMY J. ST. EVE**
**United States District Court Judge**