IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.S. *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>Twentieth Century Fox Television *et al.*,<br><br>  Defendants. | Case No. 1:16-cv-08303<br><br>Hon. Rebecca Pallmeyer |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY
FROM DEFENDANT LEONARD DIXON**

Pursuant to Federal Rule of Civil Procedure 37(a)(1),[1] Plaintiffs move the Court for an order compelling defendant Leonard Dixon to respond to an interrogatory and a related request for production. In support of this motion Plaintiffs state as follows:

**BACKGROUND**

Plaintiffs allege that in the summer of 2015, hundreds of children housed at the Cook County Juvenile Temporary Detention Center ("JTDC") were placed on three lockdowns for a total of two weeks so that the JTDC could be used as a film set for a commercial Fox television show called *Empire*. (*See* Second Amended Complaint ("SAC"), ECF No. 88 at 1-2 & *passim*).)

Dixon is the superintendent of the JTDC. Plaintiffs allege that Dixon ordered and approved the lockdowns to facilitate Fox's filming of *Empire*. (*See* SAC ¶¶ 29-33.) The SAC

---

[1] *Local Rule 37.2 Statement*. Pursuant to Local Rule 37.2, Counsel for the parties attempted to resolve this discovery dispute through an informal meet-and-confer process. This included the discovery enforcement correspondence attached hereto as Exhibit 4, and a phone call between Stephen H. Weil (Plaintiffs' counsel) and Lyle Henretty (Dixon's counsel) on the afternoon of June 19. These efforts were unsuccessful in resolving the discovery dispute.

charges that by imposing the *Empire* lockdowns, Dixon breached his fiduciary duties to the children housed there, intentionally inflicted emotional distress on them, and violated their due process rights; Plaintiffs seek both actual and punitive damages for this misconduct. (*See id.* Counts I, VII, IX.) Dixon moved to dismiss all of these claims, but the Court denied his motion (*see* Mem. Op. and Order ("Mem. Op.") (ECF No. 73)), and the case is now in discovery.

## DISCOVERY AT ISSUE

Dixon assumed his position as superintendent of the JTDC in May 2015, a month before *Empire* came to film. He came to the job with a reputation as an expert in the proper operation of juvenile detention centers and the appropriate treatment of minors housed in them. He had given formal speeches on the topic, and he had been hired as an expert or consultant on multiple occasions to opine on the proper operation of juvenile detention centers around the country.

In light of this background, Plaintiffs served an Interrogatory and accompanying Request for Production ("RFP") to obtain or identify statements that Dixon has made in the past ten years about the operation of juvenile detention centers. Plaintiffs' Interrogatory and the RFP, along with Dixon's responses, were as follows:

> **Interrogatory No. 4.** Identify all recorded statements you have made regarding juvenile detention management in the last ten years, whether recorded as a writing or other means (*i.e.*, video or audio), including notes, reports, speeches, or presentations authored by you. Pursuant to the Requests for Production served herewith, produce each such statement, produce a copy of each such statement or, if any such statement is not in your possession, custody, or control, state the name and, if known, the address and telephone number of each person who you believe has custody of a copy.
>
> **RESPONSE**: Defendant Dixon objects Interrogatory No. 2 [*sic*] as it is overly broad, unduly burdensome, vague, not relevant to any claim or defense in the case, and disproportionate to the needs of the case. Without waiving this objection, and subject to it, Defendant Dixon's CV is attached hereto as DIXON 1-12

> **Request to Produce No. 2**: All documents identified by you in response to Plaintiff's First Interrogatories to Leonard Dixon, No. 4.
>
> **RESPONSE**: See DIXON 1-12

(*See* Exhibits[2] 1, 2, and 3.) During the parties' discovery enforcement correspondence, Dixon's attorney elaborated on his relevance objection:

> this request is not relevant to any claim or defense in this case. Mr. Dixon has been sued in his official capacity as superintendent of the JTDC, not as an individual, so his individual statements regarding juvenile detention management are not properly discoverable . . . .

(*See* May 29, 2018 email from L. Henretty to S. Weil, attached as **Ex. 4** at 6)

In summary, Dixon refused to respond to Interrogatory No. 4, other than to identify and produce the documents bates stamped DIXON 1-12, which comprised his CV (*see* Ex. 3). Dixon's CV identifies multiple engagements in which he had acted as a consultant, expert, speaker, or presenter on juvenile detention management. Plaintiffs offered to limit Interrogatory No. 4 to responsive statements arising from these engagements. (*See* Ex. 4 at 3-4, May 30 and June 1 emails from S. Weil to L. Henretty.) Dixon rejected this offer (instead he offered to identify five such statements picked by Plaintiffs) and as a result the parties are at issue.

Plaintiffs now seek to compel Dixon's response to the Interrogatory and RFP, pursuant to Plaintiffs' previously proposed limitation to statements arising from the engagements that Dixon identified in his CV.

## ARGUMENT

Under Rule 26, "[i]information is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Rule 26(b)(1) advisory committee's note to

---

[2] Dixon's interrogatory responses, which include the text of Plaintiffs' interrogatories, are attached as **Ex. 1**. His responses to Plaintiffs' RFPs are attached as **Ex. 2**. DIXON 1-12, which was Dixon's production in response to Interrogatory No. 4 and RFP No. 2, is attached as **Ex. 3**.

3

2015 amendment.  Dixon makes both relevance and, in boilerplate form, proportionality objections.  Both are meritless.

***Relevance***.  Interrogatory No. 4 seeks to discover statements Dixon has made about management of juvenile detention facilities, *i.e.*, how such facilities should be run and how detained juveniles should be treated.  That information is decidedly relevant to this case.

The SAC alleges, and discovery to date has confirmed, that Dixon chose to allow Fox to film at the JTDC, and that he directed for large areas of the facility dedicated to recreation, programming, and education for the detained children instead to be cleared out so that Fox could use them, leaving the children to sit on their pods.  If these decisions contradict Dixon's statements about how detained children should be treated, they will tend to impeach any claims he makes now that he acted appropriately in allowing *Empire* to film.  For that reason alone he should be required to disclose such statements.

The statements are also relevant to show that Dixon knew what he was doing was wrong.  That question is highly relevant in this case, particularly for Plaintiffs' claim of punitive damages, on both their federal and state law claims.  *See Spanish Action Comm. of Chi. v. City of Chicago*, 766 F.2d 315, 318 n.2 (7th Cir. 1985) (approving punitive damages instruction: "To recover punitive damages against an individual defendant, plaintiff must prove by a preponderance of the evidence . . . that the actions of that defendant were done knowingly and maliciously to deprive plaintiff of its constitutional rights." (ellipses in original) (cited in Comm. on Pattern Civil Jury Instr. of the Seventh Cir., *Federal Civil Jury Instructions of the Seventh Circuit* § 7.28, comm. cmt. (b), (2017 rev.), http://www.ca7.uscourts.gov/pattern-jury-instructions/7th_Circuit_civil_instr_Aug2017.pdf)); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 930 (7th Cir. 2004) ("Punitive damages are recoverable in § 1983 actions where

4

the defendant had a reckless or callous disregard to the federally protected rights of others."); *Tully v. McLean*, 948 N.E.2d 714, 731 (Ill. Ct. App. 2011) (punitive damages supported in breach of fiduciary duty claim where evidence supported finding of willful disregard of plaintiffs' rights). Dixon's prior statements about how detained juveniles *should* be treated are thus highly relevant to the issues that are in dispute in this case.

As noted above, Dixon's sole relevance objection is that he is being "sued in his official capacity as superintendent of the JTDC, not as an individual, so his individual statements regarding juvenile detention management" are irrelevant (Ex. 4.) That contention is meritless.

Dixon is not being sued in his official capacity. The SAC makes clear that the only "person" being sued in their official capacity is the Chief Judge of the Circuit Court of Cook County ("Chief Judge") (*see* SAC case caption & ¶ 5), who is being sued as a stand-in for the Office of the Chief Judge ("OCJ"), "as a governmental entity responsible for administering the JTDC." (Pls.' Sur-Reply (ECF No. 69) at 2.) No such claim is made against Dixon, who is being sued for actions that *he* took and decisions *he* made under color of law. (*See* SAC ¶¶ 29-33.) Dixon understood this well enough at the dismissal stage. There he argued that he was entitled to qualified immunity (*see* Dixon Mot. to Dismiss (ECF No. 48) at 11-12), which exists only for persons sued in their individual—not official—capacities. *Cf. Brick City Grill, Inc. v. City of Newark*, No. 14-cv-4491, 2016 WL 1260019, at *7 (D.N.J. Mar. 30, 2016) ("[T]he defendant understood that she was being sued personally because she raised the defense of qualified immunity, which is only available to those sued individually.")

Dixon's counsel never responded to Plaintiffs' request to explain the grounds for his "official capacity" objection (*see* Ex. 4 at 3-4), so Plaintiffs are left to conjecture. Dixon's argument presumably arises from the nature of Plaintiffs' *Monell* claim. Plaintiffs do not bring a

5

pattern-and-practice claim. Rather, they "seek to establish *Monell* liability pursuant to the deliberate act of the individual with the 'final policy-making authority' in relation to the administration of the JTDC," pursuant to the *Pembaur v. Cincinnati*, 475 U.S. 469 (1986) line of cases. (*See* Mem. Op. at 22 (noting *Pembaur* liability).) Pursuant to this theory, Plaintiffs have alleged in the alternative that the relevant final decision-maker may be Chief Judge Timothy Evans, or it may be Dixon (*see* SAC ¶¶ 69-70), and as the Court has noted, the identity of the relevant decision-maker remains an open question, to be resolved through discovery. (*See* Mem. Op. at 22-23.) Dixon's objection appears to be that, because he might be the final decision-maker, this is an official capacity suit against him.

Of course, Dixon also might not be the final decision-maker. But if this is really Dixon's grounds for his "official capacity" objection, the real problem with such an argument is that the issue is irrelevant. Plaintiffs have alleged that Dixon, acting under color of law, was personally involved in violating their rights by making decisions, taking acts, and giving orders that caused the JTDC to be placed on lockdown. That is an individual capacity claim. *See, e.g.*, *Blossom v. Dart*, 64 F. Supp. 3d 1158, 1162 (N.D. Ill. 2014) (an official can be "held personally responsible [under section 1983] if he knew about the conduct that caused the constitutional violation and facilitated it, approved it, condoned it, or turned a blind eye." (quotations and brackets omitted)).

More to the point, for Plaintiffs' personal-capacity claim, it is irrelevant whether Dixon engaged in the alleged misconduct pursuant to authority that was merely delegated to him, or that was committed to him as a final decision-maker. Final decision-makers are routinely treated as liable in their individual capacities for complained-of events in which they were personally involved. *See, e.g.*, *Blossom*, 64 F. Supp. 3d at 1162 (county sheriff could be sued in his personal capacity if he was personally involved in the conduct in question, *and* could be sued in

6

his official capacity because he was also the county's final decision-maker on the issue in question) *Potts v. Moreci*, 12 F. Supp. 3d 1065, 1068 (N.D. Ill. 2013) (same; plaintiff stated claims against county sheriff in his individual and official capacities by alleging his personal involvement in a matter in which he was also the final decision-maker); *Warren ex rel. Warren v. Dart*, No. 09-cv-3512, 2010 WL 4883923, at *9 (N.D. Ill. Nov. 24, 2010) (same; plaintiff sufficiently alleged personal involvement by county sheriff and may therefore proceed with individual- and official-capacity claims against him).

Plaintiffs seek to hold Dixon accountable for decisions that *he* made and actions *he* took under color of law—*i.e.*, in his individual capacity. Whether Dixon knew those actions were wrong is relevant to Plaintiffs' claims against him. Dixon's prior statements are likely to shed light on that question. The requested information is relevant.

***Proportionality***. Dixon's remaining objections are boilerplate. (*See* Ex. 1 (objecting that Interrogatory No. 4 is "overly broad, unduly burdensome, vague, not relevant to any claim or defense in the case, and disproportionate to the needs of the case.") His counsel never explained the basis for these objections during the meet-and-confer process, and they should therefore be considered waived. *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15-cv-10340, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017) ("An objector's burden cannot be met by an invocation of the same baseless, often abused litany that the requested discovery is 'vague, ambiguous, overly broad, unduly burdensome,' or that it is 'not reasonably calculated to lead to the discovery of admissible evidence.'" (citation omitted)).

All the same, the objections are invalid. Referring to the factors set out in Rule 26(b)(1)—the matter in this case is serious. Plaintiffs allege that Dixon violated the rights of hundreds of children so that a media company could use the JTDC to shoot a commercial

7

television show.  Evidence that Dixon knew what he was doing was wrong is relevant to his culpability and to the availability of punitive damages.  What is more, during discovery enforcement Plaintiffs offered to limit this discovery to responsive statements arising from the engagements identified in Dixon's own CV, virtually eliminating any meaningful burden that this discovery might impose.  If he does not have possession, custody, or control of such statements, he is merely asked to tell the Plaintiffs who does.

## CONCLUSION

The requests at issue seeks discovery of a limited set of highly relevant statements by a central player in an important case.  This discovery is not unduly burdensome, it is not overly broad, and what Plaintiffs seek is clearly stated.  This discovery is proportional to the needs of this case, and Dixon should be ordered to respond to it.

WHEREFORE, Plaintiffs respectfully request that the Court order Defendant Leonard Dixon to respond to Interrogatory No. 4 and RFP No. 2 as to all responsive statements arising from the engagements identified in his CV, Bates No. DIXON 1-12.

June 26, 2018                                              Respectfully Submitted,

/s/ Stephen H. Weil

Stephen H. Weil – steve@weilchardon.com
Alexis G. Chardon – ali@weilchardon.com
Weil & Chardon LLC
333 S. Wabash Avenue, Suite 2700
Chicago, IL 60604
(312) 585-7404

Adam J. Pessin – apessin@finekaplan.com
Fine, Kaplan and Black, R.P.C.
One South Broad Street, Suite 2300
Philadelphia, PA 19107
(215) 567-6565

*Attorneys for Named Plaintiffs T.S. and Q.B.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2018, a true and correct copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Stephen H. Weil