# Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| T.S. et al., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-08303 |
| | ) | |
| vs. | ) | Hon. Amy J. St. Eve |
| | ) | |
| | ) | |
| Twentieth Century Fox Television et al., | ) | |
| Defendants. | ) | |

**DEFENDANT LEONARD DIXON'S ANSWER TO**
**PLAINTIFFS' FIRST INTERROGATORIES**

Now comes Defendant, LEONARD DIXON, by his attorney KIMBERLY M. FOXX,

State's Attorney of Cook County, through her Assistant State's Attorney, Lyle K. Henretty, and

answers Plaintiff's First Interrogatories as follows:

**INTERROGATORIES**

1.      State the names and, if known, the addresses and telephone numbers of all
persons who you believe have given written, recorded, or oral statements relevant to any party's
claims or defenses. Unless you assert a privilege or work product protection against disclosure
under applicable law, attach a copy of each such statement if it is in your possession, custody, or
control. If not in your possession, custody, or control, state the name and, if known, the address
and telephone number of each person who you believe has custody of a copy.

> **ANSWER**:   **Defendant Dixon objects to Interrogatory No. 1 because it is unduly
> burdensome, vague, and disproportionate to the needs of the case.
> Without waiving these objections, and subject to them, Defendant
> Dixon is not aware of any written, recorded, or oral statement given
> by an individual that is relevant to any party's claims or defenses,
> other than those that may be set forth in documents produced to date
> by any party to this case.**

2.      List the documents, electronically stored information ("ESI"), tangible things,
land, or other property known by you to exist, whether or not in your possession, custody or
control, that you believe may be relevant to any party's claims or defenses. To the extent the
volume of any such materials makes listing them individually impracticable, you may group
similar documents or ESI into categories and describe the specific categories with particularity.

Include in your response the names and, if known, the addresses and telephone numbers of the custodians of the documents, ESI, or tangible things, land, or other property that are not in your possession, custody, or control. For documents and tangible things in your possession, custody, or control, you may produce them with your response, or make them available for inspection on the date of the response, instead of listing them.

> **ANSWER:** **Defendant Dixon objects Interrogatory No. 2 as it is overly broad, unduly burdensome, vague, and disproportionate to the needs of the case. Without waiving these objections, and subject to them, see documents previously produced by Dixon and Cook County (CCSAO1-10715), the Office of the Chief Judge (OAG1-1548), and Twentieth Century Fox Television (TCFTV11860).**

3.     Describe in detail the nature of the search you have performed to discover and produce documents in this case. Include in your answer a description of all locations, whether electronic or physical, that have been searched, and all custodians whose documents have been searched. If you have used search terms or other parameters to search ESI, provide those terms and parameters.

> **ANSWER:** **Defendant Dixon searched his work email account using the term "Empire." Answering further, the Office of the Chief Judge conducted a broader search.** ***See*** **The Office of the Chief Judge of the Circuit Court of Cook County's Answers to Plaintiffs' First Set of Interrogatories, Interrogatory No. 5 and Answer thereto.**

4.     Identify all recorded statements you have made regarding juvenile detention management in the last ten years, whether recorded as a writing or other means (*i.e.*, video or audio), including notes, reports, speeches, or presentations authored by you. Pursuant to the Requests for Production served herewith, produce each such statement, produce a copy of each such statement or, if any such statement is not in your possession, custody, or control, state the name and, if known, the address and telephone number of each person who you believe has custody of a copy.

> **ANSWER**: **Defendant Dixon objects Interrogatory No. 2 as it is overly broad, unduly burdensome, vague, not relevant to any claim or defense in the case, and disproportionate to the needs of the case. Without waiving this objection, and subject to it, Defendant Dixon's CV is attached hereto as DIXON1 - 12).**

5.     Identify any members of your immediate or extended family and any of your friends or acquaintances (other than friends or acquaintances who are employed at the JTDC) who visited the JTDC during the Filming Periods, stating which days they visited. For each responsive friend or acquaintance, please identify the person's address and telephone number.

> **ANSWER:** **Defendant Dixon objects to this interrogatory as it is not relevant to any claim or defense in this case. Without waiving this objection, and**

**subject to it, Defendant Dixon's wife, Adrian Dixon, visited during the filming period. Defendant Dixon cannot recall which day his wife visited, but believes it was for a few hours on the first day of filming. Ms. Dixon may be contacted through the undersigned.**

6. Identify all your electronic communication or social media accounts (email, text message, Facebook, twitter, Instagram, etc.), including both professional and personal accounts, that you had during the Relevant Period, and identify all communications (whether containing images, words, sound, or video) that you sent or received on each such account relating in any way to the filming of *Empire* at the JTDC. Pursuant to the Requests for Production served herewith, produce each such communication.

**ANSWER**: **Defendant Dixon objects to Interrogatory No. 6, as it is overly broad, not relevant to any claim or defense in this case, and disproportionate to the needs of this case. Without waiving these objections, and subject to them, Defendant Dixon had a work email account during the filming of *Empire,* in which he sent and received emails regarding the filming of *Empire*. All emails regarding the same were previously produced. Answering further, Dixon does not have Twitter or Instagram accounts. Defendant does have a Facebook account, and he did not communicate on Facebook regarding *Empire* or the filming at the JTDC. Defendant Dixon has text message capabilities. He searched his previous text messages, and no messages regarding the *Empire* Filming was found.**

May 23, 2018

Respectfully Submitted,

Kimberly M. Foxx
State's Attorney of Cook County

By:    /s/ Lyle K. Henretty
       Lyle K. Henretty
       Assistant State's Attorney
       69 West Washington, Ste. 2030
       Chicago, Illinois 60602
       (312) 603-1426

**CERTIFICATION**

PLEASE TAKE NOTICE that I, Lyle K. Henretty, Assistant State's Attorney, hereby certify that I sent a copy of Defendant Dixon's Answers to Plaintiffs' First Set of Interrogatories to all counsel of record via electronic mail on May 23, 2018.

By:    /s/ Lyle K. Henretty
       Lyle K. Henretty

## **VERIFICATION**

I, Leonard Dixon, being first duly sworn upon oath do hereby certify pursuant to Rule 33(b) that DEFENDANT DIXON'S ANSWERS TO PLAINTIFF'S INTERROGATORIES are true and complete to the best of my knowledge.

As to the matters therein stated to be on information and belief, the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated: _5/23/18_          Signed: _____

                          Leonard Dixon

# Exhibit 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| T.S. et al., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-08303 |
| | ) | |
| vs. | ) | Hon. Amy J. St. Eve |
| | ) | |
| | ) | |
| Twentieth Century Fox Television et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT LEONARD DIXON'S RESPONSE TO**
**PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION**

Now comes Defendant, LEONARD DIXON, by his attorney KIMBERLY M. FOXX,

State's Attorney of Cook County, through her Assistant State's Attorney, Lyle K. Henretty, and

responds to Plaintiff's Second Requests for Production as follows:

**DOCUMENT REQUESTS**

1.     All documents identified, relied upon, or referenced by you in response to any of
Plaintiff's Interrogatories served on you in this matter.

> **RESPONSE**:  **None, other than those specifically referenced in Defendant Dixon's
> Answers to Plaintiff's First Interrogatories, which have been
> previously produced.  *See* Dixon1-12, CCSAO1-10715, OAG1-1548,
> TCFTV1-1860.**

2.     All documents identified by you in response to Plaintiff's First Interrogatories to
Leonard Dixon, No. 4.

> **RESPONSE**: *See* **DIXON1 -12.**

3.     All documents identified by you in response to Plaintiff's First Interrogatories to
Leonard Dixon, No. 6.

> **RESPONSE**:  **Defendant Dixon adopts his answer to Plaintiff's First Interrogatories
> to Leonard Dixon, No. 6, as if set forth herein.**

1

May 23, 2018                 Respectfully Submitted,

Kimberly M. Foxx
State's Attorney of Cook County

By:     /s/ Lyle K. Henretty
Lyle K. Henretty
Assistant State's Attorney
69 West Washington, Ste. 2030
Chicago, Illinois 60602
(312) 603-1426

## CERTIFICATION

PLEASE TAKE NOTICE that I, Lyle K. Henretty, Assistant State's Attorney, hereby certify that I sent a copy of Defendant Dixon's Answers to Plaintiffs' Second Set of Request for Production to all counsel of record via electronic mail on May 23, 2018.

By:     /s/ Lyle K. Henretty
Lyle K. Henretty

# Exhibit 3

# Leonard B. Dixon, M.S.
## Superintendent
## Cook County
## Juvenile Temporary Detention Center



**Office Location:**

**1100 S. Hamilton 2nd Floor**
**Chicago, IL 60612**

**Work Phone:**
**Work Fax:**
**Contact Cell Phone:**
Email: Leonard.Dixon@cookcountyil.gov

Leonard Dixon is currently the Superintendent of Cook County Juvenile Temporary Detention Center (JTDC) under the office of the Chief Judge of Cook County. Ill. Effective February 9, 2015. He is responsible for the administration and management of all operations of JTDC, including custody, security, safety, medical/mental health services, social services, fiscal services, maintenance services, human resources, labor relations and other services and has an operating budget of $70.3 million and a staff of over 900.

Leonard Dixon retired from Wayne County as the Executive Director for the Children and Family Services Juvenile Detention Facility in October 2014 but was retained on a contractual basis until February 2015. He was the Executive Director of the Facility from June 1995 to October 2004 and returned to the facility June 2007 until February 2015. He was responsible for the operations of detention and alternatives to detention. Mr. Dixon was the Bureau Director for Juvenile Justice for the State of Michigan Department of Human Services from October 2004 to May 2007. He was responsible for the care and supervision of delinquent state wards. Mr. Dixon is also a member of numerous national organizations and has presented at several national conventions seminars on Juvenile Justice Issues. Mr. Dixon has over 36 years of Juvenile Justice Experience.

Mr. Dixon is a native Floridian, he earned his Associate of Arts Degree in Education from State Fair Community College – Sedalia, Missouri; a Bachelor's of Science degree in Sociology/Psychology from Southwest Baptist University, Bolivar, Missouri, a Master's degree in Child and Youth Care Administration from Nova University in Ft. Lauderdale, Florida. He also completed advance management training by the American Management Association, University System of New York and completed Leadership Training with the U.S. Department of Justice. Mr. Dixon is also a graduate of Leadership Detroit, a regional leadership and management program. Mr. Dixon served over 15 years with the Department of Health and Rehabilitative Services (HRS) in the Children, Youth and Family (CYF) delinquency component of the agency. His tenure began in 1979 as a Group Treatment Leader and moved through the ranks as TGL Supervisor, Assistant Superintendent, Supervisor for Group Homes and Special Intensive Groups, Detention Superintendent, Halfway House Superintendent, Program Operations Administrator for all residential, non-residential, intake and commitment services to his current position as Division Director.

Mr. Dixon's career in Juvenile Justice is recognized nationally. As superintendent of Better Outlook Center, he developed the first halfway house in the state to provide staff with cross county training within their work area, and achieved national accreditation of 3 residential

DIXON000001

programs. As Division Director, Mr. Dixon was the first Director in 17 years to license the Wayne County Juvenile Detention Facility. In addition he ended an eight-year federal investigation of the Wayne County Juvenile Detention Facility without litigation or a consent decree. In August 2007, the Wayne County Juvenile Detention Facility was returned to regular license status – a status that was lost in July 2006 and had two provisional licenses. Furthermore under his direction in 2007, the Wayne County Juvenile Detention Facility obtained a regular license status for the Mental Health program – therefore the facility has a dual license.

Mr. Dixon has been nationally recognized as an authority in delinquent residential care, case management and detention. He is also recognized, by the federal government as an expert in dealing with high profile incidents. He was a member of the Dade County Black Family Symposium Committee, Member of the American Correctional Association, Member of Teaching and Rehabilitations Youth (T.R.O.Y.), Boy Scouts of America, National Juvenile Detention Associations (NJDA), and the National Committee on Assessment of Minority Children. In addition Mr. Dixon was on the Board of Directors for Michigan Juvenile Detention Associations (MJDA). He has also served as chairman of the Critical Issues Committee and Present-Elect for the NJDA. Mr. Dixon was appointed by the President of the American Correctional Association (ACA) to serve on the Standards Committee and a member of the ACA Disproportionate Minority Confinement Taskforce. In addition he was appointed to the Juvenile Delinquency Guidelines Committee as a consultant for the National Council of Juvenile and Family Court Judges. Mr. Dixon was a member of the State of Florida's "Design Team for Development of Training" for residential and non-residential programs and numerous other organizations. He also worked on committees to develop operational manuals for case management, detention, non-secure detention, and residential and non-residential services. He is also a consultant for the NJDA and the U.S. Department of Justice. Mr. Dixon has worked as a Protection from Harm Monitor for the United States Department of Justice and several states. He has also testified before the United States Senate and house on Juvenile Justice issues. In addition to giving numerous speeches around the country on juvenile justice issues, he has presented at universities in Beijing and Shanghai, China. In February 2006, Mr. Dixon was featured in Ebony magazine as the President for the National Juvenile Detention Association.

## *QUALIFICATIONS*

Fully experienced in all facets of Care, Policy, Procedure, and Juvenile Justice. 30 1/2 years of juvenile experience; in residential, non-residential, commitment, case management and detention management, programming and services. In addition, experience in negotiating federal consent decrees, ending of federal investigations, training, facility planning and development, and consultation.

## *EDUCATION*

- Diploma, Moore Haven High School, Moore Haven, FL

- AA Degree, State Fair Community College, Sedalia, MO (1977)

- BS Degree in Sociology and Psychology, Southwest Baptist University, Bolivar, MO

  (1980)

- Master of Science, Nova University, Ft. Lauderdale, FL (1990)

DIXON000002

- Correctional Leadership Development, Longmont, CO (1992/U.S. Dept. of Justice)

- Nova University, Summer Institutes (20 hours), Ft. Lauderdale, FL (1993)

- Managing Juvenile Operations Omaha, NE (1994/U.S. Dept. of Justice

- Executive Training for CEO's of Juvenile Agencies Longmont, CO (1995/U.S. Dept. of Justice)

- Graduate Leadership Detroit, Leadership/Management Institute, Wayne County, Michigan (2000)

- Advanced Management Training, American Management Association University System of New York

- Certified Manhood Development Training, Oakland CA

- Completed 14 hours of study psychology under Virginia Satir, University of Miami

- Completed 16 hours of study in Group Child Care by the Department of Professional Regulations

- Structuring Effective Juvenile Detention Environments, University of Wisconsin-Madison College of Engineering 1997

## *AWARDS OF HONOR*

- Advisory Board Member, Center for Children's Law & Policy
- Major General Anthony C Wayne Leadership award 2008 from the County of Wayne
- Proclamation – County of Wayne – 2003
- Governors' Appointment to the State Juvenile Justice Commission 2003-2010
- President, National Juvenile Detention Association (NJDA) 2003-2006
- Appointed to Standards Committee, American Correctional Association (ACA) 2002-2006
- All American High School Basketball Player
- Athletic Scholarship, State Fair Community College, Missouri
- Member "Who's Who" Junior College, 1977
- Athletic Scholarship, Southwest Baptist University, Missouri
- Member of Committee to Form Employee Recognition Program HRS
- Chairman Employee Incentive Committee
- Chairman Employee Recognition HRS
- Member EEOC – HRS State of Florida, District XI
- Member of Juvenile Court Committee, Dade County Juvenile
- Member of Peer Review Committee for Statewide Facilities – FL
- Member of Statewide Design Training Team for Juvenile Facilities – FL
- Member of South Florida Review Team for New Juvenile Program
- Chairman of ACA Accreditation Committee Florida District XI
- Nova University Adjunct Staff Member/Juvenile Programs in Administration

DIXON000003

- Board member, Community Tree House, Detroit, MI
- Board member, The Wellington Group, Miami, FL
- Member, National Human Services Juvenile Justice Group – Children's Defense Fund, Washington, D.C., Child Welfare League of America
- Member of American Correctional Association
- Member National Juvenile Detention Association
- Interviews on Local Public Television and Radio Stations
- U.S. Congress Presentations to Congressional Senators – Wash., D.C. – Member, National Committee on Assessments for Minority Children – Washington, D.C.
- Member, Structuring Effective Juvenile Detention Environments, University of Wisconsin, Madison, College of Engineering, Monona, Wisconsin, Dec., 1997
- Received Proclamation – County of Wayne, 1997
- Board of Directors, Michigan Juvenile Detention Association
- Committee Chair of Critical Issues, National Juvenile Detention Association
- Neal Zott Award – Michigan Juvenile Detention Association – 2002
- National Presenter on Juvenile Justice Issues 2003
- Appointed, Juvenile Delinquency Guidelines Committee and Consultant National Council of Juvenile and Family Court Judges, 2003, Reno, Nevada
- Presentations in Beijing and Shanghai Normal Universities Republic of China in 2007 (on Conditions of Refinement for Juvenile Facilities)
- Testimony before the United States Senate, 2004 (mental health and health services in juvenile institutions)
- Testimony before the United States Congress (alternative education in juvenile institutions) 2009
- Appointed committee on minority over- representation (ACA) 2008-2010
- Presentation before the Loyola Law School, Los Angeles CA. on juvenile justice and education 2009
- Re-appointment to Governors State committee on Juvenile Justice 2010-2012
- Presentation before the Deputy U.S. attorney general on draft PREA standards for juvenile institutions 2010
- Appointment to Illinois Supreme Court Probation Policy Advisory Board 2015-2018
- Recipient of The Paul Hall Humanitarian Award Chicago Ill 2015
- Elected Vice President of the National Partnership for Juvenile Services (NPJS) 2016-2018
- appointed to the Illinois Supreme Court judicial College committee on probation education until June 30,2019

## *CONSULTATIONS*

2002 – Present

**Consultant, U.S. Department of Justice/Court Monitor for Essex County, New Jersey**

2002 – Present

**Consultant, National Juvenile Detention Association (NJDA)**

**United States Department of Justice/Juvenile Justice Consulting Cases Involved In:**

DIXON000004

1. United States vs. Wayne County, Michigan
2. United States vs. Macon County, Illinois
3. United States vs. Los Angeles County Probation Department, Juvenile Detention Facilities, California
4. Lucas County, Ohio
5. United States vs. Essex County, New Jersey (protection from harm)
6. United States vs. State of Maryland
7. Washington, D.C. Oak Hill Detention and training school
8. Benito Myers vs. Lenawee County, Michigan
9. Bobby M. vs. State of Florida
10. United States vs. State of Mississippi Oakley/Columbia Training schools (protection from harm)
11. Morgan vs. Nagin, et. al. Conditionals of Confinement New Orleans Youth Study Center, Expert Witness
12. Consultation with the State of Louisiana on leadership development for the Department of Juvenile Justice senior Leadership team 2009
13. Expert witness Brandon Blackmon vs. The Board of County commissioners of Sedgwick County, Kansas et.al. From 2011 to 2014.
14. Federal Court monitors J.H vs. Hinds County, Mississippi Henley Young Juvenile Justice Center. Protection from Harm from 2012 to Present.

## *WORK EXPERIENCE*

2015 – Present

**Superintendent of Juvenile Detention Services:** **Cook County, Juvenile Temporary Detention Center (JTDC), Chicago, Illinois**

> Responsible for the administration and management of all operations of Cook County Juvenile Temporary Detention Center, one of the largest detention centers in the country, providing temporary secure housing for children awaiting adjudication or sentencing. As Director for this position, he is responsible for formulating and promulgating policies, procedures, and supervision of juvenile detention services. These services includes the custody, care, security, safety, medical/mental health services, social services, fiscal services, maintenance services, human resources, labor relations and other services. This position manages an operating budget of $58.3 million and approximately 800 staff falls directly under his supervision.

2014-Present
**President**
**Pathway Academy Charter School, Detroit, Michigan**

1995-2004/2007- 2015

**Division Director of Juvenile Detention Services: Department of Children and Family Services, Wayne County Juvenile Detention Facility, Detroit, Michigan**

DIXON000005

Responsible for the operation of juvenile detention services for the Department of Children and Family Services for Wayne County, Michigan, the 6th largest county in the country. The Director for this position has the responsibility for formulating and promulgating policies, procedures, and supervision of juvenile detention services. These services include detention, medical, mental health, education, detention alternatives, contacts, and services to approximately 4,500 children from ages 10 to 17 annually. In addition, 312 employees, including Sheriff Deputies, Guards, Personnel, Management Services, Special Services and Operations Managers, fall directly under this supervision. This position manages an annual budget of approximately $29 million dollars annually and is the direct responsibility of the Director.

2004 –2007

**Director – Bureau of Juvenile Justice: Department of Human Services State of Michigan**

Responsible for all juvenile justice services in the State of Michigan that includes direct care and supervision of delinquent youths referred to the agency from Family Courts. In addition, this position supervises approximately 850 employees in addition to the 1,705 youth located in five (5) residential treatment programs, four (4) community based treatment programs and two (2) training schools, one (1) female, one (1) male as well as re-entry and prevention services. This position also interacts with courts, the legislature and other local, state, and federal agencies, with a budget of approximately $253 million dollars. The position is also responsible for the provision of prevention; rehabilitation and technical assistance support for juvenile justice programs for youths aged 12 to 21 and acts as fiduciary for a number of federal grant programs. The position is responsible for the childcare fund which funds and audits juvenile service for all eighty three (83) counties in Michigan.

1995 - Present

**Adjunct Professor, Wayne County Community College, Detroit, Michigan**

Responsible for teaching Introduction to Corrections to college students.

1990 – 1995

**Program Operations Administrator, Department of Juvenile Justice Services, Dade County, FL**

Responsible for commitment and services to approximately 15,000 youth annually. In addition, supervise six (6) residential facilities, three (3) non-residential detention programs, five (5) contracted Re-entry programs and special intensives group programs. These programs provide approximately 600 directly supervised children ages 10-19daily. This position also involves placement of approximately 75 children throughout the State of Florida who are in residential care and the management of a total of 306 staff members. A budget of approximately $15.5 million dollars annually is allocated for this area and is the responsibility of this office to manage accordingly. The position also includes the management of the largest Detention Center in the State, home detention, alternatives to detention, detention respite homes and detention intake services for Dade and Monroe Counties Florida.

1991 – 1994

DIXON000006

**Cohort Coordinator,** Nova University

This position is an adjunct staff position at Nova University. This includes working with graduate students in administration, recruitment and conducting seminars.

1985 – 1990

**Halfway Facility Superintendent,** Department of Health and Rehabilitative Services, Dade County, FL

Responsible for managing the operations of a halfway house and special intensive group program for delinquents which includes hiring and terminating employees, formulating and assisting in the formulation of policies and procedures, which have significant impact on personnel, clients, administration and budgets. This position manages activities for forty-four (44) persons including human service personnel and support personnel assigned to the facility, preparing reports, correspondence, and other data required to operate the facility, and manage the direct food service program. Function independently with overall responsibility for providing services for clients, in addition to maintaining ACA requirements for residential programs. During 1988, worked as superintendent of Dade Juvenile Detention Center. This involves Supervision responsibility of over 200 staff and 300 clients.

**Assistant Halfway Facility Superintendent,** Department of Health and Rehabilitative Service, Dade County, FL

1984-1985

Responsible for managing treatment staff, preparing work assignments, conducting training sessions and supervising the maintenance of case records. Assisted superintendent in the preparation of annual budgetary needs and responsible for the operation of the facility in the absence of the superintendent. Assisted the superintendent in dealing with the community to provide effective and meaningful community support for the program. Established standards of performance in administration of case management. In addition, supervise four (4) Family Group Homes and one (1) Special Intensive Group Program and was the ACA Coordinator. 1982-1983

**Group Treatment Leader Supervisor,** Department of Health and Rehabilitative Services, Dade County, FL

Responsible for the direction of the group treatment leaders. Assumed complete responsibility for the facility in the absence of the superintendent and the Asst. Superintendent. Supervised building security and facilitated compliance of fire and safety regulations. In addition to CIS system, managed facility food service and building maintenance. Also, oversaw student intern and volunteer program and handled community relations.

1980 – 1982

**Group Treatment Leader,** Department of Health and Rehabilitative Services, Dade County, FL

DIXON000007

Responsible for maintaining case management loads for a minimum of twelve (12) clients and prepared all written reports as required. Conducted small and individual counseling sessions. Interfaced with various organizations. Supervised residential activities and responsibilities in the program. Prepared needs assessments and contracts for each client. Assisted in the training of other youth service personnel.

1981 – 1985

**Assistant Manager (part-time), Variety Record Company**

Responsible for the supervision of five (5) sales persons, checking cashiers for mistakes, making night deposits and distributing stock.

1979

**Summer Assistant Director, CETA Program, Glades County, FL**

Provided assistance to the economic and social deprived residents of Glades County. Responsible for organizing and implementing social services and recreation programs, acting as liaison between the state and the community. Also, responsible for placing county residents in business for on-the-job training. Supervised forty (40) persons.

1978

**Summer Recreation Director, Glades County, FL**

Developed a wide variety of program activities for boys and girls ages 11 through 19. Supervised staff of fifteen (15) full-time workers. Provided youth counseling and organized activities for summer programs.

1977

**Community Worker CETA Title VI, Glades County, FL**

Provided assistance to the economically and socially deprived residents in Glades County. Responsible for organizing and implementing Social Service and recreational programs. The program's emphasis was geared towards sports activities, intramural games, etc.

## *HOBBIES*

Basketball, Reading, Jogging, Hunting, Fishing, and Camping

## *REFERENCES*

Furnished upon request

DIXON000008

**Leonard B. Dixon, M.S.**
**Superintendent of the Cook County Juvenile Temporary Detention Center**

Office Location: 1100 S. Hamilton Avenue, Chicago, Ill. 60612 – 2nd Floor
Work Phone:   312-433-6333
Fax:   312-433-6335
Email:   leonard.dixon@cookcountyil.gov
          Lbdixon1@comcast.net

Mr. Dixon is currently the Superintendent of the Cook County Juvenile Temporary Detention Center (JTDC) under the office of the Chief Judge of Cook County in Illinois effective February 9, 2015. He is responsible for the administration and management of all operations of JTDC, including custody, security, safety, medical/mental health services, social services, fiscal services, maintenance services human resources, labor relations and other services and has an operating budget of $58.3 million and a staff of over 900.

Mr. Dixon was previously the Executive Director for the Wayne County Juvenile Detention Facility, Department of Children and Family Services in Detroit, Michigan. He was responsible for the operations of detention and alternatives to detention. Mr. Dixon was the Bureau Director for Juvenile Justice for the State of Michigan Department of Human Services from October 2004 to May 2007. He was responsible for the care and supervision of delinquent state wards. Mr. Dixon is also a member of numerous national organizations and has presented at several national conventions seminars on Juvenile Justice Issues. Mr. Dixon has over 35 years of Juvenile Justice experience.

Mr. Dixon is a native Floridian, he earned his Associate of Arts Degree in Education from State fair Community College – Sedalia, Missouri; a Bachelor's of Science degree in Sociology/Psychology from Southwest Baptist University, Bolivar, Missouri, a Master's degree in Child and Youth Care Administration from Nova University in Ft. Lauderdale, Florida. He also completed advance management training by the American Management association, University System of New York and completed Leadership Training with the U.S. Department of Justice. Mr. Dixon is also a graduate of Leadership Detroit, a regional leadership and management program. Mr. Dixon served over 15 years with the Department of Health and Rehabilitative Services (HRS) in the Children, Youth and Family (CYF) delinquency component of the agency. His tenure began in 1979 as a Group Treatment Leader and moved through the ranks as TGL Supervisor, Assistant Superintendent, Supervisor for Group Homes and Special Intensive Groups, Detention Superintendent, Halfway House Superintendent, Program Operations Administrator for all residential, non-residential, intake and commitment services to his current position as Division Director.

Mr. Dixon's career in Juvenile Justice is recognized nationally. As superintendent of Better Outlook Center, he developed the first halfway house in the state and provided staff with cross county training within their work area, and achieved national accreditation of 3 residential programs. As Division Director, Mr. Dixon was the first Director in 17 years to license the Wayne County Juvenile Detention Facility. In addition he ended an eight-year federal investigation of the Wayne County Juvenile Detention Facility without litigation or a consent decree. In August 2007, the Wayne County Juvenile Detention Facility was returned to regular license status – a status that was lost in July 2006 and has had two provisional licenses. Furthermore under his direction in 2007, the Wayne County Juvenile Detention Facility obtained a regular license status for the Mental Health program – therefore the facility has a dual license.

DIXON000009

## Education

Master of Science, Child and Youth Care Administration, Nova University, Ft. Lauderdale, FL. 1990

Bachelors of Science, Sociology and Psychology, Southwest Baptist University, Bolivar, MO. 1980

Associate of Arts, Education, State Fair Community College, Sedalia, MO. 1977

American Management Association, University System of New York

Correctional Leadership Development, U.S. Department of Justice, Longmont, CO. 1992

## Professional Memberships

- Governors' Appointment to the State Juvenile Justice Commission
- American Correctional Association
- National Juvenile Detention Association
- Michigan Juvenile Detention Association

## Years of Experience

35 years

## Professional Experience

| | |
|---|---|
| 2014 – 2015 | **President** <br> **Pathways Academy Charter School, Detroit, Michigan** |
| 1995 – 2004 - 2007 – Present | **Division Director of Juvenile Detention Services:** <br> **Department of Children & Family Services, Wayne County Juvenile Detention Facility, Detroit, Michigan** |
| 2004 – 2007 | **Director – Bureau of Juvenile Justice:** **Department of Human Services of Michigan** |
| 1995 – 2000 | **Adjunct Professor,** Wayne County Community College, Detroit, Michigan |
| 1990 – 1995 | **Program Operations Administrator,** Department of Juvenile Justice Services, Dade County, FL |
| 1991 – 1995 | **Cohort Coordinator,** Nova University |
| 1985 – 1990 | **Halfway Facility Superintendent,** Department of Health and Rehabilitative Services, Dade County, FL |
| 1984 – 1985 | **Assistant Halfway Facility Superintendent,** Department of Health and Rehabilitative Service, Dade County, FL |
| 1982 – 1983 | **Group Treatment Leader Supervisor,** Department of Health and Rehabilitative Services, Dade County, FL |
| 1980 – 1982 | **Group Treatment Leader,** Department of Health and Rehabilitative Services, Dade County, FL |
| 1981 – 1985 | **Assistant Manager (part time),** Variety Record Company |
| 1979 | **Summer Assistant Director,** CETA Program, Glades County, FL |
| 1978 | **Summer Recreation Director,** Glades County, FL |

### ***CONSULTING EXPERIENCE***

2002 – Present

**Consultant**, U.S. Department of Justice/Court Monitor for Essex County, New Jersey

2002 – Present

**Consultant**, National Juvenile Detention Association (NJDA)

**United States Department of Justice/Juvenile Justice Consulting Cases Involved In:**

1. United States vs. Wayne County, Michigan
2. United States vs. Macon County, Illinois
3. United States vs. Los Angeles County Probation Department, Juvenile Detention Facilities, California
4. Lucas County, Ohio
5. United States vs. Essex County, New Jersey (protection from harm)
6. United States vs. State of Maryland
7. Washington, D.C. Oak Hill Detention and Training School
8. Benito Myers vs. Lenawee County, Michigan
9. Bobby M. vs. State of Florida
10. United States vs. State of Mississippi Oakley/Columbia Training schools (protection from harm).
11. Morgan vs. Nagin, et. al. Conditionals of Confinement New Orleans Youth Study Center, Expert Witness.
12. Consultation with the State of Louisiana on leadership development for the Department of Juvenile Justice Senior Leadership team 2009.
13. Expert witness Brandon Blackmon vs. The Board of County Commissioners of Sedgwick County, Kansas et.al. from 2011 to Present.
14. Federal Court monitors J.H. vs. Hinds County, Mississippi Henley Young Juvenile Justice Center. Protection from Harm from 2012 to Present.

DIXON000011

### *AWARD, HONORS, and ACHIEVEMENTS*

- Major General Anthony C. Wayne Leadership award 2008 from the County of Wayne
- Proclamation – County of Wayne – 2003
- Governors' Appointment to the State Juvenile Justice Commission 2003 – present
- President, National Juvenile Detention Association (NJDA) 2003-2006
- Appointed to Standards Committee, American Correctional Association (ACA) 2002-2006
- All American High School Basketball Player
- Athletic Scholarship, State Fair Community College, Missouri
- Member "Who's Who" Junior College 1977
- Athletic Scholarship, Southwest Baptist University, Missouri
- Member of Committee to Form Employee Recognition Program HRS
- Chairman Employee Incentive Committee
- Chairman Employee Recognition HRS
- Member EEOC – HRS State of Florida, District XI
- Member of juvenile Court Committee, Dade County Juvenile
- Member of Peer Review Committee for Statewide Facilities – FL
- Member of Statewide Design Training Team for Juvenile Facilities – FL
- Member of South Florida Review Team for New Juvenile Program
- Chairman of ACA Accreditation Committee Florida District XI
- Nova University Adjunct Staff Member/Juvenile Programs in Administration
- Board member, Community Tree House, Detroit, MI
- Board member, The Wellington Group, Miami, FL
- Member, National Human Services Juvenile Justice Group – Children's Defense Fund, Washington, D.C., Child Welfare League of America
- Member of American Correctional Association
- Member National juvenile Detention Association
- Interviews on Local Public Television and Radio Stations
- U.S. Congress Presentations to Congressional Senators – Wash., D.C. Member, National Committee on Assessments for Minority Children – Washington, D.C.
- Member, Structuring Effective Juvenile Detention Environments, University of Wisconsin, Madison, College of Engineering, Monona, Wisconsin, Dec., 1977
- Received Proclamation – County of Wayne, 1977
- Board of Directors, Michigan Juvenile Detention Association
- Committee Chair of Critical Issues, National Juvenile Detention Association
- Neal Zott Award – Michigan Juvenile Detention Association – 2002
- National Presenter on Juvenile Justice Issues 2003
- Appointed, Juvenile Delinquency Guidelines committee and consultant National Council of Juvenile and Family Court Judges, 2003, Reno, Nevada
- Presentations in Beijing and Shanghai Normal Universities Republic of China in 2007 (on Conditions of Confinement for Juvenile Facilities)
- Testimony before the United States Senate, 2004 (mental health and health services in juvenile institutions)
- Testimony before the United States Congress (alternative education in juvenile institutions) 2009
- Appointed committee on minority over-representation (ACA) 2008-2010
- Presentation before the Loyola Law School, Los Angeles CA. on juvenile justice and education 2009
- Re-appointment to Governors State committee on Juvenile Justice 2010-2012
- Presentation before the Deputy U.S. attorney general on draft PREA standards for juvenile institutions 2010
- American Correction Association (ACA) Committee on Juvenile Justice 2010-2012
- Appointed by the Michigan Supreme Court to the Race Equity Coalition 2011-2012
- Appointed to Illinois Supreme Court Probation Policy Advisory Board 2015
- Recipient of the Paul Hall Humanitarian Award Chicago, IL., 2015
- Vice President National Partnership for Juvenile Service (NPJS) 2016-2018
- Appointment Illinois Supreme Court Judicial College committee on probation education 2017-2019

DIXON000012

# Exhibit 4



Stephen Weil <steve@weilchardon.com>

---

## Re: T.S. and Q.B. v. Twentieth Century Fox, et al.
1 message

---

**LYLE HENRETTY (States Attorney)** <LYLE.HENRETTY@cookcountyil.gov>      Wed, Jun 6, 2018 at 6:10 PM
To: Stephen Weil <steve@weilchardon.com>
Cc: Alexis Chardon <ali@weilchardon.com>

It does, thanks.

Sent from my iPhone

On Jun 6, 2018, at 6:09 PM, Stephen Weil <steve@weilchardon.com> wrote:

> Thanks Lyle. We are not willing to identify a subset. We've already comprised significantly by limiting this request to the identifications in the CV.
>
> If that puts us at issue please let me know.
>
> Get Outlook for Android
>
> ---
>
> **From:** LYLE HENRETTY (States Attorney) <LYLE.HENRETTY@cookcountyil.gov>
> **Sent:** Wednesday, June 6, 2018 5:03:05 PM
> **To:** Stephen Weil
> **Cc:** Alexis Chardon
> **Subject:** RE: FW: T.S. and Q.B. v. Twentieth Century Fox, et al.
>
> Steve,
>
>     1.    Dixon only has one personal email account, which was searched as described.
>
>     2.    The redactions on the CV were of Dixon's Work phone, work fax, contact cell phone, and personal email address.
>
>     3.    Our position is still that Mr. Dixon's previous speeches, etc. are not relevant to any claim or defense in the case. But in the spirit of compromise, would you be willing to identify a sub-group of speeches, etc. you are interested in? Can you identify five? If so, I would be willing to determine what, if anything, exists on those speeches/consultations, etc. and evaluate for production.
>
> I will be out of the office until Monday, but will be regularly checking my email.
>
> Thanks,

6/26/2018                    Weil & Chardon LLC Mail - Fwd: T.S. and Q.B. v. Twentieth Century Fox, et al.

Case: 1:16-cv-08303 Document #: 166-1 Filed: 06/26/18 Page 24 of 30 PageID #:1517

Lyle

---

**From:** LYLE HENRETTY (States Attorney)
**Sent:** Tuesday, June 5, 2018 5:01 PM
**To:** 'Stephen Weil'
**Cc:** Alexis Chardon
**Subject:** RE: FW: T.S. and Q.B. v. Twentieth Century Fox, et al.


Steve,


I will get back to you tomorrow.  I've been out of the office most of yesterday and today.


Thanks,


Lyle

**From:** Stephen Weil [mailto:steve@weilchardon.com]
**Sent:** Tuesday, June 5, 2018 4:57 PM
**To:** LYLE HENRETTY (States Attorney)
**Cc:** Alexis Chardon
**Subject:** Re: FW: T.S. and Q.B. v. Twentieth Century Fox, et al.


Hello Lyle,


Please let me know whether my proposals in my Friday email (below) change anything.


Thanks,

Steve


Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f) 773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com

On Fri, Jun 1, 2018 at 9:52 PM, Stephen Weil <steve@weilchardon.com> wrote:

Thanks Lyle.

**Interrogatory No. 4 / RFP No. 2**.  Sounds like we are going to be at issue on this one.  To be clear though, we are offering to limit this discovery to the material identified (or indicated) in Mr. Dixon's CV-- i.e., he lists speeches, so we would ask for those, and he lists consulting / expert gigs, so we would ask for formal statements (like reports or memos) that he issued in those capacities.  If this changes your objection or you would like more specific information about the items I am identifying, please let me know.  If this changes things, please tell me.  Otherwise it sounds as though we are at issue.

**Interrogatory No. 6 / RFP No. 3**.  It sounds as though this one may be resolved.  Please state how many personal email accounts Mr. Dixon has, and confirm that he has searched each one.

**DIXON 1-12**.  Perhaps we can resolve this one as follows:  what does the redacted part of Dixon's resume describe (phone number, fax, etc.)?  Some lines are obvious but others are not.

Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f)  773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com

On Fri, Jun 1, 2018 at 5:06 PM, LYLE HENRETTY (States Attorney) <LYLE.HENRETTY@cookcountyil. gov> wrote:

Steve,

I do disagree with your analysis below, and stand by the objections.  However, in the interest of compromise, Mr. Dixon did a keyword search of his personal e-mail account for the following terms:

Filming, Empire, JTDC, Geraghty, Fox, Lee Daniels, Breen, bradybreen@aol.com, Grogan, grogan.megan@gmail.com, Klemke, Scout, Film, Hollywood, and Movie

for the period of 5/22/15 through 9/26/15. His search yielded no results.

We stand on our remaining objections.

Have a nice weekend,

Lyle

**From:** Stephen Weil [mailto:steve@weilchardon.com]
**Sent:** Wednesday, May 30, 2018 10:05 AM
**To:** LYLE HENRETTY (States Attorney)
**Cc:** Alexis Chardon
**Subject:** Re: FW: T.S. and Q.B. v. Twentieth Century Fox, et al.

Thanks for your quick response Lyle.

        Saying that a boilerplate objection applies to each request doesn't make it not boilerplate. If that were so the rule against boilerplate objections would be meaningless. As *BankDirect* says, the objecting party has to "actually show[]" why a particular discovery request is improper. All the same your email from yesterday provides some specifics so I'll accept it as articulating your actual objections. In response:

        **"Official capacity."** Your main objection to this discovery is that it is irrelevant, because Mr. Dixon is sued in his "official capacity," since he is being sued "as the superintendent of the JTDC." That contention is meritless. The federal claims in this case are brought against Mr. Dixon in his individual capacity—he is being sued in damages, for things *he* did. The fact that the complaint against Mr. Dixon identifies his job title does not change that. Mr. Dixon understood this well enough when he moved to dismiss on grounds that he was entitled to qualified immunity (*see* ECF No. 48 at 11-12; ECF No. 64 at 8-9), a defense only available to persons sued in their individual capacities. Setting aside the federal claims in this case, Mr. Dixon is also sued under state law for breach of fiduciary duty and IIED; under state law there is no "official capacity" to be sued in. If you are going to stand on this "official capacity" objection please provide the authority on which it is based, as I am not aware of any.

        As to your remaining objections:

        **Interrogatory No. 4 / RFP No. 2.** Interrogatory No. 4 is designed to capture statements Mr. Dixon has made about management of juvenile detention facilities, *i.e.*, how a juvenile detention facility should be run. A request for such prior statements is reasonably calculated to lead to the discovery of admissible evidence in this case, particularly if such statements contradict Mr. Dixon's actions in allowing Fox to film and imposing the alleged restrictions on the JTDC's residents. As such the request is not overbroad.

        You've also said that the request is vague, but juvenile detention management is a well-defined field; in all events the interrogatory certainly calls for Mr. Dixon's formal statements on the subject, as you recognize in your email. From his CV Mr. Dixon appears to know which such statements he made and when, so at a minimum those are responsive to the interrogatory and RFP. Mr. Dixon must produce

such responsive statements to the extent he has them, and to the extent he doesn't he must identify who is likely to be in possession of such statements.

      **Interrogatory No. 6 / RFP No. 3.** The request for production from Mr. Dixon's personal email is reasonably calculated to lead to the discovery of admissible evidence—i.e., statements he made regarding the filming and related restrictions on kids at the JTDC. Your only stated objection to this request is your "official capacity" argument, but as I explained above that objection is meritless.

      **DIXON 1-12.** Regarding the information redacted on Mr. Dixon's CV, you have conceded that this information is not privileged. Rather, it is arguably personal identifying information (which Mr. Dixon has placed on his own CV and thus appears prepared to disseminate to others). The protective order in this case, which Mr. Dixon proposed and we agreed to, provides that personal identifying information can be designated as confidential, but it does not provide that such information may be redacted. (*See* ECF No. 96 ¶ 2(e).) Mr. Dixon does not now get to create a special exception from his own protective order. We are well aware of the rules regarding contact with represented parties and will abide by them. You have every right to mark this information as confidential, but not to redact it.

                                \*\*\*

      Please let me know by next Tuesday, June 5 whether you will be standing on your objections or whether you will agree to provide responsive information / documents. If you agree to provide responsive information / documents, please let me know by next Tuesday what you are agreeing to provide. All such information / documents should be provided by June 15.

Best regards,

Steve




Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f)  773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com


On Tue, May 29, 2018 at 3:34 PM, LYLE HENRETTY (States Attorney) <LYLE.HENRETTY@cookcountyil. gov> wrote:

Stephen,


1.    The objections are not boilerplate, they are specific to each individual interrogatory and request;


2.    As you note, we produced Mr. Dixon's CV in response to Interrogatory No. 4 and RFP No. 2. This was done more as a courtesy, as your request is so overbroad and vague that it appears to encompass

Weil & Chardon LLC Mail - Fwd: Re: T.S. and Q.B. v. Twentieth Century Fox, et al.

nearly every written document prepared by Mr. Dixon in the past 10 years.  Even read narrowly, as to include only formal writing, lectures, etc., this request is not relevant to any claim or defense in this case.  Mr. Dixon has been sued in his official capacity as superintendent of the JTDC, not as an individual, so his individual statements regarding juvenile detention management are not properly discoverable;

3.     As to his personal email, Mr. Dixon was not sued in his personal capacity, so it is not relevant to any claim or defense in this case.

4.     The redacted information is Mr. Dixon's personal and professional contact information.  To the extent you need to reach Mr. Dixon, you may go through counsel.  Further, it is not relevant to any claim or defense of this case, and thus was redacted.  It is not privileged, but irrelevant.  Further, as you have already stated that the CV  "does not contain the information sought" in  your discovery request, it is unclear to me why you believe you are entitled to an unreacted copy that contains Mr. Dixon's personal information.

Please let me know if you have any other questions.

Thanks,

Lyle Henretty

Assistant Attorney General

**From:** Stephen Weil [mailto:steve@weilchardon.com]
**Sent:** Tuesday, May 29, 2018 3:04 PM
**To:** LYLE HENRETTY (States Attorney)
**Cc:** Alexis Chardon
**Subject:** Re: FW: T.S. and Q.B. v. Twentieth Century Fox, et al.

Thanks Lyle.

I'm writing to identify several deficiencies in Mr. Dixon's responses to our' discovery.

**Interrogatory No. 4 / RFP No. 2**.  This interrogatory and accompanying RFP asked you to identify and produce written or recorded statements regarding juvenile detention management, to produce any such statements in Mr. Dixon's possession, and to otherwise identify persons who have possession of such statements.  First you interpose several boilerplate objections, but as you know, such objections are invalid.  *See, e.g.*, *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017) ("An objection to discovery is not satisfied by the invocation of routinized boilerplate objections rather than actually showing why a discovery request is improper.").  Your response then points to Mr. Dixon's CV (DIXON 1-12), but that document does not contain the information sought by the interrogatory.

Your objections and response do not fulfill your client's discovery obligations.  Mr. Dixon's CV indicates that he has kept careful track of his professional accomplishments, including engagements in which he has served as an expert, consultant, or monitor, as well as public presentations or speeches that he has given.  Your failure to identify the information responsive to the interrogatory—or to produce any documents—for these various engagements indicates that Mr. Dixon simply decided not to make any effort to provide responsive information, despite being given several extra months to do so.

By next Tuesday, June 5, please let us know whether you will agree to provide information responsive to this discovery, and explain what you will agree to provide. All such responsive information or documents must be provided by June 15.

**Interrogatory No. 6 / RFP No. 3.** This discovery asked you to identify Mr. Dixon's electronic communication or social media accounts. You provide some responsive information, but you do not say whether Mr. Dixon has one or more personal email accounts. Please clarify whether Mr. Dixon has any personal email accounts (other than his work email account) and if so, provide responsive information for any such accounts.

In conducting any search of such accounts, it is not reasonable to limit a search to "Empire," as you indicated you did for Mr. Dixon's work email (*see* Interrogatory No. 3). Instead please use the search terms employed by the Chief Judge's Office, also referred to in Dixon's response to his Interrogatory No. 3.

Please respond to this request by next Tuesday, June 5—let me know whether any such accounts exist, whether you will agree to produce responsive documents from those accounts, and if so by when. Any search and production should be completed and responsive documents produced by June 15.

**DIXON 1-12.** Your production contains redactions on DIXON00001. By next Tuesday, June 5, Please identify the rule of civil procedure, rule of evidence, or other authority upon which you make these redactions, or produce an unredacted version of the document. I'll note that there is a protective order in this case allowing you to classify certain sensitive information as confidential. (*See* ECF No. 96.) The responsive document should be provided by June 15.


Best regards,


Steve



Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f) 773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com


On Tue, May 29, 2018 at 10:23 AM, LYLE HENRETTY (States Attorney) <LYLE.HENRETTY@cookcountyil. gov> wrote:

Stephen,


As I noted last week, Dixon 1-12 is attached to Dixon's Answers to Plaintiff's Interrogatories. I am reforwarding the same.


Thanks,

6/26/2018    Cook County Mail - T.S. and Q.B. v. Twentieth Century Fox, et al.

Case: 1:16-cv-08303 Document #: 166-1 Filed: 06/26/18 Page 30 of 30 PageID #:1517

Lyle

**From:** LYLE HENRETTY (States Attorney)
**Sent:** Wednesday, May 23, 2018 2:24 PM
**To:** 'Stephen Weil'; Alexis Chardon; Adam Pessin; Jacobson, Jeffrey; Luzadder, Matt; James, Catherine; Fletcher, Janine; ANTHONY ZECCHIN (States Attorney); Allyson West (States Attorney); Horvat, Timothy
**Subject:** T.S. and Q.B. v. Twentieth Century Fox, et al.


Counsel,


Attached please find Defendant Dixon's Answers to Interrogatories and Responses to Second Request for Production.  Please let me know if you have any questions.


Thanks,


Lyle


**Lyle K. Henretty**

Assistant State's Attorney

Conflicts Counsel Unit
Cook County State's Attorney's Office
69 W. Washington Street, Suite 2030

Chicago, Illinois 60602
Office: (312) 603-1426

Fax: (312) 603-9616


The contents of this email message and any attachments are intended solely for the addressee(s) named in this message. This communications is intended to be and to remain confidential and may be subject to applicable attorney-client and/or work product privileges. If you are not the intended recipient of this message or if this message has been addressed to you in error, please alert the sender immediately by reply email and then delete this message and its attachments. If you are not the intended recipient, do not deliver, distribute or copy this message and/or any attachments, and  do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments. Thank you.