# List of Exhibits

**Exhibit 1.**      (Aug. 24, 2017) Plaintiffs' RFPs to Cook County and Leonard Dixon

**Exhibit 2.**      (Aug. 31, 2017) Plaintiffs' RFPs to OCJ

**Exhibit 3.**      (Dec. 29, 2017) Letter from S. Weil to A. West and A. Zecchin

**Exhibit 4.**      (February 22, 2018) Plaintiffs' RFPs to OCJ

**Exhibit 5.**      (April 25, 2018) Email from A. Horvat to S. Weil

**Exhibit 6.**      (April 25, 2018) OCJ's Responses and Objections to Plaintiffs' RFPs

**Exhibit 7.**      (April 25-30, 2018) Emails between S. Weil and A. Horvat

**Exhibit 8.**      (June 7, 2018) Letter from S. Weil to A. Horvat

**Exhibit 9.**      (June 7, 2018) Email from A. Horvat to S. Weil

**Exhibit 10.**      (June 11, 2018) Email from S. Weil to A. Horvat

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

T.S. *et al.,*

        Plaintiffs,

  v.

Twentieth Century Fox Television *et al.,*

        Defendants.

Case No. 1:16-cv-08303

Hon. Amy J. St. Eve

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
TO COOK COUNTY AND LEONARD DIXON**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs request

that Defendants Cook County and Leonard Dixon produce the following:

**DEFINITIONS**

1.     "Filming Periods" means June 21-26, 2015, July 13-16, 2015, and August 23-26, 2015, inclusive, as well as any other time that persons associated with *Empire* were present at the JTDC.

2.     "Relevant Period" means May 22, 2015 to September 26, 2015.  The Relevant Period includes the Filming Periods.

**INSTRUCTIONS**

1.     Pursuant to Rule 34(b)(1)(C), Electronically Stored Information ("ESI") is to be produced in the following forms:

    a.   Except as stated below, ESI may be produced in PDF form.  However, ESI should not be scanned to PDF (*i.e.*, printed out on paper and then scanned).  Rather, the PDF should be generated directly from the underlying electronic file.

    b.   Plaintiffs anticipate that for most ESI the production of metadata will not be necessary.  Thus, unless otherwise identified in a request, ESI converted to PDF need not be accompanied by the underlying metadata of the native ESI.  However, if Plaintiffs later determine that the production of metadata may be relevant for certain documents, Plaintiffs will request metadata for such documents, and Defendants shall produce responsive metadata within 14 days of such a follow-up request.

1

    c.  Notwithstanding the foregoing instructions, to the extent that information responsive to a document request is stored in a spreadsheet, database, or similar form of ESI, such ESI should not be produced in PDF. Rather, such ESI should be produced in its original or native form, such that it can be manipulated in the same manner that it would be manipulated in the normal course of business.

2.  To the extent that documents responsive to a request contain colors (*i.e.*, colors in addition to black and white), production of such documents should be in color.

## DOCUMENT REQUESTS

1.  All floorplans for each floor of the JTDC. Alternatively, documents sufficient to show the floorplan for each floor of the JTDC.

2.  All organization charts of the JTDC's staff, as well as any documents showing the relationships of the positions of the JTDC's staff, during the Relevant Period.

3.  All documents reflecting scheduled, planned, or regular events or activities for residents at the JTDC during the Relevant Period.

4.  All schedules or other documents relating to activities occurring for each day of the Relevant Period at the JTDC, including times, locations, and participants in each such activity. Activities include, but are not limited to, the following: schooling; recreation; programming; visitation; commissary; games; in-pod services; medical appointments; dental appointments; court appearances by JTDC residents; and all activities related to the *Empire* filming, including but not limited to preparation, support activities, the filming, and post-filming break-down.

5.  Documents sufficient to show which days the Nancy B. Jefferson school was scheduled to be in session for the calendar years 2014, 2015, and 2016.

6.  Documents sufficient to show which days the Nancy B. Jefferson school was in session for that the calendar year of 2015.

7.  All staffing plans and/or policies for staffing positions for all positions at the JTDC during the Relevant Period (*e.g.*, plans or policies regarding staffing of pods, security checkpoints, movement specialist positions, supervisor positions, counselor positions, medical care positions, etc.), for each shift at the JTDC.

8.  Documents sufficient to show the staffing of the JTDC for each day of the Relevant Period, meaning which persons worked which shifts, and in which location or role.

9.  The logbooks for each pod for each day of the Relevant Period.

10.  Documents sufficient to show the following for each resident of the JTDC for each day of the Relevant Period:

    a.  the name of each resident;

    b.  the tracking or inmate number of each resident; and

    c.  the housing location (*e.g.*, intake, pod, medical) of each resident, including any changes to housing location.

11.    The DC 5 Log ("Movement Authorization") for the entire Relevant Period.

12.    All logs related to sick call requests for the entire Relevant Period.

13.    Documents sufficient to show the following for the entire Relevant Period:

    a.  the name and housing location of each resident who submitted a sick call request;

    b.  the date that each sick call request was submitted;

    c.  the complaint or concern raised in each sick call request;

    d.  the date that each sick call slip was picked up in the pod or other residential location;

    e.  the date that each sick call request was responded to; and

    f.  the nature of the response, including any care provided to the resident, any movement of the resident or staff in response to the sick call request, and the location of any care provided to the resident.

14.    Documents sufficient to show the following for the entire Relevant Period:

    a.  each after-school activity or similar program offered at the JTDC;

    b.  the days on which each such activity or program was offered;

    c.  the location where each such program or activity was offered;

    d.  the residents who were scheduled to attend or participate in each such activity; and

    e.  the residents who attended or participated in each such program or activity.

15.    All logs and logbooks for visitation and visitors for the entire Relevant Period.

16.    Documents sufficient to show the following for the entire Relevant Period:

    a.  each person who visited a resident;

    b.  the date of each such visit;

    c.  the time of each such visit, including time elapsed during each such visit; and

    d.  the location of each such visit.

17.     Documents sufficient to show the following for the entire Relevant Period:

    a.  all scheduled court hearings for residents;

    b.  the case number associated with each such court hearing;

    c.  each resident transported to court;

    d.  the date of each such transport.

18.     All sign-in/out records to the JTDC for each day of the Relevant Period.  This includes but is not limited to: *Empire* filming; school staff sign-in/out; visitor sign-in/out; medical sign-in/out; and staff sign-in/out.

19.     All logs kept by the Resident Advocate, and/or all logs regarding resident grievances and responses thereto, during the Relevant Period.

20.     All security plans for each day of the Relevant Period.

21.     All pod shift reports for each day of the Relevant Period.

22.     All center shift reports for each day of the Relevant Period.

23.     All supervisor-in-charge shift reports for each day of the Relevant Period.

24.     All incident reports during the Relevant Period.

25.     All policies, procedures and/or operations manuals relating to operation of the JTDC in effect during the Relevant Period.  (An example of one such policy is Policy No. V3C09P09, Bates ## CCASO T.S. v. CENTURY 12-17.)

26.     All documents (including communications) relating in any way to the filming of *Empire* at the JTDC.

27.     All documents (including communications) relating to the scouting, consideration, and selection of the JTDC as a location for the filming of *Empire*.

28.     All documents (including communications) relating to any agreements relating to the filming of *Empire* at the JTDC, including all documents relating to the negotiation of the agreements and all versions and drafts of the agreements.

29.     All documents (including communications) relating to consideration or discussion of the effect that filming *Empire* at the JTDC would have on the JTDC's normal operations, on the children housed there, and/or on the provision of services to the children housed there.

30.     All documents (including communications) relating to the planning, preparation, and conduct of the filming of *Empire* at the JTDC, including but not limited to:

a. the areas of the JTDC made available for *Empire*'s crew for filming and for support services (*e.g.*, areas for crew, equipment, changing, catering, delivery, lighting, production, etc.);

b. any alterations to the JTDC physical space made for filming and support services, including all painting;

c. the personnel (including JTDC or other governmental personnel) employed in filming or support, including the numbers of such persons, the functions and schedules of such persons, the dates such persons were in the JTDC, and their locations within the JTDC;

d. all equipment to be brought into the JTDC, including locations of same and schedules for entry and exit of same;

e. all acts to be done and/or or normal functions to be changed by JTDC personnel in relation to the filming at the JTDC; and

f. all alterations or changes to the JTDC's normal operations in relation to the filming, including but not limited to staff locations, staff duties, resident movement, school, medical, visitation, programming, recreation, court hearings, resident transfers, consolidation of pods, and provision of commissary.

a. All communications with any outside person or organization relating in any way to the filming of *Empire* and/or any changes in the JTDC's operations relating to the filming of *Empire*.  This includes but is not limited to the following:  vendors; providers of programming; defense attorneys; the State Attorney's Office; volunteers; *Empire*'s crew and support services; the Office of the Chief Judge of the Circuit Court of Cook County; Cook County Juvenile Court; Chicago Public Schools; the City of Chicago; and the Cook County Sheriff's Department.

31. All communications to or from any person listed in your Rule 26(a) disclosures relating in any way to the filming of *Empire* and/or any changes in the JTDC's operations relating to the filming of *Empire*.

32. All documents from which the text describing of *Empire* filming located at Bates # CCASO T.S. v 20TH CENTURY 22 was generated, as well as all drafts of such text and metadata for same, and all communications relating to such text.

33. Any communications to or from unions or union representatives, including communications to the Cook County Board, relating in any way to the filming of *Empire* at the JTDC.

34. All communications with or relating to Prof. Thomas Geraghty relating to the filming of *Empire* at the JTDC, including all drafts of correspondence, the correspondence itself, and all communications relating to the correspondence, as well as any metadata relating to each such communication.

5

35.     All photographs of any members of the crew or cast of *Empire* at the JTDC during the Relevant Period, including any metadata.

36.     All documents created as posted signs (*e.g.*, a document created to be taped on a wall as a posted sign) relating in any way to the *Empire* filming, as well as any electronic files used to generate such documents, including any metadata.

37.     All gifts or memorabilia received by JTDC staff from persons employed or affiliated with *Empire*. To the extent that items responsive to this request are not documents or ESI, this is a request for tangible things pursuant to Rule 34(a)(1)(B).


August 24, 2017                         Sincerely,

                                        /s/ Stephen H. Weil

                                        Stephen H. Weil – steve@weilchardon.com
                                        Alexis G. Chardon – ali@weilchardon.com
                                        Weil & Chardon LLC
                                        333 S. Wabash Ave., Suite 2700
                                        (312) 585-7404

                                        *Attorneys for Named Plaintiffs T.S. and Q.B.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2017, I sent a true and correct copy of the foregoing to the following persons, via email:

Allyson West, allyson.west@cookcountyil.gov

Anthony Zecchin, anthony.zecchin@cookcountyil.gov

T. Andrew Horvat, THorvat@atg.state.il.us

/s/ Stephen H. Weil

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

T.S. *et al.,*

        Plaintiffs,

   v.

Twentieth Century Fox Television *et al.,*

        Defendants.

Case No. 1:16-cv-08303

Hon. Amy J. St. Eve

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
TO CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs request

that Defendant Chief Judge of the Circuit Court of Cook County ("Chief Judge") produce the

following:

**DEFINITIONS**

1.    "You," "Your," "Chief Judge," and "the Office of the Chief Judge," refer to Defendant Chief Judge of the Circuit Court of Cook County in his official capacity, and/or the office of the Chief Judge of the Circuit Court of Cook County.

2.    The term "document" means both documents and electronically stored information as those terms defined under Federal Rule of Civil Procedure 32(a)(1)(A) (*i.e.,* to include writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data complications).

3.    "Relevant Period" means May 22, 2015 to September 26, 2015.

**INSTRUCTIONS**

1.    These Requests are to be construed in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure.

2.    These Requests seek documents in the possession of the Chief Judge, his Office, his staff, employees, officers, agents, and any other persons within the control of the Chief Judge.

3.    Pursuant to Rule 34(b)(1)(C), Electronically Stored Information ("ESI") is to be produced in the following forms:

a. Except as stated below, ESI may be produced in PDF form. However, ESI should not be scanned to PDF (*i.e.*, printed out on paper and then scanned). Rather, the PDF should be generated directly from the underlying electronic file.

b. Plaintiffs anticipate that for most ESI the production of metadata will not be necessary. Thus, unless otherwise identified in a request, ESI converted to PDF need not be accompanied by the underlying metadata of the native ESI. However, if Plaintiffs later determine that the production of metadata may be relevant for certain documents, Plaintiffs will request metadata for such documents, and Defendants shall produce responsive metadata within 14 days of such a follow-up request.

c. Notwithstanding the foregoing instructions, to the extent that information responsive to a document request is stored in a spreadsheet, database, or similar form of ESI, such ESI should not be produced in PDF. Rather, such ESI should be produced in its original or native form, such that it can be manipulated in the same manner that it would be manipulated in the normal course of business.

4. To the extent that documents responsive to a request contain colors (*i.e.*, colors in addition to black and white), production of such documents should be in color.

## DOCUMENT REQUESTS

1. All documents, including but not limited to communications, relating in any way to the filming of *Empire* at JTDC.

2. All documents relating in any way to the allocation of decision-making authority and responsibility among different persons, including but not limited to Chief Judge Timothy Evans and Superintendent Leonard Dixon, relating to the operation of the JTDC during any time that includes Relevant Period.

3. All communications with or relating to Prof. Thomas Geraghty relating to the filming of *Empire* at the JTDC, including all drafts of correspondence, the correspondence itself, and all communications relating to the correspondence, as well as any metadata relating to each such communication.

4. All photographs of any members of the crew or cast of *Empire* at the JTDC during the Relevant Period, including any metadata.

5. All gifts or memorabilia received from persons employed or affiliated with *Empire*. To the extent that items responsive to this request are not documents or ESI, this is a request for tangible things pursuant to Rule 34(a)(1)(B).

August 31, 2017                                    Sincerely,

                                                   /s/ Alexis G. Chardon

Stephen H. Weil – steve@weilchardon.com
Alexis G. Chardon – ali@weilchardon.com
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
(312) 585-7404

*Attorneys for Named Plaintiffs T.S. and Q.B.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2017, I sent a true and correct copy of the foregoing to the following persons, via email:

Allyson West, allyson.west@cookcountyil.gov

Anthony Zecchin, anthony.zecchin@cookcountyil.gov

T. Andrew Horvat, THorvat@atg.state.il.us

<u>/s/ Alexis G. Chardon</u>

# Exhibit 3

Stephen H. Weil
Weil & Chardon LLC
333 S. Wabash, Suite 2700
Chicago, IL 60604
312-585-7404
steve@weilchardon.com

December 29, 2017

**<u>Via email</u>**

Allyson West
Anthony E. Zecchin
Office of the Cook County State's Attorney
Richard J. Daley Center
50 W. Washington, Suite 500
Chicago, IL 60602
Allyson.West@cookcountyil.gov
Anthony.Zecchin@cookcountyil.gov

Dear Allyson and Anthony,

I'm writing to identify another, serious deficiency in the County Defendants' discovery responses. This has to do with the County Defendants' responses to Plaintiffs' RFPs 26-31. These were RFPs that asked for communications and similar information relating to the filming of *Empire* at the JTDC.

From the formatting of the documents that we have been provided in your production, it appears that the JTDC operates a Microsoft Outlook email system. If that is the case, searches can be run in all email accounts at the server level, through the Microsoft Exchange server upon which each employee's Microsoft Outlook email account operates. This allows simultaneous searching of all email accounts on the server, by a single IT technician, and can typically be completed in a short amount of time.

It appears that this was not done. On December 19, you forwarded a September 19, 2017 email from Alesha Riegler, a "legal affairs coordinator" at JTDC, to various persons within the JTDC. In this email, Ms. Riegler tells various persons (who are presumably supervisors at the JTDC) that:

> You and your staff must search for "Empire" in their emails and documents and print any and all emails and documents found in the search. . . . Provide us with one packet (for your Division/Department) containing the documents above no later than October 3, 2017.

From Ms. Riegler's September 19 email we infer that, instead of searching for responsive documents by conducting searches on Microsoft Exchange at the server level, you instead had JTDC counsel send out Ms. Riegler's Sept. 19 email asking all JTDC employees to conduct their

1

own, individual searches of each of their own Outlook email accounts, print out responsive documents, and then provide them to the JTDC's legal department. This is a seriously deficient method of locating and gathering responsive documents, and it leads to multiple problems.

For one thing, conducting the search in this manner is a massive waste of employee time that could be saved through a server-level search. But setting that aside, there does not appear to have been any attorney supervision of each employee's collection, and thus no effective way to confirm that each custodian gathered the requested documents. Custodians may simply have ignored the requests. They might not be technically proficient enough to conduct the searches effectively, or they might have omitted documents from the search that they think cast them in a negative light. The result is a deficient email collection that omits numerous responsive documents.

That appears to have happened here. We have already noted (see my Dec. 1 email) that there appears to have been no production from Leonard Dixon's email account—in your Nov. 2 production there were no document headings indicating production from his account, suggesting that there was no attempt to gather responsive emails from his account. Yet Dixon appears in the emails of numerous other custodians. *See, e.g.*, Bates Nos. 07778, 07782, 07899, 7962. (This is by no means a comprehensive list—Dixon appears on emails throughout the production.) You eventually produced some of Dixon custodial emails in the Nov. 28 production, but these were only a handful of emails from August 2015 and later—there were no emails, including the ones listed above, for the earlier months when *Empire* filmed at the JTDC and the decision to allow the filming was made.

The same goes for SIC Gene Robinson. The JTDC's internal newsletter credits him with coordinating the JTDC's accommodation of the *Empire* filming, *see* Bates 00023, yet no document pull appears to have been made from his email account. Instead, Mr. Robinson's entire "production" appears to be a handful of emails that he forwarded to Ms. Riegler in September 2017, *see* Bates 9916-80. (Like Dixon, these emails are from August 2015 and later, whereas Robinson appears on numerous other emails that are not part of his "production." *See, e.g.*, Bates 9577, 8622, 8327.)[1]

The list goes on. There appears to have been no production from the email accounts of various other responsive custodians, including Sha-Ronda Hatcher, Mike Gandhi, Roy Barrows, Bilqis-Jacob El, Anna Ashcraft, William Steward, Andrew Kruzel, and Jacqueline Ferrloi. Email correspondence to and from these custodians appears in various places throughout the County Defendants' production, but we were unable to locate any email pulls from these custodians' Outlook accounts.

---

[1] It should go without saying that it is not sufficient to receive an "incidental" production from "missing" custodians like Dixon and Robinson by examining emails in other custodians' accounts in which the missing custodian appears. For one thing, that is not how the emails are stored in the normal course of business. More important, there is simply no way of knowing whether all the missing custodian's responsive communications have been gathered.

In addition, custodians like Zenaida Alonzo and Shannon King have "productions," but those productions are not actual custodial productions of communications from 2015. Rather, they are largely productions from 2017 and reflect Ms. King and Ms. Alonzo gathering documents to respond to Plaintiffs' production requests in this case. Meanwhile, both Ms. King and Ms. Alonzo appear in various communications in 2015. (Ms. Alonzo did make an exceedingly limited production of five pages, *see* Bates 9587-91 and 10711, which omit numerous other emails that she sent or received. *See, e.g.*, Bates 8555, 8569, 8579)

In short, the method that the County Defendants chose to respond to the discovery request resulted in an inadequate production. Furthermore, given that there was no production from the email accounts of obvious custodians like Mr. Dixon and Mr. Robinson, we infer that the attorneys who gathered responsive documents at the JTDC did not make a serious effort to audit the overall production and ensure that—at a minimum—the required custodians had responded. This was a badly deficient production and we have every reason to believe that it missed numerous responsive documents.

The custodian-by-custodian method outlined in Ms. Riegler's Sept. 19 email created other problems as well. These include:

- It appears that no effort was made to determine whether there were persons employed at the JTDC in 2015 who were no longer employed there when the document collection occurred in 2017 (or who were not at work during the collection, *see* Bates 9272). This meant that you effectively made no effort to collect from such persons' email accounts.

- Printing out ESI and then scanning it instead of generating PDFs from ESI, which contravened the clear RFP instructions and has created significant burdens for our review, as we have noted in our meet-and-confer correspondence.

- Custodians were given virtually no instruction regarding how emails should be collected, such as searching the custodian's inbox <u>and</u> sent messages <u>and</u> subject folders. Given the parsimonious and vague instructions that were provided in Ms. Riegler's Sept. 19 email, there is no reason to think custodians consistently conducted thorough searches of their accounts.

- Because of the cumbersome nature of how the search was conducted custodians were given only one word to search for—"Empire"—whereas there are likely to be many communications in which *Empire* is the assumed topic of conversation and thus is not mentioned. In an effort to address this problem we have provided you with a list of such words in our earlier meet-and-confer correspondence.

In light of these deficiencies we are requesting that you conduct a multi mailbox search of your Microsoft Exchange / Outlook email system using the keywords we have provided. For the emails returned from this search, we are requesting that your IT support team export a *.PST file that contains the emails and their attachments so that the email-attachment relationships are

3

retained for all emails found. Also, we are requesting that you export a PST for each person (or custodian) who had these emails in their Microsoft Outlook mailboxes and name each exported *.PST file for the custodian from whom the email files were collected. You are welcome to convert these documents to PDF, as we instruct in our RFP, but our overall goal in requesting *.PST files is to assure that we receive responsive documents organized in the method by which they are stored, so as to make them suitable for our review. Gathering *.PST files is a standard method of gathering responsive emails from Outlook accounts.

Besides this gathering of email, we are also writing to request that you identify custodians likely to have hard-copy documents responsive to Plaintiffs' RFPs 26-31, and gather and produce those as well. From Ms. Riegler's September 19 email it appears that no effort was made to gather and produce responsive hard-copy documents, which are plainly called for by the RFPs in question.

Please tell us how you will respond to these requests by January 4, 2018.

Best regards,

*/s/ Stephen H. Weil*

Steve

# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

T.S. *et al.,*

              Plaintiffs,

    v.

Twentieth Century Fox Television *et al.,*

              Defendants.

Case No. 1:16-cv-08303

Hon. Amy J. St. Eve

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
TO THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs request

that Defendant Chief Judge of the Circuit Court of Cook County produce the following:

**DEFINITIONS**

1.     "Filming Periods" means June 21-26, 2015, July 13-16, 2015, and August 23-26, 2015, inclusive, as well as any other time that persons associated with *Empire* were present at the JTDC.

2.     "Relevant Period" means May 22, 2015 to September 26, 2015. The Relevant Period includes the Filming Periods.

**INSTRUCTIONS**

1.     Pursuant to Rule 34(b)(1)(C), Electronically Stored Information ("ESI") is to be produced in the following forms:

    a.     Except as stated below, ESI may be produced in PDF form. However, ESI should not be scanned to PDF (*i.e.*, printed out on paper and then scanned). Rather, the PDF should be generated directly from the underlying electronic file.

    b.     Plaintiffs anticipate that for most ESI the production of metadata will not be necessary. Thus, unless otherwise identified in a request, ESI converted to PDF need not be accompanied by the underlying metadata of the native ESI. However, if Plaintiffs later determine that the production of metadata may be relevant for certain documents, Plaintiffs will request metadata for such documents, and Defendants shall produce responsive metadata within 14 days of such a follow-up request.

1

    c. Notwithstanding the foregoing instructions, to the extent that information responsive to a document request is stored in a spreadsheet, database, or similar form of ESI, such ESI should not be produced in PDF.  Rather, such ESI should be produced in its original or native form, such that it can be manipulated in the same manner that it would be manipulated in the normal course of business.

2. To the extent that documents responsive to a request contain colors (*i.e.*, colors in addition to black and white), production of such documents should be in color.

## DOCUMENT REQUESTS

1. All floorplans for each floor of the JTDC.  Alternatively, documents sufficient to show the floorplan for each floor of the JTDC.

2. All organization charts of the JTDC's staff, as well as any documents showing the relationships of the positions of the JTDC's staff, during the Relevant Period.

3. All documents reflecting scheduled, planned, or regular events or activities for residents at the JTDC during the Relevant Period.

4. All schedules or other documents relating to activities occurring for each day of the Relevant Period at the JTDC, including times, locations, and participants in each such activity.  Activities include, but are not limited to, the following: schooling; recreation; programming; visitation; commissary; games; in-pod services; medical appointments; dental appointments; court appearances by JTDC residents; and all activities related to the *Empire* filming, including but not limited to preparation, support activities, the filming, and post-filming break-down.

5. Documents sufficient to show which days the Nancy B. Jefferson school was scheduled to be in session for the calendar years 2014, 2015, and 2016.

6. Documents sufficient to show which days the Nancy B. Jefferson school was in session for that the calendar year of 2015.

7. All staffing plans and/or policies for staffing positions for all positions at the JTDC during the Relevant Period (*e.g.*, plans or policies regarding staffing of pods, security checkpoints, movement specialist positions, supervisor positions, counselor positions, medical care positions, etc.), for each shift at the JTDC.

8. Documents sufficient to show the staffing of the JTDC for each day of the Relevant Period, meaning which persons worked which shifts, and in which location or role.

9. The logbooks for each pod for each day of the Relevant Period.

10. Documents sufficient to show the following for each resident of the JTDC for each day of the Relevant Period:

    a. the name of each resident;

    b.  the tracking or inmate number of each resident; and

    c.  the housing location (*e.g.*, intake, pod, medical) of each resident, including any changes to housing location.

11.    The DC 5 Log ("Movement Authorization") for the entire Relevant Period.

12.    All logs related to sick call requests for the entire Relevant Period.

13.    Documents sufficient to show the following for the entire Relevant Period:

    a.  the name and housing location of each resident who submitted a sick call request;

    b.  the date that each sick call request was submitted;

    c.  the complaint or concern raised in each sick call request;

    d.  the date that each sick call slip was picked up in the pod or other residential location;

    e.  the date that each sick call request was responded to; and

    f.  the nature of the response, including any care provided to the resident, any movement of the resident or staff in response to the sick call request, and the location of any care provided to the resident.

14.    Documents sufficient to show the following for the entire Relevant Period:

    a.  each after-school activity or similar program offered at the JTDC;

    b.  the days on which each such activity or program was offered;

    c.  the location where each such program or activity was offered;

    d.  the residents who were scheduled to attend or participate in each such activity; and

    e.  the residents who attended or participated in each such program or activity.

15.    All logs and logbooks for visitation and visitors for the entire Relevant Period.

16.    Documents sufficient to show the following for the entire Relevant Period:

    a.  each person who visited a resident;

    b.  the date of each such visit;

    c.  the time of each such visit, including time elapsed during each such visit; and

    d.  the location of each such visit.

17.   Documents sufficient to show the following for the entire Relevant Period:

    a.   all scheduled court hearings for residents;

    b.   the case number associated with each such court hearing;

    c.   each resident transported to court;

    d.   the date of each such transport.

18.   All sign-in/out records to the JTDC for each day of the Relevant Period.  This includes but is not limited to: *Empire* filming; school staff sign-in/out; visitor sign-in/out; medical sign-in/out; and staff sign-in/out.

19.   All logs kept by the Resident Advocate, and/or all logs regarding resident grievances and responses thereto, during the Relevant Period.

20.   All security plans for each day of the Relevant Period.

21.   All pod shift reports for each day of the Relevant Period.

22.   All center shift reports for each day of the Relevant Period.

23.   All supervisor-in-charge shift reports for each day of the Relevant Period.

24.   All incident reports during the Relevant Period.

25.   All policies, procedures and/or operations manuals relating to operation of the JTDC in effect during the Relevant Period.  (An example of one such policy is Policy No. V3C09P09, Bates ## CCASO T.S. v. CENTURY 12-17.)

26.   All documents (including communications) relating in any way to the filming of *Empire* at the JTDC.

27.   All documents (including communications) relating to the scouting, consideration, and selection of the JTDC as a location for the filming of *Empire*.

28.   All documents (including communications) relating to any agreements relating to the filming of *Empire* at the JTDC, including all documents relating to the negotiation of the agreements and all versions and drafts of the agreements.

29.   All documents (including communications) relating to consideration or discussion of the effect that filming *Empire* at the JTDC would have on the JTDC's normal operations, on the children housed there, and/or on the provision of services to the children housed there.

30.   All documents (including communications) relating to the planning, preparation, and conduct of the filming of *Empire* at the JTDC, including but not limited to:

4

a. the areas of the JTDC made available for *Empire*'s crew for filming and for support services (*e.g.*, areas for crew, equipment, changing, catering, delivery, lighting, production, etc.);

b. any alterations to the JTDC physical space made for filming and support services, including all painting;

c. the personnel (including JTDC or other governmental personnel) employed in filming or support, including the numbers of such persons, the functions and schedules of such persons, the dates such persons were in the JTDC, and their locations within the JTDC;

d. all equipment to be brought into the JTDC, including locations of same and schedules for entry and exit of same;

e. all acts to be done and/or or normal functions to be changed by JTDC personnel in relation to the filming at the JTDC; and

f. all alterations or changes to the JTDC's normal operations in relation to the filming, including but not limited to staff locations, staff duties, resident movement, school, medical, visitation, programming, recreation, court hearings, resident transfers, consolidation of pods, and provision of commissary.

a. All communications with any outside person or organization relating in any way to the filming of *Empire* and/or any changes in the JTDC's operations relating to the filming of *Empire*. This includes but is not limited to the following: vendors; providers of programming; defense attorneys; the State Attorney's Office; volunteers; *Empire*'s crew and support services; the Office of the Chief Judge of the Circuit Court of Cook County; Cook County, Cook County Juvenile Court; Chicago Public Schools; the City of Chicago; and the Cook County Sheriff's Department.

31. All communications to or from any person listed in your Rule 26(a) disclosures relating in any way to the filming of *Empire* and/or any changes in the JTDC's operations relating to the filming of *Empire*.

32. All documents from which the text describing of *Empire* filming located at Bates # CCASO T.S. v 20TH CENTURY 22 was generated, as well as all drafts of such text and metadata for same, and all communications relating to such text.

33. Any communications to or from unions or union representatives, ~~including communications to the Cook County Board,~~ relating in any way to the filming of *Empire* at the JTDC.

34. All communications with or relating to Prof. Thomas Geraghty relating to the filming of *Empire* at the JTDC, including all drafts of correspondence, the correspondence itself, and all communications relating to the correspondence, as well as any metadata relating to each such communication.

5

35.    All photographs of any members of the crew or cast of *Empire* at the JTDC during the Relevant Period, including any metadata.

36.    All documents created as posted signs (*e.g.*, a document created to be taped on a wall as a posted sign) relating in any way to the *Empire* filming, as well as any electronic files used to generate such documents, including any metadata.

37.    All gifts or memorabilia received by JTDC staff from persons employed or affiliated with *Empire*.  To the extent that items responsive to this request are not documents or ESI, this is a request for tangible things pursuant to Rule 34(a)(1)(B).

38.    <u>All sick call slips submitted by JTDC residents during the Relevant Period.</u>


February 22, 2018                              <u>/s/ Stephen H. Weil</u>

                                               Stephen H. Weil – steve@weilchardon.com
                                               Alexis G. Chardon – ali@weilchardon.com
                                               Weil & Chardon LLC
                                               333 S. Wabash Ave., Suite 2700
                                               (312) 585-7404

                                               *Attorneys for Named Plaintiffs T.S. and Q.B.*

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on February 22, 2018, I sent a true and correct copy of the foregoing to the following persons, via email:

T. Andrew Horvat, THorvat@atg.state.il.us

Allyson West, allyson.west@cookcountyil.gov

Anthony Zecchin, anthony.zecchin@cookcountyil.gov

Jeffrey Jacobsen, jjacobson@kelleydrye.com

Matthew C. Luzadder, mluzadder@kelleydrye.com

Catherine James, cjames@kelleydrye.com

 

 

/s/ Stephen H. Weil

# Exhibit 5



Stephen Weil <steve@weilchardon.com>

---

## T.S. v. 20th Century; OCJ Answers to Discovery
1 message

---

**Horvat, Timothy** <THorvat@atg.state.il.us>          Wed, Apr 25, 2018 at 2:00 PM
To: Stephen Weil <steve@weilchardon.com>, Alexis Chardon <ali@weilchardon.com>
Cc: "Luzadder, Matt" <MLuzadder@kelleydrye.com>, "Jacobson, Jeffrey" <JJacobson@kelleydrye.com>, "LYLE HENRETTY (States Attorney)" <LYLE.HENRETTY@cookcountyil.gov>, "Allyson West (States Attorney)" <Allyson.West@cookcountyil.gov>, "James, Catherine" <CJames@kelleydrye.com>

Steve,


Please see the attached answers to your first and second production requests. The references in the answers to OAG1-1548 are the emails I previously produced to you. I have re-uploaded them to a disc and Bates-stamped them for ease of use. The disc will be sent out shortly.


As for the interrogatory answers, they are completed and I am awaiting signature. I suspect that should be on my desk shortly.


Finally, you previously inquired about a disc that the county put together but did not tender. Based on my review of the emails we disclosed (OAG1-1548), those previously disclosed by the county, the custodians and search terms used, and the results gathered, I am not going to disclose any further ESI unless you are able to point to something in the disclosures that you believe is missing. I take this position because I cannot find a single request of yours that is not answered by the documents previously tendered by the county or is not contained in OAG1-1548. To be certain, the ESI disclosed to date contains, among other things: the names of all Fox workers and equipment entering the JTDC, the shifts and responsibilities of the JTDC staff during filming, negotiations over dates, time and areas of filming (including the infirmary) and various documents pertaining to how the facility accommodated the filming both structurally and personnel-wise.


I understand that you will likely take a different stance. As such, I reiterate that if you provide a good faith basis for believing the ESI disclosures are inadequate I will revisit my position. However, without such a showing no further ESI will be disclosed from the OCJ absent a court order.


Should you have any questions or concerns, please contact me on my direct line below. Thank you. – A



*T. Andrew Horvat*

Assistant Attorney General

General Law Bureau

Civil Rights Division

100 W. Randolph St., 13th Fl.

Chicago, IL 60601

312-814-5484

E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended recipient(s) only. This e-mail and any attachments might contain information that is confidential, legally privileged or otherwise protected or exempt from disclosure under applicable law. If you are not a named recipient, or if you are named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-mail and promptly delete this e-mail and any attachments and copies thereof from your system. If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited. Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General. Thank you for your cooperation.

**2 attachments**

 **OCJ Answers to 1st RFP.pdf**
227K

 **OCJ Answers to 2nd RFP.pdf**
142K

# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| T.S. a minor by and through his guardian, SS, et al. | )<br>)<br>) No. 16-cv-8303<br>)<br>) The Honorable Amy J. St. Eve<br>) Judge Presiding<br>)<br>)<br>)<br>)<br>) |
|           Plaintiffs, | |
|     v. | |
| Twentieth Century Fox Television, et al. | |
|           Defendants. | |

## THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY'S RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, The Chief Judge of the Circuit Court of Cook County, by his attorney, Illinois

Attorney General Lisa Madigan, responds to Plaintiff's First Request for Production as follows:

### DOCUMENT REQUESTS[1]

1.     All floorplans for each floor of the JTDC. Alternatively, documents sufficient to show the floorplan for each floor of the JTDC.

       Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO3584-3589.

2.     All organization charts of the JTDC's staff, as well as any documents showing the relationships of the positions of the JTDC's staff, during the Relevant Period.

       Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO3590-3596.

---

[1] The following answers provided by the Chief Judge are based, in part, on disclosures previously made by co-defendants. *See, e.g.,* CCSAO1-10838. It is the position of the Chief Judge that some of these documents may be privileged from disclosure. Nevertheless, because the documents have already been disclosed, references to those previously disclosed documents have been made when responsive, privileged or otherwise. The Chief Judge reserves the right to withhold privileged documents in the future should additional requests of the Chief Judge be made.

1

3.  All documents reflecting scheduled, planned, or regular events or activities for residents at the JTDC during the Relevant Period.

    Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO1-10838 and OAG1-1548.

4.  All schedules or other documents relating to activities occurring for each day of the Relevant Period at the JTDC, including times, locations, and participants in each such activity. Activities include, but are not limited to, the following: schooling; recreation; programming; visitation; commissary; games; in-pod services; medical appointments; dental appointments; court appearances by JTDC residents; and all activities related to the *Empire* filming, including but not limited to preparation, support activities, the filming, and post-filming break-down.

    Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO1-10838, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

5.  Documents sufficient to show which days the Nancy B. Jefferson School was scheduled to be in session for the calendar years 2014, 2015, and 2016.

    Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, Defendant possesses no documents responsive to this request. Answering further, see CCSAO1364-1385 for the 2015 5th Quarter schedule and CCSAO3621-3622 for 2015-2016 CPS schedule.

6.  Documents sufficient to show which days the Nancy B. Jefferson School was in session for that the calendar year of 2015.

    Answer: Defendant possesses no documents responsive to this request. Answering further, see CCSAO1364-1385 for the 2015 5th Quarter schedule and CCSAO3621-3622 for 2015-2016 CPS schedule.

7.  All staffing plans and/or policies for staffing positions for all positions at the JTDC during the Relevant Period *(e.g.,* plans or policies regarding staffing of pods, security checkpoints, movement specialist positions, supervisor positions, counselor positions, medical care positions, etc.), for each shift at the JTDC.

    Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO1-10838, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

2

8.     Documents sufficient to show the staffing of the JTDC for each day of the Relevant Period, meaning which persons worked which shifts, and in which location or role.

       <u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO1-10838, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

9.     The logbooks for each pod for each day of the Relevant Period.

       <u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO356-1071, 1588-2498, 2773-3290, 3343-3345, 3387-3395, 3453-3454.

10.    Documents sufficient to show the following for each resident of the JTDC for each day of the Relevant Period:

       a.   the name of each resident;

       b.   the tracking or inmate number of each resident; and

       c.   the housing location (e.g. intake, pod, medical) of each resident, including any changes to housing location.

       <u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO3894-4142.

11.    The DC 5 Log ("Movement Authorization") for the entire Relevant Period.

       <u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO4, 8-10, 220-246, 1344-1363, 2643-2654 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

12.    All logs related to sick call requests for the entire Relevant Period.

       <u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO4, 8-10, 220-246, 314-355, 1344-1363, 1543-1587, 2643-2654, 2736-2772, 3561-3583, 10716-10774.

13.    Documents sufficient to show the following for the entire Relevant Period:

       a.   the name and housing location of each resident who submitted a sick call request;

       b.   the date that each sick call request was submitted;

c. the complaint or concern raised in each sick call request;

d. the date that each sick call slip was picked up in the pod or other residential location;

e. the date that each sick call request was responded to; and

f. the nature of the response, including any care provided to the resident, any movement of the resident or staff in response to the sick call request, and the location of any care provided to the resident.

<u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections,

a. CCSAO3561-3583, 10716-10774.

b. See above.

c. See above.

d. See above.

e. See above.

f. Defendant possesses no documents responsive to this request.

14. Documents sufficient to show the following for the entire Relevant Period:

a. each after-school activity or similar program offered at the JTDC;

b. the days on which each such activity or program was offered;

c. the location where each such program or activity was offered;

d. the residents who were scheduled to attend or participate in each such activity; and

e. the residents who attended or participated in each such program or activity.

<u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections,

a. CCSAO24-209, 1116-1343, 2499-2642, 3292-3342, 3346-3386, 3396-3452, 3455-3472, 3474-3543.

b. See above.

c. See above.

d. See above.

e. See above.

15.    All logs and logbooks for visitation and visitors for the entire Relevant Period.

    <u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO258-313, 1072-1115, 1386-1542, 2655-2735.

16.    Documents sufficient to show the following for the entire Relevant Period:

    a.  each person who visited a resident;

    b.  the date of each such visit;

    c.  the time of each such visit, including time elapsed during each such visit; and

    d.  the location of each such visit.

    <u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see answer to interrogatory no. 15.

17.    Documents sufficient to show the following for the entire Relevant Period:

    a.  all scheduled court hearings for residents;

    b.  the case number associated with each such court hearing;

    c.  each resident transported to court;

    d.  the date of each such transport.

    <u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO4156-4374.

18.    All sign-in/out records to the JTDC for each day of the Relevant Period. This includes but is not limited to: *Empire* filming; school staff sign-in/out; visitor sign-in/out; medical sign-in/out; and staff sign-in/out.

    <u>Answer</u>: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO1-10838, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

19.　　All logs kept by the Resident Advocate, and/or all logs regarding resident grievances and responses thereto, during the Relevant Period.

　　　Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO4375-4789.

20.　　All security plans for each day of the Relevant Period.

　　　Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO1-10838, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

21.　　All pod shift reports for each day of the Relevant Period.

　　　Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO24-219, 1116-1343, 2499-2642, 3292-3323, 3474-3479, 3509-3514.

22.　　All center shift reports for each day of the Relevant Period.

　　　Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see answer to interrogatory no. 21.

23.　　All supervisor-in-charge shift reports for each day of the Relevant Period.

　　　Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see answer to interrogatory no. 21.

24.　　All incident reports during the Relevant Period.

　　　Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO3544-3560, 4888-7528.

25.　　All policies, procedures and/or operations manuals relating to operation of the JTDC in effect during the Relevant Period. (An example of one such policy is Policy No. V3C09P09, Bates ## CCASO T.S. v. CENTURY 12-17.).

　　　Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

26. All documents (including communications) relating in any way to the filming of *Empire* at the JTDC.

  Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see untitled compact disc previously tendered by Cook County and Leonard Dixon, CCSAO1-10838, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

27. All documents (including communications) relating to the scouting, consideration, and selection of the JTDC as a location for the filming of *Empire*.

  Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO7529-10838 and OAG1-1548.

28. All documents (including communications) relating to any agreements relating to the filming of *Empire* at the JTDC, including all documents relating to the negotiation of the agreements and all versions and drafts of the agreements.

  Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO7529-10838 and OAG1-1548.

29. All documents (including communications) relating to consideration or discussion of the effect that filming *Empire* at the JTDC would have on the JTDC's normal operations, on the children housed there, and/or on the provision of services to the children housed there.

  Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO7529-10715, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

30. All documents (including communications) relating to the planning, preparation, and conduct of the filming of *Empire* at the JTDC, including but not limited to: the areas of the JTDC made available for *Empire's* crew for filming and for support services *(e.g.,* areas for crew, equipment, changing, catering, delivery, lighting, production, etc.);

  a. any alterations to the JTDC physical space made for filming and support services, including all painting;

  b. the personnel (including JTDC or other governmental personnel) employed in filming or support, including the numbers of such persons, the functions and schedules of such persons, the dates such persons were in the JTDC, and their locations within the JTDC;

7

c. all equipment to be brought into the JTDC, including locations of same and schedules for entry and exit of same;

d. all acts to be done and/or or normal functions to be changed by JTDC personnel in relation to the filming at the JTDC; and

e. all alterations or changes to the JTDC's normal operations in relation to the filming, including but not limited to staff locations, staff duties, resident movement, school, medical, visitation, programming, recreation, court hearings, resident transfers, consolidation of pods, and provision of commissary.

f. All communications with any outside person or organization relating in any way to the filming of *Empire* and/or any changes in the JTDC's operations relating to the filming of *Empire.* This includes but is not limited to the following: vendors; providers of programming; defense attorneys; the State Attorney's Office; volunteers; *Empire's* crew and support services; the Office of the Chief Judge of the Circuit Court of Cook County; Cook County, Cook County Juvenile Court; Chicago Public Schools; the City of Chicago; and the Cook County Sheriff's Department.

Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO1-10838, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

31. All communications to or from any person listed in your Rule 26(a) disclosures relating in any way to the filming of *Empire* and/or any changes in the JTDC's operations relating to the filming of *Empire.*

Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO7529-10838, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

32. All documents from which the text describing of *Empire* filming located at Bates # CCASO T.S. v 20TH CENTURY 22 was generated, as well as all drafts of such text and metadata for same, and all communications relating to such text.

Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

33. Any communications to or from unions or union representatives, including communications to the Cook County Board, relating in any way to the filming of *Empire* at the JTDC.

Answer: Defendant objects to this request as overly broad, irrelevant to any party's

claim or defense and disproportional to the needs of the case. Without waiving said objections, Defendant possesses no documents responsive to this request.

34. All communications with or relating to Prof. Thomas Geraghty relating to the filming of *Empire* at the JTDC, including all drafts of correspondence, the correspondence itself, and all communications relating to the correspondence, as well as any metadata relating to each such communication.

Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon. .

35. All photographs of any members of the crew or cast of *Empire* at the JTDC during the Relevant Period, including any metadata.

Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see CCSAO247-257, OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.

36. All documents created as posted signs *(e.g.,* a document created to be taped on a wall as a posted sign) relating in any way to the *Empire* filming, as well as any electronic files used to generate such documents, including any metadata.

Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, see OAG1-1548 and compact disc entitled "Electronic Production" previously tendered by Cook County and Leonard Dixon.
.

37. All gifts or memorabilia received by JTDC staff from persons employed or affiliated with *Empire.* To the extent that items responsive to this request are not documents or ESI, this is a request for tangible things pursuant to Rule 34(a)(1)(B).

Answer: Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case. Without waiving said objections, Leonard Dixon was given a director's chair. See CCSAO10387. Defendant will make available for copying and inspection any gifts or memorabilia received within Defendant's possession or control.

38. All sick call slips submitted by JTDC residents during the Relevant Period.

Answer: Defendant possesses no documents responsive to this request.

/s/ *T. Andrew Horvat*
T. Andrew Horvat
Assistant Attorney General
100 W. Randolph St., 13th Fl.
Chicago, IL 60601
(312) 814-5484
THorvat@atg.state.il.us

## CERTIFICATE OF SERVICE

I, T. Andrew Horvat, hereby certify that on April 25, 2018, I have caused true and correct copies of **The Chief Judge of the Circuit Court of Cook County's Responses to Plaintiffs' First Set of Document Requests** to be sent via email to all counsel of record.

/s/ *T. Andrew Horvat*
T. Andrew Horvat
Assistant Attorney General
100 W. Randolph St., 13th Fl.
Chicago, IL 60601
(312) 814-5484
THorvat@atg.state.il.us

# Exhibit 7



Stephen Weil <steve@weilchardon.com>

## RE: T.S. v. 20th Century; OCJ Answers to Discovery
1 message

**Horvat, Timothy** <THorvat@atg.state.il.us>        Mon, Apr 30, 2018 at 9:13 AM
To: Stephen Weil <steve@weilchardon.com>, Adam Pessin <apessin@finekaplan.com>
Cc: Alexis Chardon <ali@weilchardon.com>, "Luzadder, Matt" <MLuzadder@kelleydrye.com>, "Jacobson, Jeffrey"
<JJacobson@kelleydrye.com>, "LYLE HENRETTY (States Attorney)" <LYLE.HENRETTY@cookcountyil.gov>, "Allyson West
(States Attorney)" <Allyson.West@cookcountyil.gov>, "James, Catherine" <CJames@kelleydrye.com>

Good morning Steve,


As to your first question the answer is yes – I am referring to the previously tendered emails by the County and the
additional production provided by the OCJ.


As to your second question, I have not reviewed what is on the county's disc. In fact, I cannot with the State's
software.


As to your final question, I have previously indicated that 4.5 KB of data is too burdensome.


As to your characterization of my position, you have misstated it despite my best efforts.  As I indicated in my email, if
you wish to discuss *call me*.


*T. Andrew Horvat*

Assistant Attorney General

General Law Bureau

Civil Rights Division

100 W. Randolph St., 13th Fl.

Chicago, IL 60601

312-814-5484


E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended
recipient(s) only.  This e-mail and any attachments might contain information that is confidential, legally privileged or
otherwise protected or exempt from disclosure under applicable law.  If you are not a named recipient, or if you are
named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-

mail and promptly delete this e-mail and any attachments and copies thereof from your system.  If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited.  Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General.  Thank you for your cooperation.

**From:** Stephen Weil [mailto:steve@weilchardon.com]
**Sent:** Friday, April 27, 2018 1:14 PM
**To:** Horvat, Timothy; Adam Pessin
**Cc:** Alexis Chardon; Luzadder, Matt; Jacobson, Jeffrey; LYLE HENRETTY (States Attorney); Allyson West (States Attorney); James, Catherine
**Subject:** Re: T.S. v. 20th Century; OCJ Answers to Discovery

Andrew,

We're reviewing the written responses we've received so far.

Regarding production from the disc you discuss in your Wednesday email, I'd like to make sure we're on the same page.

You say,

> Based on my review of the emails . . . previously disclosed by the county, the custodians and search terms used, and the results gathered . . . .

I'm assuming the "review" you're referring to is a review of the County's existing production (and items produced by OAG), not a review of anything on the disc that the County provided to you.  Is that correct?

I understand that you are refusing to produce from the disc "because I cannot find a single request of yours that is not answered by the documents previously tendered by the county or is not contained in OAG1-1548."  And then by way of specificity, you go on to list categories of documents in the existing production that you identified.

Two of questions here.  First, you are <u>not</u> saying that you compared what is on the disc with the existing production— correct?

Second, I understand your position to be that you are refusing to produce from the disc because in the existing production you have identified some documents (or "various documents") that are responsive to each of our requests.  Is that correct?

So that things are clear from our end, we requested the additional production, which presumably is contained in the disc, because the process that the County used to collect documents responsive to our "communications" discovery was haphazard and unreliable.  We sent a letter to the County on December 27 outlining this problem, and I provided that letter to you on February 26.  As things stand we don't believe it's appropriate for you to ask us to figure out what responsive documents weren't gathered as a result of that collection process, which appears to be what you are saying in your Wednesday email.  If this clarification affects your position please let me know.

Finally, are you contending that production from the disc would be unduly burdensome?  You don't say so in your email but I would like to be clear.  If you are making that claim, please specify the nature of the burden that producing from the disc would entail.

Best regards,

Steve

Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f)  773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com


On Wed, Apr 25, 2018 at 2:00 PM, Horvat, Timothy <THorvat@atg.state.il.us> wrote:

Steve,


Please see the attached answers to your first and second production requests. The references in the answers to OAG1-1548 are the emails I previously produced to you. I have re-uploaded them to a disc and Bates-stamped them for ease of use. The disc will be sent out shortly.


As for the interrogatory answers, they are completed and I am awaiting signature. I suspect that should be on my desk shortly.


Finally, you previously inquired about a disc that the county put together but did not tender. Based on my review of the emails we disclosed (OAG1-1548), those previously disclosed by the county, the custodians and search terms used, and the results gathered, I am not going to disclose any further ESI unless you are able to point to something in the disclosures that you believe is missing.  I take this position because I cannot find a single request of yours that is not answered by the documents previously tendered by the county or is not contained in OAG1-1548.  To be certain, the ESI disclosed to date contains, among other things: the names of all Fox workers and equipment entering the JTDC, the shifts and responsibilities of the JTDC staff during filming, negotiations over dates, time and areas of filming (including the infirmary) and various documents pertaining to how the facility accommodated the filming both structurally and personnel-wise.


I understand that you will likely take a different stance. As such, I reiterate that if you provide a good faith basis for believing the ESI disclosures are inadequate I will revisit my position. However, without such a showing no further ESI will be disclosed from the OCJ absent a court order.


Should you have any questions or concerns, please contact me on my direct line below. Thank you.  – A


*T. Andrew Horvat*

Assistant Attorney General

General Law Bureau

Civil Rights Division

100 W. Randolph St., 13th Fl.

Chicago, IL 60601

312-814-5484

E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended recipient(s) only.  This e-mail and any attachments might contain information that is confidential, legally privileged or otherwise protected or exempt from disclosure under applicable law.  If you are not a named recipient, or if you are named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-mail and promptly delete this e-mail and any attachments and copies thereof from your system.  If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited.  Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General.  Thank you for your cooperation.

# Exhibit 8

333 S. Wabash Avenue, Suite 2700
Chicago, IL 60604

# Weil & Chardon

### CIVIL LITIGATION ATTORNEYS

www.weilchardon.com
Phone: (312) 585 - 7404
Fax: (773) 409 - 2745

June 7, 2018

**Via Email**

T. Andrew Horvat
Assistant Attorney General
100 W. Randolph St., 13th Fl.
Chicago, IL 60601
THorvat@atg.state.il.us

      Re: Discovery Enforcement to Office of the Chief Judge regarding RFP Nos. 26-31

Dear Andrew,

      I am following up on our call last week, regarding the Office of the Chief Judge's ("OCJ") responses to Plaintiff RFPs 26-31 to OCJ. These RFPs ask for communications about the impact of the filming of *Empire* at JTDC and its operations. You offered to conduct an additional, limited custodian search, and I am declining that offer. Because our phone conversations seem to have created a lot of confusion about the discovery at issue, I am writing you this letter to make sure our position is clear.

      **The existing response to RFPs 26-31 is incomplete.**

      RFPs 26-31 ask for communications about the impact that the filming of *Empire* had on the JTDC's operations and on the kids housed there. The requests seek a comprehensive understanding of the filming's impact on the JTDC. They are broad, but given the nature of our allegations, they are appropriate.

      We originally served RFPs 26-31 on Cook County, last August. The County produced some documents in response (approximately 3,000 pages, contained mainly in CCSAO bates 7529-10383), but the County's document gathering process was haphazard and demonstrably unreliable. After Plaintiffs discovered this, I wrote a letter to the County on December 29, 2017 describing those collection problems. (I sent you that letter in February.)

      When the responding "entity" for JTDC discovery shifted from the County to OCJ, we served RFPs 26-31 on you. You have never contended that the County's process for gathering those documents was adequate, and indeed given the problems I detailed in the December 29 letter, I don't know how you could take such a position.

      The only other document production of communications about the impact of filming was made by OCJ, in January (OCJ 1-1548). But that collection was not in response to RFPs 26-31. Rather, it was responsive to earlier RFPs that treated OCJ as an administrative office, before the

1

parties treated OCJ as the "entity" responding to discovery about the JTDC. As such, it covers only OCJ administrative employees and a small handful of JTDC managers.

Those two collections are the entire existing response to RFPs 26-31: (1) a haphazard and inadequate collection by the County, and (2) the January OCJ collection, which was never designed to respond to RFPs 26-31, and did not do so.

**OCJ's offer to supplement the response to RFPs 26-31 is inadequate.**

After OCJ received the JTDC discovery in February, you asked for time for review, and we agreed. On April 25 you wrote to say you believed that the existing production adequately responded to our discovery, including RFPs 26-31. We've been in discovery enforcement since, and I've tried to explain the inadequacy of the existing production, but our conversations have led to a lot of confusion (which is why I described the state of production, above).

Last week you additionally offered to search through the emails of 12-13 additional custodians—three deputy directors at the JTDC, and the "team leader" of each of the JTDC's 9-10 residential "centers." This additional search is designed to gather documents about "programming" only. There are two problems with it. First it captures only managerial custodians and not line employees, and as I've explained, the County's production, inadequate though it was, revealed that many lower-level employees had highly probative communications about the effects of the filming. Second, it covers only programming, while the subjects sought in RFPs 26-31 are much broader.

The only additional offer you have made is for *Plaintiffs* to identify additional responsive custodians. But we are outsiders to the JTDC; it is the responding party, who has inside access to its organizational client, who must identify the location of responsive documents.

At this point we don't believe that is feasible on a custodian-by-custodian search. This process has dragged on for nearly a year, and it has become apparent to us that neither the County nor OCJ seems able or willing to devote the resources it would take to locate the custodians of the documents responsive to the breadth of RFPs 26-31. Plaintiffs therefore have good reason to fear that we will simply run out of time for document discovery, despite the Court's long extension to August 31.

**The production Plaintiffs seek would not be unduly burdensome.**

As an alternative to identifying custodians, Plaintiffs have proposed that a "keyword" be made across the JTDC's email accounts. You claim this would be unduly burdensome, but as I'll explain below, that claim is speculative and ultimately wrong.

In my December 29 letter identifying the problems with the County's document collection, I offered a remedy: the County could conduct a "keyword" search across the JTDC's email server. The County conducted a search in response to this offer, burned the results to a

disc, and gave the disc to you when the "entity" responsibility shifted from the County to OCJ. My understanding is that you have not been able to open the disc, but you believe it contains 4.5 GB of information.

We have asked OCJ to replicate the County "keyword" search on the JTDC's email server, but you have refused. In our correspondence and conversations you have based this refusal on the size of the data on the County disc, arguing that 4.5 GB indicates a volume of documents that would be unduly burdensome to review, so the keyword search is a nonstarter.

That position is unsupported, and it reflects more than anything a refusal to take minimally efficient steps to gather and review documents:

- *You have never actually determined the number of documents the keyword search would gather*. You have asserted that the size of the County's disc means that the "keyword" search is too burdensome. There are several problems with this: (1) We understand that the County's search had no date limitation, which potentially could have increased the hit count (though I don't believe by much, as explained below). (2) The disc size captures *file size*, not number of documents, which is what matters for a document review. If the County's search captured a handful of large files, for example, that could account for a large portion of the file size. (3) The County may have conducted the search improperly or inefficiently, resulting in an artificially large file size. For example, the County may have run a separate search for each keyword and failed to de-duplicate the results, which would have multiplied the number of responsive documents artificially.

- *You have refused our offers to adjust the "keyword" search parameters*. I have offered repeatedly, in correspondence and in conferences with you, to adjust the keyword search parameters to reduce any undue burdens the search might impose. You have never responded to this offer, yet still assert that the existing "keyword" search is unduly burdensome.

- *"Broadcast" duplicates can be culled at the server stage*. One of the main concerns you have articulated is that numerous "broadcast" emails about the *Empire* filming were sent out to all 700-odd JTDC employees. You have said this likely accounts for much of the disc's size, and would require you to review the same document over and over. But such emails can easily be culled when they are gathered at the server level: after the keyword search and at the .PST creation stage, Microsoft Exchange features a "remove duplicates" option that will remove such broadcast duplicates from the .PST file. Additionally, Microsoft Exchange allows sorting of emails by date, subject line, and sender, making "broadcast" emails easy to identify and cull before they are ever reviewed. Either way, there is no reason that OCJ will have to review duplicate broadcast emails one by one, as you claim. Notably the tools I have described already exist within Microsoft Exchange; OCJ would not need to pay for any additional software to use them.

3

- *There is no meaningful privilege review burden.* You have mentioned the burden of a privilege review, but any such review should be minimal: all lawyers are already known, and their involvement as attorneys with the filming arrangements would be minimal. Indeed there has already been production from Zenaida Alonzo's account, and no privilege log was provided.

- *The search terms are not overinclusive.* Keyword searches create a review burden if they are overinclusive, because they require the reviewer to separate relevant and irrelevant documents that a keyword search produces. That is not a problem here. The JTDC is normally concerned with juvenile detention, not filming. But the search terms relate only to the *Empire* filming—either with the names of specific people involved in the filming or with terms that relate specifically to filming, and not to detention. It is hard to imagine that any of the terms relating to *Empire* in particular—like "Empire" or the names of Fox employees involved with the show—could result in non-responsive documents. And to the extent some of the more generic search terms—like "filming," "movie," and "Hollywood"—would have some over-responsive hits, those terms, which are likely to have fewer hits in the first place, can be run and reviewed separately. Thus there is no reason to believe that the keyword searches would return a large number of overinclusive responses that would create a meaningful review burden.

I have discussed most of these points with you on the phone or via email. All of these items are conventional and basic approaches for responding to email discovery. Form our conversations and correspondence, however, I believe you have refused to entertain any of them.

The bottom line is, the *Empire* filming at JTDC significantly altered the operations of a large organization, and did so in many ways. As you would expect, numerous employees at the JTDC were communicating about these alterations and the impact on their duties. All such communications are relevant to the claims in this case, and they are properly responsive to RFPs 26-31. OCJ cannot assert that these requests are unduly burdensome because it simply fails to take basic steps to conduct a document review efficiently.

Plaintiffs therefore insist that the OCJ conduct the keyword search and produce responsive documents. Once again, we are willing to work with you to reduce the burden of any such search, but we are not willing to forego it. Please let me know by next Tuesday whether OCJ will be standing on its refusal to conduct the search, or whether you will agree to do so. If you don't agree, it is time for the Court to resolve this matter.

Sincerely,

Stephen H. Weil

4

# Exhibit 9



Stephen Weil <steve@weilchardon.com>

---

## RE: Plaintiffs' Responses to OCJ's Interrogatories
1 message

---

Horvat, Timothy <THorvat@atg.state.il.us>                    Thu, Jun 7, 2018 at 3:36 PM
To: Stephen Weil <steve@weilchardon.com>

Steve,

There are too many errors to address so I will paint with a broad brush.

1)    The OCJ is not the responding "entity" for all discovery.  I agreed in court that I have access to the JTDC documents and would get them.  I have done so and continue to do so.  The only reason we are in this position is because you have accepted representation that an entity that already disclosed 10K + documents was not in possession or control of the very same documents they tendered. Aside from my amusement at this, this fact is relevant for another reason . . .

2)    There is no "JTDC server."  There is only a <u>county</u> server.  If I want emails from the county server I have to ask the county who then asks the county bureau of technology.  I've also represented this in court. This is one of the reasons I produced all the emails from those people within the OCJ.  Those are ones I know I'm entitled to and so are you. That is why you have them.  In fact, if you recall, I used additional terms not requested by Plaintiffs in an effort to make sure you had everything.  In short, I never played a game of hide the ball.

3)    Despite the above, I have agreed to request that the county do an additional search. You claim that this search relates only to "programs."  Although I understood this to be your initial request, you have since indicated otherwise.  As such, I have now agreed to search the emails of approx. TWENTY additional custodians.  These custodians are not only "managerial" custodians.  These are the people that run the show from top to bottom. They are responsible for all movement in and out of the facility regardless of the purpose. In additional to the decision makers, these custodians also include those "line" custodians who carry out the orders.  In short,  if something relevant happened in the JTDC and it was discussed on email, it would be located in their email. This is highly reasonable.

4)    I never put any onus on you.  To the contrary, I asked you what you wanted. Security, medical, programming, etc.  This does not require you to be an insider.  It simply requires you to understand your claims (medical, programming, etc.) so that I can customize the search to those claims. To that end, I also never refused any request of yours other than to search 700 custodians. You said you want everything so I have attempted to compromise by separating the wheat from the chaff. See paragraph number 3.

5)    Your reliance on the fact that there is no meaningful privilege objection is absurd.  There was none from me because the all of the emails I disclosed to you are beneficial to me, including those that could be considered privileged such as Brandt's directive to the JTDC to not interfere with programming.  However, because this is relevant to your "Monell" claim I tendered it with permission from my client.  This doesn't mean that privilege will not be an

Case: 1:16-cv-08303 Document #: 163-1 Filed: 06/27/18 Page 54 of 58 PageID #:1565

issue going forward as the request encompasses (approx.) 700 custodians. Please keep in mind there are several other defendants in this case who will need to weigh in on whatever further emails are extracted.


6)    There is a disc out there that contains what you want.  I cannot open it on Exchange because the County's system and my system appear incompatible. You know this because we have discussed in ad nauseam.  I was once in private practice (did Plaintiff's work too by the way) so I am aware of how technology has advanced legal discovery. However, that has little bearing on my ability here and even less bearing on the burden of searching through 4.5 GB. Which brings me to my final point ..


7)    My objection isn't just to burden.  It is to proportionality.  As you are aware, the scope of Rule 26 recently changed.  Your claims primarily revolve around medical, programming, schooling and visitation.  My latest proposal encompasses all of this.  As such, I stand on my proposal. If you want something else then then you are going to have to inquire of another party.  I am quite confident that I can defend my position once you bring your motion.


I think at this point we may have exhausted this discussion if you continue your request for all custodians.  If that is the case, please propose a date for your motion so that I can make sure I am available.  My schedule is not pretty over the next few weeks so a heads-up would be appreciated.


Thank you,



*T. Andrew Horvat*

Assistant Attorney General

General Law Bureau

Civil Rights Division

100 W. Randolph St., 13th Fl.

Chicago, IL 60601

312-814-5484



E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended recipient(s) only.  This e-mail and any attachments might contain information that is confidential, legally privileged or otherwise protected or exempt from disclosure under applicable law.  If you are not a named recipient, or if you are named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-mail and promptly delete this e-mail and any attachments and copies thereof from your system.  If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited.  Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General.  Thank you for your cooperation.

# Exhibit 10



Stephen Weil <steve@weilchardon.com>

## Re: Plaintiffs' Responses to OCJ's Interrogatories
1 message

**Stephen Weil** <steve@weilchardon.com>                    Mon, Jun 11, 2018 at 12:08 PM
To: "Horvat, Timothy" <THorvat@atg.state.il.us>, Adam Pessin <apessin@finekaplan.com>

Andrew,

Some responses below, in bold.  If this changes anything let me know, but sounds as though we are at issue.

Best regards,

Steve

Stephen H. Weil
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
Chicago, IL 60604
(o) 312-585-7404
(f)  773-409-2745
(c) 267-240-5585
steve@weilchardon.com
www.weilchardon.com

On Thu, Jun 7, 2018 at 3:36 PM, Horvat, Timothy <THorvat@atg.state.il.us> wrote:

> Steve,
>
>
> There are too many errors to address so I will paint with a broad brush.
>
>
> 1)    The OCJ is not the responding "entity" for all discovery.  I agreed in court that I have access to the JTDC
> documents and would get them.  I have done so and continue to do so.  The only reason we are in this position is
> because you have accepted representation that an entity that already disclosed 10K + documents was not in
> possession or control of the very same documents they tendered. Aside from my amusement at this, this fact is
> relevant for another reason . . .
>
> **I'm not sure what point you are trying to make.  We served identical RFPs on the County.  After several months
> they represented that OCJ was the proper respondent, so we served the RFPs on OCJ.  And as you say, you
> agreed that OCJ has access to the documents and would respond. As I understand it, our disagreement is over
> what sort of search OCJ will conduct.**
>
> 2)    There is no "JTDC server."  There is only a county server.  If I want emails from the county server I have to ask
> the county who then asks the county bureau of technology.  I've also represented this in court. This is one of the
> reasons I produced all the emails from those people within the OCJ.  Those are ones I know I'm entitled to and so
> are you. That is why you have them.  In fact, if you recall, I used additional terms not requested by Plaintiffs in an
> effort to make sure you had everything.  In short, I never played a game of hide the ball.
>
> **I understand the distinction, which you've already explained.  Calling it the "JTDC server" is a shorthand to
> describe whatever server hosts the email accounts of employees at the JTDC.  I understand that you have to take
> the step to ask the County to conduct a search on that server, but you have never represented that this step
> actually presents a barrier, and I don't read you as making that representation now.**

But please clarify:  are you not able to cause the County to conduct searches on the server that hosts the email accounts of employees at the JTDC?  If that is the case then we can make the County part of any MTC.

 3)   Despite the above, I have agreed to request that the county do an additional search. You claim that this search relates only to "programs."  Although I understood this to be your initial request, you have since indicated otherwise.  As such, I have now agreed to search the emails of approx. TWENTY additional custodians.  These custodians are not only "managerial" custodians.  These are the people that run the show from top to bottom. They are responsible for all movement in and out of the facility regardless of the purpose. In additional to the decision makers, these custodians also include those "line" custodians who carry out the orders.  In short,  if something relevant happened in the JTDC and it was discussed on email, it would be located in their email. This is highly reasonable.

**I cannot understand how you ever believed the request to be limited to programs.  The "request" was RFPs 26-31.  In our discussions I have given you examples of emails concerning programming, which I have always noted are examples.  One of the reasons for my June 7 letter is that you treated such examples as entirety of our request, which has created significant confusion. The outstanding discovery at issue is RFPs 26-31.**

**Regarding the custodians you have identified, your position seems to be that a minimal production showing the official, chain-of-command acts is sufficient.  That is simply not so.  I've provided you the example of Anna Buckingham, who is not a listed custodian and apparently is not directly responsible for the official acts, yet has several highly relevant emails regarding the filming, including one characterizing it as a "lock-down."  Such comments by JTDC employees about how the filming restrictions affected their jobs is highly probative in this case, and our discovery quite properly calls for them.**

4)   I never put any onus on you.  To the contrary, I asked you what you wanted. Security, medical, programming, etc.  This does not require you to be an insider.  It simply requires you to understand your claims (medical, programming, etc.) so that I can customize the search to those claims. To that end, I also never refused any request of yours other than to search 700 custodians. You said you want everything so I have attempted to compromise by separating the wheat from the chaff. See paragraph number 3.

**Andrew--on April 25 you wrote to tell me that the County's production (plus the January OCJ production) was sufficiently responsive to all our RFPs, and that "I am not going to disclose any further ESI unless you are able to point to something in the disclosures that you believe is missing."  We have been operating in that framework ever since.  Indeed you have taken that position even though I sent you the December 29 letter, which described the serious deficiencies with the County's response to RFPs 26-31, which is the main body of production responsive to OCJ RFPs 26-31.  I still do not hear you defending the County's document-gathering process, and again I don't understand how you could.**

5)   Your reliance on the fact that there is no meaningful privilege objection is absurd.  There was none from me because the all of the emails I disclosed to you are beneficial to me, including those that could be considered privileged such as Brandt's directive to the JTDC to not interfere with programming.  However, because this is relevant to your "Monell" claim I tendered it with permission from my client.  This doesn't mean that privilege will not be an issue going forward as the request encompasses (approx.) 700 custodians. Please keep in mind there are several other defendants in this case who will need to weigh in on whatever further emails are extracted.

**At our February meeting at our 333 S. Wabash office you raised the possibility of additional, "non-attorney" (i.e., not ACP or WP) privileges.  In response, at that meeting, I specifically asked you to identify any such privileges early, because these would be threshold legal issues that we could resolve at the outset, either on our own or through a court ruling.  You have never done so.  In your responses, you made only boilerplate objections to our RFPs, but you never identified a privilege that you might assert.  Even now, you still haven't done so.  At this late date any objections are subject to waiver.  And frankly I can't imagine anything, short of categorical attorney privileges like ACP or WP, that wouldn't simply be addressed with a protective order.**

6)   There is a disc out there that contains what you want.  I cannot open it on Exchange because the County's system and my system appear incompatible. You know this because we have discussed in ad nauseam.  I was once in private practice (did Plaintiff's work too by the way) so I am aware of how technology has advanced legal

discovery. However, that has little bearing on my ability here and even less bearing on the burden of searching through 4.5 GB. Which brings me to my final point ..

**To claify: the disc and Microsoft Exchange are two separate issues. The JTDC's emails run on Microsoft Outlook. Microsoft Exchange is a server program. It manages (and allows keyword searching in) servers that host Microsoft Outlook emails. The County created the disc by conducting keyword searches across the JTDC email accounts using Microsoft Exchange.**

**Based on your representation that you cannot open the disc, I have been asking you to use Microsoft Exchange to run searches on that same email server. Thus the fact that you cannot open the disc is therefore irrelevant (unless you are unable to cause the County to run the Microsoft Exchange searches, as noted above). The request is for you to use Microsoft Exchange to run (or cause to be run) searches across the server that hosts the JTDC's email accounts.**

7)   My objection isn't just to burden. It is to proportionality. As you are aware, the scope of Rule 26 recently changed. Your claims primarily revolve around medical, programming, schooling and visitation. My latest proposal encompasses all of this. As such, I stand on my proposal. If you want something else then then you are going to have to inquire of another party. I am quite confident that I can defend my position once you bring your motion.

**I am aware of the reworking of the rule. We can go through the factors in Rule 26(b)(1) if you like, but at bottom proportionality balances burden with probative value. Our requests are reasonably calculated to lead to the discovery of admissible evidence--i.e., the documents we seek are probative. What my June 7 letter explained is that you have refused to consider numerous steps that would eliminate much of the burden of this review, to the extent a significant one even exists in the first place. You simply have made no effort to identify the actual burden of gathering and reviewing the documents we are requesting.**

I think at this point we may have exhausted this discussion if you continue your request for all custodians. If that is the case, please propose a date for your motion so that I can make sure I am available. My schedule is not pretty over the next few weeks so a heads-up would be appreciated.

Thank you,

*T. Andrew Horvat*

Assistant Attorney General

General Law Bureau

Civil Rights Division

100 W. Randolph St., 13th Fl.

Chicago, IL 60601

312-814-5484