IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.S. *et al.*,<br><br>     Plaintiffs,<br><br>   v.<br><br>Twentieth Century Fox Television *et al.*,<br><br>     Defendants. | Case No. 1:16-cv-08303<br><br>Hon. Rebecca Pallmeyer |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM THE
OFFICE OF THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY**

Pursuant to Federal Rule of Civil Procedure 37(a)(1), Plaintiffs hereby move the Court for an order compelling defendant Office of the Chief Judge of the Circuit Court of Cook County ("OCJ") to respond to multiple requests in Plaintiffs' Third Set of Requests for Production ("RFPs").[1] The RFPs, and the OCJ's responses to them, are attached hereto as **Exhibit 1**.

In support of this motion Plaintiffs state as follows:

## BACKGROUND

Plaintiffs served their third set of RFPs to the OCJ on May 25, 2018. The OCJ responded on June 27, 2018. In response to the relevant[2] requests (RFP Nos. 2, 3, 5(a)-(d) and 5(h), 6, and 7), the OCJ asserted essentially identical objections that were composed entirely of boilerplate:

---

[1] *Local Rule 37.2 Statement*. Pursuant to Local Rule 37.2, Counsel for Plaintiff attempted to resolve this discovery dispute through informal discovery enforcement. Between June 29 and July 3 the parties engaged in discovery enforcement correspondence. After the July 6 status hearing (*see* ECF No. 171), the parties conferred in person. During that in-person conference counsel for OCJ informed counsel for Plaintiffs that the parties could consider themselves at issue.

[2] Numerous requests (RFP Nos. 5(e), 5(f), 5(g), 5(i), 5(j), and 8-13) are not relevant to this motion because the OCJ has represented that it does not possess the responsive documents. Rather,

> Defendant objects to this request as overly broad, irrelevant to any party's claim or defense and disproportional to the needs of the case.

Based on these objections, the OCJ refused to produce any documents. It also failed to state whether any responsive materials were being withheld on the basis of these objections, as required by Rule 34(b)(2)(C).

Between June 29 and July 3, the parties engaged in the discovery enforcement correspondence in which Plaintiffs pointed out these deficiencies. (*See* **Exhibit 2**.) On July 6 counsel for OCJ and Plaintiffs conferred in person. At this meeting OCJ took the position that its objections were not boilerplate. OCJ also indicted that pursuant to the Illinois Juvenile Court Act, it would object to discovery that would result in the production of documents with the names of detainees. (In previous discussions OCJ had mentioned HIPAA protections as grounds for objecting as well, but this was not specifically raised on July 6.) At the meeting OCJ stated that the parties could consider themselves at issue regarding the RFPs.

## ARUGMENT

This Court has repeatedly and emphatically instructed that boilerplate discovery responses are prohibited. *See, e.g.*, *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15-cv-10340, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017) (collecting cases and stating, "An objector's burden cannot be met by an invocation of the same baseless, often abused litany that the requested discovery is "vague, ambiguous, overly broad, unduly burdensome," or that it is "not reasonably calculated to lead to the discovery of admissible evidence." (quotation omitted)); *United Auto. Ins. v. Veluchamy*, No. 09-cv-5487, 2010 WL 749980, at *5 (N.D. Ill. Mar. 4, 2010) ("Despite courts' repeated admonitions that these sorts of 'boilerplate' objections [*viz.*, that the requested discovery is 'vague, ambiguous, overly broad, unduly burdensome,' or

---

documents responsive to those requests appear to be in the custody of Cook County, upon which Plaintiffs have served substantially similar RFPs.

that it is 'neither relevant nor reasonably calculated to lead to the discovery of admissible evidence'] are ineffectual, their use continues unabated, with the consequent institutional burdens, and the needless imposition of costs on the opposing party." (citation omitted)).

Plaintiffs appreciate that the rule against boilerplate notwithstanding, parties will sometimes in good faith incorporate shorthand objections into their discovery responses that can later be fleshed out through the meet-and-confer process. The OCJ's responses, however, are in another category. Plaintiffs are at a loss as to why, given more than a month to prepare its responses, the OCJ would stand on the unadorned boilerplate objections it asserted.

The appropriate treatment of boilerplate objections is to consider them waived. *See Kelley v. Bd. of Educ. of City of Chi.*, No. 10-cv-7875, 2012 WL 1108135, at *2 (N.D. Ill. Apr. 2, 2012) ("The defendant's *ipse dixit* recitation of boilerplate objections is thereby waived because such responses are improper."); *Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) (holding that boilerplate objections "are tantamount to not making any objection at all." (quotation omitted)); *Duracell U.S. Operations, Inc. v. JRS Ventures, Inc.*, No. 17-cv-3166, 2018 WL 704686, at *6 (N.D. Ill. Feb. 5, 2018) (same). Plaintiffs respectfully suggest that is the appropriate outcome here. Nevertheless, Plaintiffs will attempt to "respond" to the OCJ's objections. As Plaintiffs explain below, the RFPs at issue are appropriate for this case.

1. **"Privilege" Objections**

*HIPAA*. To the extent OCJ objects that requested information cannot be disclosed under HIPAA, such a contention is not legitimate. HIPAA provides that in the case of a discovery request or subpoena, HIPAA's individual notice and waiver requirements do not apply so long as there is a protective order in place mandating (1) that the HIPAA material be kept in confidence and used only for the litigation, and (2) that the HIPAA material be returned or destroyed after

the litigation ends. 45 C.F.R. §§ 164.512(e)(1)(ii)(B) & (e)(1)(v). The existing protective order in this case (ECF No. 125) is based on the Court's standardized order, and it satisfies these criteria. HIPAA is not a basis for objecting to Plaintiffs' discovery.

*Juvenile Court Act*. The Juvenile Court Act ("JCA," 705 ILCS 405/1 *et seq*.) limits disclosure of certain law enforcement information concerning minors involved in the criminal justice system. But like HIPAA, the JCA also authorizes disclosure of covered information in litigation. Authorization for such disclosure involves a petition to state court; such petitions and are granted to cover litigation discovery, including discovery in putative civil rights class actions where information regarding the putative class's members is sought. (*See, e.g.*, **Ex. 3** (Agreed Pet. to Authorize the Disclosure of Juvenile Records of Putative Minor Class Members in *Campbell v. City of Chicago* (Ill. Cir. Ct. Nov. 17, 2017)) and **Ex. 4** (Administrative Special Order 2017-13 Re: Access to the Juvenile Law Enforcement and Court Records (Ill. Cir. Ct. Nov. 29, 2017) (granting the Nov. 17 *Campbell v. City of Chicago* Agreed Petition).) Thus the OCJ's tentative invocation of the JCA should not impose a barrier to Plaintiffs' discovery in this case. Certainly, the OCJ has no reason to oppose this procedural step for discovery that this Court otherwise deems appropriate in this case.

2. **Individual Responses**

*RFP No. 2*. This RFP seeks:

All Monthly Master Reports from the Relevant Period, or any other report synthesizing or analyzing data from JTDC which was submitted to the Transitional Administrator, Superintendent, or Chief Judge.

Plaintiffs anticipate that these reports will summarize data regarding the operation of the JTDC, including overall detainee populations and information about movement, room confinement, and similar information concerning the welfare of the children housed at the facility. That information is relevant to this case. The requested information should be

contained in a handful of documents which, Plaintiffs understand, are generated at regular intervals and as a matter of course, and should therefore be easy to locate, gather, and produce.

**RFP No. 3**. This RFP seeks:

> All videos referred to in the documents bates-marked CCSAO 09224 ("I have made a list of all the useful videos I could find. Would you like to review them before I move them into the final folder?") (See also CCSAO 09226 (similar reference to video).).

OCJ objects that the request does not seek relevant information. But this RFP refers to a May 25, 2017 internal email in which one JTDC employee informs another that he has gathered all the "useful" CCTV video ***relating to the present litigation***. Such videos are inarguably relevant to this case. And they have already been gathered, so producing them should be straightforward.

**RFP No. 5(a)-(d) & (h) and RFP No. 6**. These RFPs seek:

> RFP No. 5. Documents relating or pertaining to resident screening and classification conducted during the Relevant Period, including . . .
> (a) Committee Meeting Minutes of the Housing Classification and Assignment Committee (*see* Policy 6.09.03 "Housing Classification")
> (b) Housing Classification and Assignment Forms (*see* Policy 6.09.03 "Housing Classification");
> (c) Transfer Lists;
> (d) Monthly Reports relating to inmate screening and classification (*see* Policy 6.09.03 "Housing Classification");
> (h) Other documents related to or created pursuant to procedures referenced in Policy 6.09.03 ("Housing Classification")
> . . . .
>
> RFP No. 6. Documents summarizing, analyzing, or consolidating information regarding the classification and screening process during the Relevant Period.

Each of these requests seeks information regarding a disturbing feature of the *Empire* lockdowns suggested in the discovery to date: it appears that to accommodate *Empire*, detainees were transferred among pods without the JTDC's normal safety precautions.

Among the most sensitive tasks at the JTDC is pod assignment. Many detainees are in (or are perceived to be in) rival gangs. The resulting conflicts can be deadly. As a result, JTDC policies require careful planning and inter-staff meetings to decide where each child should be placed within the facility. To accommodate *Empire*, however, JTDC staff moved residents wholesale. One staff member wrote:

> Here are my thoughts on how the moves can be done for the Empire taping. . . .
> We need to transfer *at least* 14 residents (allowing us to close 3A) throughout the facility . . . .

(emphasis original). The danger posed by such transfers was acute: a single divisional shift report from the first day of filming in June records attacks against two residents who had just been transferred from other pods. And during the July filming, one staff member expressed concern about transferring a detainee who "is 6'0, 142 lbs., and claims the Black Disciple Gang," explaining that she did not yet have enough information to ensure that the transfer would be safe. In response her colleague wrote, "Empire will be gone by Friday and we can go back to normal."

In light of this and similar information, Plaintiffs believe that that to accommodate *Empire*, the careful process for transferring detainees was abandoned—putting everyone in the facility at risk. The requested discovery is designed to determine what (if any) steps were taken to ensure safe transfers during the *Empire* filming, and to compare that to the JTDC's practices during normal operation (*i.e.*, the remainder of the Relevant Period, which runs from one month before to one month after the *Empire* filming). This discovery is highly probative for this case.

> ***RFP No. 7***. This RFP seeks:
>
> "JTDC Policy 10.02," which is referenced in Policy 5.10.03 ("Reception and Orientation"); policies and procedures related to resident health care; and any other JTDC policy in effect during the Relevant Period which has not been produced in this litigation.

To date the defendants have produced a six-volume set of formal JTDC policies, plus several dozen administrative directives. Policy 5.10.03, which is related to the detainee screening and transfer process described above, refers to a "JTDC Policy 10.02." No policy with that name has been produced, however, so Plaintiffs are requesting it here. Plaintiffs also seek any other policies that have not been produced, which is calculated to help compare the activities during the *Empire* filming with the JTDC's normal operations. These requests are thus relevant to the facts of this case. The production of policies thus far indicates that they are well-organized and easy to access, such that responsive production should not be meaningfully burdensome.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) deem OCJ's objections to Plaintiffs' third set of RFPs to be waived; and (2) order OCJ to produce the documents responsive to RFPs 2, 3, 5(a)-(d) and 5(h), 6, and 7.

July 12, 2018                                      Respectfully Submitted,

                                                   /s/ Stephen H. Weil

Stephen H. Weil – steve@weilchardon.com            Adam J. Pessin – apessin@finekaplan.com
Alexis G. Chardon – ali@weilchardon.com            Fine, Kaplan and Black, R.P.C.
Weil & Chardon LLC                                 One South Broad Street, Suite 2300
333 S. Wabash Avenue, Suite 2700                   Philadelphia, PA 19107
Chicago, IL 60604                                  (215) 567-6565
(312) 585-7404

Terrence Garmey – tgarmey@garmeylaw.com
Terry Garmey & Associates
482 Congress Street, Suite 402
Portland, ME 04101
(207) 331-3111

                                                   *Attorneys for Named Plaintiffs T.S. and Q.B.*

**CERTIFICATE OF SERVICE**

   I hereby certify that on July 12, 2018, a true and correct copy of the foregoing was filed electronically.  Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

                   /s/ Stephen H. Weil