# Exhibit 1

Gmail
by Google                                                                    Stephen Weil <steve@weilchardon.com>

## RE: TS -- discovery enforcement
1 message

**Jacobson, Jeffrey** <JJacobson@kelleydrye.com>                    Fri, Oct 12, 2018 at 11:46 AM
To: Stephen Weil <steve@weilchardon.com>
Cc: "Luzadder, Matt" <MLuzadder@kelleydrye.com>, Alexis Chardon <ali@weilchardon.com>, Adam Pessin
<apessin@finekaplan.com>, Terry Garmey <tgarmey@garmeylaw.com>, "James, Catherine" <CJames@kelleydrye.com>,
"Fletcher-Thomas, Janine" <JFletcher@kelleydrye.com>, "DANIELLE MIKHAIL (States Attorney)"
<DANIELLE.MIKHAIL@cookcountyil.gov>, "Horvat, Timothy" <THorvat@atg.state.il.us>, "LYLE HENRETTY (States
Attorney)" <LYLE.HENRETTY@cookcountyil.gov>, "ANTHONY ZECCHIN (States Attorney)"
<anthony.zecchin@cookcountyil.gov>

Steve,

I half a half-hour window at 1:00 EST, 12:00 CST. You may call me then at (212) 808-5145.

Your recitation below is simply false. Our responses to your discovery requests would have been due on Friday, Aug. 31. Judge Pallmeyer granted our request for a protective order on Aug. 29, so we asked for, and you granted, just a one-week extension so that we could revise our draft responses to take account of that protective order. We then served our responses on Sept. 7, as agreed. Your suggestion of a "multi-week delay caused by Fox" therefore has no basis.

If you thought our responses were inconsistent with Judge Pallmeyer's protective order—they are not—you could have raised that issue immediately on Sept. 7. You did not. Instead, you waited three weeks to do so. I then did not "unilateral[ly] delay responding" to you; I advised you that I needed time to consult with Fox, and I responded to you in exactly the time frame I promised. I note, moreover, that neither your Sept. 25 email (after a three week delay) nor your message yesterday (after an eight-day delay) reflected the fruits of any "legal research."

Your repeated pattern of ginning up discovery "emergencies" and dropping motions just prior to status conferences speaks for itself. It's clear from the docket. Yes, we are able to turn around responses quickly because, frankly, you are not the first opposing attorney to use these same sharp practices, and we know how to deal with them. Fortunately, however, I also am old enough to have realized that the world is too small and too round for this kind of nonsense not to catch up with you eventually.

Jeff

**JEFFREY S. JACOBSON**

Partner
Co-Chair, Class Action Practice

**Kelley Drye & Warren LLP**
(212) 808-5145
jjacobson@kelleydrye.com

**From:** Stephen Weil [mailto:steve@weilchardon.com]
**Sent:** Friday, October 12, 2018 12:25 PM
**To:** Jacobson, Jeffrey <JJacobson@KelleyDrye.com>
**Cc:** Luzadder, Matt <MLuzadder@KelleyDrye.com>; Alexis Chardon <ali@weilchardon.com>; Adam Pessin <apessin@finekaplan.com>; Terry Garmey <tgarmey@garmeylaw.com>; James, Catherine <CJames@KelleyDrye.com>; Fletcher-Thomas, Janine <JFletcher@KelleyDrye.com>; DANIELLE MIKHAIL (States Attorney) <DANIELLE.MIKHAIL@cookcountyil.gov>; Horvat, Timothy <THorvat@atg.state.il.us>; LYLE HENRETTY (States Attorney) <LYLE.HENRETTY@cookcountyil.gov>; ANTHONY ZECCHIN (States Attorney) <anthony.zecchin@cookcountyil.gov>
**Subject:** Re: TS -- discovery enforcement


Jeff,


Sorry to hear that your power is out.


In this district the LR 37.2 call is often a formality because the parties already know from their correspondence that they are irreconcilably opposed.  That appears to be the case here.  But it's still an important step under the rule.


As you know these calls can be very short.  You will remember that our first one, regarding your opposition to our request to serve document preservation subpoenas, lasted less than 30 seconds:  you simply told me that you would not agree to our request, and that was that.


Therefore I reiterate my request that we hold the call.  I'm available all day today, and ask that we hold the call before COB today.


I'm not sure what to make of your sandbagging accusation.  As for timing, we are asking for a call after a multi-week delay caused by Fox:  the delay in Fox's initial response to our discovery (Matt asked for an extension, which we granted) and your unilateral delay in responding to our enforcement correspondence, which then required legal research for us to assess.  I don't think of these delays were inappropriate—they're a routine part of discovery—but they delayed our ability to consider your response.


And it simply isn't serious for you to claim that I did something inappropriate by requesting a discovery conference seven days in advance of a status.  There is no rule tying the motions to the date of the status conference.  Noticing the motions for the status conference is really an accommodation to you, since you are the only attorney coming in from out of town.


Furthermore, Judge Pallmeyer's standing order has a two-day notice window for motions, so we would be well within our rights to file the motion next Tuesday after the M&C that Matt proposed, and notice it for the Thursday status.  As I said, however, that simply isn't appropriate in this instance, since we both know there will be responsive briefing.  The Court deserves some time to consider our arguments.  I'll also note that Fox has repeatedly demonstrated the ability to turn around response briefs very quickly; your last, 12-page reply was filed 24 hours after our motion to compel.  So I don't understand what tactical advantage you think we are hoping to gain by filing a motion and then noticing it for nearly a week out.


Again, I reiterate my request to hold a call today to meet our LR37.2 obligations.  Waiting until Tuesday to hold the LR37.2 call would do nothing but run down the clock, and give the Court less time to consider our arguments.  As you say, given

our positions there does not seem to be much to discuss, so the call should be short.


Please let me know whether you will agree to a call sometime before COB today.  I can make myself available any time today.


Best regards,


Steve


Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f)  773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com



On Fri, Oct 12, 2018 at 5:50 AM Jacobson, Jeffrey <JJacobson@kelleydrye.com> wrote:

> Steve,
>
>
> I could not respond before now because a storm knocked out power where I am.
>
>
> Your tactics in this case are predictable and tired.  A few days before nearly every scheduled status conference, you pick some months-old discovery "dispute," declare it an emergency, and sandbag one or more defendants with a motion to compel that you could have noticed earlier.  Your propensity to do this, and the shrillness of your demands, increase proportionately with the likelihood that a status hearing otherwise would focus on your abject failure to advance your now 27 month-old case.
>
>
> As your first email in this chain notes, we responded to your discovery requests on September 7, noting that all of them had been put to bed by the Court's granting Fox's motion for a protective order at the August 29 status conference. After receiving those responses, you waited nearly three weeks, until September 25, to suggest (baselessly) the existence of a remaining dispute.  I responded on October 3, as I promised to do, after consulting with my clients.  You then waited another eight days before suddenly demanding we immediately get on the phone with you.  Something tells me, however, that if Judge Pallmeyer had not postponed the status conference by a week, you would not have delayed this long.
>
>
> In one respect, I agree with your message.  Because you are returning to the exact issue Judge Pallmeyer decided against you at the last status conference, we are unlikely to reach agreement on a further document production.  I

would remind you, too, that you are on record with the Court stating that you are "comfortable that Fox has produced everything they have in terms of the merits." (Aug. 29 Hearing Tr. at 16:14-17.)  Indeed, we have.  At the least hearing, the Court decided that the non-merits issue of compensation to *Empire* actors isn't relevant to your unjust enrichment claim.  This time, you're asking for compensation to members of the creative team, which is equally irrelevant.  Unless I am missing something, a phone call is unlikely to narrow the gap in our positions.

Your email seems to threaten to file a motion without a conferral call if we cannot get on the phone with you today.  Provided you are going to attach this entire email chain to your motion, and will make clear that you waited until Wednesday night to declare this "emergency" dispute and say you suddenly have a need to drop it on the Court three days before a status conference, you should do what you feel you must.

Jeff

**JEFFREY JACOBSON**

Partner

Co-Chair, Class Actions Practice

**Kelley Drye & Warren LLP**
Tel: (212) 808-5145
jjacobson@kelleydrye.com

**From:** Stephen Weil [mailto:steve@weilchardon.com]
**Sent:** Thursday, October 11, 2018 4:54 PM
**To:** Luzadder, Matt <MLuzadder@KelleyDrye.com>
**Cc:** Jacobson, Jeffrey <JJacobson@KelleyDrye.com>; Alexis Chardon <ali@weilchardon.com>; Adam Pessin <apessin@finekaplan.com>; Terry Garmey <tgarmey@garmeylaw.com>; James, Catherine <CJames@KelleyDrye.com>; Fletcher-Thomas, Janine <JFletcher@KelleyDrye.com>
**Subject:** Re: TS -- discovery enforcement

Matt,

It doesn't make sense for either side to wait that long.  It's fairly clear we are going to be at issue with regard to this discovery.  We don't agree with any of the positions Jeff has taken, and it's plain that you don't agree with ours.  As such, our call should be fairly short, on the order of 5-10 minutes at the most.  It will be even shorter if we agree to disagree, where things have every appearance of ending up.

In other words, we are both going to end up submitting briefs to the Court.  We need to give Judge Pallmeyer time to consider the written submissions from both sides.  Waiting until next Tuesday to hold the LR37.2 call, when our status is Thursday, will not give Judge Pallmeyer enough time to give our briefing her proper consideration. So I can't agree to what you propose.

I was available throughout today, as I said.  I'm available all evening tonight, all day tomorrow, and all weekend.  Fox has at least three counsel of record on this case.  We've already fleshed out our respective positions in writing.  If you

are going to refuse to discuss this until next Tuesday notwithstanding my availability, I'm going to consider my LR37.2 efforts to have been futile, and we will proceed accordingly.

Please advise how you plan to proceed by noon Central tomorrow.

Best regards,

Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f)  773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com

On Thu, Oct 11, 2018 at 3:31 PM Luzadder, Matt <MLuzadder@kelleydrye.com> wrote:

> Steve,
>
> Jeff and I are traveling this week.  I am going to be in court on a TRO on Monday and Jeff will be flying most of the day.  We are open on Tuesday morning.
>
> Let me know what time works for you.
>
> Best regards,
>
> Matt
>
> **From:** Stephen Weil [mailto:steve@weilchardon.com]
> **Sent:** Thursday, October 11, 2018 9:14 AM
> **To:** Luzadder, Matt <MLuzadder@KelleyDrye.com>; Jacobson, Jeffrey <JJacobson@KelleyDrye.com>
> **Cc:** Alexis Chardon <ali@weilchardon.com>; Adam Pessin <apessin@finekaplan.com>; Terry Garmey <tgarmey@garmeylaw.com>; James, Catherine <CJames@KelleyDrye.com>; Fletcher-Thomas, Janine <JFletcher@KelleyDrye.com>
> **Subject:** Re: TS -- discovery enforcement

Apologies all for the email misfire...


Jeff or Matt,


What time do you have today or tomorrow for a call on this discovery.  Given our positions I don't anticipate that it will take long.  I'm generally open except today 1-2 Central.


Regarding the DGA document, please clarify whether Mr. Breen retrieved a copy.  We don't have one.  It's relevant to understanding the common impacts of location filming and related standards of conduct for such filming.


Regarding RFP 11, to be clear we are only requesting responsive documents (or their "business" entities like Lee Daniels Entertainment) for the individuals listed in my 9/25 email:  Lee Daniels, Chase Harlan, Sanaa Hamri, and Loucas George.


Thanks,


Steve


Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f)  773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com



On Thu, Oct 11, 2018 at 7:42 AM Stephen Weil <steve@weilchardon.com> wrote:


> Get Outlook for Android
>
> ---
>
> **From:** Jacobson, Jeffrey <JJacobson@KelleyDrye.com>
> **Sent:** Wednesday, October 3, 2018 5:31:41 PM
> **To:** 'Stephen Weil'; Luzadder, Matt
> **Cc:** Alexis Chardon; Adam Pessin; Terry Garmey; LYLE HENRETTY (States Attorney); DANIELLE MIKHAIL (States

Attorney); Allyson West (States Attorney); James, Catherine; Fletcher-Thomas, Janine; 'Horvat, Timothy'
**Subject:** RE: TS -- discovery enforcement

Steve,

I have read your message multiple times since you sent it. Each time, I come to the same
conclusion: All of what you consider to be "issues" either were conclusively resolved by Judge
Pallmeyer's ruling on our protective order motion or by clear Seventh Circuit law. Our specific
responses appear below, in red.

**JEFFREY JACOBSON**

Partner

Co-Chair, Class Actions Practice

**Kelley Drye & Warren LLP**
Tel: (212) 808-5145
jjacobson@kelleydrye.com

**From:** Stephen Weil [mailto:steve@weilchardon.com]
**Sent:** Tuesday, September 25, 2018 12:16 PM
**To:** Jacobson, Jeffrey <JJacobson@KelleyDrye.com>; Luzadder, Matt <MLuzadder@KelleyDrye.com>
**Cc:** Alexis Chardon <ali@weilchardon.com>; Adam Pessin <apessin@finekaplan.com>; Terry Garmey
<tgarmey@garmeylaw.com>
**Subject:** TS -- discovery enforcement

Jeff and Matt,

I'm writing to address several issues in your clients' September 7 discovery responses, as well as an
outstanding discovery issue that came up in Brady Breen's deposition.

**September 7 responses**

In light of the Court's August 29 discovery ruling we believe it is appropriate to table **Interrogatories
4 and 5; RFPs 6-10; RFP 12** (to the extent it relates to advertisements); and **RFP 13**. If we brought
our dispute on these issues before the Court there is every reason to believe Judge Pallmeyer would
place this discovery on hold—denying it without prejudice, as she did with the revenue discovery on
August 29—until she has addressed the viability of our unjust enrichment claim. We therefore
propose to table this discovery without prejudice to revisiting it if and when Judge Pallmeyer decides
that Plaintiffs may pursue their unjust enrichment claim. Please let us know whether you agree.

**Response:** If you are asking Fox to "agree" that you can re-litigate those matters later, we do not
believe such "agreement" is appropriate or necessary. The Court's order speaks for itself. We
moved for a protective order because you sought to re-litigate a matter that Judge St. Eve already
had decided against you. Two bites at the apple should be sufficient.

**Interrogatory 3.** You refused to respond to this Interrogatory, which asked you to identify payments
made to "neighbors" in the first and second seasons. Whether "neighbor" payments were common
and whether it was Fox's common experience that third parties were impacted by filming is relevant
and discoverable information. And from the Episode 201 and 202 cost reports we already know that

this information is kept in a few dozen documents, so there should not be an undue burden to provide this information to Plaintiffs.

**Response:** We have confirmed to you that there were no "neighbor payments" associated with <u>any</u> location shooting for Episodes 201 and 202—not just the location shooting at the JTDC. Two courts have told you that you are not entitled to information about episodes <u>not</u> filmed at the JTDC. Pursuant to those orders, Fox need not respond further to this interrogatory.

**RFPs 1 and 2.** These requests asked you to produce variance reports (RFP 1) and approved budgets (RFP 2) for the second season. You refused to respond, based on objections that are essentially identical to those asserted against Interrogatory 3. They are wrong for the same reasons. We already know that these RFPs involve only a handful of documents, so these requests do not impose a meaningful burden. And we do not seek these documents for purposes of proving revenue; rather we seek them (1) to show that filming at the JTDC was a bargain, by comparing the price of filming there to other locations; and (2) to identify payments to "neighbors," which are relevant for the reasons explained above.

**Response:** Same objection. Fox need not provide any information regarding *Empire* episodes other than 201 and 202.

**RFPs 3 and 4.** These requests ask you to produce documents sufficient to show the Fox Defendants' net worth and profits. You object that this discovery is foreclosed by the Court's August 29 ruling, but Judge Pallmeyer made clear that she was staying the discovery at issue because of her uncertainty about our unjust enrichment theory. This discovery is not sought for the purpose of advancing that theory, but rather seeks evidence to support a claim for punitive damages. Under the Court's August 29 ruling that discovery should be pursued now.

**Response:** Your argument that information related to the Fox Defendants' net worth and profits is needed to support a claim for punitive damages is contrary to both the Protective Order and Seventh Circuit case law holding that evidence of a defendant's wealth is irrelevant to the assessment of punitive damages. *See, e.g., Zaza Designs v. L'Oreal, S.A.,* 979 F.2d 499, 508-09 (7th Cir. 1992). The Seventh Circuit reasoned that this is especially true for corporations because they "are abstractions; investors own the net worth of the business. These investors pay any punitive awards (the value of their shares decreases), and they may be of average wealth." *Id.* at 508.

**RFP 5.** Pursuant to Rule 34(b)(2)(C), please state whether responsive materials are being withheld on the basis of the objections you have asserted in response to this request.

**Response:** We are not aware of any other responsive policies and are not knowingly withholding any on the basis of our objections.

**RFP 11.** This request asked you to produce agreements between Lee Daniels and certain other persons involved in the filming of Empire at the JTDC. Your objections are hard to understand. You say responsive documents relating to Lee Daniels are disproportional to the needs of the case, but Lee Daniels directed the episodes filmed at the JTDC, and he scouted the JTDC in advance of the filming. We are entitled to know what financial incentives Lee Daniels had to select the JTDC, and discovery seeking his contractual arrangements with Fox are reasonably calculated to discover that.

**Response:** The Court already ruled that you are not entitled to information about <u>actor</u> compensation. The Court did not accept your argument that the size of actor compensation bears on any liability question. Neither does the compensation of the creative team, notwithstanding your pure and unfounded speculation that compensation may be tied to minutiae like the cost of producing particular episodes. We stand on our objections.

You also object that "[t]his Request demands contractual and employment agreements 'in effect' during the months of June, July and August 2015, regardless of whether the individual was involved in the filming of *Empire* at the JTDC," but this request asks only for employment contracts for persons who *were* involved in the filming at the JTDC. Thus we don't understand your overbreadth concern.

**Response:** You are misstating your request. You have asked for agreements related to anyone involved with the episodes, not just people involved with scenes shot at the JTDC.

Finally, your response points to several employment agreements that you have produced. These agreements do not include any agreements for Lee Daniels. Nor does it include agreements for Chase Harlan, Sanaa Hamri, or Loucas George, all of whom appear to have been involved in scouting the JTDC before filming (*see, e.g.,* OAG 1605). Please produce these documents.

**Response:** See above.

**RFP 17.** This RFP asked for documents sufficient to show costs associated with the "prison" stage referred to in Brady Breen's deposition. You object that this information is not relevant because it occurred in a different season and was for season-wide filming. However it is relevant for identifying the costs Fox would have incurred if it had to build a prison set instead of renting the JTDC. It therefore goes to Fox's motivation for renting the JTDC.

**Response:** This is just another flavor of the argument Judge Pallmeyer rejected. How much it might have cost Fox to build a set comparable to the JTDC space—or, for that matter, to have flown cast and crew to another city that already had a comparable sound stage built—is no more relevant to liability questions than how much money Fox did or did not earn from airing the episodes. Our objections stand.

**Breen deposition**

**Directors' Guild manual / code of conduct.** Please let us know whether Mr. Breen gathered, and whether you will produce, the Directors' Guild of America manual / code of conduct that was discussed at Mr. Breen's deposition. *See* Breen Dep. Tr. at 11-12.

**Response:** What is the relevance of this document? Are you saying you do not already have it, even though you asked questions about it at Mr. Breen's deposition?

This message is subject to Kelley Drye & Warren LLP's email communication policy.
KDW-Disclaimer

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| T.S. *et al.*,<br><br>             Plaintiffs,<br><br>v.<br><br>Twentieth Century Fox Television *et al.*,<br><br>             Defendants. | Case No. 1:16-cv-08303<br><br>Hon. Amy J. St. Eve |

**THE FOX DEFENDANTS' ANSWERS AND OBJECTIONS TO**
**PLAINTIFFS' DISCOVERY TO THE FOX DEFENDANTS**

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, by and through their attorneys, Twenty-First Century Fox, Inc. ("21CF"), Twentieth Century Fox Television ("TCFTV"), and Fox Broadcasting Company ("FBC") (collectively the "Fox Defendants") hereby respond to the following discovery:

**PRELIMINARY STATEMENT**

All Responses that follow are made subject to this preliminary statement.

1.     The Responses appearing below are made subject to and without waiver of: (1) all questions as to the admissibility, including but not limited to the competency, relevancy, materiality, or privilege of the Responses made, any documents produced, or the subject matter of such documents; (2) the right to object to other discovery directed to the subject matter of the Interrogatories or Responses; (3) the right to object to the use of information produced in response to the Requests at any hearing, trial, or other point during this action; and (4) the right to make additional objections or seek protective orders.

2.     The information and responses supplied herein are for use in this action only, and for no other purpose.

3.      Any statement by the Fox Defendants that they are producing or will produce information responsive to any Interrogatory does not mean that they possess responsive information.  A statement that the Fox Defendants are producing or will produce information responsive to any Interrogatory only means that the Fox Defendants are conducting a diligent and reasonable search, and will produce responsive, non-objectionable, non-privileged responsive information at the conclusion of their investigation.  No response or objection made herein, or lack thereof, is an admission by the Fox Defendants as to the existence or non-existence of any information.

4.      The Fox Defendants expressly preserve their objections to these Interrogatories to the extent they seek information or admissions concerning matters that are privileged or otherwise protected against discovery pursuant to the attorney-client privilege, the work product doctrine, the joint defense privilege, the consulting expert rule, the common interest doctrine, investigative privileges, or any other legally recognized privilege, immunity, or exemption from discovery.  Inadvertent production of information that the Fox Defendants later claim was an inadvertent disclosure which should have been withheld on grounds of the attorney-client privilege, the work product doctrine, the joint defense privilege, the consulting expert rule, the common interest doctrine, investigative privileges, or any other legally recognized privilege, immunity, or exemption from discovery, will not be considered waiving such privilege.  Instead, the Fox Defendants may request the return of any inadvertently produced information or documents, stating the basis for withholding such material.

5.      The Fox Defendants reserve their right to assert additional objections to these Interrogatories and Requests as appropriate, and to amend or supplement these objections and responses based on the results of their continuing investigation.

## **INTERROGATORIES**

1.     **To the Fox Defendants**: Concerning to the communication bates-marked TCFTV577-78:

        a.     identify the person most knowledgeable about the relationship, if any, of said communication with the filming of *Empire* at the JTDC, including the person's name, address, and telephone number; and

        b.     describe in detail the nature of the relationship, if any, of said communication to the filming of *Empire* at the JTDC.

**ANSWER:** Objection. The Fox Defendants object to Interrogatory No. 1 because it is overly broad, unduly burdensome, and is not proportional to the needs of the case. Specifically, Interrogatory No. 1 requests information that is not relevant to "any party's claims or defenses" and unlikely to elicit discoverable information. Subject to and without waiving the foregoing objections, Fox Defendants state: Brady Breen received this e-mail from Glasgow & Olsson because he is on their marketing e-mail list for reasons unrelated to his employment or this lawsuit. TCFTV577-78 is one of many marketing e-mails that Mr. Breen has received from Glasgow & Olsson. It has no relationship to this case.

2.     **To the Fox Defendants**: Identify the person or persons most likely to have possession, custody, and control of recordings of the two *Empire* episodes filmed at the JTDC as they were broadcast in the airings identified in TCFTV001941 (*i.e.*, full recordings of each episode as aired, including the advertisements or other announcements played during each episode).

**ANSWER:** Objection. The Fox Defendants object to Interrogatory No. 2 because it is overly broad, unduly burdensome, and is not proportional to the needs of the case. Specifically, there is no single version of the episodes "as aired" because the audience experience—certainly with respect to advertising and also potentially with respect to the episodes' dramatic content—could have and likely did vary from region to region, station to station, and provider to provider. Subject to and without waiving the forgoing objections, Fox Defendants state that they will

produce video files reflecting the dramatic content of Episodes 201 and 202 of *Empire* as aired. *See* TCFTV002329 – TCFTV002332.

3.      **To TCFTV**: For all "neighbor" payments made for Seasons 1 and 2 of Empire, identify amount of each such payment, person to whom each such payment was made, the Episode and scene to which each such payment related, the date of each such payment, and the purpose of each such payment.

**ANSWER:** Objection.  TCFTV objects to Interrogatory No. 3 because it is overly broad, unduly burdensome, and is not proportional to the needs of the case.  The information about "neighbor payments" is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  TCFTV refers Plaintiffs to the Court's Order dated March 7, 2018, which stated that "discovery for full seasons of Empire is not proportional to the needs of this case" and the Court's Order dated August 29, 2018, granting the Fox Defendants' Motion for Protective Order. *See* Dkt. Nos. 143 and 190.  With respect to the filming of Episodes 201 and 202 at the JTDC, the Fox Defendants already have produced all information regarding costs incurred.  Subject to and without waiving the forgoing objections, TCFTV states that there were no "neighbor payments" associated with this filming or with respect to any other scenes filmed for Episodes 201 or 202.

4.      **To TCFTV**: Identify each employee or agent of TCFTV who was assigned to or worked in or as part of the business unit "Fox Television Group" during the Relevant Period.  For each such person, identify:

a.      The legal entity (*e.g.*, 21CF, FBC, TCFTV, or other) that employed the person;

b.      The title or role of the person within Fox Television Group;

c.      Any and all communications the person had regarding the filming of *Empire* at the JTDC; and

d.      Any and all documents in the person's possession regarding the filming of *Empire* at the JTDC.

**ANSWER:** Objection. The Court denied Plaintiffs' motion to compel with respect to this information. TCFTV further objects to Interrogatory No. 4 because it is overly broad, unduly burdensome, and is not proportional to the needs of the case. Specifically, Interrogatory No. 4 requests information that is not relevant to "any party's claims or defenses" and unlikely to elicit discoverable information. Moreover, such information does not exist in the form requested by Plaintiffs and would require TCFTV to undertake substantial work to create the information in the form requested. The Fox Defendants have already identified the employees and agents who were involved in the filming of *Empire* at the JTDC. *See* Dkt. No. 150, ¶ 1. This information complied with the March 7, 2018 Order's requirement that the Fox Defendants, including 21CF, "produce the responding information to Plaintiffs as relevant to their theory of liability that the Fox Defendants acted jointly." *See* Dkt. No. 143 at 4. *See also* Dkt. No. 190.

5.   **To FBC**: Identify each employee or agent of FBC who was assigned to or worked in or as part of the business unit "Fox Television Group" during the Relevant Period. For each such person, identify:

   a.   The legal entity (*e.g.*, 21CF, FBC, TCFTV, or other) that employed the person;

   b.   The title or role of the person within Fox Television Group;

   c.   Any and all communications that the person had regarding the filming of *Empire* at the JTDC; and

   d.   Any and all documents in the person's possession regarding the filming of *Empire* at the JTDC.

**ANSWER:** Objection. The Court denied Plaintiffs' motion to compel with respect to this information. FBC further objects to Interrogatory No. 5 because it is overly broad, unduly burdensome, and is not proportional to the needs of the case. Specifically, Interrogatory No. 5 requests information that is not relevant to "any party's claims or defenses" and unlikely to elicit discoverable information. Moreover, such information does not exist in the form requested by Plaintiffs and would require TCFTV to undertake substantial work to create the information in

the form requested.  The Fox Defendants have already identified the employees and agents who were involved in the filming of *Empire* at the JTDC.  *See* Dkt. No. 150, ¶ 1. This information complied with the March 7, 2018 Order's requirement that the Fox Defendants, including 21CF, "produce the responding information to Plaintiffs as relevant to their theory of liability that the Fox Defendants acted jointly."  *See* Dkt. No. 143 at 4.  *See also* Dkt. No. 190.

## REQUESTS FOR PRODUCTION

1.    Produce Variance Reports (*see, e.g.*, TCFTV001942) for each episode of the second season of *Empire*.

**ANSWER:** Objection.  The Fox Defendants object to this Request as it is barred by the Protective Order granted by the Court on August 29, 2018.  *See* Dkt. No. 190.  The Fox Defendants reserve all other objections to this request.

2.    Produce Episode Approved Budgets (*see, e.g.*, TCFTV001943-2019) for each episode of the second season of *Empire*.

**ANSWER:** Objection.  The Fox Defendants object to this Request as it is barred by the Protective Order granted by the Court granted on August 29, 2018.  *See* Dkt. No. 190.  The Fox Defendants reserve all other objections to this request.

3.    Produce documents sufficient to show the net worth of each of the Fox Defendants for each of the previous three years.

**ANSWER:** Objection.  The Fox Defendants object to this Request as it is barred by the Protective Order granted by the Court on August 29, 2018.  *See* Dkt. No. 190.  The Fox Defendants reserve all other objections to this request.

4.    Produce documents sufficient to show yearly profits for each of the Fox Defendants for the previous three years.

**ANSWER:** Objection.  The Fox Defendants object to this Request as it is barred by the Protective Order granted by the Court on August 29, 2018.  *See* Dkt. No. 190.  The Fox Defendants reserve all other objections to this request.

5.      Produce all policies, protocols, standards, guidelines, or codes of conduct that any of the Fox Defendants promulgated, enforced, or suggested for persons employed by or acting as agents of any of the Fox Defendants in the capacities of location manager, location scout, director, site manager, site representative, or similar capacity; and which were applicable to the *Empire* episodes filmed at the JTDC.

**ANSWER:** Objection.  The Fox Defendants object to this Request as vague in that "all policies, protocols, standards, guidelines, or codes of conduct" appear to apply to a broad range of conduct, much of which is not relevant to this case.  In addition the term "similar capacity" is not defined and impossible to apply based on the very different job functions of a "location manager, location scout, director, site manager, site representative".  The Fox Defendants also object to this Request as overly broad and unduly burdensome.  Plaintiffs' request seeks documents unrelated to "any party's claims or defenses" and is not proportional to the needs of the case.  "Policies, protocols, standards, guidelines, or codes of conduct," are not relevant nor reasonably likely to lead the discovery of admissible evidence.  Fox Defendants further object as this information was previously provided in the August 10, 2018 production.  Subject to and without waiving the forgoing objections, the Fox Defendants point Plaintiffs to TCFTV Production Employee Work Rules at TCFTV002177-TCFTV002185.

6.      Produce documents (sic.) the series license agreement(s) for *Empire*.

**ANSWER:** Objection.  The Fox Defendants object to this Request as it is barred by the Protective Order granted by the Court on August 29, 2018.  *See* Dkt. No. 190.  The Fox Defendants reserve all other objections to this request.

7.      Produce documents sufficient to show the series license agreement(s) for *Empire*.

**ANSWER:** Objection.  The Fox Defendants object to this Request as it is barred by the Protective Order granted by the Court on August 29, 2018.  *See* Dkt. No. 190.  The Fox Defendants reserve all other objections to this request.

8. Produce documents sufficient to show the communications between TCFTV and any other entity, including but not limited to FBC, setting forth the financial terms for production and distribution of *Empire*.

**ANSWER:** Objection. The Fox Defendants object to this Request as it is barred by the

Protective Order granted by the Court on August 29, 2018. *See* Dkt. No. 190. The Fox

Defendants reserve all other objections to this request.

9. Produce documents sufficient to show the communications between FBC and any other entity, including but not limited to TCFTV, setting forth the financial terms for production and distribution of *Empire*.

**ANSWER:** Objection. The Fox Defendants object to this Request as it is barred by the

Protective Order granted by the Court on August 29, 2018. *See* Dkt. No. 190. The Fox

Defendants reserve all other objections to this request.

10. Produce documents sufficient to show the financial terms for the production and distribution of *Empire*.

**ANSWER:** Objection. The Fox Defendants object to this Request as it is barred by the

Protective Order granted by the Court on August 29, 2018. *See* Dkt. No. 190. The Fox

Defendants reserve all other objections to this request.

11. Produce all contractual or employment agreements in effect during the filming of *Empire* at the JTDC between any of the Fox Defendants and Lee Daniels, as well as and any other person who served as scout, site manager, site representative, director, producer, or location manager for the *Empire* episodes filmed at the JTDC (or any entities representing any of these persons, *e.g.*, Lee Daniels Entertainment for Lee Daniels).

**ANSWER:** Objection. The Fox Defendants object to this Request as overly broad and unduly

burdensome. Plaintiffs' request seeks documents unrelated to "any party's claims or defenses"

and is not proportional to the needs of the case. Specifically, the request for "all contractual or

employment agreements in effect during the filming of Empire at the JTDC between any of the

Fox Defendants and Lee Daniels" is not proportional to the needs of the case. This Request

demands contractual and employment agreements "in effect" during the months of June, July and

August 2015, regardless of whether the individual was involved in the filming of *Empire* at the

JTDC, scenes from which comprise roughly 13 minutes of each 45 minute episode. This

Request goes well beyond the limits the Court has placed on discovery in this case in that the

contracts requested encompass the entirety of Season 2 or more. Fox Defendants refer Plaintiffs

to the Court's Order dated March 7, 2018, which stated, "discovery for full seasons of Empire is

not proportional to the needs of this case." *See* Dkt. No. 143. *See also* Dkt. No. 190. Subject to

and without waiving the forgoing objections, Fox Defendants point Plaintiffs to TCFTV002131,

TCFTV002134, TCFTV002136, TCFTV002138 and TCFTV002257 – 63.

12.    Produce full recordings of the two *Empire* episodes filmed at the JTDC as they were
       broadcast in the airings identified in TCFTV001941 (*i.e.*, full recordings of each episode
       as aired, including the advertisements or other announcements played during each
       episode).

**ANSWER:** Objection. The Fox Defendants object to this Request as overly broad and unduly

burdensome. Plaintiffs' request seeks documents unrelated to "any party's claims or defenses"

and is not proportional to the needs of the case. Specifically, the "advertisements and other

announcements" do not relate to the remaining claims against the Fox Defendants. Further, there

is no single version of the episodes "as aired," because the audience experience could have and

likely did vary—and with respect to advertisements certainly did vary—from region to region,

station to station, and provider to provider. Subject to and without waiving the forgoing

objections, the Fox Defendants state that they will produce video files reflecting the dramatic

content of Episodes 201 and 202 as originally aired. *See* TCFTV002329 – TCFTV002332.

13.    Produce each agreement reflecting the financial terms pursuant to which each
       advertisement in the *Empire* Episode 201 and 202 airings that are reflected in
       TCFTV001941.

**ANSWER:** Objection. The Fox Defendants object to this Request as it is barred by the Protective

Order granted by the Court on August 29, 2018. See Dkt. No. 190. The Fox Defendants reserve

all other objections to this request.

14.     Produce photographs and metadata for all photographs taken by John Klemke or any
        other agent of the Fox Defendants at the JTDC, including but not limited to the
        photographs including metadata for photographs bates-stamped TCFTV001269-1300 and
        TCFTV001862-80.

**ANSWER:**  The Fox Defendants already have produced or will produce the photographs in their

possession in native form with all metadata. *See* TCFTV002145-TCFTV002176 and

TCFTV002264 – TCFTV002301.

15.     Photographs (including metadata) of incarceration or detention centers in or around
        Joliet, Illinois taken in May or June 2015 during scouting for *Empire* episodes 201 and
        202.

**ANSWER:**  Objection.  The Fox Defendants object to this Request as overly broad and unduly

burdensome.  Plaintiffs' request seeks documents unrelated to "any party's claims or defenses"

and is not proportional to the needs of the case.  Subject to these objections, the Fox Defendants

will produce photographs in their possession, custody, and control that are responsive to this

request. *See* TCFTV002302-TCFTV002328.

16.     Produce the Variance Report and Approved Budget for *Empire* Episode 202.  (Equivalent
        to TCFTV001942 and TCFTV001943-2019 for *Empire* Episode 201.)

**ANSWER:**  TCFTV has produced the document titled Variance Report for Episode 202.  *See*

TCFTV002186-2256.

17.     Produce documents to show the cost of building the "prison" stage at Cinespace referred
        to in the deposition of Brady Breen.

**ANSWER:** Objection.  The Fox Defendants object to this Request as overly broad and unduly

burdensome.  Plaintiffs' request seeks documents unrelated to "any party's claims or defenses"

and is not proportional to the needs of the case.  The "prison" stage at Cinespace was built prior

to the filming of *Empire*'s <u>fourth</u> season, years after the filming at the JTDC, to facilitate the filming of scenes for a <u>season-long</u> story arc "flashing back" to a female lead character's 17 years of imprisonment. The needs for this filming differed considerably from those informing the decisions TCFTV made prior to the filming of Episodes 201 and 202, which involved the short-term, present-day incarceration of a male lead character, when officials of the JTDC advised that filming of those scenes at the JTDC could be accomplished without disruption to the facility's normal operations, and as to which TCFTV signed an agreement precluding them from interfering with the facility's normal operations. The Fox Defendants also refer Plaintiffs to the Court's Order dated March 7, 2018 and the Court's Order dated August 29, 2018, granting the Fox Defendants' Motion for Protective Order. See Dkt. Nos. 143 and 190. The financial information sought is not related to the filming of Episodes 201 and 202. For these reasons and many others, "the cost of building the prison stage at Cinespace" is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

18.    To the extent you have not already done so produce all communications between employees or agents of any of the Fox Defendants, including John Klemke, and any other person relating to the JTDC's potential use as a filming location for *Empire*.

**ANSWER:** The Fox Defendants already have produced all documents in their possession, custody, or control that are responsive to this request.

September 7, 2018                                    /s/ Jeffrey S. Jacobson

                                                    Jeffrey S. Jacobson
                                                    Kelley Drye & Warren LLP
                                                    101 Park Ave
                                                    New York, NY 10178
                                                    212-808-5145
                                                    jjacobson@kelleydrye.com

                                                    Matthew C. Luzadder
                                                    Catherine E. James
                                                    Kelley Drye & Warren LLP
                                                    333 West Wacker Drive

Suite 2600
Chicago, IL 60606
(312) 857-7070
mluzadder@kelleydrye.com
cjames@kelleydrye.com

*Attorneys for the Fox Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2018, a true and correct copy of the foregoing was served to all counsel of record via email.

/s/ Jeffrey S. Jacobson
Jeffrey S. Jacobson
Kelley Drye & Warren LLP
101 Park Ave
New York, NY 10178
212-808-5145
jjacobson@kelleydrye.com

Matthew C. Luzadder
Catherine E. James
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 857-7070
mluzadder@kelleydrye.com
cjames@kelleydrye.com

*Attorneys for the Fox Defendants*

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

T.S. *et al.*,

        Plaintiffs,

v.

Twentieth Century Fox Television *et al.*,

        Defendants.

Case No. 1:16-cv-08303

Hon. Rebecca Pallmeyer

### NOTICE OF DEPOSITION DUCES TECUM

**TO:**    Jeffrey Jacobsen
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
jjacobson@kelleydrye.com

PLEASE TAKE NOTICE that pursuant to the Federal Rules of Civil Procedure, Plaintiffs will take the deposition of **Brady Breen** before a certified court reporter and videographer at Esquire Deposition Services, 20 N Clark St Suite 500, Chicago, IL 60602, on **July 27, 2018 beginning at 9 a.m.** and continuing until completed. The witness must bring to the deposition all documents listed in **Exhibit A** to this Notice. Any and/or all portions of this deposition may be used at the trial of this matter, in accordance with and for any purpose permitted under the Federal Rules of Civil Procedure.

**I CERTIFY** that I emailed a copy of this Notice to Counsel at the addresses indicated above.

DATED: June 25, 2018

/s/ Alexis G. Chardon
Stephen H. Weil – steve@weilchardon.com
Alexis G. Chardon – ali@weilchardon.com
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
(312) 585-7404

*Attorneys for Named Plaintiffs T.S. and Q.B.*



PLAINTIFF'S
EXHIBIT
3
7-27-18r

## EXHIBIT A

### To Subpoena Duces Tecum to Brady Breen

Pursuant to Rules 30 and 34 of the Federal Rules of Civil Procedure, the witness is commanded to bring the following items to the deposition, or to otherwise provide them prior to the deposition to counsel for Plaintiffs:

1. All contractual agreements including but not limited to employment agreements between the witness and the Fox Defendants, their employees, agents, or affiliates, for the period January 1, 2010 to the present.

2. Any documents reflecting policies, protocols, standards, guidelines, or codes of conduct that were promulgated, enforced, or suggested by TCFTV or any affiliated entity, applying to the witness or any other member of the location team working on the *Empire* episodes filmed at the JTDC.

3. A copy of the witness's CV.

4. All documents reviewed by the witness in preparation for the deposition.

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2018, I sent a true and correct copy of the foregoing to the following persons, via email:

Allyson West, allyson.west@cookcountyil.gov

Anthony Zecchin, anthony.zecchin@cookcountyil.gov

T. Andrew Horvat, THorvat@atg.state.il.us

Jeffrey Jacobsen, jjacobson@kelleydrye.com

Matthew C. Luzadder, mluzadder@kelleydrye.com

Catherine James, cjames@kelleydrye.com

Janine N. Fletcher, jfletcher@kelleydrye.com

# Exhibit 4

[Exhibit 4 filed under seal]