UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.S. *et al.*,<br><br>       Plaintiffs.<br><br>     v.<br><br>Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation et al.,<br><br>       Defendants. | Case No. 1:16-cv-08303<br><br>Hon. Rebecca R. Pallmeyer |

**FOX DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM THE FOX DEFENDANTS AND WITNESS BRADY BREEN**

At the last status conference in this matter, held on August 29, 2018, Plaintiffs' counsel said he was "comfortable that [the] Fox [Defendants] has produced everything they have in terms of the merits." Dkt. No. 179 (Aug. 29 Hearing Tr.) at 16:14-17. Plaintiffs' counsel was correct: The Fox Defendants completed merits discovery long ago. That prior hearing concerned an attempt by Plaintiffs to compel non-merits financial discovery that they tried to portray as relevant to their claim for "unjust enrichment," but the Court disagreed with Plaintiffs' position and granted the Fox Defendants' motion for a protective order. *See* Dkt. No. 176. Plaintiffs' instant motion violates that protective order by seeking, yet again, financial information unrelated to the filming of *Empire* at the Cook County Juvenile Temporary Detention Center ("JTDC") in the summer of 2015. The Court should deny Plaintiffs' motion for the reasons stated below.

**Plaintiffs have no need for discovery into costs incurred during filming of *Empire* episodes *other than* the two filmed at the JTDC.** There is no dispute in this matter that Cook County demanded a particular price—$1,500 per day plus reimbursement of staff and equipment costs—for Twentieth Century Fox Television ("TCFTV") to lease access to areas of the JTDC

1

under the supervision of JTDC personnel. TCFTV agreed to pay the specified price. This kind of negotiation happens whenever TCFTV proposes to film on someone else's private property. Occasionally, when TCFTV contracts with a premises owner to film at a location, TCFTV finds it also may need to encroach upon neighboring property (*i.e.*, by placing equipment or lighting there). When that happens, TCFTV offers to compensate the adjoining premises owner. The circumstances in which these payments can be necessary are not limited to the direct use of property, vary widely, and are subject to the discreation of the location manager. B. Breen Dep. 55:21–57:4. For example, TCFTV may pay a neighbor to change the drapes at a nearby property if those adjacent windows will appear in the background of a scene. *Id*. The money used to make these payments is a line-item budget entry referred to as a "neighbor payment."

Detainees at the JTDC were not adjoining property owners. They were occupants of a Cook County facility during the time that Cook County granted TCFTV limited access to the facility. Plaintiffs' requests for information about discretionary payments to neighboring property owners when *Empire* filmed at numerous locations during the production of two full seasons, therefore, have no relevance to this case. The Fox Defendants, moreover, have confirmed to Plaintiffs that no neighbor payments were made respecting *any* location filming for the two episdes of Empire that were partially filmed at the JTDC—Episodes 201 or 202—even though TCFTV filmed at multiple locations for those episodes, not just at the JTDC.

Plaintiffs are correct that the episode *budgets* for Episodes 201 and 202 show line items for neighbor payments. Those budgets, however, were created before TCFTV even knew the locations it would choose for filming. Plaintiffs now are seeking not just budget documents, but instead are seeking line-item *expenses* for episodes other than those filmed at the JTDC. Tracking down every neighbor payment made in connection with the 28 *other* episodes comprising the rest of Seasons One and Two, and the reasons for those payments, presents a burden that is not

2

proportional to the needs of this case. Plaintiffs cannot possibly show that any of these documents are relevant to their claim against the Fox Defendants for "tortious inducement to breach a fiduciary duty" or that they, as former JTDC detainees, are entitled to a discretionary "neighbor payment" under their theory of unjust enrichment. To the contrary, as Plaintiffs' counsel admitted on August 29, discovery on all merits issues is complete.

The Court, therefore, should deny Plaintiffs' motion to compel discovery regarding expenses incurred filming two seasons' worth of episodes of *Empire*.[1]

**Witness Brady Breen fully complied with his *subpoena duces tecum*.** Brady Breen, a contractor to TCFTV who is one of only two witnesses Plaintiffs have deposed in this case, was TCFTV's "Location Manager" when it filmed scenes from Episodes 201 and 202 of *Empire* at the JTDC. Mr. Breen advised Plaintiffs during his deposition that he is a member of the Directors Guild of America ("DGA") and that the DGA promulgates rules and guidelines. All of those documents are available to the public on the internet. *See* https://www.dga.org/Contracts/Creative-Rights.aspx (last visited Oct. 12, 2018). Setting aside the irrelevance of these third-party guidelines, the documents therefore are as accessible to Plaintiffs as they are to Mr. Breen. The Fox Defendants advised Plaintiffs' counsel that Mr. Breen does not have hard copies of these documents, and Plaintiffs' brief does not explain, nor could it, why they need Mr. Breen to do their internet research for them. The Court should deny this part of Plaintiffs' motion to compel, too.

---

[1] Pages 4-5 of Plaintiffs' brief seeks to reargue against the protective order that this Court granted on August 29. The Court should reject those arguments. Plaintiffs are correct that the earlier protective order entered by Judge St. Eve on March 7 order broadly denied Plaintiffs discovery respecting episodes of *Empire* other than 201 and 202. That earlier order is another reason the Court should deny Plaintiffs' instant motion to compel, but it is not the primary reason. As the Fox Defendants repeatedly have explained to Plaintiffs in pre-motion correspondence, their principal objection to this request is its irrelevance.

**The Court should not compel discovery regarding Season Four of *Empire*, filmed two years after the filming at the JTDC.** For the first two episodes of *Empire*'s second season, TCFTV needed a location to film only a few scenes, including outdoor prison yard scenes, depicting a lead male character's pretrial incarceration. The character's incarceration ended in the second episode. Two seasons later, by contrast, *Empire*'s creative team planned a *season-long* (not just two-episode) story arc depicting events during a female lead character's 17-year prison sentence. Because scenes from this storyline would be filmed across many months and primarily in a "cell" or an indoor common area, TCFTV constructed a set for these scenes rather than attempting to gain long-term access to an actual prison site. Plaintiffs are demanding to know the costs of building that set, but this amounts to a comparison of apples to irrelevant alligators.

The price that Cook County quoted to TCFTV was for a few days of access to film scenes for two episodes. Had TCFTV approached Cook County seeking access for months at a time, in order to film scenes for an entire season's worth of episodes, Cook County likely would not have been amenable to that request, or if it had been amenable, it certainly would have charged far more than it did for TCFTV's short-term access. TCFTV's actual costs to film at the JTDC, moreover, ended up exceeding the budgeted costs for those scenes because Cook County's reimbursement demands for staff overtime and use of supplies proved to be considerably higher than expected. The Fox Defendants and Cook County both produced all relevant information about the Fox Defendants' actual payments to the JTDC, and footnote 6 of Plaintiffs' brief admits that "Fox ended up paying more than it anticipated." Incurring costs of that magnitude across an entire season of filming would not have been feasible.

Again, the only relevant issues in this case are whether JTDC officials breached any fiduciary duty to Plaintiffs as JTDC detainees and, if so, whether the Fox Defendants knowingly induced or knowingly participated in any such breach. The legal question at stake is not whether

4

the Fox Defendants knew TCFTV's filming at the JTDC would have an "impact" of some kind on detainees (Pl. Br. at 6, 10), but whether TCFTV *knowingly* induced JTDC officials to breach a fiduciary duty to detainees. Merits discovery on that issue is complete and not a shred of evidence supports Plaintiffs' claims against the Fox Defendants. The cost TCFTV incurred to build a set for a different purpose two years later has nothing whatsoever to do with these issues. The Court should deny Plaintiffs' motion to compel production of those expenses.

**Plaintiffs have no need for discovery into the Fox Defendants' "net worth."** Putting the cart before the horse—not to mention flouting the Court's August 29 protective order—Plaintiffs demand information about the Fox Defendants' "net worth." One of the Fox Defendants, a parent corporation of the other two Fox Defendants, is the publicly-traded 21st Century Fox, Inc., which publishes detailed quarterly and annual financial reports on Forms 10Q and 10K that are freely available to the public. *See also, e.g.,* https://www.21cf.com/investor-relations/ (last visited Oct. 12, 2018).

Plaintiffs are quite a long way from being able to establish that any of the Fox Defendants are liable *at all* in this case, much less liable for punitive damages. Even if Plaintiffs could establish entitlement to punitive damages based on a few days of what Plaintiffs themselves, in their depositions, portrayed as minor inconveniences, the "net worth" of one of the world's largest and most successful media corporations will not be relevant. This Court thus need not examine the raft of district court cases interpreting *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508 (7th Cir. 1992), some of which placed corporate net worth discovery off-limits, and some of which did not. Here, although *Zazu Designs* is instructive, the Fox Defendants' principal objection is the documents' irrelevance. At most, discovery of this type should be deferred unless and until Plaintiffs can demonstrate entitlement to class certification and put forward some semblance of a case on the merits.

5

**The Court should ignore Plaintiffs' self-serving recitation of "tabled discovery."** The Court, in granting the Fox Defendants' Motion for Protective Order, was skeptical of Plaintiffs' theory of "unjust enrichment" recovery. The Fox Defendants understand that the Court may revisit its findings in the future, but unless and until it does, Plaintiffs' discovery demands for all manner of financial information are not merely tabled; they are a dead letter. Similarly, the Court rejected Plaintiffs' demands for the Fox Defendants to produce information about compensation paid to *Empire*'s actors and to corporate executives. Despite that ruling, Plaintiffs served discovery demands seeking information about compensation paid to members of *Empire*'s creative team. Plaintiffs now wish to portray those demands as merely "tabled," too, but those demands also are a dead letter based upon the Court's prior rulings.

Pursuant to the Scheduling Order entered in this matter on April 4, 2018 (Dkt. No. 130), "written fact discovery…shall be completed by 8/31/18. No extensions." As stated by Plaintiffs' counsel on the record at the last hearing, the Fox Defendants "have produced everything they have in terms of the merits." Rather than addressing eleventh-hour discovery battles over irrelevant information, the resources of the Court and the parties would be better spent addressing the now-demonstrable lack fo merit in Plaintiffs' case or whether Plaintiffs can satisfy the requirements of Fed. R. Civ. P. 23(3).

*[Signature Block on Following Page]*

## CONCLUSION

      For the reasons stated above, the Fox Defendants request that the Court deny the relief sought in Plaintiffs' Motion to Compel.

Date: October 15, 2018
                                                Respectfully Submitted,

                                                /s/Jeffrey S. Jacobson

                                                Jeffrey S. Jacobson
                                                Kelley Drye & Warren LLP
                                                101 Park Ave
                                                New York, NY 10178
                                                212-808-5145
                                                jjacobson@kelleydrye.com

                                                Matthew C. Luzadder
                                                Catherine E. James
                                                Kelley Drye & Warren LLP
                                                333 West Wacker Drive
                                                Suite 2600
                                                Chicago, IL 60606
                                                (312) 857-7070
                                                mluzadder@kelleydrye.com
                                                cjames@kelleydrye.com

                                                *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that the foregoing Fox Defendants' Opposition to Plaintiffs' Motion to Compel was served on all counsel of record pursuant to the Court's ECF system on this 15th day of October, 2018.

/s/ Jeffrey S. Jacobson

Jeffrey S. Jacobson
Kelley Drye & Warren LLP
101 Park Ave
New York, NY 10178
212-808-5145
jjacobson@kelleydrye.com

Matthew C. Luzadder
Catherine E. James
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 857-7070
mluzadder@kelleydrye.com
cjames@kelleydrye.com

*Attorneys for Defendants*