**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| T.S. *et al.,* | Case No. 1:16-cv-08303 |
| Plaintiffs, | Honorable Chief Judge |
| v. | Rebecca Pallmeyer |
| Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation et al., | |
| Defendants. | |

**<u>REPLY MEMORANDUM OF LAW OF THE COUNTY OF COOK, ILLINOIS,
AND LEONARD DIXON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ........................................................................................1

ARGUMENT ............................................................................................................2

    I.      Plaintiffs Failed to Establish Their Section 1983 and Breach of Fiduciary
             Duty Claims Related to Their Conditions of Detention. ..........................................2

          A.     Plaintiffs' Section 1983 claims fail because they cannot show that
               the conditions they challenge were "objectively serious." ..........................3

          B.     Plaintiffs Cannot Salvage Their Section 1983 Claims By Changing
               the Standard Applied to Such Claims ..........................................................6

          C.     Dixon Owed Plaintiffs No Duty Under Illinois Law Broader Than
               That Owed Under The Fourteenth Amendment. ..........................................9

    II.     Plaintiffs Have Not Set Forth Any Evidence to Support an IIED Claim,
             Let Alone Evidence That Would Create a Genuine Issue of Material Fact..........11

    III.    Dixon Is Immune From Plaintiffs' Claims Pursuant to the Eleventh
             Amendment, Sovereign Immunity and Qualified Immunity. ...............................12

          A.     Dixon Has Eleventh Amendment immunity...............................................12

          B.     Dixon Is Entitled To Qualified Immunity...................................................13

          C.     Dixon is Entitled to Sovereign Immunity on Plaintiffs' State Law
               Claims ........................................................................................................14

    IV.    Cook County Need Not Indemnify Dixon. ..........................................................14

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.J. v. Kierst*,
  56 F.3d 849 (8th Cir. 1995) ...................................................................8

*Bailey v. City of Chicago*,
  779 F.3d 689 (7th Cir. 2015) ...............................................................11

*Bell v. Wolfish*,
  441 U.S. 520 (1979)...........................................................................3, 6

*Bergren v. City of Milwaukee*,
  811 F.2d 1139 (7th Cir. 1987) ...............................................................8

*Bristow v. Drake Street Inc.*,
  41 F.3d 345 (7th Cir. 1994) .................................................................12

*Budd v. Motley*,
  711 F.3d 840 (7th Cir. 2013) ..............................................................3, 6

*Burton v. Downey*,
  805 F.3d 776 (7th Cir. 2015) ..............................................................3, 6

*Demery v. Arpaio*,
  378 F.3d 1020 (9th Cir. 2004) .............................................................13

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
  489 U.S. 189 (1989)........................................................................ 10-11

*Digiore v. State of Illinois*,
  962 F. Supp. 1064 (N.D. Ill. 1997) .....................................................12

*Edelman v. Jordan*,
  415 U.S. 651 (1974)..............................................................................13

*Fields v. Wharrie*,
  672 F.3d 505 (7th Cir. 2012) ...............................................................14

*Ford Motor Co. v. Dep't of Treasury*,
  323 U.S. 459 (1945)..............................................................................13

*Fox v. Hayes*,
  600 F.3d 819 (7th Cir. 2010) ...............................................................11

*Graham v. Commonwealth Edison Co.*,
742 N.E.2d 858 (Ill. 2000) ..................................................................................11

*Guitron v. Noonan*,
No. 18-cv-1072, 2020 WL 4904073 (E.D. Wis. Aug. 20, 2020)...........................8-9

*Hardeman v. Curran*,
933 F.3d 816 (7th Cir. 2019) ........................................................... *passim*

*Healy v. Vaupel*,
549 N.E.2d 1240 (Ill. 1990) ...............................................................................14

*Hunter v. Bryant*,
502 U.S. 224 (1991)...........................................................................................14

*J.H. v. Mercer County Youth Detention Ctr.*,
930 A.2d 1223 (N.J. Super Ct., App. Div 2007)..............................................9-10

*Jones v. Merchants Nat'l Bank & Trust Co.*,
42 F.3d 1054 (7th Cir. 1994) ...............................................................................5

*Kentucky v. Graham*,
473 U.S. 159 (1985)..................................................................................... 12-13

*Kingsley v. Hendrickson*,
576 U.S. 389 (2015).......................................................................................... 6-7

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) ....................13

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990).............................................................................................5

*Mathlack v. Fleming*,
No. 18-CV-6406, 2019 WL 2866726 (N.D. Ill. July 3, 2019)..............................12

*Mays v. Dart*,
974 F.3d 810 (7th Cir. 2020) ...............................................................................7

*McFarthing v. Colone*,
No. 19 C 0777, 2020 WL 3250740 (N.D. Ill. June 16, 2020) ...............................8

*McGee v. Milwaukee Cty.*,
No. 19-cv-0707-bhl, 2020 WL 7630682 (E.D. Wis. Dec. 22, 2020).....................3

*McGlinchy v. Shell Chemical Co.*,
845 F.2d 802 (9th Cir. 1988) ...............................................................................5

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*,
877 F2d 1333 (7th Cir. 1989) ..............................................................................5

*Mulvania v. Sheriff of Rock Island Cty.*,
    850 F.3d 849 (7th Cir. 2017) ............................................................................... 4, 7

*Nadzhafaliyev v. Hardy*,
    No. 16 C 6844, 2020 WL 7027578 (N.D. Ill. Nov. 30, 2020) .................................. 9

*Palmer v. Marion Cty.*,
    327 F.3d 588 (7th Cir. 2003) ................................................................................. 5

*Parks v. Kownacki*,
    711 N.E.2d 1208 (Ill. App. Ct. 1999) .................................................................. 10

*Parks v. Kownacki*,
    737 N.E.2d 287 (Ill. 2000) .................................................................................... 10

*Reed v. Bowen*,
    769 F. App'x 365 (7th Cir. 2019) .......................................................................... 4

*Richman v. Sheahan*,
    270 F.3d 430 (7th Cir. 2001) ............................................................................... 14

*Robinson v. Sappington*,
    351 F.3d 317 (7th Cir. 2003) ............................................................................... 15

*Robles v. Prince George's Cty.*,
    302 F.3d 262 (4th Cir. 2003) ............................................................................... 13

*Rodriguez v. Cook Cty.*,
    664 F.3d 627 (7th Cir. 2011) ............................................................................... 14

*Schall v. Martin*,
    467 U.S. 253 (1984) .............................................................................................. 8

*T.S. v. Twentieth Century Fox Television*, __ F. Supp. 3d __,
    2020 WL 6870809 (N.D. Ill. Nov. 23, 2020) ................................................. 12, 15

*T.S. v. Twentieth Century Fox Television*,
    334 F.R.D. 518 (N.D. Ill. 2020) ................................................................... *passim*

*U.S. v. Martin*,
    No. 99 C 1130, 2000 WL 1029188 (N.D. Ill. July 26, 2000) .................................. 6

*Vollmert v. Wisconsin Dep't of Transp.*,
    197 F.3d 293 (7th Cir. 1999) ................................................................................. 4

*Youngman v. Kouri*,
    No. 16-cv-1005, 2016 WL 3965894 (C.D. Ill. July 19, 2016) ............................... 15

**STATUTES, RULES & REGULATIONS**

42 U.S.C. § 1983 ................................................................................... *passim*

Fed. R. Civ. P. 56(e) ........................................................................................ 5

Fed. R. Evid. 702(a) ........................................................................................ 4

705 Ill. Comp. Stat. 505/8(d) (2012) ............................................................ 14

730 Ill. Comp. Stat. 110/15(4) (2012) .......................................................... 15

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 46 cmt. J ................................................ 12

U.S. Const., Eleventh Amendment ......................................................... 12, 13

U.S. Const., Fourteenth Amendment ................................................ *passim*

## SUMMARY OF ARGUMENT

Because this is a conditions-of-confinement case, the Court must grant summary judgment in favor of Cook County and Cook County Juvenile Temporary Detention Center ("JTDC") Superintendent Leonard Dixon (together, the "Government Defendants") unless "the [confinement] conditions in question are or were objectively serious." *T.S. v. Twentieth Century Fox Television*, 334 F.R.D. 518, 529 (N.D. Ill. 2020), *quoting Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J., concurring). Yet, although the "objectively serious" test is the law both of this Circuit and of this case, Plaintiffs' Consolidated Response in Opposition to Summary Judgment ("Opp. Br.," Dkt. No. 421-1) barely mentioned the test and made little attempt to satisfy it. Nor can they do so. The minor complaints that they summarize on pages 20-21 of their brief are not serious at all, much less "far beyond inconvenience." *Hardeman*, 933 F.3d at 824. No court has ever held that detainees may receive money damages for such small matters.

The minor deprivations Plaintiffs complain about cannot be the basis of a state law claim, either. Dixon has never disputed that he owes JTDC detainees a duty. But regardless of whether or not that duty is "fiduciary" in nature—Dixon denies this as a legal matter, and no Illinois case, state or federal, has held that detention officials are fiduciaries for detainees—the scope of any state law duty is no different from, or broader than, the Fourteenth Amendment constitutional duty not to inflict "punishment" on juvenile or pretrial detainees, which Dixon did not violate. Plaintiffs' brief also barely attempted to defend their intentional infliction of emotional distress ("IIED") claim, which they do not support with an iota of medical or lay testimony.

The Court, therefore, should grant summary judgment for the Government Defendants on all outstanding claims.

**ARGUMENT**

I. **Plaintiffs Failed to Establish Their Section 1983 and Breach of Fiduciary Duty Claims Related to Their Conditions of Detention.**

Plaintiffs enumerate the detention conditions they are complaining about on pages 20-21 of their Opposition Brief:

- T.S. had school on his pod on one day.

- T.S. had large muscle exercise on his pod on one day.

- T.S. missed one Free Write class.

- T.S. had one visit with his mother in a classroom rather than the visiting area.

- Q.B.'s grandmother was not allowed to visit him on one occasion.

- Q.B. had large muscle exercise on his pod on one day.

- H.C. did not leave his pod for one 24-hour period during filming.

- H.C. had school on his pod on one day.

- H.C. missed one Free Write class.

- H.C. had large muscle exercise on his pod on one day.

- All three plaintiffs claim they would have had "extra" recreation on school break days, beyond the hour of scheduled large muscle exercise, but did not receive it.

The Government Defendants dispute that some of these issues occurred at all and, for some that did occur, dispute that the issues arose because of the presence of a film crew.[1] Regardless, Plaintiffs' having experienced these minor issues does not entitle them to receive money damages. The issues are not "objectively serious," singly or collectively. Neither the colorful and inaccurate "lockdown" rhetoric Plaintiffs use in their brief, nor their misplaced reliance on the testimony of asserted experts, alters that fact. Rather, recognizing the impossibility of satisfying the controlling "objectively serious" standard, Plaintiffs invent and ask this Court to set a different standard, under which *any* imposition may establish a *prima facie* "punishment" claim. That is not the law. The law is the *Hardeman* "objectively serious" test.

---

[1] The Government Defendants submit that Plaintiffs have introduced no evidence sufficient to create a material issue of disputed fact that T.S. had "less privacy" in a single visit with his mother (*see* Dkt. No. 397 at 5-6). As for the claims that H.C. was confined to his residential pod for one 24-hour period (*see id.* at 39), and that Q.B. did not receive one visit with his grandmother (*see* Opening Br. at 14), the Government Defendants dispute that the presence of a film crew at the JTDC caused those conditions, as discussed in the Government Defendants' briefing in opposition to class certification. *See* Dkt. No. 397 at 16 (H.C.), Dkt. No. 248 at 1, 16 (Q.B.)

### (a)    Plaintiffs' Section 1983 claims fail because they cannot show that the conditions they challenge were "objectively serious."

All parties agree that the Court must judge Plaintiffs' federal claims under the standards of the Fourteenth Amendment, "which prohibits the imposition of any punishment at all," and not the Eighth Amendment's "cruel and unusual" punishment standard.  Opp. Br. at 30.  This Court's opinion denying class certification explained in detail that even under a Fourteenth Amendment analysis, "there is 'a *de minimis* level of imposition with which the Constitution is not concerned.'" *T.S.*, 334 F.R.D. at 529 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979)).  Another way of stating that only "objectively serious" conditions are actionable is that an alleged combination of conditions must have had "a mutually enforcing effect that produces the deprivation of a single, identifiable human need,' such as food or exercise."  *Id.* (quoting *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013)).  *See also, e.g.*, *Hardeman*, 933 F.3d at 824 (challenged conditions must be "far beyond inconvenience"); *Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015) (to meet the test, detainees must have been deprived of "*essential* food, medical care, or sanitation").  Numerous other courts have similarly ruled that challenged conditions must be "deprivations of life's necessities."  *See* Government Defendants' Opening Brief ("Opening Br.," Dkt No. 408-1) at 17; *McGee v. Milwaukee Cty.*, No. 19-cv-0707-bhl, 2020 WL 7630682, at *2 (E.D. Wis. Dec. 22, 2020) (authorizing claim to proceed where plaintiff was denied water).

Plaintiffs' claims fall far short of this constitutional standard.  The Seventh Circuit, in fact, repeatedly has rejected claims challenging conditions more serious than those Plaintiffs put at issue.  *See* Opening Br. at 26.  For example, although Plaintiffs assert claims based upon having had one day of large muscle activity provided in their pod common areas rather than elsewhere, Plaintiffs' brief ignored the three Seventh Circuit cases the Government Defendants cited in their Opening Brief.  In all of those cases, the Seventh Circuit rejecting denial-of-recreation claims that were considerably longer in duration and severity than Plaintiffs'.  *See id.*

Plaintiffs have never been able to, and still cannot, cite a case from any jurisdiction awarding damages based on issues as minor as theirs. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849 (7th Cir. 2017), which Plaintiffs have cited repeatedly, is not analogous.[2]  Plaintiffs also cite the unpublished, non-precedential *Reed v. Bowen*, 769 F. App'x 365 (7th Cir. 2019).  *See* Opp. Br. at 30-31.  *Reed*, however, is not analogous, either.  The plaintiff in *Reed* claimed that a detention center served him only unhealthy and undercooked food, he had to sleep on a mattress on the floor for 51 days because the jail kept three detainees in a two-person cell, he was only given a few hours a day outside a cramped cell that was rarely cleaned, and he "developed an intense itching on his face from the cell's crowded and dirty conditions." *Id.* at 368.  Plaintiffs here allege nothing similar.  *See T.S.*, 334 F.R.D. at 529 ("[a] court should consider the severity and duration of the conditions experienced by pretrial detainees").

Plaintiffs' response to these shortcomings is to point to the purported expert opinions of Earl Dunlap (Dixon's predecessor at the JTDC, who remained in an oversight role there during the months when filming occurred), and psychiatrist Dr. Louis Kraus.  But these opinions do not "help [this Court] to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), because specialized knowledge is not needed to ascertain whether the issues plaintiffs identify were non-actionable trivialities or transgressions of constitutional magnitude.  Even were this a proper subject for expert testimony, moreover, the testimony Plaintiffs' experts do offer does not support Plaintiffs' claims that the conditions they challenge were unconstitutional.

Courts must consider the "weight" of expert evidence at the summary judgment stage. *Vollmert v. Wisconsin Dep't of Transp.*, 197 F.3d 293, 298 (7th Cir. 1999).  "An expert who

---

[2]  The parties have discussed *Mulvania* many times in this case.  *See, e.g.*, Dkt. No. 397 at 25; Opening Br. at 18.  The plaintiffs in *Mulvania* all "were required to remove their underwear" in the presence of corrections officers.  850 F.3d at 855.  The plaintiffs thus alleged a "credible dignitary harm," and the Seventh Circuit expressed concern that if it did not countenance claims when dignitary harm of this type was at issue, "a jail could presumably set forth security reasons to require detainees to remain naked throughout their detention or other such unseemly measures." *Id.* at 858.  Although Plaintiffs have attempted to portray *Mulvania* as authorizing Fourteenth Amendment claims for minor issues, nothing in the case supports that characterization.

4

supplies nothing but a bottom-line supplies nothing of value to the judicial process," and his "naked opinion[]," unsupported by the record, does not preclude summary judgment. *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F2d 1333, 1339 (7th Cir. 1989). Here, the exaggerated representations that Plaintiffs' counsel made to Mr. Dunlap and Dr. Kraus, and upon which they based their opinions (*see* Dunlap Report, Pl.'s Ex. 4, ¶ 25; Kraus Report, Pl.'s Ex. 10, ¶ 32), did not match the conditions that Plaintiffs actually still challenge, in volume, intensity, or duration. *See Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1057 (7th Cir. 1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.").

Mr. Dunlap and Dr. Kraus submitted their reports nearly two years ago, while Plaintiffs were pursuing a broader set of issues that the evidence ultimately did not support. They thus mostly opine on then-alleged issues that Plaintiffs later admitted never occurred or that were not experienced by Plaintiffs themselves. *See Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.") (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).[3] Once the expert reports are shorn of these untrue or overstated claims, they lose any reliable reasoning or logical conclusions. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (even where an expert has provided a rationale for his conclusions, summary judgment will still be appropriate if the expert's reasoning is "hopelessly flawed.").

Dr. Kraus rendered his purported medical opinions without having examined or spoken to any of the Plaintiffs, and he and Mr. Dunlap did not issue revised reports to match the actual evidence. Additionally, the reports make a number of vague and imprecise statements about the

---

[3] By way of example, in coming to his conclusions that filming harmed JTDC residents because they were "confined to their pods for excessive amounts of time" (p. 10, header "b"), Mr. Dunlap relied on Plaintiffs' counsel's *representations* to him that, during filming, the JTDC fully eliminated outdoor recreation and off-pod programs that were otherwise available when school was out of session (Pl.'s Ex. 4, ¶ 25). As reflected in Plaintiffs' current claims, the evidence did not support these assumptions.

nature of the alleged conditions at the JTDC during filming. *See, e.g.*, Dunlap Report, Pl.'s Ex. 4, ¶ 63 ("I understand that additional security measures were undertaken because of Empire. However, whatever measures were taken, it was still riskier to have those 200 people in the facility than to not have them in the facility.") Opinions that use vague and equivocal language are of no use to this Court in evaluating summary judgment. *See U.S. v. Martin*, No. 99 C 1130, 2000 WL 1029188, at *4-5 (N.D. Ill. July 26, 2000) (giving no weight to an expert opinion that made statements "too equivocal to establish an issue for trial"). Dr. Kraus's and Mr. Dunlap's reports, therefore, do not help Plaintiffs establish that their claims are "objectively serious."

> **(b)** **Plaintiffs Cannot Salvage Their Section 1983 Claims by Changing the Standard Applied to Such Claims.**

Even though this Court adopted and applied *Hardeman*'s "objectively serious," "far beyond inconvenience" standard in its opinion denying class certification, and even though *Hardeman*, *Bell*, *Burton*, *Budd*, and numerous District Court decisions all rejected claims where plaintiffs fell short of that standard, Plaintiffs barely try to argue that their claims clear the *Hardeman* bar. Rather, Plaintiffs' brief amounts to a request that the Court reconsider the standard they must meet, disputing "that a Fourteenth Amendment due process claim regarding conditions of confinement requires some threshold showing that the conditions are sufficiently serious." Opp. Br. at 36. Plaintiffs argue, instead, that they can sue over trivial inconveniences so long as they purportedly can show that the inconveniences served no legitimate objective. Plaintiffs' position is untenable, however, and none of the cases they cite support it.

*Hardeman* followed the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (in excessive force cases, juries must determine whether the force used was *objectively* unreasonable without considering the officers' state of mind). Plaintiffs argue that "*Kingsley* forbids" holding that "only certain 'categories' of conditions" (*i.e.*, those that are "objectively serious") "can implicate a detainee's constitutional rights." Opp. Br. at 31, 32. But that is exactly wrong, as the Seventh Circuit held in *Hardeman* while discussing *Kingsley* at length: *Kingsley*

requires looking objectively at alleged conditions-of-confinement claims, but one purpose of that objective inquiry is still to determine whether "the severity and duration of the conditions" at issue "were so significant" as to have violated the Constitution. *Hardeman*, 933 F.3d at 823-24.[4]

Plaintiffs appear to argue that the Seventh Circuit softened the *Hardeman* "objectively serious" test in *Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020). It did not. *Mays* involved an outbreak of COVID-19 at the Cook County Jail. The inmates who sued in *Mays* were seeking to keep themselves safe from a potentially deadly virus, and they contended that the Sheriff was not doing enough to protect them. *See id.* at 814. As *Mays* involved an issue of life or death, there was no question in the case that the challenged conditions—in particular, the alleged lack of social distancing—were "objectively serious." *Mays*, therefore, does not support Plaintiffs' contention that they may sue over non-serious conditions of confinement.

Neither does *Mulvania*, which focused on those plaintiffs' important dignity interests and their rights not to have to strip naked in front of corrections officers and to remain indefinitely without underwear. The Seventh Circuit did not mention *Mulvania* in the later-decided *Hardeman*, and that omission undermines Plaintiffs' argument that the no-underwear claims at issue in *Mulvania* were somehow exempt from inquiries into whether challenged conditions were "objectively serious," rose "far beyond inconvenience," and curtailed "necessary activities of life" severely enough and over a long enough time to rise to a constitutional level.

---

[4] Only if "the conditions in question are or were objectively serious" would a court move on to consider the other two elements of the *Hardeman* test, one of which is whether "the defendant's actions were objectively unreasonable—that is, not rationally related to a legitimate governmental objective or excessive in relation to that purpose." *T.S.*, 334 F.R.D. at 529. Plaintiffs contend that Dixon's stated motives for permitting a television show to film at the JTDC were pretextual. Even though Plaintiffs admit that "[p]rominent people regularly come to the JTDC" (Opp. Br. at 22), they assert that Dixon invented reasons to permit *Empire* to film at the JTDC, ostensibly so that he could take pictures of himself with *Empire*'s stars and demand a $50 "director's chair" with the *Empire* logo on it. Plaintiffs have put forward no actual evidence that Dixon disbelieved his stated reasons for permitting the filming, however, and as the Government Defendants showed in their Opening Brief (at 26), mere conjecture about the legitimacy of a governmental objective does not suffice in opposition to a motion for summary judgment.

When the court in *Hardeman* used those phrases to describe what is prohibited under the Due Process Clause of the Fourteenth Amendment, it was defining "punishment." It is punishment of pre-trial detainees, after all, that is prohibited. *Hardeman*, 933 F.3d at 822. By reading these descriptions out of the standard for establishing a Section 1983 claim, Plaintiffs effectively urge this Court to read the word "punishment" out of the jurisprudence. But Plaintiffs' proposed standard is not the law. The law is Hardeman's "objectively serious" test.[5]

Plaintiffs have also failed to satisfy another element of the *Hardeman* test—that Dixon "acted purposefully, knowingly, or recklessly with respect to the consequences of his actions." *T.S.*, 334 F.R.D. at 529, *quoting Hardeman*, 933 F.3d at 827. Importantly, negligence—even gross negligence—does not create a Due Process violation. *Hardeman*, 933 F.3d at 827 (Sykes, J., concurring). And because Plaintiffs do not allege that Dixon acted purposefully or knowingly, the operative question, which answers itself in this case, is whether the defendant "knew or should have known of a serious risk . . . and failed to respond reasonably," *McFarthing v. Colone*, No. 19 C 0777, 2020 WL 3250740, at *8 (N.D. Ill. June 16, 2020) (Pallmeyer, J.).

Plaintiffs may not like Dixon's choice to have allowed a film crew into the JTDC, but the facts that they present in support of an alleged improper motive—that Dixon took pictures with some of the actors and that he requested and received a $50 "director's chair" with the *Empire* logo as a memento—do not support a conclusion that knowingly courted serious risks of harm to detainees. *See, e.g.*, *Guitron v. Noonan*, No. 18-cv-1072, 2020 WL 4904073, at *7 (E.D. Wis.

---

[5] The Government Defendants do not dispute that a condition might be "objectively serious" for a juvenile detainee but not for an adult pretrial detainee. None of the cases Plaintiffs cite, however, suggest that the conditions at issue have constitutional implications even for minors. *See* Opp. Br. at 34. *Schall v. Martin*, 467 U.S. 253, 269 (1984), and *Bergren v. City of Milwaukee*, 811 F.2d 1139, 1143 (7th Cir. 1987), hold only that "restrictions and conditions of confinement" imposed on juveniles cannot rise to the level of punishment. That point is not in dispute. In *A.J. v. Kierst*, 56 F.3d 849, 855 (8th Cir. 1995), a juvenile detention facility "lodged as many as three youths in a room" that was "approximately 69 feet in size," requiring some detainees to sleep on mattresses on the floor. But, in *A.J.*, even those facts, in the court's view—obviously involving more restrictive conditions than those at issue in this case—"d[id] not constitute deprivations of such magnitude as to violate plaintiffs' due process rights." *Id.*

Aug. 20, 2020) (granting summary judgment where plaintiffs presented no evidence that officer violated a jail policy "with reckless disregard"); *Cf. Nadzhafaliyev v. Hardy*, No. 16 C 6844, 2020 WL 7027578, at \*7 (N.D. Ill. Nov. 30, 2020) (Pallmeyer, J.) (a jury could find a culpable state of mind only because officers were on notice of the plaintiff's objectively serious back injury and had authority to provide him a bed accommodation but failed to do so).

### (c) Dixon Owed Plaintiffs No Duty Under Illinois Law Broader Than That Owed Under the Fourteenth Amendment.

Plaintiffs' claims are no more tenable under state law. Plaintiffs' breach of fiduciary duty claim against Dixon proceeds from the false and unsupported premise that Dixon owed them a *broader* duty under state law than that imposed by the United States Constitution. No Illinois case supports that argument, however, and there is case law rejecting it. *See* Opening Br. at 27.[6]

Judge St. Eve's decision to deny the Government Defendants' motion to dismiss Plaintiffs' fiduciary claim, Dkt. No. 73 at 24-25, held only that "Plaintiffs have stated sufficient factual detail raising a reasonable inference that Superintendent Dixon . . . [is] liable." Judge St. Eve did not conclude that Dixon's duty definitely was fiduciary in nature. Neither did this Court in its denial of class certification. *See T.S.*, 334 F.R.D. at 538 n.14. No case from any state, in fact, has held juvenile or adult detention center officials to be fiduciaries for detainees. To the contrary, as the Government Defendants showed in their Opening Brief (at 28), numerous courts have rejected the fiduciary argument. Plaintiffs' brief ignores those cases. Plaintiffs instead cite three other cases (*see* Opp. Br at 39), but two involved only federal constitutional claims and said nothing about a potential fiduciary relationship under state law. The third, *J.H. v. Mercer County Youth Detention Ctr.*, 930 A.2d 1223 (N.J. Super Ct., App. Div 2007), involved alleged sexual abuse of a teenage

---

[6] In denying class certification, this Court noted that "Defendants d[id] not appear to challenge" that Dixon's duty was fiduciary. *T.S.*, 334 F.R.D. at 538. That question did not arise at the certification stage because whether or Dixon owed a fiduciary duty is a matter common to all detainees. Throughout this litigation, however, the Government Defendants consistently have denied that detention center officials owe a fiduciary duty to detainees. *See, e.g*, Dkt. No. 48 at 12-13, Dkt. No. 64 at 6-8.

inmate by a guard. Even in that context, the court did not find a fiduciary relationship. Plaintiffs, in sum, have zero legal support for their claim that Dixon was their fiduciary.

The two prior decisions in this case that contemplated the *potential* for Dixon to have owed a fiduciary duty both cited *Parks v. Kownacki*, 711 N.E.2d 1208 (Ill. App. Ct. 1999). In *Parks*, a parish priest repeatedly raped a girl who had volunteered to perform service at the church. The girl's parents entrusted her to the priest's care, and she moved into the rectory, where the sexual abuse continued. When she became pregnant, the priest violently assaulted her, inflicting life-threatening injuries, to induce an abortion. *See id.* at 1210-11. The Illinois Court of Appeals held that when the priest took the girl into his home and "exercise[d] all the control over her that a legal guardian would," he assumed a duty not to harm her. *See id.* at 1216. Importantly, however, even on those truly awful facts that bear no relationship whatsoever to the allegations Plaintiffs make in this case, the Illinois Supreme Court still did not endorse the lower court's conclusion that the priest's duty was fiduciary in nature. *See Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000) (refusing to address the issue because the plaintiff had not raised it below).

Dixon does not dispute that his duty to Plaintiffs, whether pursuant to the Fourteenth Amendment or state tort law, included "assum[ing] some responsibility" for their "safety and general well-being." *T.S.*, 334 F.R.D. at 538 n.14 (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)); *see also* Dkt. No. 73 at 24-25 (agreeing with Plaintiffs that Dixon "assum[ed] some responsibility for the juvenile detainees' safety and well-being"). In *DeShaney*, the Supreme Court held it to be possible that "by voluntarily undertaking to protect [the plaintiff] against a danger it concededly played no part in creating, the State acquired a duty under state tort law to provide him with adequate protection against that danger." 489 U.S. at 201-02. The Court ultimately did not decide that issue, however, and Plaintiffs are therefore wrong to characterize *DeShaney* as having held that the plaintiff in that case *did* have a state tort claim. *See* Opp. Br. at 40. There was, in any event, no "danger" to Plaintiffs from the minor deprivations

they challenge. Even if Plaintiffs can sue Dixon on a state law theory, therefore, as opposed to a Fourteenth Amendment claim enforceable under 42 U.S.C. § 1983, they still must show that the conditions they are suing over endangered their safety. For the reasons set forth above, the conditions Plaintiffs challenge do not meet that threshold.

## II.    Plaintiffs Have Not Set Forth Any Evidence to Support an IIED Claim, Let Alone Evidence That Would Create a Genuine Issue of Material Fact.

As Judge St. Eve explained in the opinion denying dismissal of Plaintiffs' IIED claim, "[t]o recover on a claim for IIED, Illinois law requires a plaintiff to prove: (1) that the conduct was extreme and outrageous, (2) that the actor intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would inflict such distress, and, (3) that the conduct in fact caused severe emotional distress." Dkt. No. 73 at 25-26 (quoting *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015)). Plaintiffs still have not presented a shred of evidence establishing any of those elements.

Plaintiffs argue in a conclusory fashion that Dixon was an authority figure. *See* Opp. Br. at 44. Although Illinois courts do consider the power that the defendant has over the plaintiff in determining the outrageousness of the conduct, the power dynamic is merely a *factor* in that determination and is not alone dispositive. *See Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866-67 (Ill. 2000); *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010). Here, Plaintiffs have failed to present any evidence that Dixon's authorizing a film crew to use some areas of the facility and adopting temporary operational changes to facilitate this was an abuse of power so extreme that it "went beyond all possible bounds of decency and is regarded as intolerable in a civilized community." Dkt. No. 73 at 27. Plaintiffs also do not even try to argue that Dixon *intended* to cause Plaintiffs severe distress or that there was a "high probability" that his conduct would do so.

Plaintiffs also make no attempt to prove that they in fact suffered "severe emotional distress," despite that being an element of the claim. They admit that they neither sought nor

11

received medical treatment for any emotional injury. They appear to argue that they need not prove severe distress by noting that courts "tend to merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the plaintiff's emotional distress, in effect requiring more evidence of outrageousness the weaker the evidence of distress." Opp. Br. at 44 (quoting *Bristow v. Drake Street Inc.*, 41 F.3d 345, 350 (7th Cir. 1994)). In the very same paragraph, however, the Seventh Circuit called this conflation "inelegant[]" and noted that "[s]evere distress [still] must be proved." 41 F.3d at 350 (quoting Restatement (Second) of Torts § 46 cmt. J). The absence of severe distress is independently fatal to Plaintiffs' IIED claim.

## III. Dixon Is Immune From Plaintiffs' Claims Pursuant to the Eleventh Amendment, Sovereign Immunity and Qualified Immunity.

### (a) Dixon Has Eleventh Amendment immunity.

When this Court granted summary judgment in favor of Chief Judge Evans, Plaintiffs agreed that they were suing the Chief Judge in his official capacity. *See T.S. v. Twentieth Century Fox Television*, __ F. Supp. 3d __, 2020 WL 6870809, at *2 (N.D. Ill. Nov. 23, 2020). The parties stipulated that Dixon was the Chief Judge's "final decision-maker." *Id.* In *Mathlack v. Fleming*, No. 18-CV-6406, 2019 WL 2866726, at *4 (N.D. Ill. July 3, 2019), the court held that both the Chief Judge *and* Dixon had Eleventh Amendment immunity. In an attempt to avoid that result here, Plaintiffs assert that they sued Dixon in his "individual capacity," not an official capacity. Opp. Br. at 45. Nothing in the Second Amended Complaint ("SAC") supports this, however, and Plaintiffs' allegations against Dixon in the SAC concern official actions he took as Superintendent (*i.e.*, to authorize both the filming and the changes to operations giving rise to Plaintiffs' claims). Suits against officials are deemed *not* to be in a personal capacity where "state funds will be tapped," such that the state is "the real party in interest." *Digiore v. State of Illinois*, 962 F. Supp. 1064, 1078 (N.D. Ill. 1997). *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity").

12

Here, Plaintiff prays for the Court to issue a "judgment ordering an accounting and disgorgement of enrichment realized by [Dixon]." SAC *Ad Damnum* ¶ (b). It was the government, however, not Dixon that received compensation for allowing the film crew to access the JTDC. This makes the government the "substantial party in interest." *See Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (claims seeking restitution from the state treasury are barred by the Eleventh Amendment); *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) (claim seeking refund of tax payment from state officers responsible for collecting it barred by the Eleventh Amendment because the state was the "substantial party in interest").

### (b) Dixon Is Entitled to Qualified Immunity.

Plaintiffs have no real response to Dixon's qualified immunity arguments. They state in conclusory fashion that Dixon did not "carry out a legitimate penological objective at the JTDC" (Opp. Br. at 46-47), but Dixon testified to his objectives. Plaintiffs may disagree that Dixon's decision furthered his stated objectives, but Plaintiffs do not identify any precedent "clearly establishing" that Dixon could not authorize a film crew to access the JTDC and make minor operational changes to facilitate it. Instead, they cite *Demery v. Arpaio*, 378 F.3d 1020 (9th Cir. 2004) and *Robles v. Prince George's Cty.*, 302 F.3d 262 (4th Cir. 2003). In *Demery*, a sheriff installed cameras to give the public live feeds of pretrial detainees in their cells, which the Ninth Circuit found to be "greater by several orders of magnitude than the intrusion inherent in incarceration," and that its very purpose was purely punitive. *Demery*, 378 F.3d at 1030-31. In *Robles*, 302 F.3d at 269-70, a police officer handcuffed a prisoner to a light pole and left him alone there, ostensibly as a "prank." No analogy is possible between those actions and Dixon's actions in this case, and Plaintiffs failed to support with any evidence their claim that Dixon "imposed the deprivations at issue for entirely illegitimate reasons." Opp. Br. at 47. Dixon, therefore, is entitled to qualified immunity. *See, e.g.*, *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (qualified immunity

applies even if a defendant's judgment was mistaken, so long as it was not unreasonable under the circumstances).

### (c)     Dixon is Entitled to Sovereign Immunity on Plaintiffs' State Law Claims.

Dixon must be considered a state employee, not a Cook County employee, for the same reason the Court held Chief Judge Evans to be performing a state function. Plaintiffs do not seriously dispute this point. *See* Opp. Br. at 48. If the Court finds that Dixon breached no constitutional duty, it should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against Dixon. *Rodriguez v. Cook Cty.*, 664 F.3d 627 (7th Cir. 2011), may *permit* the exercise of jurisdiction, but in *Fields v. Wharrie*, 672 F.3d 505, 518 (7th Cir. 2012), the Seventh Circuit distinguished *Rodriguez* and suggested that a district court "may wish to decline to exercise its supplemental jurisdiction." Illinois law provides that the Court of Claims has exclusive jurisdiction over all claims against the State of Illinois sounding in tort. *Healy v. Vaupel*, 549 N.E.2d 1240, 1246 (Ill. 1990) (citing 705 Ill. Comp. Stat. 505/8(d) (2012)). That court is well positioned to address Plaintiffs' tort claims, if they have any.[7]

## IV.     Cook County Need Not Indemnify Dixon.

The Court's decision that the Chief Judge's oversight of the JTDC is a state function rather than a county function should doom Plaintiffs' claim that Cook County must indemnify Dixon. That alleged indemnity obligation is Plaintiffs' only basis for keeping Cook County in this case— they concede that the Court should dismiss their *Monell* claim (*see* Opp. Br. at 50 n.10)—but Cook County has no such obligation. Plaintiffs' indemnification claim asserts that Dixon was a county employee. *See* SAC ¶¶ 139-40. The Court has established that he was not.

---

[7] Even if the Court otherwise denies the motion for summary judgment, it should decline to exercise supplemental jurisdiction over the state law claims against Dixon. *See Richman v. Sheahan*, 270 F.3d 430, 442 (7th Cir. 2001) (state law wrongful death claim should be dismissed against Sheriff's Officers on sovereign immunity grounds even when factually related Section 1983 claims proceed in federal court).

JTDC salaries, including Dixon's, are reimbursed by the State.  *See* 730 Ill. Comp. Stat. 110/15(4).  Even if JTDC salaries were county expenses, *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003), does *not* require a county to indemnify whenever "the county funds the office of [a] state official."  Opp. Br. at 49.  In *Robinson*, the Seventh Circuit discussed the *Carver* trilogy of cases collectively holding that "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer," including sheriffs, "in an official capacity."  *Robinson*, 351 F.3d at 339.  The Seventh Circuit held that the principles in *Carver* required a county to pay expenses and judgments "emanating from the workings" of a county court, finding that this responsibility arises from the county's "responsibility for maintaining" the offices involved.  *Id.  Robinson* has been construed as doing nothing more than extending *Carver* beyond sheriffs "to cases in which a plaintiff sues an Illinois judge in his official capacity," but still based on the concept that the county maintains the office.  *Youngman v. Kouri*, No. 16-cv-1005, 2016 WL 3965894, at *2 (C.D. Ill. July 19, 2016).  In this case, however, the Court already has held that Cook County had no control whatsoever over "how the Chief Judge"—to whom Dixon reported—"operates and administers the facility."  *T.S.*, 2020 WL 6870809, at *5.  None of the factors supporting county indemnification in *Carver* and *Robinson*, therefore, exist here.

## CONCLUSION

For the above reasons, and those stated in the Government Defendants' Opening Brief, the Government Defendants request that the Court grant their Motion for Summary Judgment.

Date: March 11, 2021      Respectfully Submitted,

By: */s/ Francis J. Catania*         
    Francis J. Catania
    Danielle Mikhail
    Cook County State's Attorney's Office
    50 West Washington, Room 500
    Chicago, IL 60602
    312-603-3373
    francis.catania@cookcountyil.gov
    danielle.mikhail@cookcountyil.gov

*Attorneys for Defendant the County of Cook, Illinois*

By: */s/ Lyle K. Henretty*         
    Lyle K. Henretty
    Patrick D. Morris
    Cook County State's Attorney
    69 W Washington, Suite 2030
    Chicago, IL  60602
    312-603-1434
    patrick.morris@cookcountyil.gov
    lyle.henretty@cookcountyil.gov

*Attorneys for Defendant Leonard Dixon*

## CERTIFICATE OF SERVICE

The undersigned, at attorney, certifies that the foregoing Government Defendants' Reply Memorandum of Law in Support of its Motion for Summary Judgment was served on all counsel of record pursuant to the Court's ECF system on this 11th day of March 2021.

/s/ Francis J. Catania