**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| T.S. *et al.*, | Case No. 1:16-cv-08303 |
| Plaintiffs, | Honorable Chief Judge |
| v. | Rebecca Pallmeyer |
| Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation et al., | |
| Defendants. | |

**FOX DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

    I.    Plaintiffs Have Not Supported their Inducement-to-Breach Claim Because They Have Failed to Prove "Active Misbehavior" .................... 2

        A.    The Fox Defendants Engaged In No "Active Misbehavior" ................... 2

        B.    The Court's Prior Rulings Requiring "Active Misbehavior" Were Not "Dicta" ............................................................................................ 4

        C.    Constructive Notice of a Potential Fiduciary Breach Does Not Suffice ................................................................................................... 4

        D.    Even if Constructive Notice Sufficed, the Fox Defendants Had No Such Notice .......................................................................................... 7

    II.    The Failure of Plaintiffs' Inducement-to-Breach Claim Requires Summary Judgment Against Their Unjust Enrichment Claim Because There Is No Stand-Alone Claim for Unjust Enrichment Under Illinois Law ......................... 10

    CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

*3DGS, LLC v. Chai Trust Co.*,
  No. 19 CV 7524, 2020 WL 7353406 (N.D. Ill. Dec. 15, 2020) ...............................................10

*In re Bell & Beckwith*,
  838 F.2d 844 (6th Cir. 1988) ................................................................................................12

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ...............................................................................2, 10, 11, 12

*Borsellino v. Goldman Sachs Group, Inc.*,
  477 F.3d 502 (7th Cir. 2007) ........................................................................................ *passim*

*In re Canopy Fin., Inc.*,
  No. 12-cv-4646, 2015 WL 3505010 (N.D. Ill. June 2, 2015)....................................................6

*Chabraja v. Martwick*,
  618 N.E.2d 800 (Ill. App. Ct. 1993) .......................................................................................3

*Conant v. Karris*,
  520 N.E.2d 757 (Ill. Ct. App. 1987) .......................................................................................5

*Crawford Supply Grp., Inc. v. Bank of Am., N.A.*,
  829 F. Supp. 2d 636 (N.D. Ill. 2011) (Pallmeyer, J.).............................................................3, 7

*Creek v. Village of Westhaven*,
  144 F.3d 441 (7th Cir. 1998) ................................................................................................4

*Hammel v. Eau Galle Cheese Factory*,
  407 F.3d 852 (7th Cir. 2005) ...............................................................................................14

*Keilman v. Sam's West, Inc.*,
  No. 17-cv-3683, 2021 WL 463068 (N.D. Ill. Feb. 9, 2021)....................................................14

*Lawrence v. Clepper*,
  865 P.2d 1150 (Mont. 1993).................................................................................................12

*People ex rel. Daley v. Warren Motors, Inc.*,
  500 N.E.2d 22 (Ill. 1986) ......................................................................................................9

*PLB Invs. LLC v. Heartland Bank and Tr. Co.*,
  No. 20 C 1023, 2021 WL 492901 (N.D. Ill. Feb. 9, 2021).......................................................6

*Raquet v. Allstate Corp.*,
 __ F. Supp.3d __, 2020 WL 6825694 (N.D. Ill. Nov. 20, 2020) ............................................11

*T.S. v. Twentieth Century Fox Television*,
 334 F.R.D. 519 (N.D. Ill. 2020) ................................................................................... *passim*

*TCF Mortgage Corp. v. Gelber Holding Co.*,
 No. 91-cv-2125, 1991 WL 127587 (N.D. Ill. July 3, 1991) ....................................11

*Time Savers, Inc. v. LaSalle Bank, N.A.*,
 863 N.E.2d 1156 (Ill. App. Ct. 2007) ...........................................................................6

*Village of Wheeling v. Stavros*,
 411 N.E.2d 1067 (Ill. Ct. App. 1980) ...........................................................................5

*Williams v. Electronics Games, Inc. v. Garrity*,
 366 F.3d 569 (7th Cir. 2004) ..........................................................................................11

### Statutes, Rules & Regulations

760 ILCS 65/1, *et seq.* (Fiduciary Obligation Act) ........................................................6, 9

760 ILCS 65/2 ..........................................................................................................................6

760 ILCS 65/5 ..........................................................................................................................6

760 ILCS 65/6 ..........................................................................................................................6

760 ILCS 65/7 ..........................................................................................................................6

760 ILCS 65/8 ..........................................................................................................................6

760 ILCS 65/9 ..........................................................................................................................6

### Other Authorities

Restatement (Third) of Restitution and Unjust Enrichment § 43, comment g (Am.
 Law. Inst. 2011) ..................................................................................................................5

## INTRODUCTION

Early in this case, in response to a motion for clarification filed by Defendants Twentieth Century Fox Television ("20th TV"), Fox Broadcasting Company, and the former Twenty-First Century Fox, Inc. (the "Fox Defendants"), the Court confirmed the legal standard Plaintiffs must satisfy on their claim for inducement to breach a fiduciary duty. Citing the controlling Seventh Circuit case of *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007), the Court held that Plaintiffs must prove "active misbehavior" by the Fox Defendants. That is what the Court ruled in October 2017, *see* Dkt. No. 117, and the Court reiterated this standard when it denied class certification. "Liability requires a showing of some 'active misbehavior on the part of [the Fox Defendants].'" *T.S. v. Twentieth Century Fox Television*, 334 F.R.D. 519, 539 (N.D. Ill. 2020) (brackets in original). In other words, if Cook County Juvenile Temporary Detention Center ("JTDC") Superintendent Leonard Dixon breached a fiduciary duty to detainees, the Fox Defendants cannot be liable for inducing that breach unless they *knowingly* induced it. The Court made clear in these decisions that lower standards like constructive notice do not suffice.

Plaintiffs' Consolidated Response In Opposition to Defendants' Motions for Summary Judgment ("Opp. Br.," Dkt. No. 421-1), lays bare Plaintiffs' inability to establish any active misbehavior or knowing inducement of a breach by the Fox Defendants. That failure requires summary judgment in the Fox Defendants' favor. Unable to satisfy the controlling legal standard, Plaintiffs instead make the peculiar argument that the Court's repeated prior decisions on this point were mere "dicta." Opp. Br. at 51. Of course, they were no such thing. When Plaintiffs telegraphed at the outset of the case that they wanted a lesser standard to apply, based on what they would argue the Fox Defendants "should" have known, the Fox Defendants sought and received judgments from the Court rejecting that approach: Plaintiffs cannot prevail without proving active misbehavior. The Court ruled correctly on this issue, and its decisions were not dicta.

Plaintiffs' inducement-to-breach claim against the Fox Defendants thus fails by every measure.  First, as the Government Defendants' separate brief demonstrates, Plaintiffs were not "punished" on the days that *Empire* filmed at the JTDC; they are suing over minor issues that do not support a constitutional claim.  Second, Dixon's duty to Plaintiffs was not fiduciary in nature, and even if it was, Dixon did not breach his duty.  Third, specifically as to the Fox Defendants, even if Dixon owed and breached a fiduciary duty, the Fox Defendants had no actual notice of the breach and did not knowingly induce it.  Further, even if mere constructive notice of a fiduciary breach suffices for an inducement claim—which the Court correctly held it does not—Plaintiffs' claim still falls short because they adduced no evidence of constructive notice either.

Likely because Plaintiffs are aware that their inducement-to-breach claim has neither legal nor evidentiary support on any theory whatsoever, Plaintiffs' brief asks the Court to let them move forward with a stand-alone claim of "unjust enrichment."  But this, too, runs afoul of controlling Seventh Circuit law and the law of the case.  As the Court held in denying class certification, "under Illinois law, there is no stand-alone claim for unjust enrichment."  *T.S.*, 334 F.R.D. at 540, *citing Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019).  Plaintiffs' unjust enrichment claim cannot survive on its own once their inducement claim fails.  The Court, therefore, should grant summary judgment to the Fox Defendants on this claim, too.

## ARGUMENT

## I.    Plaintiffs Have Not Supported their Inducement-to-Breach Claim Because They Have Failed to Prove "Active Misbehavior"

### A.    *The Fox Defendants Engaged In No "Active Misbehavior"*

Plaintiffs have known about the "active misbehavior" standard since before discovery began.  The Court issued a clarifying ruling on knowing inducement in 2017 (Dkt. No. 117) precisely because the Fox Defendants accurately predicted this moment in the case.  They therefore asked the Court to confirm that "[t]he mere fact that the Fox Defendants paid for access to the

second and third floors of the JTDC, without knowingly participating in or inducing JTDC officials to impose restrictions on detainees that were detrimental to the detainees' health or safety, cannot suffice." Dkt. No. 113 at 9. The Court agreed with the Fox Defendants, citing *Borsellino* and *Chabraja v. Martwick*, 618 N.E.2d 800, 803 (Ill. App. Ct. 1993), and holding that these cases require Plaintiffs to prove knowing inducement and active misbehavior. *See* Dkt. No 117 at 1, 3. The Court reconfirmed this standard when it denied class certification, and the Court has ruled similarly in other cases, too, going back a decade. *See T.S.*, 334 F.R.D. at 539; *Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, 829 F. Supp. 2d 636, 642 (N.D. Ill. 2011) (Pallmeyer, J.).

Although Plaintiffs acknowledge this controlling legal standard and the Court's decisions imposing it—*see* Opp. Br. at 51 ("'Active misbehavior' is certainly required for Plaintiffs' inducement claim")—they have fallen far short of proving active misbehavior by the Fox Defendants. The Fox Defendants' Opening Brief (at 29-31) demonstrated the absence of evidence that the Fox Defendants had any knowledge of the JTDC's classroom usage, visitation procedures, or recreation schedules that form the basis of Plaintiffs' conditions-of-detention claims. Plaintiffs have refuted none of this. On the issue of active misbehavior, Plaintiffs' brief makes only a false and unsupported conclusory statement that "Fox was on ample notice that its filming would impose massive disruptions." Opp. Br. at 3. That bare assertion, for which Plaintiffs adduced no evidence after four years of discovery, does not suffice to defeat a motion for summary judgment.

As a lone evidentiary cite, Plaintiffs reference an email that 20th TV's Location Manager sent on June 12, 2015, "formally requesting permission to film in the [JTDC]." *See* Opp. Br. at 61 (citing "Breen [deposition] Ex. 7", which is Pls.' Ex. 25). The email contemplated three days of filming, a prep day, a clean-up day, and "a return filming request for 1 or 2 days somewhere within the second week of July." Pls.' Ex. 25. Nothing in the email supports a claim of active misbehavior, and Plaintiffs' brief cites no other evidence in support of their claim.

### B. The Court's Prior Rulings Requiring "Active Misbehavior" Were Not "Dicta"

Because the Fox Defendants engaged in no active misbehavior, and Plaintiffs have no evidence to the contrary, Plaintiffs try to dismiss the Court's clear and repeated holdings that they must prove active misbehavior as mere "dicta." Opp. Br. at 51; *see also id.* at 56, 58 (arguing that they need not prove "active misbehavior"). This is not true. The Court decided the controlling legal standard at junctures in the case—the Fox Defendants' motion to dismiss and the class certification stage—when the parties disputed the standard. The Court resolved the dispute. Requiring proof of active misbehavior was "an integral part of [the Court's] decision" and therefore was "not dicta." *Creek v. Village of Westhaven*, 144 F.3d 441, 446 (7th Cir. 1998). Once an issue is "litigated and decided, that should be the end of the matter." *Id.* at 445. The Court's clear holdings preclude Plaintiffs' attempt to move the goalposts and contend they can prevail without having proved any knowing misconduct by the Fox Defendants.

### C. Constructive Notice of a Potential Fiduciary Breach Does Not Suffice

In *Borsellino*, 477 F.3d at 508-09, the Seventh Circuit held an inducement plaintiff must prove that the alleged inducer *both* "knowingly participated in or induced the breach"—the active misbehavior element—and *also* "knowingly accepted the benefits resulting from [a] breach." Stated another way, merely accepting the benefits of a breach, without having knowingly caused the breach or knowingly participated in it, is not enough. Every prior opinion from this Court on the inducement issue relied upon *Borsellino* and repeated this legal standard.

Plaintiffs' brief never mentions *Borsellino*. Yet, without citing the case by name, Plaintiffs contend that what *Borsellino* explicitly stated as an "and"—knowing inducement of a breach *plus* acceptance of benefits from it—really should be an "or." Even had the Court not twice already rejected this contention, Plaintiffs' arguments to the contrary all are based on cases they have cited before and which still do not support their position.

Citing *Village of Wheeling v. Stavros*, 411 N.E.2d 1067 (Ill. Ct. App. 1980), Plaintiffs argue that acceptance of benefits from a fiduciary's breach should suffice by itself to support a claim for damages against an alleged inducer. Plaintiffs made this same argument, based on the same case, and using the same words (the "disjunctive articulation of this rule was not grammatical happenstance"), in opposing the Fox Defendants' motion to dismiss. *Compare* Dkt. No. 97 at 5 to Opp. Br. at 52. The Court disagreed with it in 2017, *see* Dkt. No. 117 at 3, and disagreed again in denying class certification. Plaintiffs' argument was wrong then and is still wrong now. Although the Seventh Circuit relied on more recent Illinois state court precedent than *Stavros* when deciding *Borsellino*, nothing in *Stavros* contradicts *Borsellino*. The defendant in *Stavros* "was a willing participant in [the] scheme" who "colluded with the fiduciary in committing the breach," and knowingly induced the breach. *Stavros*, 411 N.E.2d at 1069. In other words, that defendant, too, knowingly colluded and engaged in what *Borsellino* called "active misbehavior."

*Conant v. Karris*, 520 N.E.2d 757 (Ill. Ct. App. 1987), which involved a real estate broker's collusion with his brother to steal a business opportunity from one of the broker's clients, is not at odds with *Borsellino*, either, and does not support Plaintiffs' argument that an alleged inducer can be liable without active misbehavior. In *Conant*, the brother knew the broker was stealing his client's opportunity but proceeded with the scheme anyway. *See id.* at 789. Citing *Stavros*, the *Conant* court held that this knowing participation in the broker's breach sufficed to establish the brother's liability. That element of knowing participation is missing in this case, and Plaintiffs are wrong to argue that "[n]o active participation was necessary in *Conant*." Opp. Br. at 53.

The Restatement (Third) of Restitution and Unjust Enrichment § 43, comment g (Am. Law. Inst. 2011), which Plaintiffs also cite, *agrees* that actual knowledge is required before a party can be liable in restitution. Even when an unjust enrichment claim for restitution claim is available— which it is not in this case, as discussed below—it requires "notice of the fiduciary's breach of

duty," or "active[] participat[ion] in another's breach of fiduciary duty" before liability may attach. Opp. Br. at 52-53 (citing Restatement). Plaintiffs seem to acknowledge this when they state that an alleged inducer must "know[] sufficient facts" to "afford notice" that a fiduciary acted in "violation" of his duty. *Id.* at 54. Plaintiffs, however, established no such knowledge.

Notably, too, the Illinois Fiduciary Obligation Act ("FOA"), 760 ILCS 65/1, *et seq.*, provides that "[a] person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary." 760 ILCS 65/2. The FOA deals mainly with financial institutions, which itself is further evidence that a detention administrator's duty to a detainee is constitutional and not fiduciary in nature under Illinois law. In setting liability standards, the FOA states repeatedly that those who deal with fiduciaries—here the Fox Defendants in speaking with Dixon and other members of the JTDC's staff, assuming they were indeed fiduciaries—may rely on the fiduciaries' representations unless they have "actual knowledge" that the fiduciary is breaching his or her obligations. *See* 760 ILCS 65/5, 65/6, 65/7, 65/8, 65/9.

In cases involving dealings with fiduciaries, courts routinely dismiss claims when plaintiffs cannot plead actual knowledge. *See, e.g.*, *PLB Invs. LLC v. Heartland Bank and Tr. Co.*, No. 20 C 1023, 2021 WL 492901, at *5 (N.D. Ill. Feb. 9, 2021) (alleged inquiry notice or what a defendant "should have known from the circumstances does not suffice; Plaintiffs must instead allege facts that give rise to the inference that [the defendant] actually knew of [the fiduciary's] misconduct."); *In re Canopy Fin., Inc.*, No. 12-cv-4646, 2015 WL 3505010, at *7 (N.D. Ill. June 2, 2015) ("[A]nalysis of claims of aiding and abetting fraud and breach of fiduciary duty has consistently distinguished actual knowledge and participation from the 'should have known' state of mind, and has just as consistently held that the latter mindset is not actionable."); *Time Savers, Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156, 1168 (Ill. App. Ct. 2007) (no aiding-and-abetting liability unless the

defendant "knowingly and substantially assist[ed] the principal violation"). Alleged constructive knowledge did not suffice in any of these cases. In *Crawford Supply Group*, 829 F. Supp.2d at 644, this Court denied summary judgment in an inducement-to-breach claim only because those plaintiffs adduced evidence of "actual knowledge" of and "knowing participation" in the alleged breach. Plaintiffs here, however, found no such evidence because the Fox Defendants had no involvement, nor any ability to be involved, in JTDC operations.

### D.    Even if Constructive Notice Sufficed, the Fox Defendants Had No Such Notice

Even were Illinois law, and the law of this case, not clear that Plaintiffs must prove actual knowledge of a breach and active misbehavior to cause it, not just constructive knowledge, Plaintiffs' claims still would fail. The Fox Defendants had no contact with detainees and no role in setting or modifying operational procedures at the JTDC. *See, e.g.*, Defs.' Ex. 3 49:24-50:19. The cast and crew of *Empire* followed the directions given to them by JTDC staff and depended upon JTDC staff to advise if their presence was causing any disruption.

Of course, the presence of a film crew in a detention center is an unusual occurrence, and 20th TV personnel recognized that the proposed filming likely would have some effect on normal operations. *See* Plaintiffs' Response to Statement of Undisputed Material Facts ("PRSUMF") ¶¶ 85, 87-88. For this reason, 20th TV signed an agreement in which it promised to obey all staff directions in order to avoid any disruption. *See id.* ¶¶ 9, 13-14, 17. The Location Agreement gave JTDC staff the contractual right to order an end to any 20th TV activities that were impacting operations. *See* Pls.' Ex. 30. Whenever the JTDC exercised that right, 20th TV yielded. Plaintiffs concede, for example, that when 20th TV asked to film in the JTDC's medical area, the JTDC refused, even though the Location Agreement originally contemplated access to that area. *See* Opp. Br. at 33 n.4. Because the JTDC did not approve, no filming occurred in the medical area.

20th TV had good reason to expect that if JTDC staff saw any other potential adverse effects, they would advise 20th TV so that 20th TV could avoid any disruption to JTDC operations. *See* Defs.' Ex. 3 36:8-38:1 (testimony by 20th TV's location scout that he deferred to Dixon to determine if filming would negatively impact operations). Critically, however, Plaintiffs also concede that the JTDC never told 20th TV that its presence or activities were having any negative impact on operations or detainees. *See* Defs.' Ex. 5 96:21-98:7; Defs.' Ex. 6 82:19-23, 86:12-15; PRSUMF ¶¶ 81-82, 91 (objecting only that "'told' is vague," which it is not). The JTDC personnel who interfaced with 20th TV personnel never said that 20th TV's presence was harming detainees because they did not believe it was. *See id.* Plaintiffs therefore have no basis to claim even constructive knowledge by 20th TV that its presence was impacting detainees at all, much less doing so to a degree constituting a breach of fiduciary duty by JTDC staff.

Plaintiffs' Opposition Brief, for the first time in this long-running case, argues that the Fox Defendants "could have filmed at night" in order to reduce impacts on detainees. Opp. Br. at 11. Plaintiffs never pursued any discovery on this subject and never asked any JTDC or 20th TV witnesses if night filming would have been feasible either for 20th TV or for the JTDC. On this issue, too, pursuant to the Location Agreement, it was incumbent upon JTDC personnel to advise 20th TV if daytime filming was impacting operations. *See* Pls.' Ex. 30.

Plaintiffs nevertheless contend that 20th TV had constructive notice of a breach by virtue of a pre-filming tour that 20th TV's location scout took of certain areas of the JTDC.[1] The tour,

---

[1] Plaintiffs rest much of their opposition on seven purported "additional facts" regarding this pre-filming tour. *See* Plaintiffs' Statement of Additional Facts ("PSAF," Dkt. No. 421-3) ¶¶ 18-24. Nothing that Plaintiffs assert, however, supports a claim that the Fox Defendants engaged in active misbehavior or knowingly induced or knowingly participated in a fiduciary breach. Much of what Plaintiffs assert in their PSAF, moreover, is demonstrably wrong. The scout, for example, did not "expect[] the JTDC's school to be in session" during filming. Resp. to PSAF ¶ 19. JTDC personnel told the scout that the JTDC's in-house school would be *out* of session during the June dates during which 20th TV originally proposed to film (which it was). *Id.* No JTDC staff member testified to having told any 20th TV personnel that school would be in session during the July filming dates. *See id.*

however, gave rise to no such notice. Plaintiffs do not and cannot contend that the scout spoke to detainees or possessed any experience that would cause him to doubt the assurances of facility staff that they could accommodate filming with no disruptions to the JTDC's mission. *See* PRSUMF ¶¶ 84-86; Defs.' Ex. 3 26:11-27:4, 34:24-35:13; 36:8-38:1. Plaintiffs have nothing to support their evidence-free leap that 20th TV *must* have known Dixon could not authorize its presence without "mistreating" detainees and breaching his duty to them. Opp. Br. at 59.

Apparently, therefore, Plaintiffs seek to impose a duty on the Fox Defendants to have *investigated* JTDC operations. Plaintiffs contend—contrary to the Illinois FOA and all the case law discussed above—that 20th TV could not rely on JTDC staff to protect the interests of detainees or to invoke their rights under the Location Agreement to order a halt to any disruptions in detainee operations. How 20th TV could have acted on this supposed duty to investigate, however, when it had no contact with detainees and no ability to observe (much less control) detainee conditions, is a question Plaintiffs' brief does not answer.

Plaintiffs cite *People ex rel. Daley v. Warren Motors, Inc.*, 500 N.E.2d 22 (Ill. 1986)— another case they have raised before in arguing against a "knowing inducement" standard—and attempt, unavailingly, to analogize the Fox Defendants to the defendant in *Warren Motors*. That defendant paid off a city official to get the taxes on his property reduced. He did so without providing "any documents or evidence in support of a [tax] reduction, nor did he appear at any hearing to present the claim that the assessment should be reduced." *Id.* at 28. Under those circumstances, the court held, the property owner "would have to have been invincibly innocent not to know that the reductions were improper." *Id.*

Unlike the defendant in *Warren Motors*, whom the court presumed to have known that paying off a city official is not a proper path to obtaining a tax reduction, 20th TV justifiably relied on JTDC officials to protect the best interests of JTDC detainees. *See* Defs.' Ex. 3 36:8-38:1, 49:7-

17. 20th TV had no ability to speak to detainees or otherwise investigate detainee treatment at the JTDC. Despite this, Plaintiffs' brief simply asserts—citing nothing, because they have nothing to cite—that "Fox had every reason to know that its filming at the JTDC would disrupt its operations." Opp. Br. at 54. That bare assertion is no defense to summary judgment, and Plaintiffs offer nothing beyond their unsupported conclusion.

Plaintiffs therefore have not demonstrated constructive notice, even if constructive notice suffices (which it does not). The Fox Defendants conceded at the outset of this litigation that 20th TV personnel knew JTDC detainees and the *Empire* team could not occupy the same spaces at the same time. *See, e.g.*, PRSUMF ¶ 62. That, however, is all they knew about detainee operations. The Court, therefore, should grant summary judgment to the Fox Defendants on Plaintiffs' claim that the Fox Defendants induced Dixon to breach a fiduciary duty to detainees.

## II. The Failure of Plaintiffs' Inducement-to-Breach Claim Requires Summary Judgment Against Their Unjust Enrichment Claim Because There Is No Stand-Alone Claim for Unjust Enrichment Under Illinois Law

*Benson* had not been decided when the Court ruled on the Fox Defendants' motion to dismiss in 2017, but by the time the Court denied class certification, the Seventh Circuit had made clear in *Benson* that Illinois law does not permit stand-alone claims for unjust enrichment. *See T.S.*, 334 F.R.D. at 540, *citing Benson*, 944 F.3d at 648. Post-*Benson*, although unjust enrichment is "a condition that may be brought about by unlawful or improper conduct as defined by law," it is not a stand-alone basis for liability or damages. *Benson*, 944 F.3d at 648. "[T]he choice of remedy does not change the state of mind Plaintiffs must prove to succeed on their underlying claim against the Fox Defendants." *T.S.*, 334 F.R.D. at 540.

In this case, on this claim, the standard is "active misbehavior," period, and Plaintiffs have not met that standard. Asserting unjust enrichment does not allow Plaintiffs to sue based on some lower threshold of proof. Other courts have held similarly, post-*Benson*. *See, e.g.*, *3DGS, LLC v.*

*Chai Trust Co.*, No. 19 CV 7524, 2020 WL 7353406, at *10 (N.D. Ill. Dec. 15, 2020) (post-*Benson*, "there is no standalone claim for unjust enrichment in Illinois); *Raquet v. Allstate Corp.*, __ F. Supp.3d __, 2020 WL 6825694, at *11 (N.D. Ill. Nov. 20, 2020) (same; "[b]ecause no other standalone claim exists here, Plaintiff's unjust enrichment claim necessarily also fails").[2]

Pre-*Benson*, as Plaintiffs' brief (at 50 n.11) notes, the Fox Defendants asserted other valid reasons why Plaintiffs' unjust enrichment claim would fail even if Illinois law permitted such a claim. *Benson* put the issue to rest succinctly: Plaintiffs' unjust enrichment claim cannot proceed once their inducement-to-breach claim fails. Just as Plaintiffs ask the Court to disregard the controlling *Borsellino* decision, however, Plaintiffs ask the Court to ignore the controlling *Benson* case, too. But *Benson* dictates the outcome here, as the Court already recognized.

Even if *Benson* did not suffice as a reason to terminate Plaintiffs' unjust enrichment claim, the claim fails even by the incorrect legal standard Plaintiffs urge the Court to follow. Plaintiffs contend that the Fox Defendants were unjustly enriched by "unlawful conduct," but the alleged "unlawful conduct" supposedly is "Dixon's breach of fiduciary duty." Opp. Br. at 55-56. This argument thus leads Plaintiffs to the same dead end they reached in their inducement-to-breach claim because they found no evidence that the Fox Defendants "accepted benefits with notice of Dixon's unlawful conduct." *Id.* Without such knowledge, Plaintiffs cannot claim that the Fox Defendants themselves did anything unlawful that could give rise to a restitutionary claim.

---

[2]    In a footnote, Plaintiffs cite *Williams v. Electronics Games, Inc. v. Garrity*, 366 F.3d 569 (7th Cir. 2004), correctly noting that "restitution is available for unlawful conduct" of types other than breach of fiduciary duty. Opp. Br. at 55 n.12. In *Garrity*, the Seventh Circuit endorsed restitution as a remedy for commercial bribery, *see* 366 F.3d at 576, but did not allow restitution in the absence of an underlying tort, as Plaintiffs argue here. In the other case Plaintiffs cited in the footnote, *TCF Mortgage Corp. v. Gelber Holding Co.*, No. 91-cv-2125, 1991 WL 127587, at *2 (N.D. Ill. July 3, 1991), a district judge believed that unjust enrichment could be a stand-alone cause of action in Illinois, but that now is incompatible with the Seventh Circuit's recent holding in *Benson*. In any event, *TCF Mortgage* involved knowingly improper conduct by a banker, losing money in securities trades when it knew that money was never properly in its possession. *See id.* at *3. The case would not support Plaintiffs' claim here even had *Benson* not overruled it.

Plaintiffs' brief does not distinguish between their arguments for inducement to breach and those for unjust enrichment, and they retreat to the same "constructive notice" theory for both. *See* Opp. Br. at 56-57. Plaintiffs dispute that they have the burden to prove "that Fox *actually knew* that a breach had occurred," despite this Court's repeated rulings that they must do so. *Id.* (emphasis in original). *Benson* controls this point under Illinois law, and even the out-of-state authority Plaintiffs cite does not support a "constructive notice" standard.

In *In re Bell & Beckwith*, 838 F.2d 844 (6th Cir. 1988), an attorney had *actual* notice that a client likely was paying legal fees with fraudulently obtained funds. The court held this actual notice imposed a duty on the attorney to inquire further. *See id.* at 849. The case is inapposite because, here, Plaintiffs can point to no actual notice. As for the other case Plaintiffs cite, *Lawrence v. Clepper*, 865 P.2d 1150 (Mont. 1993), their reliance on that case is inexplicable. *Lawrence* holds, exactly as the Fox Defendants contend here, that absent actual notice of a third party's unlawful behavior, there can be no liability.

Unable to cite a single instance of the Fox Defendants requiring the JTDC to alter its operations, or learning that the JTDC changed any detainee-facing procedures at all on account of 20th TV's presence, Plaintiffs' assert without support that the Fox Defendants "either knew or should have known that Dixon was breaching his duties to the youth at the JTDC in order to provide Fox with a filming venue." Opp. Br. at 63. That innuendo is not enough to prove constructive notice of a breach of fiduciary duty by Dixon, even if constructive notice sufficed (which, again, it does not). The best that Plaintiffs' brief could do was assert general knowledge by the Fox Defendants that "filming impacts persons nearby the filming." *Id.* at 59.

At the class certification stage, when the Court generally had to accept Plaintiffs' allegations as true, the Court stated that *if* the Fox Defendants "offered to pay wages and overtime for JTDC staff on the condition that the JTDC's administrators would change the facility's normal

operations," and *if* "the Fox Defendants continued filming despite the alleged obviousness that the JTDC 'had been placed on lockdown,'" this might "tend to show knowing inducement or participation." *T.S.*, 334 F.R.D. at 539-40.[3] Plaintiffs' brief cited that language from the Court's decision in their opposition brief (*see* Opp. Br. at 59), but it does not help them. This is the summary judgment phase of the case, and Plaintiffs have failed to prove any such "offer," any request by 20th TV to "change the facility's normal operations," or any "obviousness" to the Fox Defendants that the JTDC was on "lockdown" (which it never was).

Doubling down on their argument that 20th TV could not rely on JTDC officials to tell them if filming was causing disruptions, Plaintiffs refer to the 20th TV scout who toured the JTDC as a "highly-regarded" individual who possessed a general "understand[ing of] the effects film crews have on the operation of a working building." Opp. Br. at 59-60. They then stretch from that "general understanding" to a claim that the scout should have known that the JTDC could not permit filming without harming detainees. The scout was not a detention center administrator, however, and those whom the government charged with running the JTDC—who are also "highly regarded"—agreed that it was their responsibility to ensure filming did not negatively affect detainees. *See* Defs.' Ex. 5 92:22-97:18. Plaintiffs have no support for their conclusory assertion that it should have been "obvious" to the scout, or to any other 20th TV personnel who spoke to JTDC staff about the possibility of filming, that these professionals' judgment was wrong. *Id.*

Plaintiffs admit that the JTDC's detainees were "out of [the Fox Defendants'] sight" during filming. Opp. Br. at 61. Again citing nothing, however, Plaintiffs claim that "Fox actually knew about many of" the minor deprivations now at issue in this motion, "or should have strongly

---

[3]     Plaintiffs' brief states that 20th TV sometimes made so-called "neighbor payments" when filming *Empire* scenes in other locations. The record shows, however, that these were not payments for "inconvenience," but rather were payments for the right to encroach on neighboring property or to compensate a neighbor for making requested aesthetic changes to his or her property. *See* Pls.' Corrected Ex. 15 55:21-56:19.

suspected them." Opp. Br. at 62. Ostensibly, Plaintiffs argue that the Fox Defendants should have sensed Dixon was misleading them about impacts on detainees "for no apparent reason other than an obvious desire to be around the action of filming of famous people by a famous director employed by a major film studio." *Id.* As 20th TV's Location Manager testified, a desire to meet stars when they are out on location "comes with the territory." Defs.' Ex. 4 116:3-17. Or, Plaintiffs contend, perhaps the Fox Defendants should have been suspicious of Dixon because he asked for a "director's chair" with the *Empire* logo on it—at item that a 20th TV location manager had made for Dixon at a cost of fifty dollars. *See id.* at 63. These personal attacks on Dixon are all Plaintiffs have to say after the broad discovery they sought yielded absolutely no evidence of misconduct by the Fox Defendants. They do not suffice to overcome summary judgment.

Plaintiffs claim that they "*will* put forth proof" that Fox's advertising revenue obtained from filming is "attribut[able] to the breach." Opp. Br. at 43 (emphasis added). Summary judgment, however, "is not a dress rehearsal or a practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Keilman v. Sam's West, Inc.*, No. 17-cv-3683, 2021 WL 463068, at *2 (N.D. Ill. Feb. 9, 2021), *quoting Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005). Plaintiffs have nothing to "put up" to prove their claims.

Plaintiffs were not harmed in this case. Even if the minor issues Plaintiffs complain about amounted to actionable harm (which they did not), they have not established that the Fox Defendants engaged in active misbehavior, knowingly induced JTDC officials to inflict that harm, or knowingly participated in its infliction. That is the standard of proof Plaintiffs had to meet in order to prevail on a claim for inducement to breach a fiduciary duty, and Plaintiffs have fallen short of it. Illinois law does not recognize a stand-alone claim for unjust enrichment, and Plaintiffs

have not proved that claim even by the incorrect standard they posit for it. The Court should grant summary judgment in the Fox Defendants' favor on all remaining claims against them.

<u>CONCLUSION</u>

For the above reasons, and those stated in the Fox Defendants' Opening Brief, the Fox Defendants respectfully request that the Court grant their Motion for Summary Judgment.

Dated: March 11, 2021                              Respectfully submitted,


<u>/s/ Jeffrey S. Jacobson</u>

Jeffrey S. Jacobson
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036-2714
212-248-3191
jeffrey.jacobson@faegredrinker.com


Justin O. Kay
Faegre Drinker Biddle & Reath LLP
191 N. Wacker Dr. Suite 3700
Chicago, IL 60606
312-569-1000
justin.kay@faegredrinker.com
*Attorneys for the Fox Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served on all counsel of record pursuant to the Court's ECF system on this 11th day of March, 2021.

/s/ *Justin O. Kay*
Justin O. Kay