UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.S., Q.B., and H.C., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE COUNTY OF COOK, ILLINOIS, and LEONARD DIXON, <br><br> Defendants. | No. 16 C 8303 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiffs T.S., Q.B., and H.C. were pretrial detainees at the Cook County Juvenile Temporary Detention Center ("JTDC") in 2015. During three short intervals that summer, Twentieth Century Fox and other Fox entities (collectively, "Fox Defendants") filmed scenes for the television show *Empire* at the JTDC. Plaintiffs allege that *Empire* filming disrupted the normal operations of the JTDC in ways that harmed them and other juvenile detainees. Of relevance here, they further argue that Defendant Leonard Dixon, the Superintendent of the JTDC, and Cook County, Illinois (collectively, "County Defendants"), owed them a fiduciary duty and breached it by permitting the filming. The court previously granted the Fox Defendants' motion for summary judgment on state law claims against them. *T.S. v. Twentieth Century Fox Television*, No. 16 C 8303, 2021 WL 2376017, at *20–23 (N.D. Ill. June 10, 2021). The court also granted in part and denied in part the County Defendants' motion for summary judgment, and granted in part and denied in part the Plaintiffs' motion for class certification. *Id*. at *13–20, 24. The County Defendants have now moved for a certificate of appealability under 28 U.S.C. § 1292(b). For the reasons below, the motion [435] is granted in part and denied in part.

**BACKGROUND**

The court presumes familiarity with the facts of this case, which are described in detail in the court's summary judgment opinion. *See T.S. v. Twentieth Century Fox Television*, No. 16 C 8303, 2021 WL 2376017, *1–9 (N.D. Ill. June 10, 2021) (hereinafter the "June 10, 2021 order"). That order granted summary judgment in favor of Defendant Dixon on all claims against him except one: that he breached a fiduciary duty to Plaintiffs.[1] *Id.* at *16. As a matter of first impression, the court held that detention center officials like Defendant Dixon owe juvenile detainees in their care a fiduciary duty, similar to that of a guardian-ward relationship. *Id.* at *14 (citing *Parks v. Kownacki*, 305 Ill. App. 3d 449, 461, 711 N.E.2d 1208, 1216 (5th Dist. 1999) (holding that a priest owed a fiduciary duty to a teenaged girl who lived with him in the church rectory, where the priest "exercise[d] all the control over her that a legal guardian would be allowed to exercise")).[2] In turn, a reasonable jury could find that Dixon breached his fiduciary duty by altering the operations of the JTDC in ways that harmed Plaintiffs and other juvenile detainees. *Id.* at *15–16. For example, a jury could find that spending more time on their pods due to filming worsened the psychological impact of detention. *Id.* at *15. Overcrowding in pods to accommodate filming also may have caused detainees to feel less safe. *Id*.

The court then concluded that Defendant Dixon was not entitled to sovereign immunity, at least at summary judgment. *Id*. at *17. Under Illinois law, the State of Illinois is generally immune from suit, but the Illinois Court of Claims has exclusive jurisdiction to hear certain claims against the State, including tort suits for damages. *See* Illinois State Lawsuit Immunity Act, 745 ILCS 5/1; Court of Claims Act, 705 ILCS 505/8(d). "The determination of whether an action is in fact a suit

---

[1] Defendant Cook County remains in this case solely for purposes of indemnification. *See T.S.*, 2021 WL 2376017, at *19–20.

[2] In a prior ruling, then-District Judge St. Eve concluded that a guardian-ward relationship could exist under Illinois law, even if the role of guardian is not assigned by a court, where an adult accepts responsibility for a minor's care and education. *See T.S.*, No. 16 C 8303, 2017 WL 1425596, at *10 (N.D. Ill. Apr. 20, 2017).

against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties. An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Currie v. Lao*, 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980 (1992) (citations omitted); *see also Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (explaining that state immunity rules apply to state law claims in federal court). In other words, if a suit against a state employee is not "in fact a suit against the State," then the suit need not be brought in the Court of Claims.

In the June 10, 2021 order, this court noted an exception to sovereign immunity, recognized by both the Seventh Circuit and the Illinois Supreme Court, when the "plaintiff alleges that state officials or employees violated 'statutory or constitutional law.'" *Murphy v. Smith*, 844 F.3d 653, 658–59 (7th Cir. 2016) (quoting *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990)); *see also Fritz v. Johnston*, 209 Ill. 2d 302, 313, 807 N.E.2d 461, 468 (2004) ("Whenever a state employee performs illegally, unconstitutionally, or without authority, a suit may still be maintained against the employee in his individual capacity and does not constitute an action against the State of Illinois.") (quoting *Wozniak v. Conry*, 288 Ill. App. 3d 129, 134, 679 N.E.2d 1255, 1259 (4th Dist. 1997)). Illinois courts sometimes refer to this exception as the "officer suit exception." *See, e.g.*, *Leetaru v. Bd. of Trs. of Univ. of Ill.*, 2015 IL 117485, ¶ 78, 32 N.E.3d 583, 603 (Burke, J., dissenting). This court observed that the exception "appears to eviscerate the statutory immunity in many cases," but concluded the exception could apply in light of Plaintiffs' allegations that Defendant Dixon violated their due process rights under the Fourteenth Amendment. *T.S.*, 2021 WL 2376017, at *17.

That being said, Dixon will have an opportunity to raise sovereign immunity again as an affirmative defense at trial. Specifically, he may still be entitled to immunity if he can persuade the jury that he had a legitimate government purpose for imposing the challenged conditions of

confinement, or that the conditions were reasonable in relation to that purpose. *See Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015); *Hardeman v. Curran*, 933 F.3d 816, 822–23 (7th Cir. 2019). This is so even though the court determined that qualified immunity shielded Defendant Dixon from Plaintiffs' constitutional claims. *T.S.*, 2021 WL 2376017, at *17. A reasonable jury could conclude that Dixon lacked a legitimate government purpose for imposing the challenged conditions of confinement, or that the conditions were excessive. *Id*. at *11. Dixon was entitled to qualified immunity only because Plaintiffs had identified no cases suggesting that the right to be free of the kinds of conditions imposed during filming was clearly established. *Id*. at *12–13.

The County Defendants have requested certification of the following issues for interlocutory appeal:

1. Does the Superintendent of the JTDC owe JTDC detainees a fiduciary duty pursuant to Illinois common law, separate from his Fourteenth Amendment obligations, and if so, what is the scope of that fiduciary duty? The Court held that Dixon did owe Plaintiffs a fiduciary duty and that the scope of the duty required him to safeguard Plaintiffs' well-being.

2. Is Dixon entitled to sovereign immunity from Plaintiffs' breach-of-fiduciary duty claim pursuant to the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1 as a matter of law? The Court held that he is not.

(Defs.' Mem. [436] at 1.) The County Defendants further request that this court amend its prior opinion to include the requested certification. *See* Fed. R. App. P. 5(a)(3). They have contemporaneously filed a petition with the Seventh Circuit appealing this court's class certification decision. *See* Fed. R. Civ. P. 23(f). Defendants ask that this court grant their § 1292(b) motion so that the Court of Appeals may consider the two issues identified above along with their Rule 23(f) appeal.

**DISCUSSION**

To certify a question for interlocutory appeal under 28 U.S.C. § 1292(b), the movant must show that: (1) it is a question of law, (2) the question is controlling, (3) there exists substantial grounds for difference of opinion, and (4) immediate appeal would materially advance the ultimate termination of the litigation. *See Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675–76 (7th Cir. 2000). District courts may not certify an order for immediate appeal unless all of these criteria are met. *Id*. at 676. The Seventh Circuit has explained that a "question of law," as used in § 1292(b), means "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than [ ] whether the party opposing summary judgment had raised a genuine issue of material fact." *Id*. at 676. The purpose of an interlocutory appeal is to enable the court of appeals to decide an issue "quickly and cleanly without having to study the record . . . [and] without having to wait till the end of the case." *Id*. at 677. But § 1292(b) is "not intended merely to provide review of difficult rulings in hard cases." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, Nos. 11 C 4175 & 12 C 1346, 2012 WL 13209677, at *1 (N.D. Ill. Dec. 10, 2012) (quotation marks and citations omitted). The party seeking certification bears the burden of persuading the court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Powell v. Illinois*, No. 18 CV 6675, 2019 WL 10349404, at *1 (N.D. Ill. Nov. 5, 2019) (citation omitted). And even if the movant has satisfied the statutory requirements of § 1292(b) and the district court certifies an order, the court of appeals has discretion to accept or reject such an appeal. *See* 28 U.S.C. § 1292(b).

**I.      Fiduciary Duty**

Plaintiffs do not seriously dispute that the first issue on which Defendants seek certification is a controlling question of law. Whether a duty exists is a question of law for courts, not juries, to decide. *See Fulk v. Ill. Cent. R.R. Co.*, 22 F.3d 120, 125 (7th Cir. 1994); *Gonzalez v. Volvo of*

5

*Am. Corp.*, 752 F.2d 295, 300 (7th Cir. 1985). The court agrees with Defendants that whether detention center officials owe a fiduciary duty to juvenile detainees is a pure question of law. And the question is controlling because if Defendant Dixon did not owe Plaintiffs a fiduciary duty, then there are no remaining claims against him.

An immediate appeal of this question could also materially advance the ultimate termination of the litigation. *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("[A]ll that section 1292(b) requires as a precondition to an interlocutory appeal, once it is determined that the appeal presents a controlling question of law on which there is a substantial ground for a difference of opinion, is that an immediate appeal *may* materially advance the ultimate termination of the litigation."). Defendants emphasize that granting their motion would enable the Seventh Circuit to consider, in a single appeal, both the questions it has identified and their Rule 23(f) appeal of this court's class certification decision. Plaintiffs counter that they themselves intend to appeal some of this court's rulings after final judgment, so at least two appeals are likely. Given the parties' unwillingness to settle this litigation after five years, the court is inclined to agree with Plaintiffs.

And even if the fourth *Ahrenholz* factor tipped in Defendants' favor, they have failed to demonstrate that there are substantial grounds for difference of opinion on this issue. As the parties are well aware, the question whether detention center officials owe a fiduciary duty to *juvenile* detainees is a matter of first impression. *See T.S.*, 2021 WL 2376017, at *13–14. But the fact that an issue is unsettled does not necessarily make it suitable for § 1292(b) certification. *See R.J. O'Brien*, 2012 WL 13209677, at *1 ("If the contrary were true, an interlocutory appeal would be authorized (for example) any time a relatively new statute is applied for the first time, or even the second or third time, in a particular context."); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002) ("[I]f interlocutory appeals were permissible whenever there is merely the lack of judicial precedent, the effect would be no more

than to obtain an appellate stamp of approval on the ruling(s) by the trial court.").[3] *But see Mueller v. First Nat'l Bank of Quad Cities*, 797 F. Supp. 656, 664 (C.D. Ill. 1992) (noting that an issue of first impression "affords an additional basis for certification"). The cases that Defendants cite all involved *adult* prisoners, detainees, or arrestees, and only one case applied Illinois law. (*See* Defs.' Mem. at 7–8 (collecting cases).)[4] Although the court's conclusion that Dixon owed Plaintiffs a fiduciary duty may be debatable, Defendants have not persuaded the court that this issue cries out for immediate resolution on appeal. The court therefore denies Defendants' request for certification of the fiduciary duty question.

In their reply brief, Defendants attempt to relitigate this court's determination that Plaintiffs would have survived summary judgment on their conditions of confinement claim but for the application of qualified immunity. (*See* Reply [442] at 3–4 (arguing that the June 10, 2021 order "opened the door for future detainees to sue over conditions of their detention even if the

---

[3] Defendants cite *In re Bridgestone/Firestone* for the proposition that it is "beyond dispute" that interlocutory appeal is justified if there are conflicting judicial decisions on an issue. (*See* Defs.' Mem. at 9.) What the case actually describes are circumstances in which interlocutory appeal should be denied, not when it should be granted. Thus "it is beyond dispute that interlocutory appeal is *unjustified, inefficient, and unnecessary* when the movant has not set forth substantial conflicting decisions regarding the claimed controlling issue of law." *In re Bridgestone/Firestone*, 212 F. Supp. 2d at 910 (emphasis added) (quoting *Carlson v. Brandt*, Nos. 97 C 2165, 96 B 9606 & 97 C 3630, 1997 WL 534500, at *6 (N.D. Ill. 1997)).

[4] Defendants cite the following cases: *Sperry v. Corizon Health, Inc.*, No. 18-3119-SAC, 2020 WL 905745, at *3 (D. Kan. Feb. 25, 2020) ("Kansas courts have not recognized an action for breach of fiduciary duty in the prison context[.]"); *Hernandez v. Cate*, No. EDCV 11-00627 R(AJW), 2014 WL 6473769, at *3 (C.D. Cal. Oct. 16, 2014) (California state prison officials generally do not owe a fiduciary duty to prisoners); *Rua v. Glodis*, 52 F. Supp. 3d 84, 100 (D. Mass. 2014) (jail supervisor did not owe fiduciary duty to adult pretrial detainees); *Surratt v. McClaran*, 234 F. Supp. 3d 815, 833 (E.D. Tex. 2016) (police officers did not owe fiduciary duty to arrestee), *aff'd sub nom. Surratt v. McClarin*, 851 F.3d 389 (5th Cir. 2017); *Day v. Jeffreys*, No. 19-cv-00945-NJR, 2019 WL 6701671, at *4 (S.D. Ill. Dec. 9, 2019) (noting that it is "unclear whether a breach of fiduciary duty . . . is cognizable" under the Illinois Sexually Dangerous Persons Act, but denying motion to dismiss this claim); *Saunders v. Raleigh Cnty.*, No. 20-CV-00221, 2020 WL 9348328, at *15 (S.D. W. Va. May 18, 2020) (jail did not owe a fiduciary duty to detainee), *report and recommendation adopted*, 2021 WL 1180786 (S.D. W. Va. Mar. 29, 2021). With the exception of *Saunders*, Defendants cited all of these cases in support of their motion for summary judgment. *See T.S.*, 2021 WL 2376017, at *14.

deprivations were not objectively serious," and that this "counsels in favor of certifying [the decision] for immediate appeal"). The court notes that this is a separate issue from whether Defendant Dixon owed a fiduciary duty to Plaintiffs and other juvenile detainees as a matter of state law. Defendants nonetheless suggest that a recent, unpublished Seventh Circuit opinion establishes that conditions-of-confinement claims by pretrial detainees must be "objectively serious." *See Brown v. Picknell*, ___ F. App'x ___, No. 20-2904, 2021 WL 3028152, at *3 (7th Cir. July 19, 2021) ("To avoid summary judgment, [plaintiff] had to produce evidence that the conditions he experienced were objectively serious and that the defendants—acting purposefully, knowingly, or recklessly—responded or failed to respond in a manner that was objectively unreasonable.") (citing *Hardeman v. Curran*, 933 F.3d 816, 823–24 (7th Cir. 2019)). But the decision in *Brown* did not turn on whether the conditions at issue—bugs, dirt, poor ventilation, and various growths (moss, mold, and mildew)—were "objectively serious." *See id.* at *2–3. The plaintiff failed to exhaust his administrative remedies regarding his claims about the moss, mold, and mildew. *Id.* at *3. And for his properly exhausted claims, the Seventh Circuit concluded that there was no evidence that defendants' responses to the detainee's complaints were objectively unreasonable. *Id*. The court therefore had no reason to elaborate upon whether the conditions were "sufficiently serious" for purposes of the Fourteenth Amendment. *Id.*

In any event, Defendants did not request certification of the constitutional question in their original brief. They may disagree with the court's resolution of this issue on summary judgment, but because the court dismissed Plaintiff's constitutional claims, revisiting the merits of those claims on interlocutory appeal would prolong, rather than advance, the termination of the litigation. Put differently, Defendants' contention that there is no genuine dispute of material fact as to whether the challenged conditions were rationally related to a legitimate governmental objective is not the sort of question that is appropriate for interlocutory appeal. *See Ahrenholz*, 219 F.3d at 677 (holding that a "question of law" under § 1292(b) "means an abstract legal issue rather than

an issue of whether summary judgment should be granted"). Defendants are welcome to appeal the constitutional question after final judgment.

## II.  State Sovereign Immunity

Defendants have also sought certification of another question: whether Defendant Dixon is entitled to sovereign immunity pursuant to the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1. The court held that he was not. *See T.S.*, 2021 WL 2376017, at *16–17. Once again, Plaintiffs do not appear to dispute that this is a controlling question of law. If Dixon is entitled to sovereign immunity from Plaintiffs' breach of fiduciary duty claim, then there is no need for this case to proceed to trial. Instead, Plaintiffs point out (correctly) that the primary basis for Defendants' request is an Illinois Supreme Court case that they did not cite in their summary judgment briefing. *See Parmar v. Madigan*, 2018 IL 122265, 106 N.E.3d 1004. Defendants argue that *Parmar* clarified the scope of the officer suit exception to sovereign immunity when an officer allegedly violated constitutional or statutory law or exceeded the scope of his or her authority. *See id*. at ¶ 22, 106 N.E.3d at 1009 ("[A] complaint seeking to prospectively enjoin such unlawful conduct may be brought in the circuit court without offending sovereign immunity principles.") (citing *Leetaru*, 2015 IL 117485, ¶ 48, 32 N.E.3d at 596). Defendants read *Parmar* to limit the exception to claims for prospective injunctive relief, not retrospective claims for damages.[5] If Defendants are correct, then the exception does not apply here because Plaintiffs seek damages flowing from Dixon's alleged breach of fiduciary duty, not injunctive relief. (*See* Third Am. Compl. [365-1] at 43.)

---

[5]  Such an interpretation would bring the state-law exception closer in line with the *Ex parte Young* exception to Eleventh Amendment immunity. *See Ex parte Young*, 209 U.S. 123 (1908) (recognizing the ability to seek equitable relief to enjoin state officials from continuing violations of federal law); *Leetaru*, 2015 117485, ¶ 110, 32 N.E.3d at 611 (Burke, J., dissenting) (equating the officer suit exception with the *Ex parte Young* doctrine).

The court shares Plaintiffs' frustration with Defendants's failure to identify *Parmar,* a case decided in 2018, until now. On the other hand, because Defendants raised state sovereign immunity in their summary judgment briefing, the court does not believe that Defendants have forfeited the argument entirely. *Cf. Young v. Dart*, No. 1:06-cv-552, 2009 WL 2986109, at *2 (N.D. Ill. Sept. 15, 2009) (denying motion for interlocutory appeal where defendant forfeited sovereign immunity defense by failing to raise it until near the end of a jury trial). As explained below, the court agrees with Defendants that there are substantial grounds for difference of opinion on this issue, and that interlocutory appeal would materially advance the ultimate termination of the litigation.

The parties have identified federal district court cases interpreting *Parmar* in different ways. Defendants point to *Marshall v. Fries* and *Hyzy v. Bellock*, which read *Parmar* as holding that the officer suit exception applies only when a plaintiff seeks to enjoin future conduct, not money damages. *See Marshall v. Fries*, No. 19 C 55, 2019 WL 4062549, at *6 (N.D. Ill. Aug. 28, 2019) (citing *Parmar* for the proposition that the officer suit exception "applies where a plaintiff seeks to prospectively enjoin unlawful conduct, and not where plaintiff only seeks damages for a past wrong as Plaintiff does here"); *Hyzy v. Bellock*, No. 3:18-cv-3093, 2019 WL 1781400, at *4 (C.D. Ill. Apr. 23, 2019) (same). In both cases, the district court determined that the source of the duty allegedly breached was not independent of state employment, so the suits were really brought against the state. *See Marshall*, 2019 WL 4062549, at *6; *Hyzy*, 2019 WL 1781400, at *4.

Plaintiffs read two decisions by Judge Shah of this court as explaining that *Parmar* did not change the scope of the exception. *See Mitchell v. Dumais*, No. 20 CV 990, 2021 WL 860359, at *3 (N.D. Ill. Mar. 8, 2021) ("*Parmar* doesn't change the sovereign immunity test. Regardless of the type of violation alleged (tort, statutory, constitutional), what matters for determining whether the claim is against the state is the source of the duty breached."); *Peirick v. Dudek*, No. 20 CV

10

3013, 2020 WL 6682891, at *3 (N.D. Ill. Nov. 12, 2020) ("Unlike the plaintiff's claims in *Parmar*, Peirick's claims are not against the state and so sovereign immunity does not apply."). In *Mitchell*, the plaintiff survived summary judgment on sovereign immunity because there was a material dispute about whether state troopers committed acts outside their lawful duties and thus whether plaintiff's battery claim was against the state. See *Mitchell*, 2021 WL 860359, at *3. The court did not discuss the significance of the remedy sought at all. In *Peirick*, the court explicitly rejected a state trooper's argument that *Parmar* "altered the legal landscape, barring application of the 'officer suit' exception to any suits for damages against state employees." *Peirick*, 2020 WL 6682891, at *2.[6] Judge Shah "[did] not read *Parmar* to abrogate *Currie* and *Fritz*, two cases it does not cite." *Id*. at *3. Both *Currie* and *Fritz* involved suits against state employees for damages, and the Illinois Supreme Court concluded that sovereign immunity did not apply. See *Currie*, 148 Ill. 2d at 166, 592 N.E.2d at 983 (suit for negligent operation of motor vehicle was not an action against the State, so sovereign immunity did not apply); *Fritz*, 209 Ill. 2d at 312–14, 807 N.E.2d at 467–69 (civil conspiracy claims against state employees were not barred by sovereign immunity because duty to obey criminal law arose independently of state employment).

The court agrees with Defendants that there are substantial grounds for difference of opinion on the proper interpretation of *Parmar*. In *Murphy v. Smith*, the Seventh Circuit read *Leetaru* as allowing suits for damages against state employees so long as the plaintiff alleged a violation of statutory or constitutional law. *Murphy*, 844 F.3d at 658–59 (citing *Leetaru*, 2015 IL 1174858, ¶ 46, 32 N.E.3d at 596). The Seventh Circuit did so despite "the force of the dissent" in *Leetaru*, which would have cabined the officer suit exception to suits to enjoin ongoing violations. *Id.* at 659 (citing *Leetaru*, 2015 117485, ¶¶ 110–12, 32 N.E.3d at 611–12 (Burke, J.,

---

[6] In their reply brief, Defendants mistakenly quote the above language as evidence of Judge Shah's own view, rather than an argument that the state trooper advanced. (*See* Defs.' Reply at 6.)

dissenting)). Notably, the plaintiff in *Leetaru* was seeking only injunctive relief, not damages. *See Leetaru*, 2015 IL 117485, ¶ 51, 32 N.E.3d at 598 ("Leetaru's action . . . seeks only to prohibit future conduct . . . undertaken by agents of the State in violation of statutory or constitutional law or in excess of their authority. Claims of this kind are not against the State at all and do not threaten the State's sovereign immunity."). By contrast, the plaintiff in *Parmar* sought a refund of estate taxes that were allegedly unlawfully collected, and the court interpreted such an action as a suit for damages. *See Parmar*, 2018 IL 122265, ¶ 26, 106 N.E.3d at 1010. The *Parmar* court rejected the plaintiff's attempt to invoke the officer suit exception, concluding that the court below had misread *Leetaru*. *See id*. ¶ 23, 106 N.E.3d at 1010.

All of this is to say that the Seventh Circuit may be interested in revisiting its decision in *Murphy* in light of *Parmar*. If Defendants' interpretation is correct, then an interlocutory appeal would materially advance the termination of this litigation. The court therefore grants Defendants' motion to certify the following issue for interlocutory appeal: whether, under Illinois law, the officer suit exception to sovereign immunity applies only if a plaintiff seeks to enjoin a continuing violation of statutory or constitutional law. Of course, the Seventh Circuit "may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court." *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 974 (7th Cir. 2021) (quotation marks and citations omitted).

## CONCLUSION

For the foregoing reasons, Defendants' motion [435] to certify this case for interlocutory appeal is granted in part and denied in part.

ENTER:

Dated: October 26, 2021

_____
REBECCA R. PALLMEYER
United States District Judge